Exhibit 16



Sent Via Email, USPS and Certified Mail

## MEMORANDUM

**DATE:**      February 19, 2020

**TO:**         Charmaine Condillac, Associate Ombudsman, GS-0301-14
Ombudsman and Conflict Prevention and Resolution Staff
Office of Operations

**SUBJECT:**    DECISION NOTICE

This is a decision to remove you from your position of Associate Ombudsman, GS-0301-14, at
the Food and Drug Administration (FDA) and from Federal Service based on a Charge of
Medical Inability to Perform the Duties of your Position.  This decision is made in the interest of
promoting the efficiency of the service and the Federal Government and is effected in
accordance with 5 U.S.C. Chapter 75, 5 C.F.R. Part 752 and HHS Instruction 752.

By memorandum received by you on January 17, 2020, you were informed of a proposal to
remove you from your position of Associate Ombudsman, GS-0301-14, and the Federal service,
based on a Charge of Medical Inability to Perform the Duties of your Position.  By that same
memorandum, you were advised that you had seven (7) days to reply orally, in writing, or both to
the proposed action.  You requested additional time to reply and were granted an additional ten
(10) calendar days. You did reply. In making this decision, I carefully and objectively reviewed
the charge and specification in the Notice of Proposed Removal, the supporting evidence in the
record, and your written reply.

After full consideration of all the facts, I find the charge to be SUSTAINED.  In deciding to
remove you from your Associate Ombudsman, GS-0301-14 position, I have considered the
following:

**Background:**

On April 19, 2019, you submitted a request to the Reasonable Accommodation Office requesting
flexible time/schedule for medical treatment related to disability and reassignment, to
accommodate your medical condition.  As an interim accommodation, you were granted
telework three (3) days per week.  The other two (2) days you were required physically on site at
either White Flint North (WFN) or White Oak (WO) for ADR-specific work including
mediations, facilitations, etc., or staff meetings.  You were permitted to move your work at home
days to accommodate these onsite activities.

U.S. Food & Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD  20993
www.fda.gov

In accordance with FDA's Staff Manual Guide (SMG) 3130.2 - Procedures for Providing Reasonable Accommodations for Individuals with Disabilities, a list of questions along with your documentation was sent to the Federal Occupational Health (FOH) Occupational Medicine Consultant (OMC) to be answered by your medical care professional(s). The answers to the questions were designed to assist the agency in determining whether your medical conditions rise to the level of a disability under the Rehabilitation Act of 1973 and the Americans with Disabilities Act Amendments Act (ADAAA) of 2008.

The review of your reasonable accommodation request was completed, and an analysis provided. Based on the updated medical information received October 30, 2019, from the FOH OMC, you have a medical condition which substantially limits major life activities and functions, including thinking, concentrating, interacting with others, eating and sleeping. Based on this information, your medical condition rises to the level of a disability as described by the Rehabilitation Act of 1973, and the ADAAA of 2008, and you are considered a qualified individual with a disability.

The FOH OMC opined that there are times when you feel unable to go to work, unable to concentrate and focus on your work, and unable to make decisions, in addition to limiting energy, appetite, and sleep. The FOH OMC opined that your symptoms are greatly exacerbated by interactions with your supervisor. The FOH OMC opined that you seek to minimize time at the office, and interaction with your supervisor, chiefly because of the affect that interaction with your supervisor has on your symptoms.

Attendance in the office for duties that are not portable, and interacting with one's supervisor, are essential functions of any position, and accommodations to make these unnecessary would not be considered reasonable. The FOH OMC opined that at present, and for the foreseeable future, you appear to be unable to perform the essential functions of your position, with or without accommodation.

The FOH OMC opined that therefore, reassignment to another vacant position, the accommodation of last resort, would be medically reasonable. Based on the facts of this case, the available medical information, a review of the essential job functions, the Reasonable Accommodation Office maintained that if administratively feasible, without causing a direct threat to health and safety or posing an undue hardship, management should grant you the alternative accommodation of reassignment.

Therefore, based on the analysis of the Reasonable Accommodation Office, a review of your medical information and in accordance with the Rehabilitation Act of 1973, the Americans with Disabilities Act Amendments Act (ADAAA) of 2008 and FDA's Policy on Reasonable Accommodation under Section 2 of SMG 3130.2, as the decision-maker, you were granted reassignment as the reasonable accommodation of last resort.

You submitted the completed Reassignment Questionnaire and provided the Reasonable Accommodation Office with a copy of your current resume on November 7, 2019 and requested holding off on processing the questionnaire/application until you "get back to RA give them the green to proceed". On November 8, 2019, you emailed the Reasonable Accommodation Office and stated that you would like to consult with your attorney, and subsequently you stated that "you hereby retract your request for a reassignment as a reasonable accommodation". On November 21, 2019, the agency began an internal vacancy search for a suitable/comparable position for you.

On December 19, 2019, the Reasonable Accommodation Office sent you and your attorney an email informing you that "Reassignment as the reasonable accommodation was warranted as a last resort as it was determined that you were unable to perform the essential functions of your position, thus your statement to retract your reasonable accommodation request for reassignment did not stop the reassignment process which is based on your medical condition/limitations".  "If you have had a chance to consult with your attorney, please advise if you desire to continue in the reasonable accommodation reassignment process by close of business on Friday, December 27, 2019.  If you do wish to proceed with the reassignment action, RA would close the reasonable accommodation request".

Due to a lack of response on your part, the Reasonable Accommodation Office informed you and your attorney via email that of as of December 30, 2019, Reasonable Accommodation Office is closing the reasonable accommodation reassignment process.

1. **I have considered the impact your medical condition has on your ability to perform the essential functions of your position.**  The essential duties of your position are as follows:

   - Collaborate with officials to achieve constructive resolution to disputes; seeks fair and equitable solutions to employees' problems; suggests approaches to address and manage conflict, suggest policy and procedural changes; helps to build constructive relationships by working to resolve disputes and making recommendations intended to create a more positive work environment, thereby contributing to improved office productivity.
   - Provide support to the Ombudsman in mediation disputes, and assisting to resolve issues in a timely, fair, and impartial manner.
   - Maintain neutrality in each case and serve as an advocate for fair process and outcomes.
   - Work closely with the Ombudsman on day to day operations.
   - Provide advice and assistance to Ombudsman in making recommendations of resolutions to the staff.
   - Collaborate with Ombudsman in the development of short-and-long term resolutions and presents to OO Senior Leadership.
   - Represent Ombudsman in discussions and meetings related to matters of concern as deemed appropriate.
   - Serve as a neutral third party in conflict resolutions and works to achieve fair and equitable solutions to problems.
   - Collaborate with other Office of Operations and FDA offices on issues of general concern and interprets policies to help resolve conflict or make improvements in the Office of Operations procedures.
   - Assist in the mediation and/or negotiation of disputes occurring at all staff levels. Educates management and the general workforce, in the concepts and processes of conflict resolution either in one-on-one or group settings.
   - Recommend approaches for addressing and managing conflict and collaborates with other Office of Operations offices on issues of general concern.
   - Provide leadership in developing and implementing strategies for building and sustaining cooperative relations between managers and staff employees in the

Office of Operations.
- Research, identify, and develop tools to be used to conduct assessments and evaluations of the organization's conflict climate.
- Work with leadership to develop plans to improve organizational environment.

Based on the medical review and a review of the essential job functions in your position description, it was determined that you are unable to perform the essential functions of your job with or without an accommodation, placing an undue burden on other staff who must perform all the essential duties of your position in addition to their own work.

2. **I have considered your past disciplinary record.** On October 25, 2018, you received a reprimand for failure to attend scheduled meetings and on November 14, 2019, you received a five (5) day suspension for Failure to Attend Scheduled Meetings as Instructed and Submission of An Inaccurate Time and Attendance Record.

3. **I have considered the effect of your ability to perform at a satisfactory level and its effect upon your supervisor's confidence in your ability to perform assigned duties.** Based on the opinion of FOH, you cannot perform the essential functions of your position with or without an accommodation. All other attempts at reasonable accommodation have been exhausted and reassignment is the only available option left to explore. The reasonable accommodation reassignment process was closed due to a lack of response on your part.

4. **I have considered your past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability.** Your 2018 PMAP score was 2.5 and you were failing your 2019 mid-year PMAP. I have also considered that you have been employed with the Food and Drug Administration for approximately twenty (20) years. However, this Proposal to Remove action is being taken because you rejected reassignment - the accommodation of last resort. I find removal to be the only remedy available that will promote the efficiency of government service.

The supporting documentation shows that a third-party, independent contractor (FOH) determined that you are unable to perform the essential functions of your current position and that reassignment to another vacant position, the accommodation of last resort, would be medically reasonable. The record also confirms that we looked for other positions within the Office of Enterprise Management Services (OEMS) that would be suitable options for you; however, you declined reassignment. Your inability to perform the essential functions of the position and refusal to move forward with an accommodation of last resort alone provide a solid basis to move forward with removal. You are not entitled to the accommodation of your choosing and reconsideration is not appropriate where your attorney has failed to provide any additional medical support to rebut FOH's assertion that you are unable to perform the essential functions of your job.

Therefore, in accordance with Part 752 of Title 5 of the Code of Federal Regulations, it is my finding that the evidence provided in this case, supports the reason for this action **and it is my decision, that in order to promote the efficiency of the service, you be removed from your**

**position as an Associate Ombudsman, GS-0301-14, and from the Federal Service effective
February 21, 2020.**

## NOTICE OF RIGHT TO GRIEVE THIS DECISION OR INVOKE A STATUTORY REVIEW PROCEDURE

You may invoke <u>one</u> of the following statutory review procedures:

You may appeal this action in writing, to the U.S. Merit Systems Protection Board (MSPB), 1800 Diagonal Road, Alexandria, VA 22314-2840.  Or you may file an electronic appeal by following the instructions at the MSPB's e-Appeal website at http://www.mspb.gov/.

Any appeal filed with the MSPB must be received by the MSPB no later than thirty (30) calendar days after the effective date of this action, or within thirty (30) calendar days from your receipt of this decision notice, whichever is later.  Your appeal, if any, must provide your reasons for contending your removal from federal service, with such offer of proof and pertinent documents as you are able to submit.  It is important to note the MSPB's thirty (30) calendar day requirement for filing an appeal.  If you do not submit an appeal within the time set by statute, regulation, or order of a judge, it will be dismissed as untimely filed unless a good reason for the delay is shown.  If you should file after the thirty (30) calendar-day requirement, the MSPB administrative law judge will provide you an opportunity to show why the appeal should be accepted and not dismissed as untimely filed.
<b><u>OR</u></b>

If you believe this action involves discrimination based on race, color, religion, sex, national origin, handicapping condition, or age, you have the right to file a complaint within the Department under the provisions of 29 C.F.R. Part 1614.  To do so, you must contact an Equal Employment Opportunity (EEO) counselor within forty-five (45) calendar days of your receipt of this letter or your complaint will be dismissed as untimely filed.

<b><u>OR</u></b>

As stated in 5 C.F.R. Part 1209, you may seek corrective action before the U.S. Office of Special Counsel (OSC), www.osc.gov .  If you file a complaint with OSC and OSC does not seek corrective action on your behalf, you may then appeal to the MSPB.  The time limits for filing are the same as for an "individual right of action" and the case will be adjudicated as an individual right of action appeal.

> **NOTE**:  Please be advised that if you elect to file with OSC, any later appeal to the MSPB will be limited to whether the agency took one or more covered personnel actions against you in retaliation for making protected whistleblowing disclosures. This means that the MSPB will not review the merits of the action but will resolve only the claim of reprisal for whistleblowing.  You will be foregoing the right to otherwise challenge this removal, including, as applicable, the ability to challenge the charge(s); nexus; reasonableness of the penalty; and any affirmative defenses, such as: harmful procedural error and discrimination under Title VII or the Rehabilitation Act.

You may be eligible for disability retirement. If you have any questions regarding disability retirement or if you need assistance in applying for disability retirement, you may contact the

FDA OHR Benefits and Retirements at OO-OHR-BENEFITS@FDA.HHS.GOV.

If you have questions on the content of this letter or the appeal procedures available, you may contact Celeste Smith, HR Specialist at (240) 672-8018 or celeste.smith@fda.hhs.gov.


Sincerely,

Tiffany Branch
Director,
Office of Enterprise Management Services


Receipt Acknowledgement:

Please acknowledge receipt on the copy of this letter in the space provided. Your signature simply acknowledges that you have received the letter and does not mean that you agree the contents. However, failure to acknowledge receipt will not void the contents of this letter.

**R E C E I P T   C O P Y:**


_____            _____
Employee Signature                                             Date

Exhibit 17

# MORRIS E. FISCHER, LLC

February 27, 2020

Merit Systems Protection Board
Washington DC Regional Office
1901 S. Bell Street Suite 950
Arlington, VA 22202

> **Re:** **Charmaine Condillac MSPB Appeal**

Dear Sir/Madam,

Enclosed please find an MSPB Appeal on behalf of Ms. Charmaine Condillac, represented by this firm.

We request this matter be set up for e-filing under Mr. Fischer's account. Please contact the undersigned if you need additional information.

Sincerely,

Morris E. Fischer, Esq.

Enclosures
CC: Ms. Condillac

RECEIVED MSPB
2020 MAR -2 P 1:35
MSPB

8720 Georgia Avenue, Suite 210
Silver Spring, MD 20910-3614
O 301-328-7631 F 301-328-7638

11 Broadway, Suite 615
New York, NY 10004-1490
O 800-209-2608 F 212-480-8560

www.morrisfischerlaw.com | morris@mfischerlaw.com

*Please type or print legibly.*

**1. Name** *(last, first, middle)*

Last | Condillac | First | Charmaine | M. Initial |

Please list your first name as it appears in your official personnel records. For example, if your first name is "William" on your official personnel records, please list it that way on the appeal form, not "Bill" or "Willy."

**2. Present address** *(number and street, city, State, and Zip code)*
You must promptly notify the Board in writing of any change in your mailing address while your appeal is pending.

Address: 20245 Sweet Meadow Lane

City: Laytonsville | State: MD | Zip Code: 20882

**3. Telephone Numbers** *(include area code) and E-Mail Address*
You must promptly notify the Board in writing of any change in your telephone number(s) or e-mail address while your appeal is pending.

Home: (240) 730-3227 | Work: | Fax: | Cell: (301) 740-9033

e-Mail Address: egconsulting.llc@gmail.com

**4. Name and address of the agency that took the action or made the decision you are appealing** *(include bureau or division, street address, city, State and Zip code)*

Agency Name: Department of Health & Human Services

Bureau: Food and Drug Administration

Address: 8963 New Hampshire Ave

City: Silver Spring | State: MD | Zip Code: 20993 | Phone Number: (301) 796-5446

**5. Your Federal employment status at the time of the action or decision you are appealing:**

[X] Permanent ☐ Temporary ☐ Term

☐ Seasonal ☐ Applicant ☐ Retired

☐ None

**6. Type of appointment (if applicable):**

[X] Competitive ☐ Excepted

☐ Postal Service ☐ SES

☐ Other *(describe)*:

**7. Your position, title, grade, and duty station at the time of the action or decision you are appealing (if applicable):**

Occupational Series or Cluster: GS-301 | Position Title: Associate Ombudsman

Grade or Pay Band: 14 | Duty Station: North Bethesda, MD

**8. Are you entitled to veteran's preference?**
See 5 U.S.C. § 2108.
☐ Yes [X] No

**9. Length of Federal service (if applicable):**

20 Years | ____ Months

**10. Were you serving a probationary, trial, or initial service period at the time of the action or decision you are appealing?**
☐ Yes [X] No

**11. HEARING:** You may have a right to a hearing before an administrative judge. If you elect not to have a hearing, the administrative judge will make a decision on the basis of the submissions of the parties. Do you want a hearing?

[X] Yes ☐ No

## PART 2 - Agency Personnel Action or Decision (non-retirement)

**Complete this part if you are appealing a Federal agency personnel action or decision other than a decision directly addressing your retirement rights or benefits.** This includes certain actions that might not otherwise be appealable to the Board: individual right of action (IRA) appeals under the Whistleblower Protection Act (WPA); appeals under the Uniformed Services Employment and Reemployment Rights Act (USERRA); or appeals under the Veterans Employment Opportunities Act (VEOA). An explanation of these three types of appeals is provided in **Appendix A**.

---

12. Check the box that best describes the agency **personnel action or decision** you are appealing. (If you are appealing more than one action or decision, check each box that applies.)

- [x] VA SES Removal from civil service
- [x] Removal (termination after completion of probationary or initial service period)
- [ ] Termination during probationary or initial service period
- [ ] Reduction in grade, pay, or band
- [ ] Suspension for more than 14 days
- [ ] Failure to restore/reemploy/reinstate or improper restoration/reemployment/reinstatement
- [ ] Negative suitability determination

- [ ] VA SES Transfer to general schedule
- [ ] Involuntary resignation
- [ ] Involuntary retirement
- [ ] Denial of within-grade increase
- [ ] Furlough of 30 days or less
- [ ] Separation, demotion or furlough for more than 30 days by reduction in force (RIF)
- [ ] Other action (describe):

---

13. Date you received the agency's final decision letter (if any) *(MM/DD/YYYY):*

02/20/2020

14. Effective date (if any) of the agency action or decision *(MM/DD/YYYY):*

02/21/2020

---

15. Prior to filing this appeal, did you and the agency mutually agree in writing to try to resolve the matter through an alternative dispute resolution (ADR) process?

- [ ] Yes *(attach a copy of the agreement)*
- [x] No

---

16. Explain _briefly_ why you think the agency was wrong in taking this action, including whether you believe the agency engaged in harmful procedural error, committed a prohibited personnel practice, or engaged in one of the other claims listed in **Appendix A. Attach the agency's proposal letter, decision letter, and SF-50, if available.** Attach additional sheets if necessary (bearing in mind that there will be later opportunities to supplement your filings).

See Attached.

17. With respect to the agency personnel action or decision you are appealing, have you, or has anyone on your behalf, filed a grievance under a negotiated grievance procedure provided by a collective bargaining agreement?

☐ Yes    ☒ No

If "Yes," **attach a copy of the grievance**, enter the date it was filed, and enter the place where it was filed if different from your answer to question 4 in Part 1.

Agency Name: [                    ]    Date Filed (*MM/DD/YYYY*): [                    ]

Bureau: [                    ]

Address: [                    ]

City: [                    ]    State: [                    ]    Zip Code: [                    ]

If a decision on the grievance has been issued, **attach a copy of the decision** and enter the date it was issued (*MM/DD/YYYY*):

Date Issued (*MM/DD/YYYY*): [                    ]

---

**Answer Question 18 ONLY if you are filing an IRA appeal.**

18. If you filed a whistleblowing complaint with the Office of Special Counsel (OSC), provide the date on which you did so and the date on which OSC made a decision or terminated its investigation, if applicable. **Attach copies of your complaint and OSC's termination of investigation letter**, notifying you of your right to seek corrective action from the Board.

Date Filed (*MM/DD/YYYY*): [ 12/16/2019 ]

Date of OSC decision or termination of investigation (*MM/DD/YYYY*): [ 02/25/2020 ]  *See Attached -*

---

**Answer Question 19 ONLY if you are filing a USERRA or VEOA appeal.**

19. If you filed a complaint with the Department of Labor (DOL), list the date on which you did so, and **attach a copy of your complaint**. If DOL has made a decision on your complaint, list the date of this decision, and **attach a copy of it**. If DOL has not made a decision on your complaint within 60 days from the date you filed it, state whether you have notified DOL of your intent to file an appeal with the Board, and **attach a copy of such notification**.

Date Filed (*MM/DD/YYYY*): [                    ]

Has DOL made a decision on your complaint?

☐ Yes    ☐ No

If "Yes," enter the date it was made. If "No," state whether you have notified DOL of your intent to file an appeal with the Board, and **attach a copy of such notification**.

Date of DOL decision (*MM/DD/YYYY*): [                    ]    ☐ Notified DOL of your intent to file an appeal with the Board?

## PART 3 - OPM or Agency Retirement Decision

**Complete this part if you are appealing a decision of the Office of Personnel Management (OPM) or other Federal agency directly addressing your retirement rights or benefits.**

**20. In which retirement system are you enrolled?**

☐ CSRS ☐ CSRS Offset ☐ FERS

☐ Other, *describe:*

**21. Are you a:**

☐ Current Employee ☐ Annuitant

☐ Surviving Spouse

☐ Other, *describe:*

**22. If retired, date of retirement, or if unknown, approximate date:**

Date Retired (*MM/DD/YYYY*):

**23. Describe the retirement decision you are appealing.**

**24. Have you received a final or reconsideration decision from OPM or another Federal agency?**

☐ Yes *(attach a copy)* ☐ No

If "Yes," on what date did you receive the decision?

Date Received (*MM/DD/YYYY*):

Provide the OPM processing (CSA or CSF) number in your appeal:

OPM Claim Number:

**25. Explain briefly why you think OPM or another Federal agency was wrong in making this decision.**

## PART 4 — Designation of Representative

26. Has an individual or organization agreed to represent you in this proceeding before the Board? (You may designate a representative at any time. However, it is unlikely that the appeals process will be delayed for reasons related to obtaining or maintaining representation. Moreover, you must promptly notify the Board in writing of any change in representation.)

[X] Yes *(Complete the information below and sign)*          [ ] No

**DESIGNATION:**

"I hereby designate Morris E. Fischer to serve as my representative during the course of this appeal. I understand that my representative is authorized to act on my behalf. In addition, I specifically delegate to my representative the authority to settle this appeal on my behalf. **I understand that any limitation on this settlement authority must be filed in writing with the Board.**"

Representative's address *(number and street, city, State and Zip code)*

Address: Morris E. Fischer, LLC
8720 Georgia Ave. Suite 210

City: Silver Spring

State: MD          Zip Code:

Representative's telephone numbers *(include area code)* and e-mail address

Office: 3013287631

Fax: 3013287638          Other:

e-Mail Address: morris@mfischerlaw.com

### SIGN BELOW TO MAKE YOUR DESIGNATION OF REPRESENTATIVE EFFECTIVE

*Charmaine Condillac*
Appellant's Signature

2/26/20
Date *(MM/DD/YYYY)*

27. I certify that all of the statements made in this form and any attachments are true, complete, and correct to the best of my knowledge and belief.

*Charmaine Condillac*
Signature of Appellant or Representative

2/26/20

Date *(MM/DD/YYYY)*

**Privacy Act Statement**

This form requests personal information that is relevant and necessary to reach a decision in your appeal. The Merit Systems Protection Board collects this information in order to process appeals under its statutory and regulatory authority. Because your appeal is a voluntary action, you are not required to provide any personal information to the Merit Systems Protection Board in connection with your appeal. Conceivably, failure to provide all information essential to reaching a decision in your case could result in the dismissal or denial of your appeal.

Decisions of the Merit Systems Protection Board are available to the public under the provisions of the Freedom of Information Act and are posted to the Merit Systems Protection Board's public website. Some information about the appeal also is used in depersonalized form for statistical purposes. Finally, information from your appeal file may be disclosed as required by law under the provisions of the Freedom of Information Act and the Privacy Act. See 5 U.S.C. §§ 552, 552a.

**Public Reporting Burden**

The public reporting burden for this collection of information is estimated to vary from 20 minutes to 4 hours, with an average of 60 minutes per response, including time for reviewing the form, searching existing data sources, gathering the data necessary, and completing and reviewing the collection of information. Send comments regarding the burden estimate or any other aspect of the collection of information, including suggestions for reducing this burden, to Office of the Clerk of the Board, Merit Systems Protection Board, 1615 M Street, N.W., Washington, DC 20419 or by e-mail to mspb@mspb.gov.

# **ATTACHMENT**

On October 1, 2019, Albert Conerly, my client's first line supervisor issued a Performance Improvement Plan (Exhibit 1). This plan violates a number of Office of Personnel Management policies as well as a number of Code of Federal Regulations under Title 5.

Notably, the ODAP or PIP did not identify whether it is brought pursuant to 5 CFR § 432 or 5 CFR § 752. The former regulation requires a period in which the employee is give the opportunity to improve and this PIP provides such opportunity. Hence, it is assumed that Mr. Conerly's intent was to bring it under same.

Attached hereto are OPM policies with respect to the administration of Performance Improvement Plans and pages 5-10 list a number of the requirements to which this PIP fell short (Exhibit 2). There are numerous examples. Element #4, "teamwork" is completely not measurable. There's no way the employee can possibly be rated on a totally subjective standard with no deliverables. Regarding Element #1, Ms. Condillac's PWP, page 3 of 11, lists the training she is required to complete is the EEOC training for New Counselors. Ms. Condillac completed that training in September, 2019, before the PIP was issued. The additional trainings that you contend she didn't do are not in the PWP. The major improvement that can be measured is for her to attend many more trainings.

Then there appear to be a number of disciplinary issues that have no place in a PIP. For example, she's scolded for not adhering to proper email response formats. There's a link she allegedly didn't download and there's an allegation that she failed to participate in meetings. There's another allegation that she failed to continuously provide status reports to her supervisor about her work situation. None of these alleged deficiencies have any link to her GS-14 Associate Ombudsman, position description,

My understanding is that with respect to the contention that there were 71 consultation opportunities and 58 facilitation/mediation opportunities, Ms. Condillac challenged Mr. Conerly on that contention, by asking him to show her proof of same in that they'd be on your calendar. He refused to present that evidence to her.

In addition, I've reviewed the aforementioned position description (Exhibit 3). Ms. Condillac is supposed to be actively involved in mediations, interviews, performing technical reviews and items of that nature. However, she wasn't given any of that work. She complained about it. The responses she was given were words to the effect of, "we already have a number of excellent mediators." She never got assigned the duties to which she should have been assigned.

1

## 5 CFR § 432 and OPM Violations During the PIP Administration

- This PIP 60 Day Administration violated the following:

- It failed to identify the elements that were unacceptable.

- It did not provide standards that were clear and reasonable.

- It had a number of standards that could not be measured.

- It did not specify precisely what the employee is expected to do.

- It had PWP 12 month objectives jammed into 60 days.

- Assistance was not offered such as
  - Technical training
  - Specialized software
  - Enhanced management

- The employee's performance during the PIP was not documented, at least the supervisor, Albert Conerly has never followed up with Ms. Condillac in writing.

- There are absolute retention standards.

Furthermore, when Ms. Condillac brought the fact up that he placed nothing in writing to her about her performance (following these weekly performance meetings or at any time), Mr. Conerly informed her he would do so; he would send her all the notes by Monday, November 4, 2019. We contend that there are no notes. The PIP was a total fabrication by Mr. Conerly.

On November 4, 2019, Complainant, through Counsel, submitted opposition to the ODAP, pointing out the numerous problems with the ODAP, its administration and that Conerly never assigned Complainant any of the GS-14 Assistant Ombudsman duties as per her position description. Exhibit 3. Facing obvious ramifications for his actions in issuing the ODAP and its administration, Conerly on November 6, 2019, provided Complainant with a document "Documentation of Performance Counseling." Exhibit 4.

On November 8, 2019, Ms. Condillac gave written notice to Robert Thomas who was the Lead Reasonable Accommodation Specialist, and Albert Conerly that she was retracting her request for reassignment as a Reasonable Accommodation. Exhibit 5. Complainant's actual Reasonable Accommodation request issued November 8, 2019 was to telework five days and come to the campus/FDA facilities to conduct all ADR strategies conducted in person. Id. Three days later on November 11, 2019, Thomas, copying Conerly, confirmed Complainant's retraction for request for reassignment. Exhibit 6. The next day on November 12, 2019, Conerly, already having knowledge of Ms. Condillac's rescission of her reassignment request, nonetheless issued a response for the Reasonable Accommodation request for the first time in seven months, treating the reassignment request as still valid. Exhibit 7. Conerly's said memo states that his

2

decision is supported by the medical review that confirms that Complainant could not perform the essential functions of the position. Id.

On November 13, 2019, Complainant, by Counsel, challenged the November 12, 2019, memo, in that Complainant retracted her reassignment request and that the source of her anxiety and depressive disorder being exacerbated is her supervisor, Albert Conerly. Exhibit 8. He never provided her the proper performance duties. Furthermore, a week earlier he submitted a memorandum that Complainant was performing the job duties (that he gave her at least) in a satisfactory manner. Exhibit 4. In response to that letter, Conerly issued another memorandum on November 27, 2019, rescinding her ODAP and concluding that Complainant cannot perform the essential functions of the position and rescinding her three days a week telework (which Conerly established as an interim accommodation). Exhibit 9.

### <u>Additional Retaliation – Leading to Termination</u>

In retaliation for Appellant's whistleblowing disclosures, Appellant filed, on January 17, 2020, Mr. Conerly issued a Proposal to Remove (Exhibit 10) Ms. Condillac from her position, not because she was failing at her position or because she failed the ODAP. Rather, it was because he contended that due to her Reasonable Accommodation request, she deemed herself unable to perform the essential functions of her position. Within a few months of receiving that letter, Mr. Conerly proposed her termination after failing to follow the reasonable accommodation interactive process.

The Proposal to Remove relies on the Position Description for the Associate Ombudsman, GS-301-14 Associate Ombudsman job and it contends that Ms. Condillac was unable to perform those duties. There are a number of issues with that contention. In the first place, the FOH medical officer determined that Ms. Condillac was "a qualified individual with a disability," (Exhibit 11, Proposal to Remove supporting documentation (page 2 of the November 6, 2019 report)), yet Mr. Conerly contends that Ms. Condillac cannot perform the essential functions of her position. These two points are totally contradictory.

Ms. Condillac was never unable to perform her essential functions. Had that been the case, Mr. Conerly would not have graduated her from the ODAP just a month or so before the Proposal to Remove. Rather Mr. Conerly hones in on a reasonable accommodation request Ms. Condillac made to telework, unless she was required to be in the office to complete job duties.

On June 21, 2019, Mr. Conerly granted Ms. Condillac the reasonable accommodation of teleworking three days a week. However, that accommodation became inadequate after Mr. Conerly acted with increased hostility towards her. On November 8, 2019, Ms. Condillac asked to telework 5 days per week, except when necessary to be in the office. (Id. page 15 of 32). She also rescinded any request for reassignment. (Id.).

3

The Agency contends that Ms. Conerly insisted that as part of her Reasonable Accommodation, she be exempted from communicating with her supervisor. That contention is utterly untrue. Ms. Condillac never stated that she would not or could not communicate with Mr. Conerly. She was willing to telework and communicate either by email, text, phone or any other method required for her position.

At no time did the agency engage in an interactive process with the employee to work towards a reasonable accommodation that would have worked for both parties. [N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability." *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 634 (7th Cir. 1998).

Rather than interpreting Ms. Condillac's proposed reasonable accommodation in such a narrowly tailored request, with no room for a broader interpretation or without any room for adjustment, the agency immediately determined that Ms. Condillac would be unable to interact with her supervisor at all.

Appellant challenged the Proposal to remove and even filed a Motion to Stay with the OSC. Exhibit 12. However, the Agency upheld its Proposal to Remove and terminated Appellant on February 21, 2020. Exhibit 13. The Agency closed out Appellant's whistleblower complaint on February 25, 2020. Exhibit 14.

Appellant has three bases for filing her MSPB action: (a) she shouldn't have been terminated, regardless of any whistleblower contention; (b) she exhausted claims of actual and perceived whistleblower complaints and was retaliated against; and (c) the affirmative defense of disability discrimination/failure to accommodate.

4

# EXHIBIT 1

Date:          October 1, 2019

From:          Albert Conerly

Subject:       Opportunity to Demonstrate Acceptable Performance

To:            Charmaine Condillac

During our mid-year performance appraisal discussion on October 1, 2019, I explained that we would be developing an Opportunity to Demonstrate Acceptable Performance (ODAP) to improve your unsatisfactory performance. As we discussed, your performance at this point in the review cycle is "achieved unacceptable results" in all your critical elements. The job elements where improvement is needed are listed below, along with the description of the required "acceptable" level.


## CRITICAL ELEMENT #1 ADMINISTRATIVE REQUIREMENTS:

    a.  Responsive service to internal/external customers that support customer and program requirements

    b.  Participates with supervisor to establish individual performance plans and provides self-assessments if required.

    c.  Identifies and communicates individual development needs consistent with the agency mission; assists coworkers by mentoring, advising, guiding them in understanding work assignments as appropriate d. Participates with coworkers in a monthly forum to discuss, provide and receive feedback on case and other ADR related topics.

    e.  Completes Agency mandated training within 10 business days after receipt of notice of requirement

    f.  Timely completion of all training requirements related to Privacy Act, Personally

    Identifiable Information (PII), Protected Health Information (PHI), Privacy Impact Assessments (PIA), Information Systems Security Awareness, and similar training obligations related to the access, use, and dissemination of work-related information. Compliance with all aspects of the Privacy Act and other relevant authorities when accepting, managing, using, and/or disseminating official or other sensitive information.

    g.  Adherence to laws, rules, regulations and policies, with respect to maintaining the confidentiality, data management, and safeguarding requirements related to Privacy Act, official, non-public and personally identifiable information.

## COMPARISON OF YOUR PERFORMANCE TO THE ACCEPTABLE STANDARD:

Your performance at this stage is "achieved unacceptable results" for Critical Element #1. Your performance in this element has been deficient in the following ways:

2

You regularly <u>failed</u> to participate in required meetings to discuss and clarify work matters and status. Your communication with internal customers (members of the OCPR Staff) often has been unresponsive and combative. Emails are frequently voluminous to the point of requiring inordinate time to read.

You were involved marginally in developing your 2019 PMAP. You <u>failed</u> to meet the deadline (September 13) to respond to the Supervisor's request to provide the mid-year status on work accomplishments. On September 20, you were given an extension to submit mid-year accomplishments by September 23, using a format provided by the Supervisor. Your submission on September 23 was <u>unresponsive</u> to the request because you did use the furnished format and you did not indicate any accomplishments you may have had.

As of September 23, you <u>provided no evidence</u> to support that you timely completed agency mandated training.

## SPECIFIC ACTIONS THAT YOU MUST TAKE TO IMPROVE YOUR PERFORMANCE:

- You must attend and participate in all required meetings in person.
- Your communications, including replies to emails, must be responsive and concise. You must adhere to prescribed directives, guidelines, and formats when responding to requests for information from the Supervisor and Team Leader.
- You must meet all specified deadlines, unless you receive written supervisory approval to your written request for extension.
- You must complete all Agency mandated training within 15 business days after this ODAP and provide me a copy of each certificate of completion.

## WHAT I WILL DO TO ASSIST YOU:

- I will be available to assist you in coordinating your project assignments, to prioritize your workload, and to provide feedback on completed tasks. I will determine due dates on your assignments, when possible.
- I will meet with you weekly to assess your progress.
- I will be available for questions and/or discussions regarding your assignments.

## CRITICAL ELEMENT #2 PROCESS MANAGEMENT:

a. Complete the following training requirements: o Observe Consultations — 8 e Co-conduct Consultations — 15 ● Co-conduct Facilitations — 29

b. Complete EEOC training for New Counselors — In addition, the employee is to discuss status of work with Supervisor and Team Leader

3

c. Conducting, independently and successfully, three (3) mediations. This includes handling the request for EEO-ADR mediation from start to closure. If an EEOADR mediation request is terminated prior to the actual mediation, another mediation must be substituted. Each mediation will be observed and evaluated by two (2) members of the OCPR Staff, one ofwhom will be the Team Leader.

## COMPARISON OF YOUR PERFORMANCE TO THE ACCEPTABLE STANDARD:

Your performance at this stage is "achieved unacceptable results" for Critical Element #2. Your performance in this element has been deficient in the following ways:

You _failed_ to complete the assigned number of training tasks.

You _failed_ to meet with the Supervisor and Team Leader as instructed on a weekly basis to discuss your work status (see June 21, 2019 email approving 3 days of telework as an accommodation and requiring in office meetings).

You _failed_ to establish the database link from July 3 1 to September 6 as required to receive work assignments.

Note: As of September 13, there were at least 71 consultation opportunities and 58 facilitation/mediation opportunities since the return from furlough in February 2019. From May 30 when the PMAP was established to September 1 3, there were 34 mediations/facilitations and 51 consultation requests.

## SPECIFIC ACTIONS THAT YOU MUST TAKE TO IMPROVE YOUR PERFORMANCE:

o   You must report, in writing, no later than Thursday, October 3, 2019, the status of training tasks completed as of September 30, 2019.
o   You must report, in writing, no later than Thursday, October 3, 2019, the number of training requirements that were to be, but were not, completed as of September 30.
o   You must complete all remaining training requirements by November 1 8, 2019. ● You must meet in person weekly, as scheduled, with the Supervisor and Team Leader to discuss the status of your work.
o   You must meet all deadlines relating to this element, unless you receive written supervisory approval to your written request for extension.

## WHAT 1 WILL DO TO ASSIST YOU:

o   I will be available to assist you in coordinating your project assignments, to prioritize your workload, and to provide feedback on completed tasks.

4

o   I will determine due dates on your assignments, when possible.
o   I will meet with you weekly to assess your progress.
o   I will be available for your questions and/or discussions.

## CRITICAL ELEMENT #3 PROJECT MANAGEMENT:

Develop a flowchart of the 60-day EEO-ADR mediation process, including identifying key events, activities, decision points, roles and responsibilities, critical/essential documentation, and taking any other actions that may be appropriate. Ensure the assigned project is managed to completion by:

o   Developing a project plan, and discussing with Supervisor and Team Leader to obtain approval before executing the plan o Meeting with Supervisor and Team Leader weekly to report and obtain feedback on project status o Timely notifying Supervisor when issues arise that may impact project completion

## COMPARISON OF YOUR PERFORMANCE TO THE ACCEPTABLE STANDARD:

Your performance at this stage is "achieved unacceptable results" for Critical Element #3. Your performance in this element has been deficient in the following ways:

You <u>failed</u> to develop a project plan, discuss it with the Supervisor and Team Leader, and obtain approval on a project plan.

You <u>failed</u> to meet weekly with the Supervisor and Team Leader to report and obtain feedback on the project status.

You <u>failed</u> to timely notify the Supervisor when issues arose that would impact the status of this project.

## SPECIFIC ACTIONS THAT YOU MUST TAKE TO IMPROVE YOUR PERFORMANCE:

o   You must develop a project plan by Tuesday, October 8, 2019.
o   You must submit and meet in person to discuss the project plan with the supervisor and team leader to obtain approval to conduct the project.
o   You must meet in person with the supervisor and team leader weekly until project plan is completed and approved, and project is completed.
o   You must notify, immediately and by email, the supervisor of any issues that interfere with the project.

## WHAT I WILL DO TO ASSIST YOU:

5

o    I will be available to assist you in coordinating all your project assignments, prioritize your workload, and provide feedback on completed tasks.

o    I will determine due dates on all project assignments.

o    I will meet with you weekly to check your progress.

o    I will make myself available for your questions and/or discussions.

## CRITICAL ELEMENT #4 TEAM WORK

a.  Maintains focus on OCPR's mission and FDA's ADR Program goals

b.  Demonstrates openness to diverse ideas, expressed thoughts, and questions during meetings and other daily office interactions

c.  Demonstrates adaptability and flexibility in meeting new challenges and changes in Program areas

d.  Seeks to understand others' needs and to assist through active listening

e.  Contributes to development of staff meeting agendas, and participates in related discussions

f.  Respects others' time commitments by promptly arriving to scheduled engagements

g.  Alerts Team Leader and/or Supervisor to assist in resolving matters of concern that may hinder the work of the unit

## COMPARISON OF YOUR PERFORMANCE TO THE ACCEPTABLE STANDARD:

Your performance at this stage is "achieved unacceptable results" for Critical Element #4. Your performance in this element has been deficient in the following ways:

You <u>failed to collaborate</u> with Supervisor, Team Leader, and other Team Members to help ensure assignments and other Program requirements are met.

You <u>failed to work with your colleagues</u> to complete established training requirements

You <u>failed regularly to participate in staff and other required meetings</u> critical to your and the unit's success since June 1 1, 2019.

You <u>failed to respect others' time commitments</u> by promptly arriving to scheduled engagements. <u>For example</u>, on March 20, 2019, you <u>failed</u> to notify a colleague with whom you needed to work of your work status. <u>Also</u>, on July 1 1 and 24, you <u>failed</u> to arrive timely to previously established mediation locations, instead deciding to participate from other unknown and unapproved locations. You <u>failed to re-schedule</u> a required and scheduled meeting with her colleagues to establish a database link essential to receiving assignments.

6

You frequently <u>failed to communicate res onsivel</u> with the Supervisor, hindering the work of the unit.

You <u>failed to provide</u> responsive feedback on your performance for the mid-year review despite being given two opportunities to this on September 13 and September 23.

## SPECIFIC ACTIONS THAT YOU MUST TAKE TO IMPROVE YOUR PERFORMANCE:

- You must work with your colleagues to complete your unmet training assignments.
- You must actively listen during all meetings.
- You must participate in person in all required meetings unless you have requested, consistent with the August 30, 2019 leave request procedures, to be excused, and the supervisor has approved the request.
- You must arrive to all scheduled meetings at the established location on time unless your delay has been approved by the supervisor.
- You must attend and complete a time management course approved by the supervisor no later than October 30, 2019. • You must attend and complete an active listening course approved by the supervisor no later than October 30, 2019.

## WHAT I WILL DO TO ASSIST YOU:

- I will be available to assist you in coordinating all your project assignments, prioritize your workload, and provide feedback on completed tasks. e I will meet with you weekly to check your progress.
- I will make myself available for your questions and/or discussions regarding assignments.

## EXPECTATIONS:

This ODAP does not replace your performance plan. It is directed toward those aspects of your performance that are unacceptable. It does not relieve you of your obligation to continue performing at the acceptable level on the remaining elements not addressed in this ODAP.

## YOUR COMMENTS:

During our discussion of October 1, 2019, I asked for your suggestions about how we can bring your performance up to an acceptable level. I also asked if there were any outside/mitigating factors that might be affecting your performance.

## TIMEFRAME:

7

This ODAP will start today and will be in effect for 60 calendar days (October 1 — November 30, 2019). You should understand that if your "Achieved Unacceptable Results" performance does not improve to the "Minimally Accepted Results" level, action will be initiated to reassign, reduce in grade, or remove you from your position.

I believe that you can improve your work to meet the standards for your job. As we follow the actions outlined in this ODAP, we will discuss your work frequently. Each week, I will give you a weekly summary of your progress. Documentation about your performance will be placed in your file after you have been asked to initial it to acknowledge that you have seen it. You will be given copies of the performance documentation and you have the right to rebut the documentation.

I know you want to do a good job and I believe that with this ODAP you can improve your performance to the "Achieved Expected Results" level. I will provide you all the counseling and assistance necessary to ensure your success through this ODAP period.

## Dt *uuh*

| Albert Conerly, Jr., Chief Man | ent Officer and |

Ombudsman

I acknowledge receipt of the ODAP:

Charmaine Condillac

10/1/19
Dat
e

10/1/19
Date

8

# EXHIBIT 2

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Overview:**

One of the biggest challenges facing Federal sector managers and supervisors is taking swift action to manage employees who are not meeting performance expectations and not contributing to agency goals. Managers and supervisors may not be making full use of the many options to deal with employees with performance or conduct issues. Managers and supervisors may take actions against employees, up to and including removal from Federal employment, for job performance deficiencies and/or misconduct.

This guidance provides agency human resources offices, managers, and supervisors with a broad overview of the different tools that can be used to manage employees' job performance and address unacceptable performance or misconduct. This overview of authorities under title 5, United States Code, is not meant to be a comprehensive guide that addresses every possible incident of misconduct or performance problems as each situation will vary depending on the facts involved. Also, individual agencies may have unique statutory authorities and guidelines for addressing misconduct or performance problems. However, it does highlight the tools generally available to Executive Branch managers and supervisors for addressing misconduct or performance problems. You should consult with your human resources office to determine which tools are applicable to your agency.

This guidance addresses both members of the Senior Executive Service (SES) and non-SES Federal employees. For employees who are covered by bargaining units, negotiated agreements with the applicable labor unions may contain time limits or other procedures that should be followed when taking action regarding bargaining unit employees, but these procedures must be consistent with the requirements of Title 5, United States Code.

**Actions That Can Be Taken to Avoid Performance or Conduct Issues:**

The best way for managers and supervisors to handle performance and conduct issues is to take action to avoid performance problems or conduct issues before they occur. Such preventive actions include, but are not limited to:

- ***Communicate clear performance standards and expectations to employees.*** If your employees do not understand what is expected, it will be very hard, if not impossible, for them to meet those expectations. Providing clear expectations does not necessarily require you to lay out precisely written, detailed instructions on every performance component but should provide expectations with enough clarity and specificity so that employees understand their responsibilities and can be held accountable for them. Generally, the question you should ask in drafting performance standards: "Would a reasonable person understand what was expected?"

- ***Provide regular and consistent feedback on performance.*** Such feedback, both positive and corrective, whether given in regularly scheduled meetings or in unscheduled discussions, is crucial to ensuring that expectations are understood.

1

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

Consistent feedback lessens the likelihood that an employee will be surprised if it becomes necessary to take formal steps to resolve unacceptable performance. Always look for opportunities to confirm that your employees understand what is expected.

- ***Reward and recognize good performance, informally and formally.*** Recognizing good performance is simply another way to clarify and reinforce expectations. Recognizing good performance boosts morale and also increases the likelihood that good performance will continue.

- ***Make full use of the probationary period for employees.*** Performance problems often first show up during the initial period of Government employment. This period is designed to provide an opportunity for managers and supervisors to address such problems in an expedient manner. Furthermore, removing probationary employees based on conduct and performance issues is less cumbersome as they are not entitled to most of the procedures and appeal rights granted to employees who have completed probationary/trial periods. More information on the probationary or trial period is discussed in more detail later in this guide.

- ***Set the desired example by the manager's or supervisor's own conduct.*** Employees often follow the lead of their managers and supervisors. Demonstrating leadership through clear communication, taking initiative and being inclusive can set the tone for an office.

- ***Maintain a good work atmosphere.*** Creating inclusive work environments where the workforce is fully engaged can be a critical enabler of organizational success and performance.

- ***Assure that employees conform to any applicable standards of conduct.*** Public service is a public trust. To ensure that every citizen can have complete confidence in the integrity of the Federal Government, Federal employees are expected to adhere to certain principles of ethical conduct.[1] Additionally, Federal employees are expected to conform to standards of conduct established by Government-wide and agency policies.[2]

- **Maintain effective lines of communication with the Human Resources Office and Agency Legal Office.** While managers and supervisors are ultimately responsible for addressing performance and misconduct problems, they are not expected to be subject matter experts on application of the tools discussed in this guidance. The Human Resources Office and Agency Legal Office are available to advise, assist and guide managers and supervisors through the available processes for addressing performance and conduct issues.

---

[1] *See* 5 C.F.R. Part 2635.
[2] *See* 5 C.F.R. Part 735.

2

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Addressing Performance or Conduct Issues of Non-SES Employees during the Probationary Period:**

Employees newly hired into the Federal Government and into a competitive service position are generally required to serve a 1-year probationary period.[3] The probationary period is an important management tool to evaluate the conduct and performance of an employee and should be treated as the last step in the hiring process. Appropriate actions taken within the probationary period are the best way to avoid long-term problems.

Employees may be terminated from employment during the probationary period for pre-employment reasons or for unacceptable performance or conduct.[4] When removal is based on pre-employment issues, the employee is given advance notice, an opportunity to provide an explanation of the events related to pre-employment issues and an agency decision.[5] When the basis for termination is unacceptable performance or conduct, advance notice of the intent to terminate is not required. However, the employee must be informed in writing of the reason for the summary termination. In either case, probationary employees have limited appeal rights, and also have Equal Employment Opportunity (EEO) rights to challenge an action that is believed to have been taken for a discriminatory reason. An employee may also seek corrective action with the U.S. Office of Special Counsel (OSC) if he or she believes the action was taken because of a prohibited personnel practice.

Effective use of the probationary period is an ideal way to avoid long-term problems. The U.S. Government Accountability Office (GAO) has concluded there are benefits of using automated notifications to notify supervisors that an individual's probationary period is ending and that the supervisor needs to make an affirmative decision or otherwise take appropriate action.[6] OPM agrees automated and timely notifications to supervisors can be a useful tool for agencies regarding probationary periods and should be used to the extent they are appropriate and available.[7]

**Addressing Performance or Conduct Issues of Supervisory Employees during the Supervisory Probationary Period (Non-SES):**

Employees initially appointed to supervisory positions are required to serve a probationary period prescribed by the agency.[8] The purpose of the supervisory probationary period is to provide the agency an opportunity to assess the supervisory

---

[3] There are other circumstances in which an employee would be required to serve a probationary period. Your Human Resources Office can help you determine if an employee is on a probationary period.

[4] *See* 5 C.F.R. §§ 315.803 and 804.

[5] *See* 5 C.F.R. § 315.805.

[6] GAO-15-191, Improved Supervision and Better Use of Probationary Periods Are Needed to Address Substandard Employee Performance, February 2015.

[7] All Shared Service Centers have confirmed to OPM that their existing HR systems already contain the functionality to automatically notify supervisors of the end of the individual's probationary period for appropriate management action. It is each agency's decision whether to utilize this functionality.

[8] *See* 5 C.F.R. Part 315, Subpart I.

3

performance (not technical ability or program knowledge) of the new supervisor. At the end of the probationary period, the agency determines whether to retain that individual as a supervisor or to return the individual to a non-supervisory position.

Agencies should monitor the performance of their probationary supervisors and provide them training, coaching, and feedback. Use of the supervisory probationary period to identify ineffective supervisors is critical to organizational performance because of the great impact supervisors have on the performance of the workforce. Therefore, agencies need to hold managers accountable for using the supervisory probationary period wisely as the final step in the selection process.

**Addressing Performance of Non-SES Employees after the Probationary Period:**

Communication is the key to addressing issues early and taking appropriate action when necessary. Allowing a job performance issue to fester simply compounds the issue and makes it more difficult to address.

**Managing Employee Performance[9]:**

To effectively manage employee performance, supervisors should:

- Encourage employee participation in the performance planning process;
- Issue a performance plan outlining the critical and any non-critical job element(s) and performance standards against which his or her actual job performance will be appraised;
- Discuss performance expectations so employees understand their job duties and how they should be performed;
- Continually monitor performance, conduct at least one formal progress review, and provide ongoing feedback throughout the rating cycle;
- Periodically review performance standards and revise them as necessary to ensure that standards are attainable, accurate, and effectively communicate performance expectations; and
- Communicate with employees when deficiencies are first noted. Do not wait until the end of the rating cycle to address concerns.[10]

---

[9] If bargaining unit employees are involved, supervisors should consult with labor relations staff when drafting and issuing performance standards; conducting performance meetings; and issuing final ratings to determine whether any labor relations obligations exist with the local union(s).

[10] There is a variety of useful, cost-free training courses available to supervisors and managers on HR University (HRU.gov) that can assist on a wide range of employee performance management issues. For example, an online course entitled "Addressing and Resolving Poor Performance" can be found at: http://www.hru.gov/course_catalog.aspx?cid=161&mgr=false.

4

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Addressing Unacceptable Job Performance:**

If an employee's job performance becomes unacceptable under a critical job element, supervisors should promptly address this matter with the employee. There are two formal procedures a supervisor may use in resolving unacceptable performance: Chapter 43 and Chapter 75 of Title 5 of the U.S. Code.

At the earliest opportunity, the supervisor should work with the Human Resources Office Employee Relations staff to determine the appropriate procedure for resolving the poor performance and whether placing the employee on a Performance Improvement Plan (PIP) under 5 U.S.C. Chapter 43, a specific measurable action plan, is appropriate. [11]

The Employee Relations staff will also guide the supervisor on the specific regulatory requirements of the process and assist in providing a good foundation from the onset. If a PIP is appropriate, the supervisor should work with the Employee Relations staff to draft the PIP and determine how long the PIP will last; its duration will generally depend on the duties and responsibilities of the employee's position and the nature of the unacceptable performance. A PIP should include the following:

- The critical job element(s) being performed unacceptably;
- Examples of the employee's unacceptable performance under each critical element (not required but recommended);
- An explanation of the minimally acceptable level of performance required;
- An explanation of what the employee must do to demonstrate acceptable performance;
- Specific tools and support to be provided to help the employee improve during this period as required under 5 CFR 432.104;
- How long the PIP will remain in effect; and
- Consequences of failure to improve performance to an acceptable level.

The PIP notice may also advise the employee if he or she believes a personal problem is contributing to performance deficiencies, he or she may contact an Employee Assistance Program counselor. If the employee believes a medical condition is contributing to performance deficiencies, he or she may submit documentation for consideration.

During the PIP opportunity period, the supervisor should document assignments and instructions provided to the employee. Additionally, the supervisor should document assistance provided to the employee as well as monitor the employee's performance to determine if it rises to an acceptable level.

---

[11] Unlike removals initiated under 5 U.S.C. Chapter 43, Performance Improvement Plans (PIPs) are not required prior to initiating an action under 5 U.S.C. Chapter 75.

5

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Taking a Performance-Based Action under 5 U.S.C. Chapter 43:**

If an employee's job performance does not improve to an acceptable level at the conclusion of the PIP, the supervisor, in consultation with the employee relations staff as appropriate, should promptly determine the action to take. The supervisor's options include reassigning the employee, or proposing the employee's demotion or removal. Reassignment to a position at the same wage grade is a management right distinct from adverse and performance-based actions and can be accomplished with a simple notification and personnel action.

If a supervisor intends to reassign a bargaining unit employee, they should confirm with employee relations staff if there are collective bargaining obligations prior to informing the employee of the reassignment. Performance-based reductions in grade and removal actions can be appealed to the U.S. Merit Systems Protection Board (MSPB). If the employee belongs to a bargaining unit and the reduction in grade or removal falls within the coverage of a negotiated grievance procedure, the employee may file an appeal or grievance, but not both.[12]

In addition, an employee who believes a performance-based action was taken for a discriminatory reason may either file an EEO complaint or raise a prohibited personnel practice as an affirmative defense in an MSPB appeal. An employee may also seek corrective action with the U.S. Office of Special Counsel (OSC) if he or she believes the action was taken because of a prohibited personnel practice.

If the employee is being demoted or removed from the Federal service under 5 CFR Part 432, the following steps must be followed:

1. Issue a written proposed notice at least 30 calendar days prior to the proposed effective date of demotion or removal from Federal employment. This notice will state the regulation under which the action is being taken, specify critical element(s) failed, provide specific examples of unacceptable performance, discuss the performance improvement plan, and inform the employee of his or her rights;
2. The employee may be represented by an attorney, union office, or another person authorized by the employee and permitted by 5 C.F.R. § 432.105(a)(4)(iii). ;[13]
3. The employee may review the material relied on in support of the proposed action;
4. The employee may submit medical documentation if he or she believes a medical condition has contributed to the unacceptable performance;[14] and

---

[12] *See 5 U.S.C. § 7121(g)(2).*
[13] An agency may disallow as an employee's representative an individual whose activities as a representative would cause a conflict of interest or position or an employee whose release from his or her official position would give rise to unreasonable costs to the Government or whose priority work assignments preclude his or her release from official duties. *See 5 C.F.R. § 432.105(a)(4)(iii).*
[14] *See 5 C.F.R. § 432.105(a)(4)(iv).*

6

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

5. After the proposal notice has been issued and the 30-day advance notice period ends, a deciding official (a person higher in the chain of command than the proposing official in accordance with the agency's delegations of authority) reviews the proposal notice, supporting evidence, and considers any response provided by the employee and/or the employee's representative in order to reach a final decision. A final written decision to demote or remove an employee must inform the employee of any appeal or grievance rights he or she may have.

6. The agency will maintain copies of the notice of proposed action, the employee's written reply, a summary of the employee's oral reply, if any, the decision notice, and any supporting material.

**Other Considerations:**

- If the individual requests a reasonable accommodation related to a disability that they assert is necessary in order to permit them to attain acceptable performance, the agency must assess the appropriateness of the request and provide reasonable accommodation as required by law. This would apply to any stage of the process prior to final action being taken, including if a PIP has already been issued. If an accommodation is deemed reasonable and necessary, the agency should give the employee an opportunity to demonstrate acceptable performance with the accommodation before it continues the PIP, if the PIP is ongoing at the time the employee informs the agency of his or her disability, or takes further action, if final action has not yet been completed. It should be noted, however, that the agency is not required to modify the essential functions of a position based on a request for a reasonable accommodation and further, is permitted to hold disabled employees with reasonable accommodation to the same standards for performance as non-disabled employees with regard to the essential functions of their position. Most agencies have a reasonable accommodation manager who can provide guidance concerning how to pursue these steps.

- Upon successfully completing a PIP, an employee must maintain an acceptable level of performance in the same critical job element(s) for 1 year beginning with the date on which the PIP began. If the employee does not, he or she may be removed or demoted for unacceptable performance.

**Taking an Adverse Action for Performance under 5 U.S.C. Chapter 75:**

Supervisors and managers may also address unacceptable performance through an adverse action under Chapter 75 instead of a Chapter 43 performance-based action.[15] Unlike Chapter 43 actions, Chapter 75 actions do not have many of the formal requirements such as notice that the employee's performance deficiency is based on a critical element and an opportunity to improve period. The requirements for Chapter 75 actions, are described under "Addressing Non-SES Employee Misconduct" below.[16]

---

[15] *See, e.g.,* Lovshin v. Dep't of the Navy, 767 F.2d 826 (Fed. Cir. 1985).
[16] *See Fairall v. Dep't of Veterans Affairs,* 844 F.2d 775 (Fed. Cir. 1987).

7

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

To assist you in determining the best approach for you and your agency, we are providing a side-by-side comparison highlighting the differences between addressing unacceptable performance under Chapter 43 versus Chapter 75. Each approach has unique requirements. While addressing unacceptable performance under Chapter 75 is generally viewed as a more streamlined approach, the facts of each case and the nature and strength of your evidence will be determining factors in deciding under which authority to take your action.

8

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES
# OR MISCONDUCT

| | Chapter 43 | Chapter 75 |
|---|---|---|
| **Critical Element** | Agency *must* prove the performance deficiency is in a critical element. | Agency is *not* required to prove the performance deficiency is in a critical element. |
| **Establishment of Performance Expectations** | When the employee's performance in one or more critical elements is unacceptable, the employee will: (1) be notified of the deficiency; (2) be offered the agency's assistance to improve; and (3) be warned that continued poor performance could lead to a change to lower grade or removal. (This is commonly referred to as the PIP, an abbreviation for both performance improvement plan and also for performance improvement period.) | The extent to which an employee is on notice of the agency's expectations is a factor in determining the appropriateness of the penalty. Also, an agency cannot require that an employee perform better than the standards that have been communicated to the employee. |
| **Decline Following Improvement** | If the employee's performance improves during the PIP, and remains acceptable for 1 year, a new PIP is necessary before taking an action *under this chapter*. | A PIP is not required. |
| **Efficiency of the Service** | Agency is *not* required to prove that the personnel action will promote the efficiency of the service. | Agency *must* prove that the personnel action will promote the efficiency of the service. |
| **Burden of Proof** | Action must be supported by *substantial evidence*: that a reasonable person might find the evidence supports the agency's findings regarding the poor performance, even though other reasonable persons might disagree. | Action must be supported by a *preponderance of the evidence*: that a reasonable person would find the evidence makes it more likely than not that the agency's findings regarding the poor performance are correct. |
| **Advance Notice** | The agency must provide a notice of proposed action 30 days before any action can be taken, and must provide the employee with a reasonable opportunity to reply before a decision is made on the proposal. | |

9

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

| | **Chapter 43** | **Chapter 75** |
|---|---|---|
| **Content of Advance Notice** | The notice must state the specific instances of unacceptable performance that are the basis for the action *and also the critical performance element involved.* | The notice must state the specific instances of poor performance that are the basis for the action. |
| **Deciding or Concurring Official** | A person higher in the chain of command than the person who proposed the action must concur. | The deciding official does not have to be a person higher in the chain of command than the person who proposed the action. |
| **Agency Decision** | Agency must issue a final decision within an additional 30 days of the expiration of the 30 days advance notice period. | Agency is under no particular time constraint, other than there cannot be a delay so extensive that it constitutes an error that harms the employee. |
| **Penalty Mitigation** | Once the agency meets the requirements to take an action, the MSPB cannot reduce the agency's penalty. | After finding that the agency meets the requirements to take a Chapter 75 action, the MSPB may reduce the agency's penalty. |
| ***Douglas* Factors** | The *Douglas* factors are not used. | The agency must consider the relevant *Douglas* factors when reaching a decision on the appropriate penalty. |
| **Time Limits** | Time limited to performance deficiencies occurring within the 1 year prior to the proposal notice. | No time limit for inclusion of "incident/charges." |
| **Affirmative Defenses** | The agency action will not be sustained if the employee was harmed by the agency's failure to follow procedures, if the agency decision was reached as a result of the commission of a prohibited personnel practice, or if the decision is otherwise not in accordance with the law. | |

10

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Addressing Non-SES Employee Misconduct:**

Managers are responsible for notifying their employees about the rules of behavior in the organization, including written guidance, policies or laws. It is imperative that Federal agencies manage their workforces effectively, which involves the effective use of discipline when addressing employee misconduct.

Generally, the objective of discipline is to correct deficiencies in employee conduct and performance, not to punish the employee. Discipline can deter misconduct and correct situations interfering with the efficiency of civil service. Documenting misconduct is also imperative to support any conduct-based action and in the event that progressive discipline is initiated based on repeated misconduct. Conduct-based actions are important tools designed to aid supervisors in maintaining an efficient and orderly work environment. Further, misconduct should be addressed when deficiencies are first noted, when, for example, an employee refuses or fails to comply with a rule, regulation or law within the workplace. Determining the appropriate course of action is ultimately management's responsibility. Lastly, managers should consult with employee relations staff for help in navigating technical or complex laws, regulations, and collective bargaining agreements and when considering available options.

Managers should take discipline that is reasonable and proportionate to the misconduct. One of the most difficult determinations for managers is selecting the penalty. Several factors come into play in determining an appropriate penalty. Penalties should be reasonably consistent with the discipline applied to similarly situated employees. In other words, where the charges and the circumstances surrounding the charged behavior are substantially similar for two employees, and there are no considerations that would warrant treating them differently, the penalties should be comparable. The supervisor should also weigh any relevant aggravating and mitigating factors that may be relevant such as the nature and severity of the offense, the employee's disciplinary record and years of service, the employee's potential for rehabilitation, and applicable agency penalty guidelines. These factors are part of the 12 *Douglas* factors to be taken into consideration whenever a disciplinary action is contemplated.[17]

Penalties for misconduct range from lesser disciplinary actions such as oral and written reprimands, letters of warning, letters of counseling, and suspensions (14 calendar days or less) to more severe adverse actions such as suspensions (more than 14 calendar days or indefinite suspensions under certain defined circumstances), involuntary reductions in grade or pay, and removals. Effective lesser disciplinary measures are usually covered under agency policies, may be grievable depending on the agency's administrative or negotiated grievance processes, and may be issued with fewer procedural requirements. However, penalties for more severe adverse actions have certain statutory and regulatory procedural requirements that agencies must follow.

---

[17] *See Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981).

11

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

## Suspensions of 14 Days or Less

Certain employee misconduct can result in suspensions of 14 days or less. A suspension of 14 days or less is a non-appealable adverse action; therefore, this action cannot be directly appealed to the MSPB. However, the employee may grieve the action through an agency's administrative grievance procedure. If the employee belongs to a bargaining unit and the suspension falls within the coverage of a negotiated grievance procedure, the employee may file a grievance only under that procedure. Alternatively, the employee may file an EEO complaint challenging the disciplinary action if they allege that it was imposed on a legally prohibited basis such as age, gender or race discrimination. An employee may also seek corrective action with the U.S. Office of Special Counsel (OSC) if he or she believes the action was taken because of a prohibited personnel practice.

After the supervisor consults with employee relations staff and it is determined that a short suspension is appropriate, the following steps must take place:

1) The supervisor (or designated official where applicable) will issue a written notice of proposed suspension stating the reasons for the proposed action and informing the employee of his or her right to review the material relied upon to support the reasons for action provided in the notice;
2) The employee must be given a reasonable time, but no less than 24 hours, to submit a written and/or oral reply to the proposal letter, at the employee's discretion, and provide supporting documentation;
3) The employee may choose to have a representative. The representative may be a union official if the employee is a member or a bargaining unit. The employee may not choose another employee as their representative, however, if the representation will cause a conflict of interest or position, or an employee of the agency whose release from his or her official position would give rise to unreasonable costs or for whose priority work assignments preclude his or her release from official duties;[18] and
4) A deciding official (often a higher level manager than the proposing official) reviews the documentation and any reply provided by the employee, and determines whether or not the discipline is warranted and issues a decision. In arriving at a decision, the deciding official may consider only the reasons specified in the notice of proposed action and in the employee or employee representative's answer. The decision notice will specify reasons for the decision, determine the level of discipline to be imposed after considering mitigating and aggravating factors, and advise the employee of grievance and any other applicable appeal rights.

---

[18] *See* 5 C.F.R. § 752.203(d).

12

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Suspensions for more than 14 Days (including indefinite suspensions), Reduction in Grade or Pay, Removals from the Federal Service**

For more serious or repeated misconduct, supervisors may impose penalties that are appealable adverse actions. Suspensions for more than 14 days (including indefinite suspensions under certain defined circumstances), reductions in grade or pay and removals may be appealed to the MSPB, grieved through a collective bargaining agreement if the employee is a member of a union or, alternatively, the employee may file an EEO complaint challenging the disciplinary action if they allege that it was imposed on a legally prohibited basis such as age, gender or race discrimination. An employee may also seek corrective action with the U.S. Office of Special Counsel (OSC) if he or she believes the action was taken because of a prohibited personnel practice.

Supervisors should work with their employee relations staff and legal office when considering these actions. The following steps must take place if it is determined that an adverse action is appropriate:

1. The supervisor will issue a written notice of proposed action, which will be effective no earlier than 30 calendar days from the date of the proposal, if the action is found warranted by the deciding official. This notice will state the reasons for the proposed action and inform the employee of his or her right to review the material relied upon to support the reasons for action provided in the notice.
2. The employee must be given a reasonable time but not less than 7 days to submit a written and/or oral reply to the proposed notice, at the employee's discretion, and provide supporting documentation.
3. The employee may choose to have a representative. The representative may be a union official if the employee is a member or a bargaining unit. The employee may not choose another employee as their representative, however, if the representation will cause a conflict of interest or position, or an employee of the agency whose release from his or her official position would give rise to unreasonable costs or for whose priority work assignments preclude his or her release from official duties.[19]
4. The employee may submit medical documentation if the employee wishes for the agency to consider any medical conditions which may contribute to the misconduct or performance problem. It should be noted, however, that the agency may hold disabled employees with reasonable accommodation to the same standards of conduct as non-disabled employees;
5. A deciding official (often a higher level manager than the proposing official) reviews the proposal, supporting documentation, medical documentation if submitted, and any reply provided by the employee. In arriving at a decision, the deciding official may consider only the reasons specified in the notice of proposed action and in the employee or employee representative's answer;
6. In assessing whether the proposed adverse action based on the misconduct promotes the efficiency of the service, the deciding official determines whether the

---

[19] *See* 5 C.F.R. § 752.404(e).

charges are supported, and if so, whether the proposed penalty is warranted, after taking into consideration mitigating and aggravating factors, and issues a written decision letter stating the deciding official's conclusion as to the appropriate action. The decision letter will inform the employee of any appeal or grievance rights he or she may have if discipline is taken; and

7. The agency will maintain copies of the notice of proposed action, the employee's written reply, a summary of the employee's oral reply, if any, the decision notice, and any supporting material. The agency will furnish these documents to the MSPB, other reviewing authority, and the employee upon his or her request.

## Excused Absence (Administrative Leave) – to Be Used in Rare Circumstances

Excused absence (administrative leave) is an administratively authorized absence from duty without loss of pay and without charge to other paid leave and is considered part of an employee's basic workweek. The authority to grant an excused absence derives from the inherent authority for heads of agencies to prescribe regulations for the government of their organizations. (*See, e.g.*, 5 U.S.C. §§ 301-302).

OPM advises limiting the approval of excused absence.[20] Where absences are for longer than brief periods, excused absence is generally inappropriate. Approving officials should also ensure that the granting of excused absence is not specifically prohibited by law.

In rare circumstances, excused absence may be used for an employee while suspension or removal procedures have been proposed. Specifically, the employee may be placed in a paid, non-duty status for the time necessary to effect the adverse action if the organization determines that the employee's continued presence on the job during the notice period may:

- Pose a threat to the employee or others;
- Result in loss or damage to Government property; or
- Jeopardize legitimate Government interests.

However, OPM strongly recommends agencies consider other options prior to use of excused absence in this scenario. Other options include:

- Assigning the employee to duties where he or she is no longer a threat to safety, the agency mission, or Government property;
- Allowing the employee to take leave, or carrying him or her in an appropriate leave status (annual, sick, leave without pay) or absence without leave (if the employee has absented himself or herself from the worksite without requesting leave); or

---

[20] *See* OPM Fact Sheet: Administrative Leave at: https://www.opm.gov/policy-data-oversight/pay-leave/leave-administration/fact-sheets/administrative-leave/

14

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

- Curtailing the advance notice period for the proposed adverse action when the agency can invoke the "crime provisions" under Title 5, United States Code, because it has reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed and is proposing a removal or suspension.

## Addressing Performance Deficiencies in the Senior Executive Service[21]:

### During Probation:

An individual's initial career SES appointment becomes final only after the individual completes a 1-year probationary period. Agencies use this period to observe and evaluate the appointee's performance. If an agency finds the probationer's performance unacceptable, it should consider whether to take remedial action, such as specialized training or assignment to other SES duties. If remedial action is not considered appropriate or proves unsuccessful, the agency should take steps to remove the employee from the SES. Removal is not required to be based on a final rating during a probationary period. Even if the agency uses a final rating under an SES performance appraisal system to document performance deficiencies, removal of a probationer is always done under the following procedures.[22]

An agency must provide at least a 1-day advance written notice to the probationer and make the removal effective prior to the conclusion of the probationary period. The notice must include the following:

- The effective date of the action;
- The agency's conclusions as to the inadequacies of the probationer's performance; and
- Whether the probationer has placement rights to another position outside the SES and, if so, to what position.

Probationers who were appointed to the SES without a break in service from a civil service position held under a career or career-conditional appointment or an appointment of equivalent tenure, such as certain appointments in the excepted service, are guaranteed placement in a position at GS-15 or higher.[23] These appointees are also entitled to be placed in a position of equivalent tenure to that of the appointment held at the time of appointment to the SES. Those lacking this right may be removed from employment in the Federal service. Removal of a probationary career SES appointee for performance reasons is not appealable to the MSPB.[24] SES appointees have the same EEO and OSC

---

[21] Some agencies, such as the Department of Veterans Affairs, may have unique statutory authority for addressing performance and misconduct for Senior Executives. We recommend you consult with your agency human resources or legal offices for additional information.
[22] 5 C.F.R. § 359.402.
[23] 5 U.S.C. § 3594(a); 5 C.F.R. § 359.701(a).
[24] 5 C.F.R. §359.407.

rights as other employees, however, to challenge an action they believe was taken based upon illegal discrimination or a prohibited personnel practice.

**After Probation:**

Removal of a non-probationary career SES member for performance must be based on the appointee's final SES rating(s).[25] The final SES rating is normally the annual summary rating prepared for an executive at the end of an appraisal period. However, an agency is also authorized to end a senior executive's appraisal period at any time after the agency's minimum appraisal period is completed, if there is an adequate basis on which to appraise and rate the senior executive's performance, and prepare a rating of record using the same process required for an annual summary rating.[26] Such a rating of record is also a final SES rating and may serve as the basis, or part of the basis, for a removal action. If a career appointee receives one final rating of "unsatisfactory," he or she must be reassigned or transferred within the SES, or removed from the SES. An agency **must** remove a career appointee from the SES when the appointee receives the following final ratings:

- Two ratings of "unsatisfactory" within 5 consecutive years; or
- Two less than fully successful ratings (i.e., "minimally satisfactory" or "unsatisfactory") within 3 consecutive years.

The agency must give the career member a written notice at least 30 calendar days before the effective date of removal from the SES. This notice must include:

- The effective date of the removal;
- The basis for the removal, as documented in the annual summary performance rating(s) used to support the removal action;
- The member's right to be placed in a position outside the SES, and information about the new position, if available;
- The member's right to request an informal hearing before an official designated by the MSPB; and
- When applicable, the appointee's eligibility for immediate retirement under 5 U.S.C. §§ 8336(h) or 8414(a).

Career appointees do not have appeal rights to the MSPB for a performance-based removal action from the SES. While the appointee may request an informal hearing with the MSPB, this request does not delay the removal from the SES. The SES member may also initiate an EEO or OSC complaint challenging an action that is believed to have been taken based upon illegal discrimination or a prohibited personnel action.

---

[25] 5 C.F.R. §359 Subpart E.
[26] 5 U.S.C. § 4314(b)(1)(D); 5 C.F.R. § 430.304(b).

16

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

All non-probationary career SES members removed for less than fully successful performance are entitled to be placed in a civil service position outside the SES.[27] Those who were appointed to the SES without a break in service from a civil service position held under a career or career-conditional appointment or an appointment of equivalent tenure, such as certain appointments in the excepted service, are guaranteed placement in a position at GS-15 or higher under an appointment of tenure equivalent to that held immediately prior to the initial career SES appointment. If the agency has no other available appointment authority, the agency may use the authority provided at 5 C.F.R. § 213.3202 (m)(1).

## Disciplining Career SES Members

An agency may take a disciplinary action against a career SES member only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function. A career SES appointee removed for disciplinary reasons has no placement rights and must be removed from Federal employment.

## During Probation:

The procedures below apply to disciplinary removals of probationary career SES appointees who were not covered by 5 U.S.C. 7511 (subchapter II of chapter 75, Adverse Actions) immediately before being appointed to the Senior Executive Service.[28]

To remove a probationary career appointee for disciplinary reasons, an agency must provide at least 1 day's written notice to the probationer. This notice must include the following:

- The effective date of removal; and
- The basis for removal including the acts of misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function.

However, if the proposed removal is based in whole or in part on conditions arising before appointment, the agency must give the appointee:

- An advance written notice stating the specific reasons;
- A reasonable opportunity to reply; and
- A written decision showing the reasons for the action and the effective date and provided at or before the time the action will be made effective.[29]

---

[27] 5 U.S.C. § 3594(b); 5 C.F.R. § 359.701(b).
[28] See 5 C.F.R. § 359.403.
[29] 5 C.F.R. § 359.404.

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

The probationary removal is not appealable to MSPB, but the probationer may initiate an EEO complaint challenging an action that is believed to have been taken based upon legally prohibited discrimination or OSC if it is believed to have been taken based upon a prohibited personnel practice.

**After Probation (and for certain probationary career and SES limited appointees):**

There are two adverse actions available for agencies when taking discipline against 1) a non-probationary career SES appointee, 2) a probationary career SES appointee who was covered under 5 U.S.C. § 7511 immediately before the SES appointment, and/or 3) an SES limited term or limited emergency appointee who was covered by 5 U.S.C. § 7511 immediately before the SES appointment while serving under a career or career-conditional or equivalent appointment in another position within the same agency.[30] The two adverse actions available to agencies are removal and suspensions for more than 14 days. These actions may be appealed to the MSPB or be raised in an EEO or OSC complaint. An agency may not suspend an SES appointee for 14 days or less.[31] Supervisors should work with their employee relations staff and legal office when considering these actions.

The following steps will take place if it is determined that an appealable adverse action is appropriate:[32]

1. The agency will issue a written notice of proposed action, which will be effective no earlier than 30 calendar days from the date of the proposal, if the action is found warranted. This notice will state the specific reasons for the proposed action, such as misconduct, neglect of duty, malfeasance, or declination of a reassignment or transfer of function, and inform the appointee of his or her right to review the material relied upon to support the reasons for action provided in the notice;
2. The appointee may choose to have a representative but may not choose a representative whose representation will cause a conflict of interest or position, or an employee of the agency whose release from his or her official position would give rise to unreasonable costs or whose priority work assignments preclude his or her release from official duties;[33]
3. The appointee must be provided a reasonable time, but not less than 7 days to submit a written and/or oral reply to the proposal letter, at the appointee's discretion, and provide supporting documentation;
4. The appointee must be provided a reasonable period of time to submit medical documentation if the appointee wishes the agency to consider any medical conditions which may have affected the basis for the adverse action. It should be

---

[30] See 5 U.S.C. § 7541(1); 5 C.F.R. § 359.403(a)(2); 5 C.F.R. § 752.601(c).
[31] See 5 C.F.R. § 752.601(b).
[32] 5 C.F.R. § 752 Subpart F.
[33] 5 C.F.R. § 752.604(e).

18

noted, however, that the agency may hold disabled appointees with reasonable accommodation to the same standards of conduct as non-disabled appointees;[34]

5. A deciding official reviews the proposal, supporting documentation, medical documentation if submitted, and any reply provided by the appointee;

6. The deciding official determines whether the reasons for the proposed action are supported, and if so, whether the proposed penalty is warranted after taking into consideration any mitigating and aggravating factors, and issues a written decision letter stating the deciding official's conclusion as to the appropriate action. The decision letter will provide reasons for the decision and inform the appointee of any appeal rights he or she may have if an adverse action is taken; and

7. The agency will maintain copies of the notice of proposed action, the appointee's written reply, a summary of the appointee's oral reply, if any, the decision notice, and any supporting material. The agency will furnish these documents to the MSPB and the appointee upon request.

**Excused Absence (Administrative Leave) – to Be Used in Rare Circumstances**

Similar to the earlier discussion on excused absence (administrative leave) for non-SES Federal employees, approval of excused absence for SES members should be limited to situations involving brief absences. Agencies should monitor the situation and move toward longer-term actions when it is necessary, appropriate, or prudent to do so. For additional information on using administrative leave for SES Federal employees, *supra* pp. 14.

**Reduction in Pay for Performance or Disciplinary Reasons:**

As provided in 5 C.F.R. § 534.404(j), an agency may reduce the pay of a career SES appointee during or after the probationary period by not more than 10 percent without the employee's consent only—

- If the senior executive has received a less than fully successful (i.e., "minimally satisfactory" or "unsatisfactory") annual summary rating or has otherwise failed to meet the performance requirements for a critical element; or
- As a disciplinary or adverse action resulting from conduct-related activity, including, but not limited to, misconduct, neglect of duty, or malfeasance.

The following steps will take place if it is determined that a reduction in pay is appropriate:

1. The agency will provide written notice of the reduction at least 15 days in advance of its effective date;
2. The appointee may choose to be represented;

---

[34] 5 C.F.R. § 752.604(f).

Page 39 of 124

3. The appointee will have at least 7 days to respond to the notice orally and/or in writing and to furnish affidavits and other documentary evidence;
4. The agency will provide a written decision and specific reasons for the pay reduction at the earliest practicable date after the executive's response; and
5. The appointee will have an opportunity to request, within 7 days after that decision, reconsideration by the head of the agency, whose determination is final and not subject to further review.

**Effects of 120-Day Moratoriums:**

Effect of 120-day Moratorium on Removals of Career SES Employees

The law provides at 5 U.S.C. § 3592(b) that a non-probationary career SES member may not be involuntarily removed under that section (i.e., based upon performance):

- Within 120 days after an appointment of the head of the agency; or
- Within 120 days of appointment of a career appointee's most immediate supervisor who is a non-career appointee and has the authority to remove the career appointee. (For this purpose, a "non-career appointee" includes an SES non-career, SES limited, Schedule C and Executive Schedule appointee. "Most immediate supervisor" refers to the non-career appointee nearest to a career appointee in the supervisory chain who has authority to remove that career appointee). [35]

This moratorium does not restrict the removal of a non-probationary career SES member who receives a final rating of "unsatisfactory" under the agency's SES performance appraisal system prior to the appointment of the new agency head or non-career appointee that initiated the 120-day moratorium on removals.

This moratorium restricts removal of a probationary SES member under 5 U.S.C. § 3592 during the 120-day period, except for such a disciplinary removal that was initiated before the appointment of the new agency head or non-career appointee. Under certain circumstances, an agency may invoke an exception to enable a disciplinary removal of a probationer that was not initiated before the appointment of the new agency head or non-career appointee. [36]

Since this moratorium applies only to removals under 5 U.S.C. § 3592, it does not restrict removal of a non-probationary career appointee or a covered probationary career appointee for disciplinary reasons under chapter 75. [37]

---

[35] 5 CFR 359.503
[36] 5 C.F.R. §§359.403(a)(1); 359.406; and 359.406(c).
[37] 5 U.S.C. § 7541(1); 5 C.F.R. §§ 359.403(a)(2); 752.601(c).

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

<u>Effect of 120 day Moratorium on Reassignment of Career SES Employees</u>

The law provides at 5 U.S.C. 3395 that a non-probationary career SES member may not be involuntarily reassigned:

- Within 120 days after an appointment of the head of the agency; or
- Within 120 days of appointment of a career appointee's most immediate supervisor who is a non-career appointee and has the authority to remove the career appointee. (For this purpose, a "non-career appointee" includes an SES non-career, SES limited, Schedule C and Executive Schedule appointee. "Most immediate supervisor" refers to the non-career appointee nearest to a career appointee in the supervisory chain who has authority to make an initial appraisal of the career appointee's performance under Chapter 43.

This moratorium does not restrict the involuntary reassignment of a non-probationary career SES member who receives a final rating of "unsatisfactory" under the agency's SES performance appraisal system prior to the appointment of the new agency head or non-career appointee that initiated the 120-day moratorium on removals, if the agency decides to reassign rather than remove the appointee.[38] This moratorium also does not restrict any disciplinary action initiated prior to such an appointment.

---

[38] 5 U.S.C. § 4314(b)(3).

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Useful References for Non-SES Unacceptable Performance and Discipline**

- 5 U.S.C. § 4303, 5 C.F.R. § 432

- 5 U.S.C. §§ 7501-7514, 5 C.F.R. § 752, Subparts B and D

- 5 U.S.C. § 3321, 5 C.F.R. § 315, Subpart H

**Useful References for SES Unacceptable Performance and Discipline**

- 5 U.S.C. §§ 3592, 4311-4315, 5 C.F.R. § 359, Subparts D and E

- 5 U.S.C. §§ 7541-7543, 5 C.F.R. § 752 Subpart F

- 5 U.S.C. § 3594, 5 C.F.R. § 359, Subpart G, 5 C.F.R. § 213.3202 (m)(1)

# EXHIBIT 3

# POSITION DESCRIPTION (Please Read Instructions on the Back)

| 2. Reason for Submission | 3. Service | 4. Employing Office Location | 5. Duty Station | 6. OPM Certification No. |
|---|---|---|---|---|
| ☐ Redescription ☑ New ☐ Reestablishment ☐ Other | ☑ Hdqtrs. ☐ Field | Silver Spring, MD | Bethesda, MD | |

Explanation (Show any positions replaced)

| 7. Fair Labor Standards Act | 8. Financial Statements Required | 9. Subject to IA Action |
|---|---|---|
| ☑ Exempt ☐ Nonexempt | ☐ Executive Personnel Financial Disclosure  ☐ Employment and Financial Interests | ☐ Yes ☑ No |

| 10. Position Status | 11. Position Is: | 12. Sensitivity | 13. Competitive Level Code |
|---|---|---|---|
| ☑ Competitive ☐ Excepted (Specify in Remarks) ☐ SES (Gen.) ☐ SES (CR) | ☐ Supervisory ☐ Managerial ☑ Neither | ☐ 1—Non-Sensitive ☐ 2—Noncritical Sensitive ☐ 3—Critical Sensitive ☐ 4—Special Sensitive | 14. Agency Use |

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. U.S. Office of Personnel Management | | | | | | // |
| b. Department, Agency or Establishment | Associate Ombudsman | GS | 301 | 14 | JK | 6/12/14 |
| c. Second Level Review | | | | | | // |
| d. First Level Review | | | | | | // |
| e. Recommended by Supervisor or Initiating Office | | | | | | // |

16. Organization Title of Position (if different from official title)

17. Name of Employee (if vacant, specify)

| 18. Department, Agency, or Establishment | c. Third Subdivision |
|---|---|
| FOOD AND DRUG ADMINISTRATION | |
| a. First Subdivision | d. Fourth Subdivision |
| Office of the Operations | |
| b. Second Subdivision | e. Fifth Subdivision |

19. Employee Review--This is an accurate description of the major duties and responsibilities of my position.

Signature of Employee (optional)

20. **Supervisory Certification.** *I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the* knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

| a. Typed Name and Title of Immediate Supervisor | b. Typed Name and Title of Higher-Level Supervisor or Manager (optional) |
|---|---|
| Albert Conerly Ombudsman | |
| Signature *Albert Conerly Jr.*  Date 10/9/14 | Signature    Date // |

21. **Classification/Job Grading Certification.** *I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the U.S. Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards.*

22. Position Classification Standards Used in Classifying/Grading Position

OPM Primary Standard, TS-134 August 2009

Typed Name and Title of Official Taking Action

Joanne Kennedy
Human Resources Specialist (Classification)

Signature *Joanne Kennedy*    Date 6/12/14

Information for Employees. The standards, and information on their application, are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the U.S. Office of Personnel Management. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the U.S. Office of Personnel Management.

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee (optional) | | // | | // | | // | | // | | // |
| b. Supervisor | | // | | // | | // | | // | | // |
| c. Classifier | | // | | // | | // | | // | | // |

24. Remarks

FPL: GS-14
Bus Code: 8888

25. Description of Major Duties and Responsibilites (See Attached)

| NSN 7540-00-634-4265 | Previous Edition Usable | 5008-106 | OF 8 (Rev. 1-85) (CDC Adobe Acrobat 3.01 Electronic Version, 1/98) U.S. Office of Personnel Management FPM Chapter 295 |
|---|---|---|---|

## Associate Ombudsman
## GS-301-14

### Introduction

This position is located in the Food and Drug Administration (FDA), Office of Operations (OO), Immediate Office (IO). The incumbent serves as a confidential and informal source of information, facilitator, consultant, and practitioner for dispute resolution, helping in problem solving and the constructive management and resolution of conflict. As an Associate Ombudsman, the incumbent collaborates with officials to achieve constructive resolution to disputes; seeks fair and equitable solutions to employees' problems; suggests approaches to address and manage conflicts, and suggests policy and procedural changes; helps to build constructive relationships by working to resolve disputes and making recommendations intended to create a more positive work environment, thereby contributing to improved office productivity.

### Major Duties and Responsibilities

The incumbent researches complaints, providing support to the Ombudsman in mediation disputes, and assisting to resolve issues in a timely, fair, and impartial manner. Reviews and examines complaints regarding decisions rendered to the staff. Maintains neutrality in each case, and serves as an advocate for fair process and outcomes.

Works closely with the Ombudsman on day to day operations; receives complaints, performs technical reviews and takes steps to resolve sensitive management and other workplace issues. Provides advice and assistance to Ombudsman in making recommendations of resolutions to the staff. Collaborates with Ombudsman in the development of short-and-long term resolutions and presents to OO Senior Leadership. Represents Ombudsman in discussions and meetings related to matters of concern as deemed appropriate.

Listens to staff concerns, clarifies procedures, discusses options and, when requested, acts as an intermediary. Serves as an intake person, receiving inquiries for assistance with a wide range of workplace issues. Advocates for fair processes and promotes building a supportive, inclusive workplace. Serves as a neutral third party in conflict resolutions and works to achieve fair and equitable solutions to problems. Identifies resources and makes referrals so that individuals seeking assistance may go directly to the source that can best address the concern. Collaborates with other Office of Operations and FDA offices on issues of general concern and interprets policies to help resolve conflict or make improvements in the Office of Operations procedures. Conducts research to identify systemic problems and initiates corrective or preventive actions. Assists in the mediation and/or negotiation of disputes occurring at all staff levels. Educates management and the general workforce, in the concepts and processes of conflict resolution either in one-on-one or group settings.

Develops and implements disputes resolution and conflict management programs for use in the organization.

Recommends approaches for addressing and managing conflict and collaborates with other Office of Operations offices on issues of general concern. Provides leadership in developing and implementing strategies for building and sustaining cooperative relations between managers and staff employees in the Office of Operations; and provides guidance and methods for the informal resolution of disputes.

Researches, identifies, and develops tools to be used to conduct assessments and evaluations of the organization's conflict climate. Conducts conflict climate assessments and evaluations in Office of Operations organizations. Works with leadership to develop plans to improve organizational environment. Conducts and/or assist in conducting assessments and evaluations of Ombudsman program effectiveness.

Performs other work as assigned.

**FACTOR LEVEL DESCRIPTIONS**

**Factor 1 - Knowledge Required by the Position**

Mastery knowledge of the concepts, principles and methods associated with dispute resolution; thoroughly skilled in the use of facilitation and mediation techniques; and ability to analyze and evaluate issues to determine their relative importance and susceptibility to compromise, alternative solution and settlement.

Comprehensive knowledge and ability to gain and maintain the trust necessary to handle any and all assignments in a thoroughly confidential, competent and professional manner without reference to any previously established technical guidelines or policies.

Mastery knowledge of the concepts, principles, practices, and techniques used in the management of projects and engagement with diverse staff.

Ability to research, gather, assemble, and analyze information; draw conclusions and inferences; summarize findings and provide comprehensive recommendations; and present diverse and highly complex information to senior management.

Ability to communicate orally and in writing in order to organize and present technical briefings and alternative methods of resolution to workplace issues; to encourage understanding of disputed or unpopular decisions, and negotiated solutions; and to make frequent oral and written presentations on dispute resolution issues in a clear and concise manner to senior management and staff.

Ability to interpret and appropriately implement broad and changing policies and procedures concerning dispute resolution approaches and techniques.

Ability to negotiate with senior level management and staff employees regarding workplace disputes.

Skill in exercising sound judgment, discretion, diplomacy, and tact to work effectively with high-level individuals; and ability to establish and maintain open communications and rapport with all employees.

**Factor 2 - Supervisory Controls**

The Associate Ombudsman works under the general supervision of the Ombudsman. The supervisor provides administrative direction with assignments in terms of broadly defined missions or functions. The incumbent independently plans, designs, and carries out the work to be done. The supervisor reviews final work products and recommendations for their effect on the workforce. The supervisor normally accepts work as being technically authoritative and without the need for significant change.

**Factor 3 - Guidelines**

Guidelines consist of general administrative manuals, policy and procedures documents. Guidelines also include laws, policies, decisions and regulations for top level managers and human resource management professionals in FDA. Guidelines are also available in the form of broad legislation, policy statements, directives, orders, notices/bulletins, and circulars, which are often general, nonspecific, and lack clear applicability to specific unusual and sensitive situations. The incumbent must use seasoned judgment and ingenuity and exercise broad latitude in determining the intent of the applicable guidelines. The incumbent must exercise considerable judgment in interpreting and adapting existing policies/guidelines, and discretion in developing novel approaches to situations not previously encountered or covered by written policy.

**Factor 4 - Complexity**

The work of the position is varied, unstructured, and consists of many different concurrent or sequential assignments. The work requires a high degree of judgment in working to identify, analyze, and resolve workplace conflict and to provide advice, guidance, and initiative to support the search for better solutions to workplace disputes. These situations are inherently difficult given the nature of the issues involved, the individuals affected, and the divergent points of view. The position requires the exercise of creativity and originality in dealing with high-level management issues and in assessing and making recommendations about current situations and future directions. The incumbent must quickly acclimate to new situations and synthesize complex and large amounts of information in a short timeframe. The incumbent serves as an expert consultant in dispute resolution issues in the workplace and conducts comprehensive research and evaluations. The incumbent also takes the lead in conducting and/or acquiring mediation and negotiation training appropriate for Office of Operations officials.

**Factor 5 - Scope and Effect**

The purpose of the work is to serve as the Associate Ombudsman in the Office of Operations, providing all employees the opportunity to access dispute resolution and mediation processes to request early intervention or to seek assistance from more than one source to promote constructive conflict management or resolution. The incumbent serves as an expert dispute resolution practitioner and provides confidential and informal assistance to managers and staff employees in resolving workplace disputes and  is actively involved with a broad range of employees at various levels. The work significantly impacts the work of others throughout the Office of Operations, and cuts across Offices and Divisions and strongly influences managers and employees in the work place.

**Factor 6 - Personal Contacts**

Contacts are with Office of Operations senior leadership and staff employees. Contacts are also with individuals in the Department of Health and Human Services, and may include the union, other voluntary organizations, members of the dispute resolution and professional organizations, representatives from other Federal agencies and private institutions, in a moderately unstructured setting.

**Factor 7 - Purpose of Contacts**

The purpose of contacts is to understand, assist, persuade, and negotiate concerning matters in dispute, seeking fair and equitable solutions to employee problems, and supporting the effective management of conflict. In addition, contacts are intended to build constructive relationships through the management and resolution of disputes, and to recommend ways to create a more positive work environment. Furthermore, contacts are needed to influence managers and senior level staff with conflicting viewpoints to engage in constructive conversations and to accept and, in some cases, implement findings and recommendations.

**Factor 8 - Physical Demands**

The work is primarily sedentary. There are no special physical demands required by the position.

**Factor 9 - Work Environment**

The work is performed in a typical office setting. Occasional travel may be required to attend meetings, seminars, and conferences or training.

**Organization:** DHHS/FDA/OO          **PD Number:**

**Title, Series and Grade:** Associate Ombudsman, GS-301-14

**References:** OPM Position Classification Flysheet for Miscellaneous Administration and Program Series, GS-0301, TS-34, January 1979; OPM APPENDIX 3 PRIMARY STANDARD

**Title and Series Determination:** This series includes which are to perform two-grade interval work for which no other series is appropriate. The work requires analytical ability, judgment, discretion, and knowledge of a substantial body of administrative or program principles, concepts, policies, and objectives. No titles are specified for positions in this series.

| FACTOR | CRITERIA | POINTS ASSIGNED | FLD | COMMENTS |
|---|---|---|---|---|
| 1 | Knowledge Required | 1550 | 1-8 | Mastery knowledge of dispute resolution in order to facilitate or mediate complaints and resolve issues. Decisions or recommendations may significantly change policies and procedures. |
| 2 | Supervisory Controls | 650 | 2-5 | Administrative direction with broadly defined missions or functions. Independent planning and carrying out programs, studies or other work. Results considered technically authoritative and normally accepted without significant change. |
| 3 | Guidelines | 650 | 3-5 | Guidelines are broadly stated and nonspecific. Employee must use judgment and ingenuity in interpreting the intent of the guides that do exist and in developing applications to specific areas of work. |
| 4 | Complexity | 325 | 4-5 | Varied duties requiring many different and unrelated processes or methods that are applied to a broad range of activities or analysis. The situations are inherently difficult given the nature of the issues involved, the individuals affected, and the divergent points of view. |
| 5 | Scope and Effect | 325 | 5-5 | The incumbent serves as an expert dispute resolution practitioner and provides confidential and informal assistance to managers and staff employees in resolving workplace disputes. The work significantly impacts the work of others throughout the Office of Operations. |
| 6 | Personal Contacts | 60 | 6-3 | Personal contacts are with individuals or groups from outside the employing agency in a moderately unstructured setting. |
| 7 | Purpose of Contacts | 120 | 7-3 | The purpose of contacts is to understand, assist, persuade, and negotiate concerning matters in dispute, seeking fair and equitable solutions to employee problems, and supporting the effective management of conflict. |
| 8 | Physical Demands | 5 | 8-1 | The work is primarily sedentary. |
| 9 | Work Environment | 5 | 9-1 | The work is performed in a typical office setting. |

| SUMMARY | |
|---|---|
| **Total Points:** 3690 | **Grade Conversion:** GS-14 |
| **Final Points Ranges**: 3605–4050 | |

**Joanne Kennedy, Human Resources Specialist (Classification)**      **Date:**

## Fair Labor Standards Act (FLSA) Check List

*This form is to be completed for each grade in a career ladder. Note that it is possible for different grades within a career ladder to have different FLSA designations (for example, non-exempt at lower grades, exempt at higher grades in the career ladder). Attach a properly completed and signed checklist to each classified position description and statement of difference (if applicable).*

### A. REQUIRED POSITION INFORMATION

**Position Title**: Associate Ombudsman      **Pay Plan/Series**: GS-301-14

**Organization:**     FDA/OO

**Administrative Code:**     **DMM**      **PD Number:**

Check all of the following criteria that are applicable to the position:

### B. Non-Exempt Criteria

1. Salary-based non-exemption (5 CFR 551.203)

___ Employees annual rate of basic pay is less than $23,660.

2. Non-exemption of certain employees (5 CFR 551.204)

___ Position is non-supervisory and engaged in equipment operation, or is a protective or clerical occupation.

___ Position involves technical work properly classified below GS-09

___ Position is nonsupervisory in the Federal Wage System or other comparable wage system.

### C. Exemption Criteria

### 1. Executive Exemption Criteria (5 CFR 551.205)

___ Primary duty of the position is management or supervision; work involves customarily and regularly directing the work of other employees and involves the authority to hire or fire other employees or makes recommendations on employment issues such as hiring and firing that are given particular weight by higher level supervisors or managers.

### 2. Administrative Exemption Criteria (5 CFR 551.206)

_ X __ Primary duty is performance of office or non-manual work directly related to the management or general business functions; work involves the exercise of discretion and independent judgment with respect to matters of significance.

### 3. Professional Exemption Criteria (5 CFR 551.208, 209, 210)

___ **5 CFR 551.208 Learned Professionals**: Primary duty is performance of work requiring advanced knowledge in a field of science or learning including the traditional professions of law, medicine, theology, accounting, actuarial computation, engineering, architecture, teaching, pharmacy, various types of physical, chemical and biological sciences, and other similar occupations that have a recognized professional status; entrance into these professions requires a prolonged course of specialized intellectual instruction.

___ **5 CFR 551.209 Creative Professionals:** Primary duty is performance of work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor such as music, acting, writing, graphic arts. Exemption depends upon the extent of invention, imagination, originality or talent of the employee; exemption does not apply to work that can be produced by a person with general manual or intellectual ability and training.

__ **5 CFR 551.210 Computer Professionals:** Primary duty consists of the application of systems analysis techniques and procedures, including consulting with users to determine hardware, software, or system functions specifications; OR design development, documentation, analysis, creation, testing or modification of computer systems or programs; OR a combination of these duties. Exemption does not apply to employees engaged in the manufacture or repair of computer hardware and related equipment, or to those whose work is highly reliant on computers but whose duties do not consist of the aforementioned.

Salary based exemption applies to any computer professional compensated on an hourly bases at a rate of basic pay of $27.63 an hour and above

**4. Law Enforcement Activities (5 CFR 551.216)**

___ Special exemption/exclusion applies to all law enforcement agents receiving availability pay.

**5. Foreign Exemption (5 CFR 551.212)**

___ Employees permanently stationed in an exempt area and spend all hours of work in a given workweek in one or more exempt areas or employees not permanently stationed in an exempt area, but spend all hours of work in a given workweek in one or more exempt areas. Exempt area means any foreign country, or any territory under the jurisdiction of the United States other than a State, the District of Columbia, Puerto Rico, the US Virgin Islands, and American Samoa. Guam, Midway, Wake and Johnston Islands.


**Final Determination (Check One)**          _ __ **Non-Exempt**          _ X __ **Exempt**


**Joanne Kennedy, 6/3/14**

**HR Specialist Classification/Date**

# EXHIBIT 4

**Date**: November 6, 2019

**From**: Albert Conerly, Jr, CMO and Ombudsman *Albert Conerly. J*

**To**: Charmaine Condillac

**Element 1** – Performance Status

By October 16, Ms. Condillac provided documentation indicating that the following Agency mandated training has been completed *within 15 days after the ODAP was issued* (October 1):

- o FY 2019 FDA Computer Security Awareness Training – May 6, 2019
- o FDA Annual Records Management Training Course – October 16, 2019

Ms. Condillac has also participated in all scheduled meetings. Ms. Condillac has not provided the signed document "Subject: Established Procedures for Requesting Leave" as required (the Supervisor informed her that her initial attempt to submit the signed document via email was unsuccessful). During the October 29 meeting she was reminded to complete this requirement.

**Current Performance**: In view of these accomplishments, Ms. Condillac's current performance is on track to be <u>Acceptable</u> within the context of the ODAP.

**Element 2** – Performance Status

On October 30, Ms. Condillac provided information on the status of work she had performed since the 2019 furlough. This information had been requested previously and was due on October 3, 2019, but not provided. The information indicated that as of August 5, 2019, Ms. Condillac had completed more than the 2 training requirements she reported in September. Since receiving the ODAP on October 1, Ms. Condillac has been assigned 5 cases which she is in the process of scheduling.

**Current Performance**: In view of these accomplishments, Ms. Condillac's performance is improving and on track to be <u>Acceptable</u> within the context of the ODAP.

**Element 3** – Performance Status

Ms. Condillac submitted a project plan on October 16. Ms. Condillac was advised to make a couple changes to the proposed project plan. Ms. Condillac was informed that the propose project plan was due on October 8.

Ms. Condillac has met with the Supervisor and Team Leader as required.

**Current Performance**: In view of these accomplishments, Ms. Condillac's performance is on track to be <u>Acceptable</u> within the context of the ODAP.

**Element 4** – Performance Status

Ms. Condillac completed a *time management* course and *active listening* course on October 30, 2019.  She submitted certificates of completion for both courses.

Ms. Condillac is working with her colleagues to complete unmet training requirements.  Ms. Condillac's active listening needs improvement and it seems she is working on this.

**Current Performance**:  In view of these accomplishments, Ms. Condillac's performance is on track to be Acceptable within the context of the ODAP.

# EXHIBIT 5

Office:  240-402-1650
Fax:      301-847-8607
Robert.Thomas@fda.hhs.gov

<< OLE Object: Picture (Device Independent Bitmap) >>

---

**From:** Condillac, Charmaine
**Sent:** Friday, November 08, 2019 3:07 PM
**To:** Thomas, Robert <Robert.Thomas@fda.hhs.gov>; Conerly, Albert
<Albert.Conerly@fda.hhs.gov>; Branch, Tiffany <Tiffany.Branch@fda.hhs.gov>
**Cc:** Morris E. Fischer <morris@mfischerlaw.com>
**Subject:** FW: RA Matters - Follow Up (11.08.19)
**Importance:** High

Dear Mr. Thomas, please be advised that I am hereby retracting my request for a
reassignment as a Reasonable Accommodation.  As per my prior requests contained in
my application and ongoing attempts at interactively dialoging with Agency personnel, as
an accommodation, I am requesting the following:

- Telework 5 days per week and come to campus/FDA facilities to conduct all ADR
  strategies that are conducted in person
- Ability to use assistive technology (Cisco Jabber, WebEx) to participate in virtual
  ADR strategies {since I don't  have a private office space to conduct these
  confidential discussions} and  also as part of  my requested accommodation.
- Please advise  at your earliest convenience if I need to modify the form and  the
  process in which I can obtain the FOH recommendation and associated
  documentation.
  - Note: My requests for a Reassignment out of a Hostile Work
    Environment were/are part of the Agency's Anti-Harassment Policy
    << File: Charmaine Condillac Resume (2018).pdf >>

---

**From:** Condillac, Charmaine
**Sent:** Friday, November 08, 2019 9:30 AM
**To:** Thomas, Robert <Robert.Thomas@fda.hhs.gov>; Conerly, Albert
<Albert.Conerly@fda.hhs.gov>; Branch, Tiffany <Tiffany.Branch@fda.hhs.gov>
**Cc:** Morris E. Fischer <morris@mfischerlaw.com>
**Subject:** RE: RA Matters - Follow Up
**Importance:** High

# EXHIBIT 6

**From:** Thomas, Robert
**Sent:** Monday, November 11, 2019 1:27 AM
**To:** Condillac, Charmaine <Charmaine.Condillac@fda.hhs.gov>
**Cc:** Conerly, Albert <Albert.Conerly@fda.hhs.gov>
**Subject:** RE: RA Matters - Follow Up (11.08.19)


Good Morning Ms. Condillac,

I acknowledge receipt of your email below to retract your request for reassignment. The reasonable accommodation case file has been provided to your supervisor. For the below accommodation, please complete the below FDA Form 3526 – Confirmation of Request for Reasonable Accommodation and the Authorization for Disclosure of Information form for each of your medical care professionals:

- Telework five (5) days and to come to campus/FDA facilities to conduct all ADR strategies that are conducted in person;
- Ability to use assistive technology (Cisco Jabber, WebEx) to participate in virtual ADR strategies {since I don't have a private office space to conduct these confidential discussions} and also as part of my requested accommodation.

<< File: FDA-3526-Request.docx >>        << File: AuthorizationDisclosureForm.pdf >>

Please submit medical documentation to support or pertains to your request, as you did no submit any medical documentation for your previous request. **Please complete the following blocks (TO, 1-3, 5, 7-9, & 11).** Please ensure you discuss the request with your medical care provider(s) and provide medical documents that supports and/or pertains to the request. All medical documents will be maintained within our secured office space and will not be released to anyone with your written consent.

Please note that it is not necessary to submit test results and/or medical records in support of your request, as medical information required to process your request is limited to a medical note from your medical provider (s) with the following information:

- The nature, severity, and duration of the individual's impairment;
- The activity or activities that the impairment limits;
- The extent to which the impairment limits the individual's ability to perform the activity or activities; and/or
- Why the individual requires reasonable accommodation or the particular reasonable accommodation requested, as well as how the reasonable accommodation will assist the individual to perform the essential functions of the job, or enjoy a benefit of the workplace.

Additionally, please use the appropriate avenues to address a hostile work environment. You can request a copy of the FOH document via the Freedom of Information Act (FOIA).

Respectfully,

Robert J. Thomas
Lead Reasonable Accommodation Specialist
Office of Operations
U.S. Food and Drug Administration
Direct: 301-796-9406

# EXHIBIT 7



Date: November 12, 2019

To: Charmine F. Condillac
Associate Ombudsman
Office of Operations
U.S. Food and Drug Administration

From: Albert Conerly
Chief Management Officer
Office of Operations
U.S. Food and Drug Administration

Subject: Response to Request for Reasonable Accommodation
FDA Case Number: RA-FDACDRH-270-19

This memorandum is in response to the review of your reasonable accommodation which was submitted to the Reasonable Accommodation Office on April 19, 2019, requesting flexible time/schedule for medical treatment related to disability and reassignment, to accommodate your medical condition. Additionally, you requested the following accommodations:

- An office;
- A language interpreter/translation services for attendance at meetings;
- The use of a transcription device or a representative who can transcribe the discussion in the way of an interim accommodation;
- A device that you could use to record and play back your supervisor's instructions.

The review of your reasonable accommodation request has been completed and an analysis provided. Based on the analysis of the Reasonable Accommodation Office, a review of your medical information and in accordance with the Rehabilitation Act of 1973, the Americans with Disabilities Act Amendments Act (ADAAA) of 2008 and FDA's Policy on Reasonable Accommodation under Section 2 of SMG 3130.2, as the decision-maker, *I am granting you reassignment as the reasonable accommodation of last resort.*

The decision is supported by the medical review and a review of the essential job functions that determined that you are unable to perform the essential functions of your job with or without an accommodation.

Additionally, the review/analysis maintains no medical documentation was received and no medical need was established for the additional requested accommodations:

- *An office;*


- *A language interpreter/translation services for attendance at meetings;*
- *The use of a transcription device or a representative who can transcribe the discussion in the way of an interim accommodation; and*
- *A device that you could use to record and play back your supervisor's instructions.*

Please review the attached FDA Reassignment Policy for more information and complete the Reassignment Questionnaire and provide the Reasonable Accommodation Office with a copy of your current resume within ten (10) business days. Please send the documents to: ReasonableAccommodation@fda.hhs.gov.

**\*NOTE: Certification by the Reasonable Accommodation Office and Management. All other attempts at reasonable accommodation have been exhausted and it has been concluded that reassignment is the only available option left to explore.**

This memorandum officially addresses your request for reasonable accommodation that has been processed in accordance with SMG 3130.2, FDA's Procedures for Providing Reasonable Accommodations for Individuals with Disabilities.

Should your medical condition change or should you require further accommodations, please be sure to let me know immediately. Should you have any questions about the decision in this memorandum, please raise them with me. If you have questions about the reasonable accommodation process, please contact Mr. Robert J. Thomas Reasonable Accommodation Specialist at (301)796-9405, or by email at Robert.Thomas@fda.hhs.gov.

1. If you wish to seek reconsideration of this decision, you may take the following steps:

- The request for reconsideration will be submitted to the original decision-maker; within five business days;

- If the original decision-maker denies the request for reconsideration, the individual will present the request to the next level supervisor who will respond to the request within ten business days;
- If the original decision is not reversed, the request for reconsideration will be elevated to the next management official within the chain of command who will, in turn respond within ten business days;

2. You may seek reconsideration of the denial of your request by choosing from the options listed below:


**U.S. FOOD & DRUG**
ADMINISTRATION

- To pursue an EEO discrimination complaint under 29 C.F.R. 1614, by contacting an EEO Counselor, at (301)796-9400, to initiate discrimination complaint counseling within 45 days from the date of this notice of denial or;

- Bargaining unit employees may file a grievance under the Collective Bargaining Agreement, Article 45, within the specified time frame or;

- Non-bargaining unit employees may submit a Dispute Filing under Instruction 771-1, Administrative Grievance Procedure, within the specified time frame or;

- To pursue Merit Selection Promotion Board (MSPB) appeal procedures or;

- Contact the Conflict Prevention and Resolution Office at (301)796-9415 and initiate the Informal Mediation Process.

**Acknowledgement of Receipt**

To acknowledge that you have received this notice, please sign and date in the space below. Your signature does not mean that you agree or disagree with this memorandum. By signing, you will not forfeit any rights to which you are entitled. Your failure to sign will not void the contents of this memorandum.

_Albert Conerly_                    _11/12/19_
Albert Conerly                      Date

**I acknowledge receipt of this memorandum**

_Charmine Condillac_                _11/12/19_
Charmine F. Condillac               Date

# EXHIBIT 8

# MORRIS E. FISCHER, LLC

November 13, 2019

Mr. Robert J. Thomas
Reasonable Accommodation Specialist
Department of Health and Human Services
Via Email: Robert.Thomas@fda.hhs.gov

Re: Charmaine Condillac, November 12, 2019
Reasonable Accommodation Decision

Dear Mr. Thomas:

Please be advised that undersigned counsel represents Ms. Condillac with respect to the above-mentioned Reasonable Accommodation decision, a copy of which is attached hereto (Exhibit 1). Kindly direct all correspondence regarding this matter directly to my attention.

It is bewildering that Mr. Conerly issued this decision, despite receiving Ms. Condillac's November 8, 2019, email communication retracting her request for reasonable accommodation (Exhibit 2). My client's reasonable accommodation request as per that communication was to telework five days per week, but she would appear for mediations and other in ADR in person strategy meetings, requiring her physical presence.

Ms. Condillac disputes that she cannot perform the essential functions of her GS-14 Assistant Ombudsman position. She most certainly can. Her anxiety issues are exacerbated by her supervisor Albert Conerly. He never provided her the GS-14 Assistant Ombudsman position duties; froze her out of mediations until very recently; commenced a totally unjustified 60 day Performance Improvement Plan, which following her whistleblower complaint, caused Mr. Conerly to issue her a letter that she was on track for success: that was the first written communication to her by Mr. Conerly regarding the PIP.

This event is perhaps the most striking and obvious act of retaliation. Mr. Conerly was fully aware that Ms. Condillac retracted her reasonable accommodation request for reassignment. The email was addressed to him. He's the person that issued the decision.

8720 Georgia Avenue, Suite 210
Silver Spring, MD 20910-3614
O 301-328-7631 F 301-328-7638

11 Broadway, Suite 615
New York, NY 10004-1490
O 800-209-2608 F 212-480-8560

www.morrisfischerlaw.com l morris@mfischerlaw.com

Page 66 of 124

I believe Ms. Condillac's original accommodation request was made more than six months ago. Given the process can take this long, we ask for this accommodation to be given on an interim basis until the decision is made. We see no undue hardship to the agency in granting this request. Kindly begin the process of accommodating this telework, reasonable accommodation arrangement.

Sincerely,

*Morris E. Fischer, Esq.*

Morris E. Fischer, Esq.

cc: Charmaine Condillac
    Madeha Dastgir, Esq.

# EXHIBIT 9



**U.S. FOOD & DRUG**
ADMINISTRATION

Date:     November 27, 2019

To:       Charmine F. Condillac, Associate Ombudsman
          Office of Operations
          U.S. Food and Drug Administration

From:     Albert Conerly, Jr., Chief Management Officer
          Office of Operations
          U.S. Food and Drug Administration

Subject:  ODAP and TELEWORK

Effective immediately, based on the analysis of the Reasonable Accommodation Office, a review of your medical information and in accordance with the Rehabilitation Act of 1973, the Americans with Disabilities Act Amendments Act (ADAAA) of 2008 and FDA's Policy on Reasonable Accommodation under Section 2 of SMG 3130.2, I am rescinding your ODAP. The decision is supported by the medical review and a review of the essential job functions that determined that you are unable to perform the essential functions of your job with or without an accommodation. Therefore, your telework is also being rescinded and you will perform the following non-essential job functions:

Work with OCPR leadership to develop resources and plans to improve organizational service capability and environment by:

- Identifying resources and compiling a list thereof to be used by OCPR staff to aid in making referrals to individuals seeking assistance to address their concerns
- Reviewing, compiling, and reporting on customer feedback from surveys issued following ADR service delivery

This will take effect on Monday, December 2, 2019.

**Acknowledgement of Receipt**

To acknowledge that you have received this notice, please sign and date in the space below. Your signature does not mean that you agree or disagree with this memorandum.



By signing, you will not forfeit any rights to which you are entitled.  Your failure to sign will not void the contents of this memorandum.

Albert Conerly, Jr.

$\frac{11}{27}/19$

Date

**I acknowledge receipt of this memorandum**

Charmine F. Condillac

Date

# EXHIBIT 10

 **U.S. FOOD & DRUG**
ADMINISTRATION

Sent Via Email, USPS and Certified Mail

## MEMORANDUM

**DATE:** January 17, 2020

**TO:** Charmaine Condillac, Associate Ombudsman, GS-0301-14
Ombudsman and Conflict Prevention and Resolution Staff
Office of Operations

**SUBJECT:** PROPOSAL TO REMOVE

I am proposing that you be removed from your position as an Associate Omsbudsman,
GS-0301-14, at the Food and Drug Administration (FDA). This proposed action is not a final
decision and, if found warranted, would not be effected any sooner than thirty (30) calendar days
from the date you receive this letter. This proposal is made in the interest of promoting the
efficiency of the service and the Federal Government and is effected in accordance with 5 U.S.C.
Chapter 75, 5 C.F.R. Part 752 and HHS Instruction 752.

This proposal is based on the following:

### CHARGE: MEDICAL INABILITY TO PERFORM THE DUTIES OF YOUR POSITION AS A RESULT OF A MEDICAL CONDITION.

### Background:

On April 19, 2019, you submitted a request to the Reasonable Accommodation Office (RA),
seeking flexible time/schedule for medical treatment related to disability and reassignment, to
accommodate your medical condition. As an interim accommodation, I granted you telework
three (3) days per week. The other two (2) days you were required physically onsite at either
White Flint North (WFN) or White Oak (WO) for ADR-specific work including mediations,
facilitations, etc., or staff meetings. You were permitted to move your work at home days to
accommodate these onsite duties.

In accordance with FDA's Staff Manual Guide (SMG) 3130.2 - Procedures for Providing
Reasonable Accommodations for Individuals with Disabilities, a list of questions along with
your documentation was sent to the Federal Occupational Health Occupational Medicine
Consultant (FOH OMC) to be answered by your medical care professional(s). The answers to
the questions were designed to assist the agency in determining whether your medical conditions
rise to the level of a disability under the Rehabilitation Act of 1973 and the Americans with
Disabilities Act Amendments Act (ADAAA) of 2008.

U.S. Food & Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
www.fda.gov

The review of your reasonable accommodation request was completed, and an analysis was provided. Based on the updated medical information received October 30, 2019, from the FOH OMC, you have a medical condition which substantially limits major life activities and functions, including thinking, concentrating, interacting with others, eating and sleeping. Based on this information, your medical condition rises to the level of a disability as described by the Rehabilitation Act of 1973, and the ADAAA of 2008, and you are considered a qualified individual with a disability.

The FOH OMC opined that there are times when you feel unable to go to work, unable to concentrate and focus on your work, and unable to make decisions, in addition to limiting energy, appetite, and sleep. The FOH OMC opined that your symptoms are greatly exacerbated by interactions with your supervisor. The FOH OMC opined that you seek to minimize time at the office, and interaction with your supervisor, chiefly because of the affect that interaction with your supervisor has on your symptoms.

Attendance in the office for duties that are not portable, and interacting with one's supervisor, are essential functions of any position, and accommodations to make these unnecessary would not be considered reasonable. The FOH OMC opined that at present, and for the foreseeable future, you appear to be unable to perform the essential functions of your position, with or without accommodation.

The FOH OMC opined that therefore, reassignment to another vacant position, the accommodation of last resort, would be medically reasonable. Based on the facts of this case, the available medical information, a review of the essential job functions, the RA Office maintained that if administratively feasible, without causing a direct threat to health and safety or posing an undue hardship, management should grant you the alternative accommodation of reassignment.

Based on the analysis of the RA Office, a review of your medical information and in accordance with the Rehabilitation Act of 1973, the Americans with Disabilities Act Amendments Act (ADAAA) of 2008 and FDA's Policy on Reasonable Accommodation under Section 2 of SMG 3130.2, as the decision-maker, I granted you reassignment as the reasonable accommodation of last resort.

You submitted the completed Reassignment Questionnaire and provided the RA Office with a copy of your current resume on November 7, 2019, and requested holding off "on processing the questionnaire/application until I get back to you and give you the green light" to proceed. On November 8, 2019, you emailed RA and stated that you would like to consult with your attorney, and subsequently you stated that "you hereby retract your request for a reassignment as a reasonable accommodation." On November 21, 2019, the agency began an internal vacancy search for a suitable/comparable position for you.

On December 19, 2019, RA sent you and your attorney an email informing you that "Reassignment as the reasonable accommodation was warranted as a last resort as it was determined that you were unable to perform the essential functions of your position, thus your statement to retract your reasonable accommodation request for reassignment did not stop the reassignment process which is based on your medical condition/limitations. If you have had a chance to consult with your attorney, please advise if you desire to continue in the reasonable accommodation reassignment process by close of business on Friday, December 27, 2019. If

2 | P a g e

you do wish to proceed with the reassignment action," RA would close the reasonable accommodation request.

Due to a lack of response on your part, RA informed you and your attorney via email that as of December 30, 2019, RA is closing the reasonable accommodation reassignment process.

In deciding to propose your removal, I have considered the impact your medical condition has on your ability to perform the essential functions of your position. The essential duties of your position are as follows:

- Collaborates with officials to achieve constructive resolution to disputes; seeks fair and equitable solutions to employees' problems; suggests approaches to address and manage conflict, suggest policy and procedural changes; helps to build constructive relationships by working to resolve disputes and making recommendations intended to create a more positive work environment, thereby contributing to improved office productivity.
- Provide support to the Ombudsman in mediation disputes, and assisting to resolve issues in a timely, fair, and impartial manner.
- Maintain neutrality in each case and serve as an advocate for fair process and outcomes.
- Work closely with the Ombudsman on day to day operations.
- Provide advice and assistance to Ombudsman in making recommendations of resolutions to the staff.
- Collaborate with Ombudsman in the development of short-and-long term resolutions and presents to OO Senior Leadership.
- Represent Ombudsman in discussions and meetings related to matters of concern as deemed appropriate.
- Serve as a neutral third party in conflict resolutions and works to achieve fair and equitable solutions to problems.
- Collaborate with other Office of Operations and FDA offices on issues of general concern and interprets policies to help resolve conflict or make improvements in the Office of Operations procedures.
- Assist in the mediation and/or negotiation of disputes occurring at all staff levels. Educates management and the general workforce, in the concepts and processes of conflict resolution either in one-on-one or group settings.
- Recommend approaches for addressing and managing conflict and collaborates with other Office of Operations offices on issues of general concern.
- Provide leadership in developing and implementing strategies for building and sustaining cooperative relations between managers and staff employees in the Office of Operations.
- Research, identify, and develop tools to be used to conduct assessments and evaluations of the organization's conflict climate.
- Work with leadership to develop plans to improve organizational environment.

I have also carefully considered the following RA analysis subsequent to the FOH review:

Based on the updated medical information received October 30, 2019, from the FOH OMC, you have a medical condition which substantially limits major life activities and functions, including thinking, concentrating, interacting with others, eating and

3 | Page

sleeping. The FOH OMC opined that there are times when you feel "unable to go to work, unable to concentrate and focus on your work, and unable to make decisions, in addition to limiting energy, appetite, and sleep." The FOH OMC opined that your symptoms are greatly exacerbated by interactions with your supervisor. Additionally, attendance in the office for duties that are not portable, and interacting with one's supervisor, are essential functions of any position, and accommodations to make these unnecessary would not be considered reasonable. The FOH OMC [further] opined that at present, and for the foreseeable future, you appear to be unable to perform the essential functions of your position, with or without accommodation.

Your inability to perform the essential functions of your job with or without an accommodation, places an undue burden on other staff who must perform all the essential duties of your position in addition to their own work.

Because you are unable to perform the functional requirements essential to the duties of your position, I believe removal is the only remedy available that will promote the efficiency of government service.

This letter is not a final decision. No decision on your removal from federal service will be issued until you have had the opportunity to make a reply and avail yourself of the other rights set forth below.

You have the right to reply to this proposal orally and/or in writing. You have seven (7) calendar days following receipt of this letter to do so and may submit affidavits or other documentary evidence in support of your reply. Additional time may be allowed to present your reply, if requested in writing prior to the expiration of the period stipulated, stating your reasons for desiring more time. Tiffany Branch is the Deciding Official in this case. Send your written response and/or request to make an oral reply to:

> Tiffany Branch
> Executive Officer, for the Office of the Commissioner
> tiffany.branch@fda.hhs.gov

You have the right to be accompanied, represented and advised by an attorney or other representative of your choosing throughout the processing of this proposed action, although the agency is not responsible for any expense you incur in this regard. Your choice of a representative may be disallowed if the representative is an individual whose activities as a representative would cause a conflict of interest or give rise to unreasonable cost to the Government, or an employee whose priority work assignments preclude his or her release.

If you choose to be represented, you must identify in writing your designated representative prior to presenting your oral reply or submitting your written reply. You, and your representative, are entitled to have access to official records personal to you and relevant to the proposed action.

You and your designated representative are assured freedom from restraint, interference, coercion, discrimination or reprisal in preparing and presenting your reply under the provisions applicable to the processing of this action.

Any reply made by you or your representative will be given consideration in arriving at a final decision. If you do not reply, a final decision will be based on the information of record. The decision will be given to you in writing.

If you need assistance in dealing with any personal matters, you are advised that the Employee Assistance Program (EAP) is available to provide confidential short-term counseling and referral services at no cost. Further information on EAP services can be obtained by calling 1-800-222-0364, twenty-four (24) hours a day, seven (7) days a week.

If you have any questions regarding disability retirement benefits, you may contact the FDA OHR Benefits and Retirements at OO-OHR-BENEFITS@FDA.HHS.GOV.

As soon as possible after your answer is received, or after expiration of the seven (7) calendar day reply period, a written decision will be issued to you. No decision, however, will be effectuated before thirty (30) calendar days of the date you receive this letter.

If you have any questions on this proposed notice, you may contact Celeste Smith, HR Specialist at (240) 672-8018 or celeste.smith@fda.hhs.gov for assistance.

Sincerely,

Albert Conerly, Jr.
Chief Management Officer

Attachments

Receipt Acknowledgement:

To acknowledge your receipt of this notice, please sign and date in the space provided below. Your signature does not mean that you agree or disagree with this notice, and by signing you will not forfeit any rights to which you are entitled. Your failure or refusal to sign will not void the contents of this document.

_____          _____
Employee Signature                                          Date

cc: Tiffany Branch

# EXHIBIT 11

**Smith, Celeste**

| | |
|---|---|
| **From:** | Conerly, Albert |
| **Sent:** | Friday, July 19, 2019 5:00 PM |
| **To:** | Smith, Celeste |
| **Subject:** | FW: Reasonable Accommodation Request - RA-FDAOC-203-19 - Condillac |
| | |
| **Importance:** | High |

My initial reply to Ms. Condillac.

Albert

**From:** Conerly, Albert
**Sent:** Friday, June 21, 2019 11:25 AM
**To:** Condillac, Charmaine <Charmaine.Condillac@fda.hhs.gov>
**Cc:** Thomas, Robert <Robert.Thomas@fda.hhs.gov>
**Subject:** Reasonable Accommodation Request - RA-FDAOC-203-19 - Condillac
**Importance:** High

Hi, Charmaine!

This is follow up to the June 18, 2019, communication I received from Mr. Robert Thomas, Lead Reasonable Accommodation Specialist.

Mr. Thomas indicated that you have withdrawn your request for reassignment. Furthermore, you have requested "to work remotely 100%, except for conducting mediations/facilitations etc. that require [you] to physically attend." I recognize that your formal request for a reasonable accommodation has been submitted for review, and that the agency is waiting for a response to that submission. Nevertheless, I have considered your modified informal request and am providing the following response.

You are approved to work from home three (3) days per week. The other two (2) days you are required physically on site at either White Flint North (WFN) or White Oak (WO) for ADR-specific work including mediations, facilitations, etc., or staff meetings. You are permitted to continue to move your work at home days to accommodate these onsite activities.

Please let me know if there are additional flexibilities needed to support your success.

Thank you for your attention!

Albert Conerly

1



Date:    November 6, 2019

To:      Albert Conerly
         Chief Management Officer
         Office of Operations
         U.S. Food and Drug Administration

From:    Robert J. Thomas
         Lead Reasonable Accommodation Specialist
         Office of Enterprise Management Services
         Office of Operations
         U.S. Food and Drug Administration

Subject: Response to Charmine F. Condillac's Request for
         Reasonable Accommodation
         FDA Case Number: RA-FDACDRH-270-19

This memorandum serves as the official response to Ms. Charmine F. Condillac's request for reasonable accommodation. The following is an analysis of the reasonable accommodation review process that was conducted. The purpose of this analysis is to assist and guide you through the decision-making process and to assist you with responding to this request. The information in this memorandum is for your use and should not be provided to the employee. It is used as a working document in determining the appropriate accommodation(s) if the employee is found to be a qualified individual with a disability in accordance with the Rehabilitation Act of 1973 and the Americans with Disabilities Act Amendments Act (ADAAA) of 2008.

## Regulatory Authority

In accordance with the Rehabilitation Act of 1973 and the Americans with Disabilities Act Amendments Act (ADAAA) of 2008, Federal employers are required to provide reasonable accommodation to an employee when she/he has demonstrated that they have a disability based on having an impairment which substantially limits a major life activity or bodily function as compared to an average person, and is qualified to perform the essential functions of the job, with or without a reasonable accommodation.

## Qualified Individual with a Disability

After it is determined that the employee has a disability, the agency considers whether the employee is a qualified individual with a disability, that is, the employee can perform the essential job functions, with or without a reasonable accommodation. If an employee cannot perform his/her essential job functions after having been provided the


accommodation(s), then she would no longer be considered qualified for the position. However, if the employee can perform the essential job functions that would indicate that she is a qualified individual with a disability.

**Overview of Employee's Disability**

On April 19, 2019, Ms. Condillac submitted a request to the Reasonable Accommodation Office requesting flexible time/schedule for medical treatment related to disability and reassignment, to accommodate her medical condition.

In accordance with FDA's Staff Manual Guide (SMG) 3130.2 - Procedures for Providing Reasonable Accommodations for Individuals with Disabilities, a list of questions along with Ms. Condillac's documentation was sent to the Federal Occupational Health Occupational Medicine Consultant (FOH OMC) to be answered by her medical care professional(s). The answers to the questions are designed to assist the agency in determining whether her medical conditions rise to the level of a disability under the Rehabilitation Act of 1973 and the Americans with Disabilities Act Amendments Act (ADAAA) of 2008.

Based on the updated medical information received October 30, 2019, from the FOH OMC, Ms. Condillac has a medical condition which substantially limits major life activities and functions, including thinking, concentrating, interacting with others, eating and sleeping. Based on this information, Ms. Condillac's medical condition rises to the level of a disability as described by the Rehabilitation Act of 1973, and the ADAAA of 2008, and she *is considered a qualified individual with a disability*; therefore, the agency is required to consider providing reasonable accommodations for her.

The FOH OMC opined that from a previous case (FOH Tracking #19-16361), their files only contain a medical release to initiate communication with her medical care providers, but only regarding information pertaining to the period between January 2016 and April 20, 2019. In the previous medical review (August 2019), the FOH OMC stated that per Ms. Condillac's request, her medical care professional was provided a list of written questions; however, a response was not received until late October 2019.

The FOH OMC opined that there are times when Ms. Condillac feels unable to go to work, unable to concentrate and focus on her work, and unable to make decisions, in addition to limiting energy, appetite, and sleep. The FOH OMC opined that her symptoms are greatly exacerbated by interactions with her supervisor.

The FOH OMC opined that Ms. Condillac seeks to minimize time at the office, and

interaction with her supervisor, chiefly because of affect that interaction with her



supervisor has on her symptoms.

The FOH OMC opined that relationships problems with a supervisor, however severe, are addressed administratively, rather than through the disability accommodation process. Additionally, attendance in the office for duties that are not portable, and interacting with one's supervisor, are essential functions of any position, and accommodations to make these unnecessary would not be considered reasonable. The FOH OMC opined that at present, and for the foreseeable future, Ms. Condillac appears to be unable to perform the essential functions of her position, with or without accommodation. The FOH OMC opined that therefore, reassignment to another vacant position, the accommodation of last resort, would be medically reasonable.

**OEEO Review**

Based on the facts of this case, the available medical information, a review of the essential job functions, the Reasonable Accommodation Office maintains that if administratively feasible, without causing a direct threat to health and safety or posing an undue hardship, management should grant Ms. Condillac the alternative accommodation of reassignment. **Please have Ms. Condillac review the attached FDA Reassignment Policy for more information and complete the Reassignment Questionnaire and provide the Reasonable Accommodation Office with a copy of her current resume within ten (10) business days.**

**The Reasonable Accommodation Office maintains no medical documentation was received and no medical need was established for the additional requested accommodations *(See Background Below)*:**

- **An office;**
- **A language interpreter/translation services for attendance at meetings;**
- **The use of a transcription device or a representative who can transcribe the discussion in the way of an interim accommodation;**
- **A device that you could use to record and play back your supervisor's instructions.**

**Additionally, the interactions between employee and supervisor should be handled administratively.**

**Background**

- On September 26, 2019, Ms. Condillac responded that she would have her health providers send all related documentation directly to FOH. ***No documents were received by FOH. Subsequently, a response from the medical care***


*professional was not received until late October 2019.*

- On September 3, 2019, Mr. Albert Conerly/Supervisor emailed Ms. Condillac in reference to her request for an office; however, M*s. Condillac did not provide any further information and/or documentation pertaining to the request.*

- On August 16, 2019, Ms. Condillac was informed that the FOH Occupational Medicine Consultant did not receive a response for further information from her medical care professional who was contacted per her specific request. Ms. Condillac was contacted and requested to please contact the medical care professional and request that he/she provide the written response to the FOH OMC's request for information, within three (3) business, August 21, 2019. *Additionally, Ms. Condillac was advised that if the response has not been received, the medical review will be completed with the available information.*

- On September 6, 2019, Ms. Condillac sent an email to Mr. Conerly, "I am requesting the use of a transcription device or a representative who can transcribe the discussion in the way of an interim accommodation based on my acute anxiety in interacting in these meetings and the inordinate coercion to engage in these events that are having a tremendous impact on my health. Without this assistance, I am unable to participate and perform the essential and non-essential functions of my position that are being mandated by you. As you are aware, the last time I was rushed to the hospital. In the way of medical documentation my healthcare provider is working on providing the required documentation as part of the previous request for a reasonable accommodation. Thank you for your cooperation and agreement! Charmaine."

  Additionally, Ms. Condillac stated, "A device that I can use to record and play back your instructions will be very useful. I was inspired by the video I watched. Its commendable how adaptable organizations have become when dealing with employees with disabilities! I found this wonderful video that shares some brilliant insights on how the Agency was and presumably still is working with individuals with disabilities. https://www.youtube.com/watch?v=C2QB05kOT5o&t=628s."

  Ms. Condillac was requested to provide medical documentation to support her request of interpreting services; however, she did not respond to the request. *Subsequently, no medical need for the requested accommodation could be established.*

- On July 30, 2019, Ms. Condillac sent an email to Ms. Denise Kight, CI & CT/FDA


Interpreting Services Program Manager and Staff Interpreter requesting information on process for requesting a language interpreter/translation services for attendance at meetings and is a part of request for RA (reasonable accommodation) for intermittent hearing/speech impairment. Ms. Kight informed Ms. Condillac that when a deaf employee needs either ASL (American Sign Language) interpreting coverage or captioning (often referred to as CART (Communication Access Realtime Translation)), they will submit a request to the Interpreting.Services@oc.fda.gov email box. Ms. Kight provide five (5) template examples of types of requests for Ms. Condillac to review. Mr. Conerly acknowledged via email to Ms. Condillac that he was in receipt of her request for interpreting services. Ms. Kight advised Ms. Condillac that the services provided by the program are centrally funded via appropriated funds – specifically earmarked for communication needs for FDA's deaf and hard of hearing population. ***Ms. Kight stated that the ISP is unable to provide services for any individual whose disability is other than deafness or hard of hearing related.*** Should it transpire that, via an approved reasonable accommodation request, captioning services are needed/granted, I'm happy to provide vendor information. Ms. Condillac informed Ms. Kight via email that upon consultation, I have determined that what I need in the way of assistive technology is a transcription service/device. I've checked with some of the resources provided by Mr. Thomas (JAN etc.) and existing approved technology used at FDA and it appears that this will most appropriately accommodate my current needs.

**\*NOTE: Certification by the Reasonable Accommodation Office and Management. All other attempts at reasonable accommodation have been exhausted and it has been concluded that reassignment is the only available option left to explore.**

### Decision-Maker Options

While the agency has a legal obligation to accommodate qualified individuals with disabilities, I would like to reiterate that you are the supervisor and/or decision-maker and the decision rests fully with you. In accordance with FDA's Staff Manual Guide 3130.2 - Processing Reasonable Accommodation Requests, regardless of whether the request was originally made orally or in writing, the review/analysis for the request for reasonable accommodation must be responded to and either granted, denied or an offer for an alternative accommodation pursued within 15-business days from date of receiving this memorandum. Please be aware that any delay in meeting the time-frame could potentially expose the agency to liability in litigation. Also, as part of the decision-making process, please continue to have discussions with Ms. Condillac as it relates to her reasonable accommodation. If you wish to review the FDA's Staff Manual Guide 3130.2 reasonable accommodation procedures, please click of the below link:



www.fda.gov/AboutFDA/ReportsManualsForms/StaffManualGuides/ucm201324.htm.

If you agree with the review/analysis or would like to offer alternative accommodations, please let me know and I will assist you in developing the appropriate decision memorandum. In the interim, I have provided a draft decision letter for your review.

If you disagree with the review/analysis and fail to offer an alternative accommodation, you should be prepared to articulate why providing accommodations to Ms. Condillac would pose an undue hardship on the agency. An undue hardship means that providing a particular accommodation would cause significant difficulty or expense to the agency. A determination of an undue hardship is always made on a case-by-case basis, considering factors that include the nature and cost of the reasonable accommodation needed, and the impact of the reasonable accommodation on the agency's operations. Should you deny the request for reasonable accommodation, it is advisable that you contact me before advising Ms. Condillac of your decision. I will assist you in crafting a denial letter to issue to her based on your reasons for undue hardship. Please be aware that Ms. Condillac has appeal rights which include requesting reconsideration from upper management and/or filing an informal and formal EEO complaint.

**Please note that we do not provide medical documentation that is associated with this review/analysis directly to you. Also, please be aware that any medical information that is shared with you either by Ms. Condillac or me must be kept confidential. Disclosure of this information to someone who doesn't have a business need to know, may be a per se violation of the Rehabilitation Act of 1973.**

In addition, there are several resources available to assist you in identifying the appropriate accommodation or alternative.

    • Department of Defense (DoD) Computer/Electronic Accommodations Program (CAP) assists in making training centers accessible and the training experience positive for participants with disabilities; Improve employees' accessibility options and working conditions; provides computer related equipment to employee at no cost to the agency. Telephone: 703-614-8416; VP: 571-384-5629; Email: cap@mail.mil; Website: http://www.cap.mil;

    • The U.S. Department of Agriculture (USDA) established the Technology & Accessible Resources Give Employment Today (TARGET) Center which utilizes the power of technology and provide impactful services related to improving accessibility and contributing to the complete employment experience of individuals with disabilities. Telephone: 202-720-2600; https://www.targetcenter.dm.usda.gov/;
    • Job Accommodation Network (JAN) is a source of free, expert and confidential



guidance on workplace accommodations and disability employment issues; Telephone: 1-800-526-7234; www.jan.wvu.edu;  www.askjan.org.

- U.S. Access Board promulgates standards on accommodation person in buildings and other settings; Telephone: (202) 272-0080; https://www.access-board.gov.

Finally, please remember that requesting a reasonable accommodation is the right of every employee under the Rehabilitation Act of 1973. It is unlawful for a decision-maker or manager to retaliate against an employee for exercising this right. Please be aware that if an employee suspects that the decision-maker has engaged in retaliation, she/he may contact an EEO counselor and initiate the EEO complaint process.

If you have any questions about this memorandum or the reasonable accommodation process, please feel free to contact me at (301) 796-9406, or by email at Robert.Thomas@fda.hhs.gov.



**U.S. FOOD & DRUG** ADMINISTRATION

Date:          November 12, 2019

To:            Charmine F. Condillac
               Associate Ombudsman
               Office of Operations
               U.S. Food and Drug Administration

From:          Albert Conerly
               Chief Management Officer
               Office of Operations
               U.S. Food and Drug Administration

Subject:       Response to Request for Reasonable Accommodation
               FDA Case Number:  RA-FDACDRH-270-19

This memorandum is in response to the review of your reasonable accommodation which was submitted to the Reasonable Accommodation Office on April 19, 2019, requesting flexible time/schedule for medical treatment related to disability and reassignment, to accommodate your medical condition. Additionally, you requested the following accommodations:

- An office;
- A language interpreter/translation services for attendance at meetings;
- The use of a transcription device or a representative who can transcribe the discussion in the way of an interim accommodation;
- A device that you could use to record and play back your supervisor's instructions.

The review of your reasonable accommodation request has been completed and an analysis provided.  Based on the analysis of the Reasonable Accommodation Office, a review of your medical information and in accordance with the Rehabilitation Act of 1973, the Americans with Disabilities Act Amendments Act (ADAAA) of 2008 and FDA's Policy on Reasonable Accommodation under Section 2 of SMG 3130.2, as the decision-maker, *I am granting you reassignment as the reasonable accommodation of last resort.*

The decision is supported by the medical review and a review of the essential job functions that determined that you are unable to perform the essential functions of your job with or without an accommodation.

Additionally, the review/analysis maintains no medical documentation was received and no medical need was established for the additional requested accommodations:

- *An office;*


- *A language interpreter/translation services for attendance at meetings;*
- *The use of a transcription device or a representative who can transcribe the discussion in the way of an interim accommodation; and*
- *A device that you could use to record and play back your supervisor's instructions.*

Please review the attached FDA Reassignment Policy for more information and complete the Reassignment Questionnaire and provide the Reasonable Accommodation Office with a copy of your current resume within ten (10) business days. Please send the documents to: ReasonableAccommodation@fda.hhs.gov.

**\*NOTE: Certification by the Reasonable Accommodation Office and Management. All other attempts at reasonable accommodation have been exhausted and it has been concluded that reassignment is the only available option left to explore.**

This memorandum officially addresses your request for reasonable accommodation that has been processed in accordance with SMG 3130.2, FDA's Procedures for Providing Reasonable Accommodations for Individuals with Disabilities.

Should your medical condition change or should you require further accommodations, please be sure to let me know immediately. Should you have any questions about the decision in this memorandum, please raise them with me. If you have questions about the reasonable accommodation process, please contact Mr. Robert J. Thomas Reasonable Accommodation Specialist at (301)796-9405, or by email at Robert.Thomas@fda.hhs.gov.

1. If you wish to seek reconsideration of this decision, you may take the following steps:

- The request for reconsideration will be submitted to the original decision-maker; within five business days;

- If the original decision-maker denies the request for reconsideration, the individual will present the request to the next level supervisor who will respond to the request within ten business days;
- If the original decision is not reversed, the request for reconsideration will be elevated to the next management official within the chain of command who will, in turn respond within ten business days;

2. You may seek reconsideration of the denial of your request by choosing from the options listed below:



**U.S. FOOD & DRUG** ADMINISTRATION

- To pursue an EEO discrimination complaint under 29 C.F.R. 1614, by contacting an EEO Counselor, at (301)796-9400, to initiate discrimination complaint counseling within 45 days from the date of this notice of denial or;

- Bargaining unit employees may file a grievance under the Collective Bargaining Agreement, Article 45, within the specified time frame or;

- Non-bargaining unit employees may submit a Dispute Filing under Instruction 771-1, Administrative Grievance Procedure, within the specified time frame or;

- To pursue Merit Selection Promotion Board (MSPB) appeal procedures or;

- Contact the Conflict Prevention and Resolution Office at (301)796-9415 and initiate the Informal Mediation Process.

**Acknowledgement of Receipt**

To acknowledge that you have received this notice, please sign and date in the space below. Your signature does not mean that you agree or disagree with this memorandum. By signing, you will not forfeit any rights to which you are entitled. Your failure to sign will not void the contents of this memorandum.

_Albert Conerly_  
Albert Conerly

_11/12/19_  
Date

**I acknowledge receipt of this memorandum**

_Charmine F. Condillac_  
Charmine F. Condillac

_11/12/19_  
Date

# Guidance on Reassignment as a Reasonable Accommodation

The following FDA procedures are applicable when providing a reassignment as a reasonable accommodation:

## Purpose

In accordance with the Equal Employment Opportunity Commission's (EEOC) *Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act,* reassignment may be used as a form of reasonable accommodation. Reassignments will be provided to an employee who, because of a disability, can no longer perform the essential functions of his/her current position, with or without reasonable accommodation.

Before contemplating reassignment as a reasonable accommodation, the Agency should first exhaust accommodations that would enable an employee to remain in his/her current position. It is required only after it has been determined that there are no effective accommodations that would enable the employee to perform the essential functions of his/her current job, or if all other possible accommodations would impose undue hardship. Neither the FDA nor the ADAAA requires an agency to create a new position or move other employees from their jobs to create a vacancy.

## Determining Employee Qualification

Reassignment is available only to "qualified" <u>current</u> employees, not to applicants or former employees. An employee is deemed "qualified" for a new position if s/he:

1. Satisfies the requisite skill, experience, education, and other job-related requirements of the position; and

2. Can perform the essential functions of the new position, with or without reasonable accommodation.

The employee does not need to be the best-qualified individual for the position in order to obtain the reassigned position (Outlined in the Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the American with Disabilities Act). There is no obligation for the Agency to assist the individual to become qualified, and is not required to provide training so that the employee acquires the necessary skills to obtain a new position. The Agency is required to provide an employee with a disability, who is being reassigned, with any training that is normally offered to anyone hired for or transferred to a position.

## Documentation

All requests for reassignment under the reasonable accommodation provision must include the following documentation:

1. A copy of the employee's resume;
2. A completed FDA Reassignment Questionnaire; and
3. Certification by the Certification by the Reasonable Accommodation Office and Management that all

1

other attempts at reasonable accommodation have been exhausted and it has been concluded that reassignment is the only available option left to explore.

An FDA Reasonable Accommodation Specialist (RAS) will forward the above documentation to the Office of Human Resources (OHR) so that a determination can be made as to which positions the employee is qualified for. The RAS may need to work with a Federal Occupational Health physician in order to make a final decision as to whether positions deemed feasible by OHR fit the needs of the employee as reasonable accommodation.

## Position Eligibility

Reassignments may be made only to "vacant", funded positions. A "vacant" position is defined as a position available when the employee asks for reasonable accommodation, or that the employer is certain will become available within a reasonable amount of time. A "reasonable amount of time" should be determined on a case-by-case basis considering relevant facts, such as whether the employer based on experience, can anticipate that an appropriate position will become vacant within 60-days. A position is also considered vacant if an employer has posted a notice or announcement seeking applications for that position, or up to the time the position has been filled. Employers are not required to create new positions or move other employees from their jobs in order to create a vacancy.

The employer will reassign the individual to an available vacant position for which the employee is qualified that is equivalent in terms of pay, status, or other relevant factors (e.g., benefits, geographical location, etc*). If there is not a vacant equivalent position, the employer will reassign the employee to a vacant lower-level position for which the individual is qualified. *Assuming there is more than one vacancy for which the employee is capable, the employer will place the individual in the position that is most comparable to the employee's current position in terms of pay, status, etc. If it is unclear which position is most equivalent, the employer should consult the employee about his/her preference before determining the position to which the employee will be reassigned. If preference cannot be established, the employee will be placed in the position which best fits his/her qualifications and limitations, as determined by the Deputy Commissioner for Operations in consultation with the Center Executive Officer or designee. In situations where the employee is reassigned to a lower graded position, the employer is not required to pay the individual's original salary. [1]

**\*NOTE: In identifying a reassignment position, the information provided by the employee in the FDA Reassignment Questionnaire has to be taken into account.**

## Position Identification

The Reasonable Accommodation Specialist will collaborate with the Executive Officer of the affected Center to identify vacant positions in the Division/Office/Center for which the employee may be qualified based on the review of the employee's resume by HR. If no such

---

[1] EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship, October 17, 2002.

2

vacancies exist within the Center, or are projected to be available, the Reasonable Accommodation Specialist will collaborate with OHR to advise them of the employee's limitations and to determine feasible vacancies within the Agency/Department. The employee will be reassigned to a vacant position within the Agency/Department based on the review of the employee's resume by HR. If it is determined that a suitable position exists in a different FDA Center, the Reasonable Accommodation Specialist will notify the Executive Officer and will forward the employee's resume to the hiring manager.

When no vacancy is found within the Agency, a request to reassign the employee must be submitted through the Deputy Commissioner for Operations. The Deputy Commissioner for Operations or designee becomes the decision-maker when this occurs. A search for a vacant position is then conducted at the Department.

 * **NOTE:** The search for a vacant position should not exceed a 60-day period. If a vacancy is found within the original office for which the employee qualifies within the 60-day period then the employee will be reassigned to that position in his/her original office.

## Acceptance/Declination of Reassignment

When an appropriate position is identified and all qualifications are met, an offer of reassignment will be presented to the employee. The employee may accept or reject the reassignment; however if the individual declines the offer, then the Agency has met its reasonable accommodation obligation. Consequently, the employee is no longer entitled to additional reasonable accommodation and may be terminated because she/he can no longer perform the essential functions of the job.

The Division/Office/Center, which has a suitable vacancy for the qualified employee, has an obligation to accept the individual's reassignment. Refusal by a Division/Office/Center to accept the reassignment may be construed as a denial of reasonable accommodation thereby placing the Agency at risk for liability and possible litigation.

## Confidentiality Requirements

FDA managers and supervisors may only be told about necessary restrictions pertaining to the work or duties of an employee requesting reassignment as a reasonable accommodation. Any information beyond this may be considered a breach of confidentiality and/or violate the Rehabilitation Act of 1973 as well as the American with Disabilities Act Amendments Act (ADAAA) of 2008. As the Agency is committed to protecting itself at all times from litigation.

Managers are encouraged to rely on the information contained in the recommendation from the RAS. Please note that medical documentation associated with requests for reasonable accommodation is not provided to management. Medical documentation can contain information that is unrelated to the request for reasonable accommodation.

## Smith, Celeste

| | |
|---|---|
| **From:** | Conerly, Albert |
| **Sent:** | Friday, November 8, 2019 3:09 PM |
| **To:** | Smith, Celeste |
| **Subject:** | FW: RA Matters - Follow Up (11.08.19) |
| | |
| **Importance:** | High |

FYI.

Albert

---

**From:** Condillac, Charmaine
**Sent:** Friday, November 08, 2019 3:07 PM
**To:** Thomas, Robert <Robert.Thomas@fda.hhs.gov>; Conerly, Albert <Albert.Conerly@fda.hhs.gov>; Branch, Tiffany <Tiffany.Branch@fda.hhs.gov>
**Cc:** Morris E. Fischer <morris@mfischerlaw.com>
**Subject:** FW: RA Matters - Follow Up (11.08.19)
**Importance:** High

Dear Mr. Thomas, please be advised that I am hereby retracting my request for a reassignment as a Reasonable Accommodation. As per my prior requests contained in my application and ongoing attempts at interactively dialoging with Agency personnel, as an accommodation, I am requesting the following:

- Telework 5 days per week and come to campus/FDA facilities to conduct all ADR strategies that are conducted in person
- Ability to use assistive technology (Cisco Jabber, WebEx) to participate in virtual ADR strategies {since I don't have a private office space to conduct these confidential discussions} and also as part of my requested accommodation.
- Please advise at your earliest convenience if I need to modify the form and the process in which I can obtain the FOH recommendation and associated documentation.
  - Note: My requests for a Reassignment out of a Hostile Work Environment were/are part of the Agency's Anti-Harassment Policy



---

**From:** Condillac, Charmaine
**Sent:** Friday, November 08, 2019 9:30 AM
**To:** Thomas, Robert <Robert.Thomas@fda.hhs.gov>; Conerly, Albert <Albert.Conerly@fda.hhs.gov>; Branch, Tiffany <Tiffany.Branch@fda.hhs.gov>
**Cc:** Morris E. Fischer <morris@mfischerlaw.com>
**Subject:** RE: RA Matters - Follow Up
**Importance:** High

1

Dear Mr. Thomas, as per my email of yesterday (11.7.19), I'd like the opportunity to consult with my attorney regarding the submission below and get back to you. Therefore, please hold off on processing the questionnaire/application until I get back to you and give you the green light.

At this point the questionnaire I've submitted is **null and void** until either I or my attorney get back to you/Agency personnel. My concern relates to the policy that you've submitted for my review and its relationship to the SMG and HHS/FDA policy and a statement that I acknowledge by asking for a reassignment that "I am unable to perform the essential functions of my position as they are described in the PD"

- I've **never** made this statement and in an effort to deal with the ongoing harassment and hostile work conditions that have directly contributed to my medical condition and my subsequent request for an accommodation, I will not be compelled to agree to this mischaracterization of the facts. Furthermore, it is my hope that the entire spectrum of recommendations made by FOH be disclosed to me immediately.

- My continued concern is that once again like many prior/recent actions, the approval of the RA that lasted a year, is being utilized to push me out of my position and employment at FDA, based on the statement "the employee is no longer entitled to additional reasonable accommodation and may be terminated because she/he can no longer perform the essential functions of the job."



-

Per my email to Albert, I requested critical information from him,

- "Albert, I would greatly appreciate your/the Agency's definition of the essential functions of my current position so that I can make an informed position and proceed accordingly. Please know that I have never contended that I'm unable to perform the essential functions of my position as its described in my PD as a GS-14 Associate Ombudsman. Please understand that my FMLA and FOH medical documentation states a difficulty in engaging in highly "adversarial engagements with you and the staff and the hostile work environment" that's been proven to exacerbate my stress and anxiety. More notably, both of my health care providers have firmly asserted in communication/documentation provided to FOH's Medical Consultant Dr. Feeks, that they believe me to be highly competent and fully capable of excelling in the work as its described in my PD. May I once again request a copy of the FOH recommendation that's been submitted to FDA?

- Getting the essential functions of the position from you would be greatly appreciated.

- I am attaching the current PD for my position and my resume (that outlines the work I did as an ombuds between 2014-2015) for your review and consideration in my request above.



Very gratefully,
Charmaine

---

**From:** Thomas, Robert
**Sent:** Friday, November 08, 2019 9:06 AM
**To:** Condillac, Charmaine <Charmaine.Condillac@fda.hhs.gov>
**Subject:** RE: RA Matters - Follow Up

2

Good Morning Ms. Condillac,

I have received your documents and will request HR a 30 day vacancy to include the criteria you indicated on the RA Questionnaire.

# Robert J. Thomas
Lead Reasonable Accommodation Specialist
Office of Operations
U.S. Food and Drug Administration
Direct: 301-796-9406
Office: 240-402-1650
Fax:     301-847-8607
Robert.Thomas@fda.hhs.gov

<< OLE Object: Picture (Device Independent Bitmap) >>

**From:** Condillac, Charmaine
**Sent:** Thursday, November 07, 2019 4:18 PM
**To:** Thomas, Robert <Robert.Thomas@fda.hhs.gov>; Conerly, Albert <Albert.Conerly@fda.hhs.gov>
**Cc:** Morris E. Fischer <morris@mfischerlaw.com>
**Subject:** FW: RA Matters - Follow Up
**Importance:** High

Dear Mr. Thomas, I'd like the opportunity to consult with my attorney regarding the submission below and get back to you. Therefore, please hold off on processing the questionnaire/application until I get back to you and give you the green light.

Very gratefully,
Charmaine

**From:** Condillac, Charmaine
**Sent:** Thursday, November 07, 2019 1:19 PM
**To:** Conerly, Albert <Albert.Conerly@fda.hhs.gov>; Thomas, Robert <Robert.Thomas@fda.hhs.gov>
**Cc:** Morris E. Fischer <morris@mfischerlaw.com>
**Subject:** FW: RA Matters - Follow Up
**Importance:** High

Albert, thank you for providing the documents below!

Mr. Thomas, kindly find the completed questionnaire and my resume attached.

<< File: RA Questionnaire 2019.docx >>  << File: RA Reassignment Policy.doc >>

**From:** Conerly, Albert
**Sent:** Thursday, November 07, 2019 12:55 PM
**To:** Condillac, Charmaine <Charmaine.Condillac@fda.hhs.gov>

3

Good Afternoon, Charmaine!

I have received the updated RA package from Mr. Thomas, and I intend to meet with you to go over the response on Tuesday, November 12th at 1:30PM. You have already accepted the meeting invitation.

Please read the attached policy document for more information about the RA process and follow the guidance therein. I have attached the RA questionnaire, which is referenced in the policy document. Note that you have 10 business days from the date of this email to provide the required documents to Mr. Thomas.

Thank you for your attention and cooperation!

Albert
<< File: Condillac - RA Questionnaire 2019.docx >>  << File: Charmaine Condillac Resume (2018).pdf >>

4



**Smith, Celeste**

| | |
|---|---|
| **From:** | Conerly, Albert |
| **Sent:** | Friday, December 20, 2019 8:46 AM |
| **To:** | Smith, Celeste |
| **Subject:** | FW: Reasonable Accommodation Request - RA-FDAOC-203-19  - Condillac |

FYI.

**From:** Thomas, Robert <Robert.Thomas@fda.hhs.gov>
**Sent:** Thursday, December 19, 2019 1:03 PM
**To:** Conerly, Albert <Albert.Conerly@fda.hhs.gov>
**Subject:** FW: Reasonable Accommodation Request - RA-FDAOC-203-19 - Condillac

FYI

# Robert J. Thomas

Lead Reasonable Accommodation Specialist
Office of Enterprise Management Services
Office of Operations
U.S. Food and Drug Administration
Direct:  301-796-9406
Office:  240-402-1650
Fax:      301-847-8607
Robert.Thomas@fda.hhs.gov



**From:** Thomas, Robert
**Sent:** Thursday, December 19, 2019 1:01 PM
**To:** Condillac, Charmaine <Charmaine.Condillac@fda.hhs.gov>
**Cc:** 'Morris E. Fischer' <morris@mfischerlaw.com>
**Subject:** Reasonable Accommodation Request - RA-FDAOC-203-19 - Condillac

**Good Afternoon Ms. Condillac,**

**The FOH Medical Review and the Ra Analysis are not releasable to you under the Reasonable Accommodation process. Your essential job functions are in your position description.**

**On November 7, 2019, you were issued the Decision Letter in reference to your reasonable accommodation request , which you acknowledged on November 12,**

1

2019. The decision indicated that based on your medical condition/limitations you were unable to perform the essential functions of your position as GS-0301-14 – Associate Ombudsman, with or without an accommodation. Thus reassignment as the reasonable accommodation was warranted. You were required to provide a copy of your current resume and to complete the Reasonable Accommodation Questionnaire, which you provide to me on November 7, 2019 and requested holding off on processing the questionnaire/application until you get back to me give me the green to proceed. On November 8, 2019, you emailed and stated that you would like to consult with your attorney, subsequently stating the you hereby retract your request for a reassignment as a reasonable accommodation.

Reassignment as the reasonable accommodation was warranted as a last resort as it was determined that you were unable to perform the essential functions of your position, thus your statement to retract your reasonable accommodation request for reassignment did not stop the reassignment process which is based on your medical condition/limitations.

If you have had a chance to consult with your attorney, please advise if you desire to continue in the reasonable accommodation reassignment process by close of business on Friday, December 27, 2019. If you do wish to proceed with the reassignment action, I will close the reasonable accommodation request and refer any further action to your supervisor and the Human Resources Specialist.

Respectfully,

## Robert J. Thomas

Lead Reasonable Accommodation Specialist
Office of Enterprise Management Services
Office of Operations
U.S. Food and Drug Administration
Direct: 301-796-9406
Office: 240-402-1650
Fax: 301-847-8607
Robert.Thomas@fda.hhs.gov





**Smith, Celeste**

| | |
|---|---|
| **From:** | Thomas, Robert |
| **Sent:** | Monday, December 30, 2019 12:16 PM |
| **To:** | Conerly, Albert |
| **Cc:** | King, Michelle (FDA); Smith, Celeste |
| **Subject:** | Reasonable Accommodation Request - RA-FDAOC-203-19 - Condillac |

Good Morning Mr. Conerly,

I did not received a response from Ms. Condillac as requested by close of business on Friday, December 27, 2019, in regards to the reasonable accommodation reassignment. I informed her and her attorney via email that of as of today, I am closing the reasonable accommodation reassignment process due to lack of response on her part. The disposition of your response accommodation request is now in the your hands. I am available to discuss, if needed.

Respectfully,

# Robert J. Thomas

Lead Reasonable Accommodation Specialist
Office of Enterprise Management Services
Office of Operations
U.S. Food and Drug Administration
Direct:  301-796-9406
Office:  240-402-1650
Fax:      301-847-8607
Robert.Thomas@fda.hhs.gov



1

# ESSENTIAL DUTIES

- Collaborates with officials to achieve constructive resolution to disputes; seeks fair and equitable solutions to employees' problems; suggests approaches to address and manage conflict, and suggest policy and procedural changes; helps to build constructive relationships by working to resolve disputes and making recommendations intended to create a more positive work environment, thereby contributing to improved office productivity.

- Provide support to the Ombudsman in mediation disputes, and assisting to resolve issues in a timely, fair, and impartial manner

- Maintain neutrality in each case, and serves as an advocate for fair process and outcomes.

- Work closely with the Ombudsman on day to day operations

- Provide advice and assistance to Ombudsman in making recommendations of resolutions to the staff.

- Collaborate with Ombudsman in the development of short-and-long term resolutions and presents to 00 Senior Leadership.

- Represent Ombudsman in discussions and meetings related to matters of concern as deemed appropriate.

- Serve as a neutral third party in conflict resolutions and works to achieve fair and equitable solutions to problems.

- Collaborate with other Office of Operations and FDA offices on issues of general concern and interprets policies to help resolve conflict or make improvements in the Office of Operations procedures.

- Assist in the mediation and/or negotiation of disputes occurring at all staff levels. Educates management and the general workforce, in the concepts and processes of conflict resolution either in one-on-one or group settings.

- Recommend approaches for addressing and managing conflict and collaborates with other Office of Operations offices on issues of general concern.

- Provide leadership in developing and implementing strategies for building and sustaining cooperative relations between managers and staff employees in the Office of Operations.

- Research, identify, and develop tools to be used to conduct assessments and evaluations of the organization's conflict climate.

- Work with leadership to develop plans to improve organizational environment.

# POSITION DESCRIPTION *(Please Read Instructions on the Back)*

| | | |
|---|---|---|
| | | 1. Agency Position No. 14 BOGO |

| 2. Reason for Submission | 3. Service | 4. Employing Office Location | 5. Duty Station | 6. OPM Certification No. |
|---|---|---|---|---|
| ☐ Redescription ☑ New ☐ Reestablishment ☐ Other | ☑ Hdqtrs. ☐ Field | Silver Spring, MD | Bethesda, MD | |

Explanation *(Show any positions replaced)*

| 7. Fair Labor Standards Act | 8. Financial Statements Required | 9. Subject to IA Action |
|---|---|---|
| ☑ Exempt ☐ Nonexempt | ☐ Executive Personnel Financial Disclosure ☐ Employment and Financial Interests | ☐ Yes ☑ No |

| 10. Position Status | 11. Position Is: | 12. Sensitivity | 13. Competitive Level Code |
|---|---|---|---|
| ☑ Competitive ☐ Excepted *(Specify in Remarks)* ☐ SES (Gen.) ☐ SES (CR) | ☐ Supervisory ☐ Managerial ☑ Neither | ☐ 1—Non-Sensitive ☐ 2—Noncritical Sensitive ☐ 3—Critical Sensitive ☐ 4—Special Sensitive | 14. Agency Use |

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. U.S. Office of Personnel Management | | | | | | // |
| b. Department, Agency or Establishment | Associate Ombudsman | GS | 301 | 14 | 7K | 6/12/14 |
| c. Second Level Review | | | | | | // |
| d. First Level Review | | | | | | // |
| e. Recommended by Supervisor or Initiating Office | | | | | | // |

16. Organization Title of Position *(if different from official title)*

17. Name of Employee *(if vacant, specify)*

| 18. Department, Agency, or Establishment | c. Third Subdivision |
|---|---|
| FOOD AND DRUG ADMINISTRATION | |
| a. First Subdivision | d. Fourth Subdivision |
| Office of the Operations | |
| b. Second Subdivision | e. Fifth Subdivision |

19. Employee Review--This is an accurate description of the major duties and responsibilities of my position.

Signature of Employee *(optional)*

**20. Supervisory Certification.** *I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the* knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

| a. Typed Name and Title of Immediate Supervisor | b. Typed Name and Title of Higher-Level Supervisor or Manager *(optional)* |
|---|---|
| Albert Conerly Ombudsman | |
| Signature *Albert Conerly, Jr.* Date 8/7/14 | Signature Date // |

**21. Classification/Job Grading Certification.** *I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the U.S. Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards.*

Typed Name and Title of Official Taking Action
Joanne Kennedy
Human Resources Specialist (Classification)

Signature *Joanne Kennedy* Date 6/12/14

22. Position Classification Standards Used in Classifying/Grading Position

OPM Primary Standard, TS-134 August 2009

**Information for Employees.** The standards, and information on their application, are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the U.S. Office of Personnel Management. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the U.S. Office of Personnel Management.

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee *(optional)* | | // | | // | | // | | // | | // |
| b. Supervisor | | // | | // | | // | | // | | // |
| c. Classifier | | // | | // | | // | | // | | // |

24. Remarks

FPL: GS-14
Bus Code: 8888

25. Description of Major Duties and Responsibilites *(See Attached)*

| NSN 7540-00-634-4265 | Previous Edition Usable | 5008-106 | OF 8 (Rev. 1-85) (CDC Adobe Acrobat 3.01 Electronic Version, 1/98) U.S. Office of Personnel Management FPM Chapter 295 |
|---|---|---|---|

**Associate Ombudsman**
**GS-301-14**

**Introduction**

This position is located in the Food and Drug Administration (FDA), Office of Operations (OO), Immediate Office (IO). The incumbent serves as a confidential and informal source of information, facilitator, consultant, and practitioner for dispute resolution, helping in problem solving and the constructive management and resolution of conflict. As an Associate Ombudsman, the incumbent collaborates with officials to achieve constructive resolution to disputes; seeks fair and equitable solutions to employees' problems; suggests approaches to address and manage conflicts, and suggests policy and procedural changes; helps to build constructive relationships by working to resolve disputes and making recommendations intended to create a more positive work environment, thereby contributing to improved office productivity.

**Major Duties and Responsibilities**

The incumbent researches complaints, providing support to the Ombudsman in mediation disputes, and assisting to resolve issues in a timely, fair, and impartial manner. Reviews and examines complaints regarding decisions rendered to the staff. Maintains neutrality in each case, and serves as an advocate for fair process and outcomes.

Works closely with the Ombudsman on day to day operations; receives complaints, performs technical reviews and takes steps to resolve sensitive management and other workplace issues. Provides advice and assistance to Ombudsman in making recommendations of resolutions to the staff. Collaborates with Ombudsman in the development of short-and-long term resolutions and presents to OO Senior Leadership. Represents Ombudsman in discussions and meetings related to matters of concern as deemed appropriate.

Listens to staff concerns, clarifies procedures, discusses options and, when requested, acts as an intermediary. Serves as an intake person, receiving inquiries for assistance with a wide range of workplace issues. Advocates for fair processes and promotes building a supportive, inclusive workplace. Serves as a neutral third party in conflict resolutions and works to achieve fair and equitable solutions to problems. Identifies resources and makes referrals so that individuals seeking assistance may go directly to the source that can best address the concern. Collaborates with other Office of Operations and FDA offices on issues of general concern and interprets policies to help resolve conflict or make improvements in the Office of Operations procedures. Conducts research to identify systemic problems and initiates corrective or preventive actions. Assists in the mediation and/or negotiation of disputes occurring at all staff levels. Educates management and the general workforce, in the concepts and processes of conflict resolution either in one-on-one or group settings.

Develops and implements disputes resolution and conflict management programs for use in the organization.

Recommends approaches for addressing and managing conflict and collaborates with other Office of Operations offices on issues of general concern. Provides leadership in developing and implementing strategies for building and sustaining cooperative relations between managers and staff employees in the Office of Operations; and provides guidance and methods for the informal resolution of disputes.

Researches, identifies, and develops tools to be used to conduct assessments and evaluations of the organization's conflict climate. Conducts conflict climate assessments and evaluations in Office of Operations organizations. Works with leadership to develop plans to improve organizational environment. Conducts and/or assist in conducting assessments and evaluations of Ombudsman program effectiveness.

Performs other work as assigned.

## FACTOR LEVEL DESCRIPTIONS

### Factor 1 - Knowledge Required by the Position

Mastery knowledge of the concepts, principles and methods associated with dispute resolution; thoroughly skilled in the use of facilitation and mediation techniques; and ability to analyze and evaluate issues to determine their relative importance and susceptibility to compromise, alternative solution and settlement.

Comprehensive knowledge and ability to gain and maintain the trust necessary to handle any and all assignments in a thoroughly confidential, competent and professional manner without reference to any previously established technical guidelines or policies.

Mastery knowledge of the concepts, principles, practices, and techniques used in the management of projects and engagement with diverse staff.

Ability to research, gather, assemble, and analyze information; draw conclusions and inferences; summarize findings and provide comprehensive recommendations; and present diverse and highly complex information to senior management.

Ability to communicate orally and in writing in order to organize and present technical briefings and alternative methods of resolution to workplace issues; to encourage understanding of disputed or unpopular decisions, and negotiated solutions; and to make frequent oral and written presentations on dispute resolution issues in a clear and concise manner to senior management and staff.

Ability to interpret and appropriately implement broad and changing policies and procedures concerning dispute resolution approaches and techniques.

Ability to negotiate with senior level management and staff employees regarding workplace disputes.

Skill in exercising sound judgment, discretion, diplomacy, and tact to work effectively with high-level individuals; and ability to establish and maintain open communications and rapport with all employees.

**Factor 2 - Supervisory Controls**

The Associate Ombudsman works under the general supervision of the Ombudsman. The supervisor provides administrative direction with assignments in terms of broadly defined missions or functions. The incumbent independently plans, designs, and carries out the work to be done. The supervisor reviews final work products and recommendations for their effect on the workforce. The supervisor normally accepts work as being technically authoritative and without the need for significant change.

**Factor 3 - Guidelines**

Guidelines consist of general administrative manuals, policy and procedures documents. Guidelines also include laws, policies, decisions and regulations for top level managers and human resource management professionals in FDA. Guidelines are also available in the form of broad legislation, policy statements, directives, orders, notices/bulletins, and circulars, which are often general, nonspecific, and lack clear applicability to specific unusual and sensitive situations. The incumbent must use seasoned judgment and ingenuity and exercise broad latitude in determining the intent of the applicable guidelines. The incumbent must exercise considerable judgment in interpreting and adapting existing policies/guidelines, and discretion in developing novel approaches to situations not previously encountered or covered by written policy.

**Factor 4 - Complexity**

The work of the position is varied, unstructured, and consists of many different concurrent or sequential assignments. The work requires a high degree of judgment in working to identify, analyze, and resolve workplace conflict and to provide advice, guidance, and initiative to support the search for better solutions to workplace disputes. These situations are inherently difficult given the nature of the issues involved, the individuals affected, and the divergent points of view. The position requires the exercise of creativity and originality in dealing with high-level management issues and in assessing and making recommendations about current situations and future directions. The incumbent must quickly acclimate to new situations and synthesize complex and large amounts of information in a short timeframe. The incumbent serves as an expert consultant in dispute resolution issues in the workplace and conducts comprehensive research and evaluations. The incumbent also takes the lead in conducting and/or acquiring mediation and negotiation training appropriate for Office of Operations officials.

**Factor 5 - Scope and Effect**

The purpose of the work is to serve as the Associate Ombudsman in the Office of Operations, providing all employees the opportunity to access dispute resolution and mediation processes to request early intervention or to seek assistance from more than one source to promote constructive conflict management or resolution. The incumbent serves as an expert dispute resolution practitioner and provides confidential and informal assistance to managers and staff employees in resolving workplace disputes and is actively involved with a broad range of employees at various levels. The work significantly impacts the work of others throughout the Office of Operations, and cuts across Offices and Divisions and strongly influences managers and employees in the work place.

**Factor 6 - Personal Contacts**

Contacts are with Office of Operations senior leadership and staff employees. Contacts are also with individuals in the Department of Health and Human Services, and may include the union, other voluntary organizations, members of the dispute resolution and professional organizations, representatives from other Federal agencies and private institutions, in a moderately unstructured setting.

**Factor 7 - Purpose of Contacts**

The purpose of contacts is to understand, assist, persuade, and negotiate concerning matters in dispute, seeking fair and equitable solutions to employee problems, and supporting the effective management of conflict. In addition, contacts are intended to build constructive relationships through the management and resolution of disputes, and to recommend ways to create a more positive work environment. Furthermore, contacts are needed to influence managers and senior level staff with conflicting viewpoints to engage in constructive conversations and to accept and, in some cases, implement findings and recommendations.

**Factor 8 - Physical Demands**

The work is primarily sedentary. There are no special physical demands required by the position.

**Factor 9 - Work Environment**

The work is performed in a typical office setting. Occasional travel may be required to attend meetings, seminars, and conferences or training.

**Organization:** DHHS/FDA/OO          **PD Number:**

**Title, Series and Grade:** Associate Ombudsman, GS-301-14

**References:** OPM Position Classification Flysheet for Miscellaneous Administration and Program Series, GS-0301, TS-34, January 1979; OPM APPENDIX 3 PRIMARY STANDARD

**Title and Series Determination:** This series includes which are to perform two-grade interval work for which no other series is appropriate. The work requires analytical ability, judgment, discretion, and knowledge of a substantial body of administrative or program principles, concepts, policies, and objectives. No titles are specified for positions in this series.

| FACTOR | CRITERIA | POINTS ASSIGNED | FLD | COMMENTS |
|--------|----------|-----------------|-----|----------|
| 1 | Knowledge Required | 1550 | 1-8 | Mastery knowledge of dispute resolution in order to facilitate or mediate complaints and resolve issues. Decisions or recommendations may significantly change policies and procedures. |
| 2 | Supervisory Controls | 650 | 2-5 | Administrative direction with broadly defined missions or functions. Independent planning and carrying out programs, studies or other work. Results considered technically authoritative and normally accepted without significant change. |
| 3 | Guidelines | 650 | 3-5 | Guidelines are broadly stated and nonspecific. Employee must use judgment and ingenuity in interpreting the intent of the guides that do exist and in developing applications to specific areas of work. |
| 4 | Complexity | 325 | 4-5 | Varied duties requiring many different and unrelated processes or methods that are applied to a broad range of activities or analysis. The situations are inherently difficult given the nature of the issues involved, the individuals affected, and the divergent points of view. |
| 5 | Scope and Effect | 325 | 5-5 | The incumbent serves as an expert dispute resolution practitioner and provides confidential and informal assistance to managers and staff employees in resolving workplace disputes. The work significantly impacts the work of others throughout the Office of Operations. |
| 6 | Personal Contacts | 60 | 6-3 | Personal contacts are with individuals or groups from outside the employing agency in a moderately unstructured setting. |
| 7 | Purpose of Contacts | 120 | 7-3 | The purpose of contacts is to understand, assist, persuade, and negotiate concerning matters in dispute, seeking fair and equitable solutions to employee problems, and supporting the effective management of conflict. |
| 8 | Physical Demands | 5 | 8-1 | The work is primarily sedentary. |
| 9 | Work Environment | 5 | 9-1 | The work is performed in a typical office setting. |

| SUMMARY | |
|---|---|
| **Total Points:** 3690 | **Grade Conversion:** GS-14 |
| **Final Points Ranges:** 3605-4050 | |

**Joanne Kennedy, Human Resources Specialist (Classification)**          **Date:**

## Fair Labor Standards Act (FLSA) Check List

*This form is to be completed for each grade in a career ladder. Note that it is possible for different grades within a career ladder to have different FLSA designations (for example, non-exempt at lower grades, exempt at higher grades in the career ladder). Attach a properly completed and signed checklist to each classified position description and statement of difference (if applicable).*

### A. REQUIRED POSITION INFORMATION

**Position Title**: Associate Ombudsman          **Pay Plan/Series**: GS-301-14

**Organization:**     FDA/OO

**Administrative Code:**     **DMM**          **PD Number:**

Check all of the following criteria that are applicable to the position:

### B. Non-Exempt Criteria

1. Salary-based non-exemption (5 CFR 551.203)

___ Employees annual rate of basic pay is less than $23,660.

2. Non-exemption of certain employees (5 CFR 551.204)

___ Position is non-supervisory and engaged in equipment operation, or is a protective or clerical occupation.

___ Position involves technical work properly classified below GS-09

___ Position is nonsupervisory in the Federal Wage System or other comparable wage system.

### C. Exemption Criteria

### 1. Executive Exemption Criteria (5 CFR 551.205)

_ __ Primary duty of the position is management or supervision; work involves customarily and regularly directing the work of other employees and involves the authority to hire or fire other employees or makes recommendations on employment issues such as hiring and firing that are given particular weight by higher level supervisors or managers.

### 2. Administrative Exemption Criteria (5 CFR 551.206)

_ X __ Primary duty is performance of office or non-manual work directly related to the management or general business functions; work involves the exercise of discretion and independent judgment with respect to matters of significance.

### 3. Professional Exemption Criteria (5 CFR 551.208, 209, 210)

_ __ **5 CFR 551.208 Learned Professionals:** Primary duty is performance of work requiring advanced knowledge in a field of science or learning including the traditional professions of law, medicine, theology, accounting, actuarial computation, engineering, architecture, teaching, pharmacy, various types of physical, chemical and biological sciences, and other similar occupations that have a recognized professional status; entrance into these professions requires a prolonged course of specialized intellectual instruction.

___ **5 CFR 551.209 Creative Professionals:** Primary duty is performance of work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor such as music, acting, writing, graphic arts. Exemption depends upon the extent of invention, imagination, originality or talent of the employee; exemption does not apply to work that can be produced by a person with general manual or intellectual ability and training.

___ **5 CFR 551.210 Computer Professionals:** Primary duty consists of the application of systems analysis techniques and procedures, including consulting with users to determine hardware, software, or system functions specifications; OR design development, documentation, analysis, creation, testing or modification of computer systems or programs; OR a combination of these duties. Exemption does not apply to employees engaged in the manufacture or repair of computer hardware and related equipment, or to those whose work is highly reliant on computers but whose duties do not consist of the aforementioned.

Salary based exemption applies to any computer professional compensated on an hourly bases at a rate of basic pay of $27.63 an hour and above

**4. Law Enforcement Activities (5 CFR 551.216)**

___ Special exemption/exclusion applies to all law enforcement agents receiving availability pay.

**5. Foreign Exemption (5 CFR 551.212)**

___ Employees permanently stationed in an exempt area and spend all hours of work in a given workweek in one or more exempt areas or employees not permanently stationed in an exempt area, but spend all hours of work in a given workweek in one or more exempt areas. Exempt area means any foreign country, or any territory under the jurisdiction of the United States other than a State, the District of Columbia, Puerto Rico, the US Virgin Islands, and American Samoa. Guam, Midway, Wake and Johnston Islands.

**Final Determination (Check One)** _ __ **Non-Exempt** _ X __ **Exempt**

**Joanne Kennedy, 6/3/14**

**HR Specialist Classification/Date**

# EXHIBIT 12

# MORRIS E. FISCHER, LLC

February 3, 2020

Meredith M. Purple, Esq.
Investigation and Prosecution Division
U.S. Office of Special Counsel
1730 M Street, N.W. Suite 218
Washington, D.C. 20036-4505
Tel. (202) 804-7106
Fax. (202) 653-0015
Email: mpurple@osc.gov

Re: Charmaine Condillac – OSC File No. MA-20-0689
Motion for a Stay in Proposed Termination

Dear Ms. Purple:

On January 17, 2020, the Agency submitted a Proposed Termination letter to Ms. Condillac. We submitted a response to this proposed termination today. In addition, we ask the OSC to contact the Agency and issue a stay on the termination.

Aside of the Proposed Termination lacking merit, we view it as retaliatory. After her supervisor, Albert Conerly, issued Ms. Condillac an October 1, 2019, Opportunity to Demonstrate Acceptable Performance ("ODAP") (Exhibit 1), on November 4, 2019, she complained in writing about the legal issues regarding the ODAP (Exhibit 2). That letter also notified Mr. Conerly that Ms. Condillac was filing a complaint with the Office of Special Counsel that these actions were illegal and an abuse of power. (Id.).

Ms. Condillac did file an OSC complaint in December, 2019, the above-referenced complaint. In that complaint she raised a number of violations and legal deficiencies with her ODAP. (Exhibit 3, Attachment to her Office of Special Counsel Complaint). Mr. Conerly was compelled to release Ms. Condillac from the ODAP due to these deficiencies and he advised her that she successfully completed it.

However, on January 17, 2020, Mr. Conerly issued a Proposal to Remove (Exhibit 4) Ms. Condillac from her position, not because she was failing at her position or because she failed the ODAP. Rather, it was because he contended that due to her Reasonable Accommodation request,

8720 Georgia Avenue, Suite 210
Silver Spring, MD 20910-3614
O 301-328-7631 F 301-328-7638

11 Broadway, Suite 615
New York, NY 10004-1490
O 800-209-2608 F 212-480-8560

www.morrisfischerlaw.com I morris@mfischerlaw.com

Page 111 of 124

she deemed herself unable to perform the essential functions of her position. Within a few months of receiving that letter, Mr. Conerly proposed her termination after failing to follow the reasonable accommodation interactive process. We contend that is whistleblower retaliation.

The Proposal to Remove relies on the Position Description for the Associate Ombudsman, GS-301-14 Associate Ombudsman job and it contends that Ms. Condillac was unable to perform those duties. There are a number of issues with that contention. In the first place, the FOH medical officer determined that Ms. Condillac was "a qualified individual with a disability," (Exhibit 5, Proposal to Remove supporting documentation (page 2 of the November 6, 2019 report)), yet Mr. Conerly contends that Ms. Condillac cannot perform the essential functions of her position. These two points are totally contradictory.

Ms. Condillac was never unable to perform her essential functions. Had that been the case, Mr. Conerly would not have graduated her from the ODAP just a month or so before the Proposal to Remove. Rather Mr. Conerly hones in on a reasonable accommodation request Ms. Condillac made to telework, unless she was required to be in the office to complete job duties.

On June 21, 2019, Mr. Conerly granted Ms. Condillac the reasonable accommodation of teleworking three days a week. However, that accommodation became inadequate after Mr. Conerly acted with increased hostility towards her. On November 8, 2019, Ms. Condillac asked to telework 5 days per week, except when necessary to be in the office. (Id. page 15 of 32). She also rescinded any request for reassignment. (Id.).

The Agency contends that Ms. Conerly insisted that as part of her Reasonable Accommodation, she be exempted from communicating with her supervisor. That contention is utterly untrue. Ms. Condillac never stated that she would not or could not communicate with Mr. Conerly. She was willing to telework and communicate either by email, text, phone or any other method required for her position.

At no time did the agency engage in an interactive process with the employee to work towards a reasonable accommodation that would have worked for both parties. [N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability." *Baert v. Euclid Beverage, Ltd.,* 149 F.3d 626, 634 (7th Cir. 1998).

Rather than interpreting Ms. Condillac's proposed reasonable accommodation in such a narrowly tailored request, with no room for a broader interpretation or without any room for adjustment, the agency immediately determined that Ms. Condillac would be unable to interact with her supervisor at all.

2

We contend that misusing the interactive process and narrowly defining Ms. Condillac's request for reasonable accommodation in order to propose her termination was blatant retaliation for her whistleblower complaint, filed just one month earlier.

Sincerely,

*Morris E. Fischer, Esq.*

Morris E. Fischer, Esq.

cc: Ms. Charmaine Condillac

Page 113 of 124

# EXHIBIT 13



Sent Via Email, USPS and Certified Mail

## MEMORANDUM

**DATE:**   February 19, 2020

**TO:**   Charmaine Condillac, Associate Ombudsman, GS-0301-14
Ombudsman and Conflict Prevention and Resolution Staff
Office of Operations

**SUBJECT:**   DECISION NOTICE

This is a decision to remove you from your position of Associate Ombudsman, GS-0301-14, at the Food and Drug Administration (FDA) and from Federal Service based on a Charge of Medical Inability to Perform the Duties of your Position. This decision is made in the interest of promoting the efficiency of the service and the Federal Government and is effected in accordance with 5 U.S.C. Chapter 75, 5 C.F.R. Part 752 and HHS Instruction 752.

By memorandum received by you on January 17, 2020, you were informed of a proposal to remove you from your position of Associate Ombudsman, GS-0301-14, and the Federal service, based on a Charge of Medical Inability to Perform the Duties of your Position. By that same memorandum, you were advised that you had seven (7) days to reply orally, in writing, or both to the proposed action. You requested additional time to reply and were granted an additional ten (10) calendar days. You did reply. In making this decision, I carefully and objectively reviewed the charge and specification in the Notice of Proposed Removal, the supporting evidence in the record, and your written reply.

After full consideration of all the facts, I find the charge to be SUSTAINED. In deciding to remove you from your Associate Ombudsman, GS-0301-14 position, I have considered the following:

**Background:**

On April 19, 2019, you submitted a request to the Reasonable Accommodation Office requesting flexible time/schedule for medical treatment related to disability and reassignment, to accommodate your medical condition. As an interim accommodation, you were granted telework three (3) days per week. The other two (2) days you were required physically on site at either White Flint North (WFN) or White Oak (WO) for ADR-specific work including mediations, facilitations, etc., or staff meetings. You were permitted to move your work at home days to accommodate these onsite activities.

In accordance with FDA's Staff Manual Guide (SMG) 3130.2 - Procedures for Providing Reasonable Accommodations for Individuals with Disabilities, a list of questions along with your documentation was sent to the Federal Occupational Health (FOH) Occupational Medicine Consultant (OMC) to be answered by your medical care professional(s). The answers to the questions were designed to assist the agency in determining whether your medical conditions rise to the level of a disability under the Rehabilitation Act of 1973 and the Americans with Disabilities Act Amendments Act (ADAAA) of 2008.

The review of your reasonable accommodation request was completed, and an analysis provided. Based on the updated medical information received October 30, 2019, from the FOH OMC, you have a medical condition which substantially limits major life activities and functions, including thinking, concentrating, interacting with others, eating and sleeping. Based on this information, your medical condition rises to the level of a disability as described by the Rehabilitation Act of 1973, and the ADAAA of 2008, and you are considered a qualified individual with a disability.

The FOH OMC opined that there are times when you feel unable to go to work, unable to concentrate and focus on your work, and unable to make decisions, in addition to limiting energy, appetite, and sleep. The FOH OMC opined that your symptoms are greatly exacerbated by interactions with your supervisor. The FOH OMC opined that you seek to minimize time at the office, and interaction with your supervisor, chiefly because of the affect that interaction with your supervisor has on your symptoms.

Attendance in the office for duties that are not portable, and interacting with one's supervisor, are essential functions of any position, and accommodations to make these unnecessary would not be considered reasonable. The FOH OMC opined that at present, and for the foreseeable future, you appear to be unable to perform the essential functions of your position, with or without accommodation.

The FOH OMC opined that therefore, reassignment to another vacant position, the accommodation of last resort, would be medically reasonable. Based on the facts of this case, the available medical information, a review of the essential job functions, the Reasonable Accommodation Office maintained that if administratively feasible, without causing a direct threat to health and safety or posing an undue hardship, management should grant you the alternative accommodation of reassignment.

Therefore, based on the analysis of the Reasonable Accommodation Office, a review of your medical information and in accordance with the Rehabilitation Act of 1973, the Americans with Disabilities Act Amendments Act (ADAAA) of 2008 and FDA's Policy on Reasonable Accommodation under Section 2 of SMG 3130.2, as the decision-maker, you were granted reassignment as the reasonable accommodation of last resort.

You submitted the completed Reassignment Questionnaire and provided the Reasonable Accommodation Office with a copy of your current resume on November 7, 2019 and requested holding off on processing the questionnaire/application until you "get back to RA give them the green to proceed". On November 8, 2019, you emailed the Reasonable Accommodation Office and stated that you would like to consult with your attorney, and subsequently you stated that "you hereby retract your request for a reassignment as a reasonable accommodation". On November 21, 2019, the agency began an internal vacancy search for a suitable/comparable position for you.

On December 19, 2019, the Reasonable Accommodation Office sent you and your attorney an email informing you that "Reassignment as the reasonable accommodation was warranted as a last resort as it was determined that you were unable to perform the essential functions of your position, thus your statement to retract your reasonable accommodation request for reassignment did not stop the reassignment process which is based on your medical condition/limitations". "If you have had a chance to consult with your attorney, please advise if you desire to continue in the reasonable accommodation reassignment process by close of business on Friday, December 27, 2019. If you do wish to proceed with the reassignment action, RA would close the reasonable accommodation request".

Due to a lack of response on your part, the Reasonable Accommodation Office informed you and your attorney via email that of as of December 30, 2019, Reasonable Accommodation Office is closing the reasonable accommodation reassignment process.

1. **I have considered the impact your medical condition has on your ability to perform the essential functions of your position.** The essential duties of your position are as follows:

    - Collaborate with officials to achieve constructive resolution to disputes; seeks fair and equitable solutions to employees' problems; suggests approaches to address and manage conflict, suggest policy and procedural changes; helps to build constructive relationships by working to resolve disputes and making recommendations intended to create a more positive work environment, thereby contributing to improved office productivity.
    - Provide support to the Ombudsman in mediation disputes, and assisting to resolve issues in a timely, fair, and impartial manner.
    - Maintain neutrality in each case and serve as an advocate for fair process and outcomes.
    - Work closely with the Ombudsman on day to day operations.
    - Provide advice and assistance to Ombudsman in making recommendations of resolutions to the staff.
    - Collaborate with Ombudsman in the development of short-and-long term resolutions and presents to OO Senior Leadership.
    - Represent Ombudsman in discussions and meetings related to matters of concern as deemed appropriate.
    - Serve as a neutral third party in conflict resolutions and works to achieve fair and equitable solutions to problems.
    - Collaborate with other Office of Operations and FDA offices on issues of general concern and interprets policies to help resolve conflict or make improvements in the Office of Operations procedures.
    - Assist in the mediation and/or negotiation of disputes occurring at all staff levels. Educates management and the general workforce, in the concepts and processes of conflict resolution either in one-on-one or group settings.
    - Recommend approaches for addressing and managing conflict and collaborates with other Office of Operations offices on issues of general concern.
    - Provide leadership in developing and implementing strategies for building and sustaining cooperative relations between managers and staff employees in the

Office of Operations.
- Research, identify, and develop tools to be used to conduct assessments and evaluations of the organization's conflict climate.
- Work with leadership to develop plans to improve organizational environment.

Based on the medical review and a review of the essential job functions in your position description, it was determined that you are unable to perform the essential functions of your job with or without an accommodation, placing an undue burden on other staff who must perform all the essential duties of your position in addition to their own work.

2. **I have considered your past disciplinary record.** On October 25, 2018, you received a reprimand for failure to attend scheduled meetings and on November 14, 2019, you received a five (5) day suspension for Failure to Attend Scheduled Meetings as Instructed and Submission of An Inaccurate Time and Attendance Record.

3. **I have considered the effect of your ability to perform at a satisfactory level and its effect upon your supervisor's confidence in your ability to perform assigned duties.** Based on the opinion of FOH, you cannot perform the essential functions of your position with or without an accommodation. All other attempts at reasonable accommodation have been exhausted and reassignment is the only available option left to explore. The reasonable accommodation reassignment process was closed due to a lack of response on your part.

4. **I have considered your past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability.** Your 2018 PMAP score was 2.5 and you were failing your 2019 mid-year PMAP. I have also considered that you have been employed with the Food and Drug Administration for approximately twenty (20) years. However, this Proposal to Remove action is being taken because you rejected reassignment - the accommodation of last resort. I find removal to be the only remedy available that will promote the efficiency of government service.

The supporting documentation shows that a third-party, independent contractor (FOH) determined that you are unable to perform the essential functions of your current position and that reassignment to another vacant position, the accommodation of last resort, would be medically reasonable. The record also confirms that we looked for other positions within the Office of Enterprise Management Services (OEMS) that would be suitable options for you; however, you declined reassignment. Your inability to perform the essential functions of the position and refusal to move forward with an accommodation of last resort alone provide a solid basis to move forward with removal. You are not entitled to the accommodation of your choosing and reconsideration is not appropriate where your attorney has failed to provide any additional medical support to rebut FOH's assertion that you are unable to perform the essential functions of your job.

Therefore, in accordance with Part 752 of Title 5 of the Code of Federal Regulations, it is my finding that the evidence provided in this case, supports the reason for this action **and it is my decision, that in order to promote the efficiency of the service, you be removed from your**

**position as an Associate Ombudsman, GS-0301-14, and from the Federal Service effective February 21, 2020.**

## NOTICE OF RIGHT TO GRIEVE THIS DECISION OR INVOKE A STATUTORY REVIEW PROCEDURE

You may invoke one of the following statutory review procedures:

You may appeal this action in writing, to the U.S. Merit Systems Protection Board (MSPB), 1800 Diagonal Road, Alexandria, VA 22314-2840. Or you may file an electronic appeal by following the instructions at the MSPB's e-Appeal website at http://www.mspb.gov/.

Any appeal filed with the MSPB must be received by the MSPB no later than thirty (30) calendar days after the effective date of this action, or within thirty (30) calendar days from your receipt of this decision notice, whichever is later. Your appeal, if any, must provide your reasons for contending your removal from federal service, with such offer of proof and pertinent documents as you are able to submit. It is important to note the MSPB's thirty (30) calendar day requirement for filing an appeal. If you do not submit an appeal within the time set by statute, regulation, or order of a judge, it will be dismissed as untimely filed unless a good reason for the delay is shown. If you should file after the thirty (30) calendar-day requirement, the MSPB administrative law judge will provide you an opportunity to show why the appeal should be accepted and not dismissed as untimely filed.

### OR

If you believe this action involves discrimination based on race, color, religion, sex, national origin, handicapping condition, or age, you have the right to file a complaint within the Department under the provisions of 29 C.F.R. Part 1614. To do so, you must contact an Equal Employment Opportunity (EEO) counselor within forty-five (45) calendar days of your receipt of this letter or your complaint will be dismissed as untimely filed.

### OR

As stated in 5 C.F.R. Part 1209, you may seek corrective action before the U.S. Office of Special Counsel (OSC), www.osc.gov . If you file a complaint with OSC and OSC does not seek corrective action on your behalf, you may then appeal to the MSPB. The time limits for filing are the same as for an "individual right of action" and the case will be adjudicated as an individual right of action appeal.

> **NOTE**: Please be advised that if you elect to file with OSC, any later appeal to the MSPB will be limited to whether the agency took one or more covered personnel actions against you in retaliation for making protected whistleblowing disclosures. This means that the MSPB will not review the merits of the action but will resolve only the claim of reprisal for whistleblowing. You will be foregoing the right to otherwise challenge this removal, including, as applicable, the ability to challenge the charge(s); nexus; reasonableness of the penalty; and any affirmative defenses, such as: harmful procedural error and discrimination under Title VII or the Rehabilitation Act.

You may be eligible for disability retirement. If you have any questions regarding disability retirement or if you need assistance in applying for disability retirement, you may contact the

FDA OHR Benefits and Retirements at OO-OHR-BENEFITS@FDA.HHS.GOV.

If you have questions on the content of this letter or the appeal procedures available, you may contact Celeste Smith, HR Specialist at (240) 672-8018 or celeste.smith@fda.hhs.gov.


Sincerely,

Tiffany Branch
Director,
Office of Enterprise Management Services


Receipt Acknowledgement:

Please acknowledge receipt on the copy of this letter in the space provided. Your signature simply acknowledges that you have received the letter and does not mean that you agree the contents. However, failure to acknowledge receipt will not void the contents of this letter.

## RECEIPT COPY:

_____        _____
Employee Signature                                              Date

# EXHIBIT 14



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
202-804-7000

February 25, 2020

Ms. Charmaine Condillac
c/o Mr. Morris E. Fischer
8720 Georgia Ave.
Suite 210
Silver Spring, MD 20910

*By email only to: morris@mfischerlaw.com*

Re: OSC File No. MA-20-0689

Dear Ms. Condillac:

The purpose of this letter is to notify you that you may have a right to file an "individual right of action" (IRA) appeal seeking corrective action from the Merit Systems Protection Board (MSPB or Board).

As we informed you in our closure letter of this date, the U.S. Office of Special Counsel (OSC) has terminated our inquiry into your allegations of violations of prohibited personnel practices under 5 U.S.C. § 2302(b)(8) or (b)(9).

In your complaint, you allege that management officials at the Department of Health and Human Services, Food and Drug Administration (FDA or the agency), Silver Spring, Maryland, improperly placed you on an Opportunity to Demonstrate Acceptable Performance plan (ODAP) and proposed your removal from federal service in retaliation for whistleblowing or for perceived whistleblowing and for filing an OSC complaint or for being perceived to have filed an OSC complaint. Specifically, you objected to the ODAP and notified the agency of your position that the ODAP was illegal and an abuse of authority. You further notified the agency that you intended to file an OSC complaint, which you filed in December 2019. You allege that, in addition to placing you on an ODAP and removing you from federal service, the agency also failed to accommodate your medical condition, significantly changed your duties or working conditions, and removed your ability to telework, in retaliation for your whistleblowing and protected activity or perceived whistleblowing and protected activity.

In your IRA appeal, you may seek corrective action from the Board under 5 U.S.C. §§ 1214(a)(3) and 1221 for any personnel action taken or proposed to be taken against you because of a protected disclosure and/or protected activity that was the subject of your complaint to this office. You may file a request for corrective action with the Board within 65 days after the date of this letter. The regulations concerning rights to file an IRA appeal with the Board can be found at 5 C.F.R. Part 1209. If you choose to file such an appeal, you should submit this letter to the Board as part of your appeal.

Although an individual bringing an IRA appeal to the Board must show that he or she has exhausted OSC procedures, our decision to end the investigation may not be considered in an IRA appeal. *See* 5 U.S.C. § 1221(f)(2); *Bloom v. Dep't of the Army*, 101 M.S.P.R. 79, 84 (2006). The Board may order an individual to submit a copy of OSC's determination letter, but the order must contain an explanation of why the letter is necessary and give the individual the opportunity to consent. *See* 5 U.S.C. § 1214(a)(2)(B); *Bloom*, 101 M.S.P.R. at 84.

Sincerely,

Meredith Purple
Attorney
Investigation and Prosecution Division



STATES
SERVICE®

Y®

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; October 2018; All rights reserved.



**$7.15** US POSTAGE
PRIORITY MAIL
FLAT-RATE ENVELOPE
ComBasPrice

062S0008542438
FROM 20910

stamps.
endicia
02/27/2020

# PRIORITY MAIL 1-DAY™

Morris E. Fischer, LLC
8720 Georgia Ave Suite 210
Silver Spring MD 20910-3614

C027

SHIP
TO:   Merit Systems Protection Board
Washington Regional Office
1901 South Bell Street Suite 950
Arlington VA 22202-4512

## USPS TRACKING #



9405 5118 9956 1085 5298 37

any major

ms

EP14F Oct 2018
OD: 12 1/2 x 9 1/2

the maximum weight is 70 lbs. For international shipments, the maximum weight is 4 lbs.




Exhibit 18

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WASHINGTON REGIONAL OFFICE**

| | |
|---|---|
| CHARMAINE CONDILLAC,<br>            Appellant, | DOCKET NUMBER<br>DC-0752-20-0418-I-1 |
| v. | |
| DEPARTMENT OF HEALTH AND<br>    HUMAN SERVICES,<br>            Agency. | DATE: April 14, 2020 |

Morris E. Fischer, Esquire, Silver Spring, Maryland, for the appellant.

Madeha Chaudry Dastgir, Esquire, Chicago, Illinois, for the agency.

**BEFORE**
Andrew M. Dunnaville
Administrative Judge

**INITIAL DECISION**

On March 2, 2020, the appellant filed an appeal with the Merit Systems Protection Board (Board or MSPB), challenging his removal from his position as an Associate Ombudsman with the Food and Drug Administration.  Appeal File, Tab 1.  The agency filed a motion asserting that I lack the authority to decide this appeal under *Lucia v. Securities Exchange Commission*, 138 S.Ct. 2044 (2018). AF, Tab 5.  For the reasons discussed below, the appeal is DISMISSED WITHOUT PREJUDICE.

## BACKGROUND

An Acknowledgement Order in this proceeding was issued on March 3, 2020.   AF, Tab 2.   On March 10, 2020, the agency filed a Motion for Reassignment for Properly Appointed Administrative Judge or Dismissal Until a New Board is Confirmed, arguing that I lack the authority to adjudicate the appeal under *Lucia.*  AF, Tab 5.  *See Lucia,* 138 S.Ct 2052.

On March 18, 2020, I issued a Notice, notifying the parties that because the issue of the appointment of Board administrative judges (AJs) following *Lucia* is currently being litigated, and there is a lack of a Board quorum, I may dismiss the appeal without prejudice.   AF, Tab 6.

The appellant was given an opportunity to file an objection to the agency's Motion or to dismissal without prejudice.   *Id.*   In his response, the appellant argued that case adjudication should resume because MSPB AJs are not inferior officers, and the delegation of authority by the MSPB to AJs is not affected by the current lack of Board members.  AF, Tab 10.

## LAW AND ANALYSIS

The Board's regulations provide, "Dismissal without prejudice is a procedural option that allows for the dismissal and subsequent refiling of an appeal."  5 C.F.R. § 1201.29(a).  The regulations also provide that the decision to grant a dismissal without prejudice is left to the "sound discretion of the judge." 5 C.F.R. § 1201.29(b).  Dismissal without prejudice may be granted on the AJ's own motion or upon request by either party.  *Id.*  Dismissal may be granted when the interest of fairness, due process and administrative efficiency outweigh any prejudice to either party.  *Id.  See also Gidwani v. Department of Veterans Affairs*, 74 M.S.P.R. 509 (1997).

In this case, I find good cause to dismiss the appeal without prejudice for 180 days to allow the courts and the Board time to decide the appointments issue discussed above.   Dismissal without prejudice for 180 days on these grounds is

within my discretion, and not egregious or contrary to law.  *See Department of Health and Human Services In re Jadhav,* 795 Fed. Appx. 846, 848 (Fed. Cir. 2020).

This appeal will be automatically refiled by the Board 180 days from the date of this decision.  If a new Board is appointed and issues a decision addressing the *Lucia* issue prior to that date, the appellant may file a request to refile his appeal.  Any documents already submitted in this appeal are already part of the record and should not be resubmitted when the appeal is refiled.

## DECISION

The appeal is DISMISSED without prejudice to refiling for a period of up to 180 days as noted above.

FOR THE BOARD:                    _____/S/_____
                                        Andrew M. Dunnaville
                                        Administrative Judge

## NOTICE TO PARTIES CONCERNING SETTLEMENT

The date that this initial decision becomes final, which is set forth below, is the last day that the parties may file a settlement agreement, but the administrative judge may vacate the initial decision in order to accept such an agreement into the record after that date.  *See* 5 C.F.R. § 1201.112(a)(4).

## NOTICE TO APPELLANT

This initial decision will become final on **May 19, 2020**, unless a petition for review is filed by that date.  This is an important date because it is usually the last day on which you can file a petition for review with the Board.  However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you

actually receive the initial decision.  If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first.  You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review.  Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record.  You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing.  A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

## NOTICE OF LACK OF QUORUM

The Merit Systems Protection Board ordinarily is composed of three members, 5 U.S.C. § 1201, but currently there are no members in place.  Because a majority vote of the Board is required to decide a case, *see* 5 C.F.R. § 1200.3(a),

(e), the Board is unable to issue decisions on petitions for review filed with it at this time. *See* 5 U.S.C. § 1203. Thus, while parties may continue to file petitions for review during this period, no decisions will be issued until at least two members are appointed by the President and confirmed by the Senate. The lack of a quorum does not serve to extend the time limit for filing a petition or cross petition. Any party who files such a petition must comply with the time limits specified herein.

For alternative review options, please consult the section below titled "Notice of Appeal Rights," which sets forth other review options.

## Criteria for Granting a Petition or Cross Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record.  A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date

you or your representative actually received the initial decision, whichever was first.  If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt.  You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt.  You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim.  The date of filing by mail is determined by the postmark date.  The date of filing by fax or by electronic filing is the date of submission.  The date of filing by personal delivery is the date on which the Board receives the document.  The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service.  Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party.  *See* 5 C.F.R. § 1201.4(j).  If the petition is filed electronically, the online process itself will serve the petition on other e-filers.  *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE OF APPEAL RIGHTS

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.   5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a

statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date this decision becomes final.   5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after this decision becomes final</u> as explained above.  5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx

Exhibit 19

# MORRIS E. FISCHER, LLC

February 27, 2020

Merit Systems Protection Board
Washington DC Regional Office
1901 S. Bell Street Suite 950
Arlington, VA 22202

**Re:** **Charmaine Condillac MSPB Appeal**

Dear Sir/Madam,

Enclosed please find an MSPB Appeal on behalf of Ms. Charmaine Condillac, represented by this firm.

We request this matter be set up for e-filing under Mr. Fischer's account. Please contact the undersigned if you need additional information.

Sincerely,

Morris E. Fischer, Esq.

Enclosures
CC: Ms. Condillac

RECEIVED MSPB
2020 MAR -2 P 1:35
WRO

8720 Georgia Avenue, Suite 210
Silver Spring, MD 20910-3614
O 301-328-7631 F 301-328-7638

11 Broadway, Suite 615
New York, NY 10004-1490
O 800-209-2608 F 212-480-8560

www.morrisfischerlaw.com | morris@mfischerlaw.com

*Please type or print legibly.*

**1. Name** *(last, first, middle)*

Last | Con dillac    First | Charmaine    M. Initial |

Please list your first name as it appears in your official personnel records. For example, if your first name is "William" on your official personnel records, please list it that way on the appeal form, not "Bill" or "Willy."

**2. Present address** *(number and street, city, State, and Zip code)*

You must promptly notify the Board in writing of any change in your mailing address while your appeal is pending.

Address: 202.45 Sweet MeadowLane

City: Laytonsville    State: MD    Zip Code: 20882

**3. Telephone Numbers** *(include area code) and E-Mail Address*

You must promptly notify the Board in writing of any change in your telephone number(s) or e-mail address while your appeal is pending.

Home: (240) 730-3227    Work: |    Fax: |    Cell: (301) 740-9033

e-Mail Address: egconsultingllc@gmail.com

**4. Name and address of the agency that took the action or made the decision you are appealing** *(include bureau or division, street address, city, State and Zip code)*

Agency Name: Department of Health & Human Services

Bureau: Food and Drug Administration

Address: 8963 New Hampshire Ave

City: Silver Spring    State: MD    Zip Code: 20993    Phone Number: (301) 796-5446

**5. Your Federal employment status at the time of the action or decision you are appealing:**

[X] Permanent  ☐ Temporary  ☐ Term

☐ Seasonal  ☐ Applicant  ☐ Retired

☐ None

**6. Type of appointment** *(if applicable)*:

[X] Competitive  ☐ Excepted

☐ Postal Service  ☐ SES

☐ Other *(describe)*:

**7. Your position, title, grade, and duty station at the time of the action or decision you are appealing** *(if applicable)*:

Occupational Series or Cluster: GS-301    Position Title: Associate Ombudsman

Grade or Pay Band: 14    Duty Station: North Bethesda, MD

**8. Are you entitled to veteran's preference?**
See 5 U.S.C. § 2108.

☐ Yes    [X] No

**9. Length of Federal service** *(if applicable)*:

20 Years    Months

**10. Were you serving a probationary, trial, or initial service period at the time of the action or decision you are appealing?**

☐ Yes    [X] No

**11. HEARING:** You may have a right to a hearing before an administrative judge. If you elect not to have a hearing, the administrative judge will make a decision on the basis of the submissions of the parties. Do you want a hearing?

[X] Yes    ☐ No

## PART 2 - Agency Personnel Action or Decision (non-retirement)

**Complete this part if you are appealing a Federal agency personnel action or decision other than a decision directly addressing your retirement rights or benefits.** This includes certain actions that might not otherwise be appealable to the Board: individual right of action (IRA) appeals under the Whistleblower Protection Act (WPA); appeals under the Uniformed Services Employment and Reemployment Rights Act (USERRA); or appeals under the Veterans Employment Opportunities Act (VEOA). An explanation of these three types of appeals is provided in **Appendix A**.

12. Check the box that best describes the agency **personnel action or decision** you are appealing. (If you are appealing more than one action or decision, check each box that applies.)

- [x] VA SES Removal from civil service
- [x] Removal (termination after completion of probationary or initial service period)
- [ ] Termination during probationary or initial service period
- [ ] Reduction in grade, pay, or band
- [ ] Suspension for more than 14 days
- [ ] Failure to restore/reemploy/reinstate or improper restoration/reemployment/reinstatement
- [ ] Negative suitability determination

- [ ] VA SES Transfer to general schedule
- [ ] Involuntary resignation
- [ ] Involuntary retirement
- [ ] Denial of within-grade increase
- [ ] Furlough of 30 days or less
- [ ] Separation, demotion or furlough for more than 30 days by reduction in force (RIF)
- [ ] Other action (describe):

13. Date you received the agency's final decision letter (if any) *(MM/DD/YYYY)*:

02/20/2020

14. Effective date (if any) of the agency action or decision *(MM/DD/YYYY)*:

02/21/2020

15. Prior to filing this appeal, did you and the agency mutually agree in writing to try to resolve the matter through an alternative dispute resolution (ADR) process?

- [ ] Yes *(attach a copy of the agreement)*
- [x] No

16. Explain *briefly* why you think the agency was wrong in taking this action, including whether you believe the agency engaged in harmful procedural error, committed a prohibited personnel practice, or engaged in one of the other claims listed in **Appendix A**. **Attach the agency's proposal letter, decision letter, and SF-50, if available.** Attach additional sheets if necessary (bearing in mind that there will be later opportunities to supplement your filings).

See Attached.

17. With respect to the agency personnel action or decision you are appealing, have you, or has anyone on your behalf, filed a grievance under a negotiated grievance procedure provided by a collective bargaining agreement?

☐ Yes  ☒ No

If "Yes," **attach a copy of the grievance**, enter the date it was filed, and enter the place where it was filed if different from your answer to question 4 in Part 1.

Agency Name: [blank]   Date Filed (*MM/DD/YYYY*): [blank]

Bureau: [blank]

Address: [blank]

City: [blank]   State: [blank]   Zip Code: [blank]

If a decision on the grievance has been issued, **attach a copy of the decision** and enter the date it was issued (*MM/DD/YYYY*):

Date Issued (*MM/DD/YYYY*): [blank]

**Answer Question 18 ONLY if you are filing an IRA appeal.**

18. If you filed a whistleblowing complaint with the Office of Special Counsel (OSC), provide the date on which you did so and the date on which OSC made a decision or terminated its investigation, if applicable. **Attach copies of your complaint and OSC's termination of investigation letter**, notifying you of your right to seek corrective action from the Board.

Date Filed (*MM/DD/YYYY*): 12/16/2019

Date of OSC decision or termination of investigation (*MM/DD/YYYY*): 02/25/2020   See Attached -

**Answer Question 19 ONLY if you are filing a USERRA or VEOA appeal.**

19. If you filed a complaint with the Department of Labor (DOL), list the date on which you did so, and **attach a copy of your complaint**. If DOL has made a decision on your complaint, list the date of this decision, and **attach a copy of it**. If DOL has not made a decision on your complaint within 60 days from the date you filed it, state whether you have notified DOL of your intent to file an appeal with the Board, and **attach a copy of such notification**.

Date Filed (*MM/DD/YYYY*): [blank]

Has DOL made a decision on your complaint?

☐ Yes  ☐ No

If "Yes," enter the date it was made. If "No," state whether you have notified DOL of your intent to file an appeal with the Board, and **attach a copy of such notification**.

Date of DOL decision (*MM/DD/YYYY*): [blank]   ☐ Notified DOL of your intent to file an appeal with the Board?

# PART 3 - OPM or Agency Retirement Decision

**Complete this part if you are appealing a decision of the Office of Personnel Management (OPM) or other Federal agency directly addressing your retirement rights or benefits.**

**20. In which retirement system are you enrolled?**

☐ CSRS    ☐ CSRS Offset    ☐ FERS

☐ Other, *describe:*

**21. Are you a:**

☐ Current Employee      ☐ Annuitant

☐ Surviving Spouse

☐ Other, *describe:*

**22. If retired, date of retirement, or if unknown, approximate date:**

Date Retired (*MM/DD/YYYY*):

**23. Describe the retirement decision you are appealing.**

**24. Have you received a final or reconsideration decision from OPM or another Federal agency?**

☐ Yes *(attach a copy)*      ☐ No

If "Yes," on what date did you receive the decision?

Date Received (*MM/DD/YYYY*):

Provide the OPM processing (CSA or CSF) number in your appeal:

OPM Claim Number:

**25. Explain briefly why you think OPM or another Federal agency was wrong in making this decision.**

26. Has an individual or organization agreed to represent you in this proceeding before the Board? (You may designate a representative at any time. However, it is unlikely that the appeals process will be delayed for reasons related to obtaining or maintaining representation. Moreover, you must promptly notify the Board in writing of any change in representation.)

☒ Yes *(Complete the information below and sign)*        ☐ No

**DESIGNATION:**

"I hereby designate Morris E. Fischer to serve as my representative during the course of this appeal. I understand that my representative is authorized to act on my behalf. In addition, I specifically delegate to my representative the authority to settle this appeal on my behalf. **I understand that any limitation on this settlement authority must be filed in writing with the Board.**"

**Representative's address** *(number and street, city, State and Zip code)*

Address: Morris E. Fischer, LLC
8720 Georgia Ave. Suite 210

City: Silver Spring

State: MD        Zip Code:

**Representative's telephone numbers** *(include area code) and e-mail address*

Office: 3013287631

Fax: 3013287638        Other:

e-Mail Address: morris@mfischerlaw.com

## SIGN BELOW TO MAKE YOUR DESIGNATION OF REPRESENTATIVE EFFECTIVE

*Charmaine Condillac*
Appellant's Signature

2/26/20
Date *(MM/DD/YYYY)*

27. I certify that all of the statements made in this form and any attachments are true, complete, and correct to the best of my knowledge and belief.

*Charmaine Condillac*
Signature of Appellant or Representative

2/26/20

Date *(MM/DD/YYYY)*

**Privacy Act Statement**

This form requests personal information that is relevant and necessary to reach a decision in your appeal. The Merit Systems Protection Board collects this information in order to process appeals under its statutory and regulatory authority. Because your appeal is a voluntary action, you are not required to provide any personal information to the Merit Systems Protection Board in connection with your appeal. Conceivably, failure to provide all information essential to reaching a decision in your case could result in the dismissal or denial of your appeal.

Decisions of the Merit Systems Protection Board are available to the public under the provisions of the Freedom of Information Act and are posted to the Merit Systems Protection Board's public website. Some information about the appeal also is used in depersonalized form for statistical purposes. Finally, information from your appeal file may be disclosed as required by law under the provisions of the Freedom of Information Act and the Privacy Act. See 5 U.S.C. §§ 552, 552a.

**Public Reporting Burden**

The public reporting burden for this collection of information is estimated to vary from 20 minutes to 4 hours, with an average of 60 minutes per response, including time for reviewing the form, searching existing data sources, gathering the data necessary, and completing and reviewing the collection of information. Send comments regarding the burden estimate or any other aspect of the collection of information, including suggestions for reducing this burden, to Office of the Clerk of the Board, Merit Systems Protection Board, 1615 M Street, N.W., Washington, DC 20419 or by e-mail to mspb@mspb.gov.

**ATTACHMENT**

On October 1, 2019, Albert Conerly, my client's first line supervisor issued a Performance Improvement Plan (Exhibit 1). This plan violates a number of Office of Personnel Management policies as well as a number of Code of Federal Regulations under Title 5.

Notably, the ODAP or PIP did not identify whether it is brought pursuant to 5 CFR § 432 or 5 CFR § 752. The former regulation requires a period in which the employee is give the opportunity to improve and this PIP provides such opportunity. Hence, it is assumed that Mr. Conerly's intent was to bring it under same.

Attached hereto are OPM policies with respect to the administration of Performance Improvement Plans and pages 5-10 list a number of the requirements to which this PIP fell short (Exhibit 2). There are numerous examples. Element #4, "teamwork" is completely not measurable. There's no way the employee can possibly be rated on a totally subjective standard with no deliverables. Regarding Element #1, Ms. Condillac's PWP, page 3 of 11, lists the training she is required to complete is the EEOC training for New Counselors. Ms. Condillac completed that training in September, 2019, before the PIP was issued. The additional trainings that you contend she didn't do are not in the PWP. The major improvement that can be measured is for her to attend many more trainings.

Then there appear to be a number of disciplinary issues that have no place in a PIP. For example, she's scolded for not adhering to proper email response formats. There's a link she allegedly didn't download and there's an allegation that she failed to participate in meetings. There's another allegation that she failed to continuously provide status reports to her supervisor about her work situation. None of these alleged deficiencies have any link to her GS-14 Associate Ombudsman, position description,

My understanding is that with respect to the contention that there were 71 consultation opportunities and 58 facilitation/mediation opportunities, Ms. Condillac challenged Mr. Conerly on that contention, by asking him to show her proof of same in that they'd be on your calendar. He refused to present that evidence to her.

In addition, I've reviewed the aforementioned position description (Exhibit 3). Ms. Condillac is supposed to be actively involved in mediations, interviews, performing technical reviews and items of that nature. However, she wasn't given any of that work. She complained about it. The responses she was given were words to the effect of, "we already have a number of excellent mediators." She never got assigned the duties to which she should have been assigned.

1

## 5 CFR § 432 and OPM Violations During the PIP Administration

- This PIP 60 Day Administration violated the following:

- It failed to identify the elements that were unacceptable.

- It did not provide standards that were clear and reasonable.

- It had a number of standards that could not be measured.

- It did not specify precisely what the employee is expected to do.

- It had PWP 12 month objectives jammed into 60 days.

- Assistance was not offered such as
  - Technical training
  - Specialized software
  - Enhanced management

- The employee's performance during the PIP was not documented, at least the supervisor, Albert Conerly has never followed up with Ms. Condillac in writing.

- There are absolute retention standards.

Furthermore, when Ms. Condillac brought the fact up that he placed nothing in writing to her about her performance (following these weekly performance meetings or at any time), Mr. Conerly informed her he would do so; he would send her all the notes by Monday, November 4, 2019. We contend that there are no notes. The PIP was a total fabrication by Mr. Conerly.

On November 4, 2019, Complainant, through Counsel, submitted opposition to the ODAP, pointing out the numerous problems with the ODAP, its administration and that Conerly never assigned Complainant any of the GS-14 Assistant Ombudsman duties as per her position description. Exhibit 3. Facing obvious ramifications for his actions in issuing the ODAP and its administration, Conerly on November 6, 2019, provided Complainant with a document "Documentation of Performance Counseling." Exhibit 4.

On November 8, 2019, Ms. Condillac gave written notice to Robert Thomas who was the Lead Reasonable Accommodation Specialist, and Albert Conerly that she was retracting her request for reassignment as a Reasonable Accommodation. Exhibit 5. Complainant's actual Reasonable Accommodation request issued November 8, 2019 was to telework five days and come to the campus/FDA facilities to conduct all ADR strategies conducted in person. Id. Three days later on November 11, 2019, Thomas, copying Conerly, confirmed Complainant's retraction for request for reassignment. Exhibit 6. The next day on November 12, 2019, Conerly, already having knowledge of Ms. Condillac's rescission of her reassignment request, nonetheless issued a response for the Reasonable Accommodation request for the first time in seven months, treating the reassignment request as still valid. Exhibit 7. Conerly's said memo states that his

2

decision is supported by the medical review that confirms that Complainant could not perform the essential functions of the position. Id.

On November 13, 2019, Complainant, by Counsel, challenged the November 12, 2019, memo, in that Complainant retracted her reassignment request and that the source of her anxiety and depressive disorder being exacerbated is her supervisor, Albert Conerly. Exhibit 8. He never provided her the proper performance duties. Furthermore, a week earlier he submitted a memorandum that Complainant was performing the job duties (that he gave her at least) in a satisfactory manner. Exhibit 4. In response to that letter, Conerly issued another memorandum on November 27, 2019, rescinding her ODAP and concluding that Complainant cannot perform the essential functions of the position and rescinding her three days a week telework (which Conerly established as an interim accommodation). Exhibit 9.

### Additional Retaliation – Leading to Termination

In retaliation for Appellant's whistleblowing disclosures, Appellant filed, on January 17, 2020, Mr. Conerly issued a Proposal to Remove (Exhibit 10) Ms. Condillac from her position, not because she was failing at her position or because she failed the ODAP. Rather, it was because he contended that due to her Reasonable Accommodation request, she deemed herself unable to perform the essential functions of her position. Within a few months of receiving that letter, Mr. Conerly proposed her termination after failing to follow the reasonable accommodation interactive process.

The Proposal to Remove relies on the Position Description for the Associate Ombudsman, GS-301-14 Associate Ombudsman job and it contends that Ms. Condillac was unable to perform those duties. There are a number of issues with that contention. In the first place, the FOH medical officer determined that Ms. Condillac was "a qualified individual with a disability," (Exhibit 11, Proposal to Remove supporting documentation (page 2 of the November 6, 2019 report)), yet Mr. Conerly contends that Ms. Condillac cannot perform the essential functions of her position. These two points are totally contradictory.

Ms. Condillac was never unable to perform her essential functions. Had that been the case, Mr. Conerly would not have graduated her from the ODAP just a month or so before the Proposal to Remove. Rather Mr. Conerly hones in on a reasonable accommodation request Ms. Condillac made to telework, unless she was required to be in the office to complete job duties.

On June 21, 2019, Mr. Conerly granted Ms. Condillac the reasonable accommodation of teleworking three days a week. However, that accommodation became inadequate after Mr. Conerly acted with increased hostility towards her. On November 8, 2019, Ms. Condillac asked to telework 5 days per week, except when necessary to be in the office. (Id. page 15 of 32). She also rescinded any request for reassignment. (Id.).

3

The Agency contends that Ms. Conerly insisted that as part of her Reasonable Accommodation, she be exempted from communicating with her supervisor. That contention is utterly untrue. Ms. Condillac never stated that she would not or could not communicate with Mr. Conerly. She was willing to telework and communicate either by email, text, phone or any other method required for her position.

At no time did the agency engage in an interactive process with the employee to work towards a reasonable accommodation that would have worked for both parties. [N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability." *Baert v. Euclid Beverage, Ltd.,* 149 F.3d 626, 634 (7th Cir. 1998).

Rather than interpreting Ms. Condillac's proposed reasonable accommodation in such a narrowly tailored request, with no room for a broader interpretation or without any room for adjustment, the agency immediately determined that Ms. Condillac would be unable to interact with her supervisor at all.

Appellant challenged the Proposal to remove and even filed a Motion to Stay with the OSC. Exhibit 12. However, the Agency upheld its Proposal to Remove and terminated Appellant on February 21, 2020. Exhibit 13. The Agency closed out Appellant's whistleblower complaint on February 25, 2020. Exhibit 14.

Appellant has three bases for filing her MSPB action: (a) she shouldn't have been terminated, regardless of any whistleblower contention; (b) she exhausted claims of actual and perceived whistleblower complaints and was retaliated against; and (c) the affirmative defense of disability discrimination/failure to accommodate.

4

# EXHIBIT 1

Date:           October 1, 2019

From:           Albert Conerly

Subject:        Opportunity to Demonstrate Acceptable Performance

To:             Charmaine Condillac

During our mid-year performance appraisal discussion on October 1, 2019, I explained that we would be developing an Opportunity to Demonstrate Acceptable Performance (ODAP) to improve your unsatisfactory performance. As we discussed, your performance at this point in the review cycle is "achieved unacceptable results" in all your critical elements. The job elements where improvement is needed are listed below, along with the description of the required "acceptable" level.

## CRITICAL ELEMENT #1 ADMINISTRATIVE REQUIREMENTS:

a. Responsive service to internal/external customers that support customer and program requirements

b. Participates with supervisor to establish individual performance plans and provides self-assessments if required.

c. Identifies and communicates individual development needs consistent with the agency mission; assists coworkers by mentoring, advising, guiding them in understanding work assignments as appropriate d. Participates with coworkers in a monthly forum to discuss, provide and receive feedback on case and other ADR related topics.

e. Completes Agency mandated training within 10 business days after receipt of notice of requirement

f. Timely completion of all training requirements related to Privacy Act, Personally

Identifiable Information (PII), Protected Health Information (PHI), Privacy Impact Assessments (PIA), Information Systems Security Awareness, and similar training obligations related to the access, use, and dissemination of work-related information. Compliance with all aspects of the Privacy Act and other relevant authorities when accepting, managing, using, and/or disseminating official or other sensitive information.

g. Adherence to laws, rules, regulations and policies, with respect to maintaining the confidentiality, data management, and safeguarding requirements related to Privacy Act, official, non-public and personally identifiable information.

## COMPARISON OF YOUR PERFORMANCE TO THE ACCEPTABLE STANDARD:

Your performance at this stage is "achieved unacceptable results" for Critical Element #1. Your performance in this element has been deficient in the following ways:

2

You regularly _failed_ to participate in required meetings to discuss and clarify work matters and status. Your communication with internal customers (members of the OCPR Staff) often has been unresponsive and combative. Emails are frequently voluminous to the point of requiring inordinate time to read.

You were involved marginally in developing your 2019 PMAP. You _failed_ to meet the deadline (September 13) to respond to the Supervisor's request to provide the mid-year status on work accomplishments. On September 20, you were given an extension to submit mid-year accomplishments by September 23, using a format provided by the Supervisor. Your submission on September 23 was _unresponsive_ to the request because you did use the furnished format and you did not indicate any accomplishments you may have had.

As of September 23, you _provided no evidence_ to support that you timely completed agency mandated training.

## SPECIFIC ACTIONS THAT YOU MUST TAKE TO IMPROVE YOUR PERFORMANCE:

- You must attend and participate in all required meetings in person.
- Your communications, including replies to emails, must be responsive and concise. • You must adhere to prescribed directives, guidelines, and formats when responding to requests for information from the Supervisor and Team Leader.
- You must meet all specified deadlines, unless you receive written supervisory approval to your written request for extension.
- You must complete all Agency mandated training within 15 business days after this ODAP and provide me a copy of each certificate of completion.

## WHAT I WILL DO TO ASSIST YOU:

- I will be available to assist you in coordinating your project assignments, to prioritize your workload, and to provide feedback on completed tasks. • I will determine due dates on your assignments, when possible.
- I will meet with you weekly to assess your progress.
- I will be available for questions and/or discussions regarding your assignments.

## CRITICAL ELEMENT #2 PROCESS MANAGEMENT:

    a. Complete the following training requirements: o Observe Consultations — 8 e Co-conduct Consultations — 15 • Co-conduct Facilitations — 29

    b. Complete EEOC training for New Counselors — In addition, the employee is to discuss status of work with Supervisor and Team Leader

3

c. Conducting, independently and successfully, three (3) mediations. This includes handling the request for EEO-ADR mediation from start to closure. If an EEOADR mediation request is terminated prior to the actual mediation, another mediation must be substituted. Each mediation will be observed and evaluated by two (2) members of the OCPR Staff, one of whom will be the Team Leader.

## COMPARISON OF YOUR PERFORMANCE TO THE ACCEPTABLE STANDARD:

Your performance at this stage is "achieved unacceptable results" for Critical Element #2. Your performance in this element has been deficient in the following ways:

You <u>failed</u> to complete the assigned number of training tasks.

You <u>failed</u> to meet with the Supervisor and Team Leader as instructed on a weekly basis to discuss your work status (see June 21, 2019 email approving 3 days of telework as an accommodation and requiring in office meetings).

You <u>failed</u> to establish the database link from July 3 1 to September 6 as required to receive work assignments.

Note: As of September 13, there were at least 71 consultation opportunities and 58 facilitation/mediation opportunities since the return from furlough in February 2019. From May 30 when the PMAP was established to September 1 3, there were 34 mediations/facilitations and 51 consultation requests.

## SPECIFIC ACTIONS THAT YOU MUST TAKE TO IMPROVE YOUR PERFORMANCE:

o   You must report, in writing, no later than Thursday, October 3, 2019, the status of training tasks completed as of September 30, 2019.
o   You must report, in writing, no later than Thursday, October 3, 2019, the number of training requirements that were to be, but were not, completed as of September 30.
o   You must complete all remaining training requirements by November 1 8, 2019. ● You must meet in person weekly, as scheduled, with the Supervisor and Team Leader to discuss the status of your work.
o   You must meet all deadlines relating to this element, unless you receive written supervisory approval to your written request for extension.

## WHAT 1 WILL DO TO ASSIST YOU:

o   I will be available to assist you in coordinating your project assignments, to prioritize your workload, and to provide feedback on completed tasks.

4

o I will determine due dates on your assignments, when possible.
o I will meet with you weekly to assess your progress.
o I will be available for your questions and/or discussions.


## CRITICAL ELEMENT #3 PROJECT MANAGEMENT:

Develop a flowchart of the 60-day EEO-ADR mediation process, including identifying key events, activities, decision points, roles and responsibilities, critical/essential documentation, and taking any other actions that may be appropriate. Ensure the assigned project is managed to completion by:

o Developing a project plan, and discussing with Supervisor and Team Leader to obtain approval before executing the plan o Meeting with Supervisor and Team Leader weekly to report and obtain feedback on project status o Timely notifying Supervisor when issues arise that may impact project completion

## COMPARISON OF YOUR PERFORMANCE TO THE ACCEPTABLE STANDARD:

Your performance at this stage is "achieved unacceptable results" for Critical Element #3. Your performance in this element has been deficient in the following ways:

You <u>failed</u> to develop a project plan, discuss it with the Supervisor and Team Leader, and obtain approval on a project plan.

You <u>failed</u> to meet weekly with the Supervisor and Team Leader to report and obtain feedback on the project status.

You <u>failed</u> to timely notify the Supervisor when issues arose that would impact the status of this project.

## SPECIFIC ACTIONS THAT YOU MUST TAKE TO IMPROVE YOUR PERFORMANCE:

o You must develop a project plan by Tuesday, October 8, 2019.
o You must submit and meet in person to discuss the project plan with the supervisor and team leader to obtain approval to conduct the project.
o You must meet in person with the supervisor and team leader weekly until project plan is completed and approved, and project is completed.
o You must notify, immediately and by email, the supervisor of any issues that interfere with the project.


## WHAT I WILL DO TO ASSIST YOU:

5

- o I will be available to assist you in coordinating all your project assignments, prioritize your workload, and provide feedback on completed tasks.
- o I will determine due dates on all project assignments.
- o I will meet with you weekly to check your progress.
- o I will make myself available for your questions and/or discussions.

## CRITICAL ELEMENT #4 TEAM WORK

a. Maintains focus on OCPR's mission and FDA's ADR Program goals

b. Demonstrates openness to diverse ideas, expressed thoughts, and questions during meetings and other daily office interactions

c. Demonstrates adaptability and flexibility in meeting new challenges and changes in Program areas

d. Seeks to understand others' needs and to assist through active listening

e. Contributes to development of staff meeting agendas, and participates in related discussions

f. Respects others' time commitments by promptly arriving to scheduled engagements

g. Alerts Team Leader and/or Supervisor to assist in resolving matters of concern that may hinder the work of the unit

COMPARISON OF YOUR PERFORMANCE TO THE ACCEPTABLE STANDARD:

Your performance at this stage is "achieved unacceptable results" for Critical Element #4. Your performance in this element has been deficient in the following ways:

You failed to collaborate with Supervisor, Team Leader, and other Team Members to help ensure assignments and other Program requirements are met.

You failed to work with your colleagues to complete established training requirements

You failed regularly to participate in staff and other required meetings critical to your and the unit's success since June 1 1, 2019.

You failed to respect others' time commitments by promptly arriving to scheduled engagements. For example, on March 20, 2019, you failed to notify a colleague with whom you needed to work of your work status. Also, on July 1 1 and 24, you failed to arrive timely to previously established mediation locations, instead deciding to participate from other unknown and unapproved locations. You failed to re-schedule a required and scheduled meeting with her colleagues to establish a database link essential to receiving assignments.

6

You frequently <u>failed to communicate res onsivel</u> with the Supervisor, hindering the work of the unit.

You <u>failed to provide</u> responsive feedback on your performance for the mid-year review despite being given two opportunities to this on September 13 and September 23.

## SPECIFIC ACTIONS THAT YOU MUST TAKE TO IMPROVE YOUR PERFORMANCE:

- You must work with your colleagues to complete your unmet training assignments.
- You must actively listen during all meetings.
- You must participate in person in all required meetings unless you have requested, consistent with the August 30, 2019 leave request procedures, to be excused, and the supervisor has approved the request.
- You must arrive to all scheduled meetings at the established location on time unless your delay has been approved by the supervisor.
- You must attend and complete a time management course approved by the supervisor no later than October 30, 2019. ● You must attend and complete an active listening course approved by the supervisor no later than October 30, 2019.

## WHAT 1 WILL DO TO ASSIST YOU:

- I will be available to assist you in coordinating all your project assignments, prioritize your workload, and provide feedback on completed tasks. e I will meet with you weekly to check your progress.
- I will make myself available for your questions and/or discussions regarding assignments.

## EXPECTATIONS:

This ODAP does not replace your performance plan. It is directed toward those aspects of your performance that are unacceptable. It does not relieve you of your obligation to continue performing at the acceptable level on the remaining elements not addressed in this ODAP.

## YOUR COMMENTS:

During our discussion of October 1, 2019, I asked for your suggestions about how we can bring your performance up to an acceptable level. I also asked if there were any outside/mitigating factors that might be affecting your performance.

## TIMEFRAME:

7

This ODAP will start today and will be in effect for 60 calendar days (October 1 — November 30, 2019). You should understand that if your "Achieved Unacceptable Results" performance does not improve to the "Minimally Accepted Results" level, action will be initiated to reassign, reduce in grade, or remove you from your position.

I believe that you can improve your work to meet the standards for your job. As we follow the actions outlined in this ODAP, we will discuss your work frequently. Each week, I will give you a weekly summary of your progress. Documentation about your performance will be placed in your file after you have been asked to initial it to acknowledge that you have seen it. You will be given copies of the performance documentation and you have the right to rebut the documentation.

I know you want to do a good job and I believe that with this ODAP you can improve your performance to the "Achieved Expected Results" level. I will provide you all the counseling and assistance necessary to ensure your success through this ODAP period.

## Dt _uuh_

Albert Conerly, Jr.. Chief Man | ent Officer and

Ombudsman


I acknowledge receipt of the ODAP:

Charmaine Condillac

10/1/19
Dat
e


10/1/19
Date


8

# EXHIBIT 2

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Overview:**

One of the biggest challenges facing Federal sector managers and supervisors is taking swift action to manage employees who are not meeting performance expectations and not contributing to agency goals. Managers and supervisors may not be making full use of the many options to deal with employees with performance or conduct issues. Managers and supervisors may take actions against employees, up to and including removal from Federal employment, for job performance deficiencies and/or misconduct.

This guidance provides agency human resources offices, managers, and supervisors with a broad overview of the different tools that can be used to manage employees' job performance and address unacceptable performance or misconduct. This overview of authorities under title 5, United States Code, is not meant to be a comprehensive guide that addresses every possible incident of misconduct or performance problems as each situation will vary depending on the facts involved. Also, individual agencies may have unique statutory authorities and guidelines for addressing misconduct or performance problems. However, it does highlight the tools generally available to Executive Branch managers and supervisors for addressing misconduct or performance problems. You should consult with your human resources office to determine which tools are applicable to your agency.

This guidance addresses both members of the Senior Executive Service (SES) and non-SES Federal employees. For employees who are covered by bargaining units, negotiated agreements with the applicable labor unions may contain time limits or other procedures that should be followed when taking action regarding bargaining unit employees, but these procedures must be consistent with the requirements of Title 5, United States Code.

**Actions That Can Be Taken to Avoid Performance or Conduct Issues:**

The best way for managers and supervisors to handle performance and conduct issues is to take action to avoid performance problems or conduct issues before they occur. Such preventive actions include, but are not limited to:

- *Communicate clear performance standards and expectations to employees.* If your employees do not understand what is expected, it will be very hard, if not impossible, for them to meet those expectations. Providing clear expectations does not necessarily require you to lay out precisely written, detailed instructions on every performance component but should provide expectations with enough clarity and specificity so that employees understand their responsibilities and can be held accountable for them. Generally, the question you should ask in drafting performance standards: "Would a reasonable person understand what was expected?"

- *Provide regular and consistent feedback on performance.* Such feedback, both positive and corrective, whether given in regularly scheduled meetings or in unscheduled discussions, is crucial to ensuring that expectations are understood.

1

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

Consistent feedback lessens the likelihood that an employee will be surprised if it becomes necessary to take formal steps to resolve unacceptable performance. Always look for opportunities to confirm that your employees understand what is expected.

- ***Reward and recognize good performance, informally and formally.*** Recognizing good performance is simply another way to clarify and reinforce expectations. Recognizing good performance boosts morale and also increases the likelihood that good performance will continue.

- ***Make full use of the probationary period for employees.*** Performance problems often first show up during the initial period of Government employment. This period is designed to provide an opportunity for managers and supervisors to address such problems in an expedient manner. Furthermore, removing probationary employees based on conduct and performance issues is less cumbersome as they are not entitled to most of the procedures and appeal rights granted to employees who have completed probationary/trial periods. More information on the probationary or trial period is discussed in more detail later in this guide.

- ***Set the desired example by the manager's or supervisor's own conduct.*** Employees often follow the lead of their managers and supervisors. Demonstrating leadership through clear communication, taking initiative and being inclusive can set the tone for an office.

- ***Maintain a good work atmosphere.*** Creating inclusive work environments where the workforce is fully engaged can be a critical enabler of organizational success and performance.

- ***Assure that employees conform to any applicable standards of conduct.*** Public service is a public trust. To ensure that every citizen can have complete confidence in the integrity of the Federal Government, Federal employees are expected to adhere to certain principles of ethical conduct.[1] Additionally, Federal employees are expected to conform to standards of conduct established by Government-wide and agency policies.[2]

- **Maintain effective lines of communication with the Human Resources Office and Agency Legal Office.** While managers and supervisors are ultimately responsible for addressing performance and misconduct problems, they are not expected to be subject matter experts on application of the tools discussed in this guidance. The Human Resources Office and Agency Legal Office are available to advise, assist and guide managers and supervisors through the available processes for addressing performance and conduct issues.

---

[1] *See* 5 C.F.R. Part 2635.
[2] *See* 5 C.F.R. Part 735.

2

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Addressing Performance or Conduct Issues of Non-SES Employees during the Probationary Period:**

Employees newly hired into the Federal Government and into a competitive service position are generally required to serve a 1-year probationary period.[3] The probationary period is an important management tool to evaluate the conduct and performance of an employee and should be treated as the last step in the hiring process. Appropriate actions taken within the probationary period are the best way to avoid long-term problems.

Employees may be terminated from employment during the probationary period for pre-employment reasons or for unacceptable performance or conduct.[4] When removal is based on pre-employment issues, the employee is given advance notice, an opportunity to provide an explanation of the events related to pre-employment issues and an agency decision.[5] When the basis for termination is unacceptable performance or conduct, advance notice of the intent to terminate is not required. However, the employee must be informed in writing of the reason for the summary termination. In either case, probationary employees have limited appeal rights, and also have Equal Employment Opportunity (EEO) rights to challenge an action that is believed to have been taken for a discriminatory reason. An employee may also seek corrective action with the U.S. Office of Special Counsel (OSC) if he or she believes the action was taken because of a prohibited personnel practice.

Effective use of the probationary period is an ideal way to avoid long-term problems. The U.S. Government Accountability Office (GAO) has concluded there are benefits of using automated notifications to notify supervisors that an individual's probationary period is ending and that the supervisor needs to make an affirmative decision or otherwise take appropriate action.[6] OPM agrees automated and timely notifications to supervisors can be a useful tool for agencies regarding probationary periods and should be used to the extent they are appropriate and available.[7]

**Addressing Performance or Conduct Issues of Supervisory Employees during the Supervisory Probationary Period (Non-SES):**

Employees initially appointed to supervisory positions are required to serve a probationary period prescribed by the agency.[8] The purpose of the supervisory probationary period is to provide the agency an opportunity to assess the supervisory

---

[3] There are other circumstances in which an employee would be required to serve a probationary period. Your Human Resources Office can help you determine if an employee is on a probationary period.
[4] *See* 5 C.F.R. §§ 315.803 and 804.
[5] *See* 5 C.F.R. § 315.805.
[6] GAO-15-191, Improved Supervision and Better Use of Probationary Periods Are Needed to Address Substandard Employee Performance, February 2015.
[7] All Shared Service Centers have confirmed to OPM that their existing HR systems already contain the functionality to automatically notify supervisors of the end of the individual's probationary period for appropriate management action. It is each agency's decision whether to utilize this functionality.
[8] *See* 5 C.F.R. Part 315, Subpart I.

3

performance (not technical ability or program knowledge) of the new supervisor. At the end of the probationary period, the agency determines whether to retain that individual as a supervisor or to return the individual to a non-supervisory position.

Agencies should monitor the performance of their probationary supervisors and provide them training, coaching, and feedback. Use of the supervisory probationary period to identify ineffective supervisors is critical to organizational performance because of the great impact supervisors have on the performance of the workforce. Therefore, agencies need to hold managers accountable for using the supervisory probationary period wisely as the final step in the selection process.

**Addressing Performance of Non-SES Employees after the Probationary Period:**

Communication is the key to addressing issues early and taking appropriate action when necessary. Allowing a job performance issue to fester simply compounds the issue and makes it more difficult to address.

**Managing Employee Performance[9]:**

To effectively manage employee performance, supervisors should:

- Encourage employee participation in the performance planning process;
- Issue a performance plan outlining the critical and any non-critical job element(s) and performance standards against which his or her actual job performance will be appraised;
- Discuss performance expectations so employees understand their job duties and how they should be performed;
- Continually monitor performance, conduct at least one formal progress review, and provide ongoing feedback throughout the rating cycle;
- Periodically review performance standards and revise them as necessary to ensure that standards are attainable, accurate, and effectively communicate performance expectations; and
- Communicate with employees when deficiencies are first noted. Do not wait until the end of the rating cycle to address concerns.[10]

---

[9] If bargaining unit employees are involved, supervisors should consult with labor relations staff when drafting and issuing performance standards; conducting performance meetings; and issuing final ratings to determine whether any labor relations obligations exist with the local union(s).

[10] There is a variety of useful, cost-free training courses available to supervisors and managers on HR University (HRU.gov) that can assist on a wide range of employee performance management issues. For example, an online course entitled "Addressing and Resolving Poor Performance" can be found at: http://www.hru.gov/course_catalog.aspx?cid=161&mgr=false.

4

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Addressing Unacceptable Job Performance:**

If an employee's job performance becomes unacceptable under a critical job element, supervisors should promptly address this matter with the employee. There are two formal procedures a supervisor may use in resolving unacceptable performance: Chapter 43 and Chapter 75 of Title 5 of the U.S. Code.

At the earliest opportunity, the supervisor should work with the Human Resources Office Employee Relations staff to determine the appropriate procedure for resolving the poor performance and whether placing the employee on a Performance Improvement Plan (PIP) under 5 U.S.C. Chapter 43, a specific measurable action plan, is appropriate. [11]

The Employee Relations staff will also guide the supervisor on the specific regulatory requirements of the process and assist in providing a good foundation from the onset. If a PIP is appropriate, the supervisor should work with the Employee Relations staff to draft the PIP and determine how long the PIP will last; its duration will generally depend on the duties and responsibilities of the employee's position and the nature of the unacceptable performance. A PIP should include the following:

- The critical job element(s) being performed unacceptably;
- Examples of the employee's unacceptable performance under each critical element (not required but recommended);
- An explanation of the minimally acceptable level of performance required;
- An explanation of what the employee must do to demonstrate acceptable performance;
- Specific tools and support to be provided to help the employee improve during this period as required under 5 CFR 432.104;
- How long the PIP will remain in effect; and
- Consequences of failure to improve performance to an acceptable level.

The PIP notice may also advise the employee if he or she believes a personal problem is contributing to performance deficiencies, he or she may contact an Employee Assistance Program counselor. If the employee believes a medical condition is contributing to performance deficiencies, he or she may submit documentation for consideration.

During the PIP opportunity period, the supervisor should document assignments and instructions provided to the employee. Additionally, the supervisor should document assistance provided to the employee as well as monitor the employee's performance to determine if it rises to an acceptable level.

---

[11] Unlike removals initiated under 5 U.S.C. Chapter 43, Performance Improvement Plans (PIPs) are not required prior to initiating an action under 5 U.S.C. Chapter 75.

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Taking a Performance-Based Action under 5 U.S.C. Chapter 43:**

If an employee's job performance does not improve to an acceptable level at the conclusion of the PIP, the supervisor, in consultation with the employee relations staff as appropriate, should promptly determine the action to take. The supervisor's options include reassigning the employee, or proposing the employee's demotion or removal. Reassignment to a position at the same wage grade is a management right distinct from adverse and performance-based actions and can be accomplished with a simple notification and personnel action.

If a supervisor intends to reassign a bargaining unit employee, they should confirm with employee relations staff if there are collective bargaining obligations prior to informing the employee of the reassignment. Performance-based reductions in grade and removal actions can be appealed to the U.S. Merit Systems Protection Board (MSPB). If the employee belongs to a bargaining unit and the reduction in grade or removal falls within the coverage of a negotiated grievance procedure, the employee may file an appeal or grievance, but not both.[12]

In addition, an employee who believes a performance-based action was taken for a discriminatory reason may either file an EEO complaint or raise a prohibited personnel practice as an affirmative defense in an MSPB appeal. An employee may also seek corrective action with the U.S. Office of Special Counsel (OSC) if he or she believes the action was taken because of a prohibited personnel practice.

If the employee is being demoted or removed from the Federal service under 5 CFR Part 432, the following steps must be followed:

1. Issue a written proposed notice at least 30 calendar days prior to the proposed effective date of demotion or removal from Federal employment. This notice will state the regulation under which the action is being taken, specify critical element(s) failed, provide specific examples of unacceptable performance, discuss the performance improvement plan, and inform the employee of his or her rights;
2. The employee may be represented by an attorney, union office, or another person authorized by the employee and permitted by 5 C.F.R. § 432.105(a)(4)(iii). ;[13]
3. The employee may review the material relied on in support of the proposed action;
4. The employee may submit medical documentation if he or she believes a medical condition has contributed to the unacceptable performance;[14] and

---

[12] *See 5 U.S.C. § 7121(g)(2).*
[13] An agency may disallow as an employee's representative an individual whose activities as a representative would cause a conflict of interest or position or an employee whose release from his or her official position would give rise to unreasonable costs to the Government or whose priority work assignments preclude his or her release from official duties. *See 5 C.F.R. § 432.105(a)(4)(iii).*
[14] *See 5 C.F.R. § 432.105(a)(4)(iv).*

6

5. After the proposal notice has been issued and the 30-day advance notice period ends, a deciding official (a person higher in the chain of command than the proposing official in accordance with the agency's delegations of authority) reviews the proposal notice, supporting evidence, and considers any response provided by the employee and/or the employee's representative in order to reach a final decision. A final written decision to demote or remove an employee must inform the employee of any appeal or grievance rights he or she may have.

6. The agency will maintain copies of the notice of proposed action, the employee's written reply, a summary of the employee's oral reply, if any, the decision notice, and any supporting material.

**Other Considerations:**

- If the individual requests a reasonable accommodation related to a disability that they assert is necessary in order to permit them to attain acceptable performance, the agency must assess the appropriateness of the request and provide reasonable accommodation as required by law. This would apply to any stage of the process prior to final action being taken, including if a PIP has already been issued. If an accommodation is deemed reasonable and necessary, the agency should give the employee an opportunity to demonstrate acceptable performance with the accommodation before it continues the PIP, if the PIP is ongoing at the time the employee informs the agency of his or her disability, or takes further action, if final action has not yet been completed. It should be noted, however, that the agency is not required to modify the essential functions of a position based on a request for a reasonable accommodation and further, is permitted to hold disabled employees with reasonable accommodation to the same standards for performance as non-disabled employees with regard to the essential functions of their position. Most agencies have a reasonable accommodation manager who can provide guidance concerning how to pursue these steps.

- Upon successfully completing a PIP, an employee must maintain an acceptable level of performance in the same critical job element(s) for 1 year beginning with the date on which the PIP began. If the employee does not, he or she may be removed or demoted for unacceptable performance.

**Taking an Adverse Action for Performance under 5 U.S.C. Chapter 75:**

Supervisors and managers may also address unacceptable performance through an adverse action under Chapter 75 instead of a Chapter 43 performance-based action.[15] Unlike Chapter 43 actions, Chapter 75 actions do not have many of the formal requirements such as notice that the employee's performance deficiency is based on a critical element and an opportunity to improve period. The requirements for Chapter 75 actions, are described under "Addressing Non-SES Employee Misconduct" below.[16]

---

[15] *See, e.g.,* <u>Lovshin v. Dep't of the Navy</u>, 767 F.2d 826 (Fed. Cir. 1985).
[16] *See Fairall v. Dep't of Veterans Affairs,* 844 F.2d 775 (Fed. Cir. 1987).

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

To assist you in determining the best approach for you and your agency, we are providing a side-by-side comparison highlighting the differences between addressing unacceptable performance under Chapter 43 versus Chapter 75. Each approach has unique requirements. While addressing unacceptable performance under Chapter 75 is generally viewed as a more streamlined approach, the facts of each case and the nature and strength of your evidence will be determining factors in deciding under which authority to take your action.

8

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES
# OR MISCONDUCT

| | **Chapter 43** | **Chapter 75** |
|---|---|---|
| **Critical Element** | Agency *must* prove the performance deficiency is in a critical element. | Agency is *not* required to prove the performance deficiency is in a critical element. |
| **Establishment of Performance Expectations** | When the employee's performance in one or more critical elements is unacceptable, the employee will: (1) be notified of the deficiency; (2) be offered the agency's assistance to improve; and (3) be warned that continued poor performance could lead to a change to lower grade or removal. (This is commonly referred to as the PIP, an abbreviation for both performance improvement plan and also for performance improvement period.) | The extent to which an employee is on notice of the agency's expectations is a factor in determining the appropriateness of the penalty. Also, an agency cannot require that an employee perform better than the standards that have been communicated to the employee. |
| **Decline Following Improvement** | If the employee's performance improves during the PIP, and remains acceptable for 1 year, a new PIP is necessary before taking an action *under this chapter*. | A PIP is not required. |
| **Efficiency of the Service** | Agency is *not* required to prove that the personnel action will promote the efficiency of the service. | Agency *must* prove that the personnel action will promote the efficiency of the service. |
| **Burden of Proof** | Action must be supported by *substantial evidence*: that a reasonable person might find the evidence supports the agency's findings regarding the poor performance, even though other reasonable persons might disagree. | Action must be supported by a *preponderance of the evidence*: that a reasonable person would find the evidence makes it more likely than not that the agency's findings regarding the poor performance are correct. |
| **Advance Notice** | The agency must provide a notice of proposed action 30 days before any action can be taken, and must provide the employee with a reasonable opportunity to reply before a decision is made on the proposal. | |

9

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

|  | **Chapter 43** | **Chapter 75** |
|---|---|---|
| **Content of Advance Notice** | The notice must state the specific instances of unacceptable performance that are the basis for the action *and also the critical performance element involved.* | The notice must state the specific instances of poor performance that are the basis for the action. |
| **Deciding or Concurring Official** | A person higher in the chain of command than the person who proposed the action must concur. | The deciding official does not have to be a person higher in the chain of command than the person who proposed the action. |
| **Agency Decision** | Agency must issue a final decision within an additional 30 days of the expiration of the 30 days advance notice period. | Agency is under no particular time constraint, other than there cannot be a delay so extensive that it constitutes an error that harms the employee. |
| **Penalty Mitigation** | Once the agency meets the requirements to take an action, the MSPB cannot reduce the agency's penalty. | After finding that the agency meets the requirements to take a Chapter 75 action, the MSPB may reduce the agency's penalty. |
| ***Douglas* Factors** | The *Douglas* factors are not used. | The agency must consider the relevant *Douglas* factors when reaching a decision on the appropriate penalty. |
| **Time Limits** | Time limited to performance deficiencies occurring within the 1 year prior to the proposal notice. | No time limit for inclusion of "incident/charges." |
| **Affirmative Defenses** | The agency action will not be sustained if the employee was harmed by the agency's failure to follow procedures, if the agency decision was reached as a result of the commission of a prohibited personnel practice, or if the decision is otherwise not in accordance with the law. | |

10

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Addressing Non-SES Employee Misconduct:**

Managers are responsible for notifying their employees about the rules of behavior in the organization, including written guidance, policies or laws. It is imperative that Federal agencies manage their workforces effectively, which involves the effective use of discipline when addressing employee misconduct.

Generally, the objective of discipline is to correct deficiencies in employee conduct and performance, not to punish the employee. Discipline can deter misconduct and correct situations interfering with the efficiency of civil service. Documenting misconduct is also imperative to support any conduct-based action and in the event that progressive discipline is initiated based on repeated misconduct. Conduct-based actions are important tools designed to aid supervisors in maintaining an efficient and orderly work environment. Further, misconduct should be addressed when deficiencies are first noted, when, for example, an employee refuses or fails to comply with a rule, regulation or law within the workplace. Determining the appropriate course of action is ultimately management's responsibility. Lastly, managers should consult with employee relations staff for help in navigating technical or complex laws, regulations, and collective bargaining agreements and when considering available options.

Managers should take discipline that is reasonable and proportionate to the misconduct. One of the most difficult determinations for managers is selecting the penalty. Several factors come into play in determining an appropriate penalty. Penalties should be reasonably consistent with the discipline applied to similarly situated employees. In other words, where the charges and the circumstances surrounding the charged behavior are substantially similar for two employees, and there are no considerations that would warrant treating them differently, the penalties should be comparable. The supervisor should also weigh any relevant aggravating and mitigating factors that may be relevant such as the nature and severity of the offense, the employee's disciplinary record and years of service, the employee's potential for rehabilitation, and applicable agency penalty guidelines. These factors are part of the 12 *Douglas* factors to be taken into consideration whenever a disciplinary action is contemplated.[17]

Penalties for misconduct range from lesser disciplinary actions such as oral and written reprimands, letters of warning, letters of counseling, and suspensions (14 calendar days or less) to more severe adverse actions such as suspensions (more than 14 calendar days or indefinite suspensions under certain defined circumstances), involuntary reductions in grade or pay, and removals. Effective lesser disciplinary measures are usually covered under agency policies, may be grievable depending on the agency's administrative or negotiated grievance processes, and may be issued with fewer procedural requirements. However, penalties for more severe adverse actions have certain statutory and regulatory procedural requirements that agencies must follow.

---

[17] *See Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981).

11

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

## Suspensions of 14 Days or Less

Certain employee misconduct can result in suspensions of 14 days or less. A suspension of 14 days or less is a non-appealable adverse action; therefore, this action cannot be directly appealed to the MSPB. However, the employee may grieve the action through an agency's administrative grievance procedure. If the employee belongs to a bargaining unit and the suspension falls within the coverage of a negotiated grievance procedure, the employee may file a grievance only under that procedure. Alternatively, the employee may file an EEO complaint challenging the disciplinary action if they allege that it was imposed on a legally prohibited basis such as age, gender or race discrimination. An employee may also seek corrective action with the U.S. Office of Special Counsel (OSC) if he or she believes the action was taken because of a prohibited personnel practice.

After the supervisor consults with employee relations staff and it is determined that a short suspension is appropriate, the following steps must take place:

1) The supervisor (or designated official where applicable) will issue a written notice of proposed suspension stating the reasons for the proposed action and informing the employee of his or her right to review the material relied upon to support the reasons for action provided in the notice;
2) The employee must be given a reasonable time, but no less than 24 hours, to submit a written and/or oral reply to the proposal letter, at the employee's discretion, and provide supporting documentation;
3) The employee may choose to have a representative. The representative may be a union official if the employee is a member or a bargaining unit. The employee may not choose another employee as their representative, however, if the representation will cause a conflict of interest or position, or an employee of the agency whose release from his or her official position would give rise to unreasonable costs or for whose priority work assignments preclude his or her release from official duties;[18] and
4) A deciding official (often a higher level manager than the proposing official) reviews the documentation and any reply provided by the employee, and determines whether or not the discipline is warranted and issues a decision. In arriving at a decision, the deciding official may consider only the reasons specified in the notice of proposed action and in the employee or employee representative's answer. The decision notice will specify reasons for the decision, determine the level of discipline to be imposed after considering mitigating and aggravating factors, and advise the employee of grievance and any other applicable appeal rights.

---

[18] *See* 5 C.F.R. § 752.203(d).

12

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Suspensions for more than 14 Days (including indefinite suspensions), Reduction in Grade or Pay, Removals from the Federal Service**

For more serious or repeated misconduct, supervisors may impose penalties that are appealable adverse actions. Suspensions for more than 14 days (including indefinite suspensions under certain defined circumstances), reductions in grade or pay and removals may be appealed to the MSPB, grieved through a collective bargaining agreement if the employee is a member of a union or, alternatively, the employee may file an EEO complaint challenging the disciplinary action if they allege that it was imposed on a legally prohibited basis such as age, gender or race discrimination. An employee may also seek corrective action with the U.S. Office of Special Counsel (OSC) if he or she believes the action was taken because of a prohibited personnel practice.

Supervisors should work with their employee relations staff and legal office when considering these actions. The following steps must take place if it is determined that an adverse action is appropriate:

1. The supervisor will issue a written notice of proposed action, which will be effective no earlier than 30 calendar days from the date of the proposal, if the action is found warranted by the deciding official. This notice will state the reasons for the proposed action and inform the employee of his or her right to review the material relied upon to support the reasons for action provided in the notice.
2. The employee must be given a reasonable time but not less than 7 days to submit a written and/or oral reply to the proposed notice, at the employee's discretion, and provide supporting documentation.
3. The employee may choose to have a representative. The representative may be a union official if the employee is a member or a bargaining unit. The employee may not choose another employee as their representative, however, if the representation will cause a conflict of interest or position, or an employee of the agency whose release from his or her official position would give rise to unreasonable costs or for whose priority work assignments preclude his or her release from official duties.[19]
4. The employee may submit medical documentation if the employee wishes for the agency to consider any medical conditions which may contribute to the misconduct or performance problem. It should be noted, however, that the agency may hold disabled employees with reasonable accommodation to the same standards of conduct as non-disabled employees;
5. A deciding official (often a higher level manager than the proposing official) reviews the proposal, supporting documentation, medical documentation if submitted, and any reply provided by the employee. In arriving at a decision, the deciding official may consider only the reasons specified in the notice of proposed action and in the employee or employee representative's answer;
6. In assessing whether the proposed adverse action based on the misconduct promotes the efficiency of the service, the deciding official determines whether the

---

[19] *See* 5 C.F.R. § 752.404(e).

charges are supported, and if so, whether the proposed penalty is warranted, after taking into consideration mitigating and aggravating factors, and issues a written decision letter stating the deciding official's conclusion as to the appropriate action. The decision letter will inform the employee of any appeal or grievance rights he or she may have if discipline is taken; and

7. The agency will maintain copies of the notice of proposed action, the employee's written reply, a summary of the employee's oral reply, if any, the decision notice, and any supporting material. The agency will furnish these documents to the MSPB, other reviewing authority, and the employee upon his or her request.

## Excused Absence (Administrative Leave) – to Be Used in Rare Circumstances

Excused absence (administrative leave) is an administratively authorized absence from duty without loss of pay and without charge to other paid leave and is considered part of an employee's basic workweek. The authority to grant an excused absence derives from the inherent authority for heads of agencies to prescribe regulations for the government of their organizations. (*See, e.g.*, 5 U.S.C. §§ 301-302).

OPM advises limiting the approval of excused absence.[20] Where absences are for longer than brief periods, excused absence is generally inappropriate. Approving officials should also ensure that the granting of excused absence is not specifically prohibited by law.

In rare circumstances, excused absence may be used for an employee while suspension or removal procedures have been proposed. Specifically, the employee may be placed in a paid, non-duty status for the time necessary to effect the adverse action if the organization determines that the employee's continued presence on the job during the notice period may:

- Pose a threat to the employee or others;
- Result in loss or damage to Government property; or
- Jeopardize legitimate Government interests.

However, OPM strongly recommends agencies consider other options prior to use of excused absence in this scenario. Other options include:

- Assigning the employee to duties where he or she is no longer a threat to safety, the agency mission, or Government property;
- Allowing the employee to take leave, or carrying him or her in an appropriate leave status (annual, sick, leave without pay) or absence without leave (if the employee has absented himself or herself from the worksite without requesting leave); or

---

[20] *See* OPM Fact Sheet: Administrative Leave at: https://www.opm.gov/policy-data-oversight/pay-leave/leave-administration/fact-sheets/administrative-leave/

14

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

- Curtailing the advance notice period for the proposed adverse action when the agency can invoke the "crime provisions" under Title 5, United States Code, because it has reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed and is proposing a removal or suspension.

## Addressing Performance Deficiencies in the Senior Executive Service[21]:

### During Probation:

An individual's initial career SES appointment becomes final only after the individual completes a 1-year probationary period. Agencies use this period to observe and evaluate the appointee's performance. If an agency finds the probationer's performance unacceptable, it should consider whether to take remedial action, such as specialized training or assignment to other SES duties. If remedial action is not considered appropriate or proves unsuccessful, the agency should take steps to remove the employee from the SES. Removal is not required to be based on a final rating during a probationary period. Even if the agency uses a final rating under an SES performance appraisal system to document performance deficiencies, removal of a probationer is always done under the following procedures.[22]

An agency must provide at least a 1-day advance written notice to the probationer and make the removal effective prior to the conclusion of the probationary period. The notice must include the following:

- The effective date of the action;
- The agency's conclusions as to the inadequacies of the probationer's performance; and
- Whether the probationer has placement rights to another position outside the SES and, if so, to what position.

Probationers who were appointed to the SES without a break in service from a civil service position held under a career or career-conditional appointment or an appointment of equivalent tenure, such as certain appointments in the excepted service, are guaranteed placement in a position at GS-15 or higher.[23] These appointees are also entitled to be placed in a position of equivalent tenure to that of the appointment held at the time of appointment to the SES. Those lacking this right may be removed from employment in the Federal service. Removal of a probationary career SES appointee for performance reasons is not appealable to the MSPB.[24] SES appointees have the same EEO and OSC

---

[21] Some agencies, such as the Department of Veterans Affairs, may have unique statutory authority for addressing performance and misconduct for Senior Executives. We recommend you consult with your agency human resources or legal offices for additional information.
[22] 5 C.F.R. § 359.402.
[23] 5 U.S.C. § 3594(a); 5 C.F.R. § 359.701(a).
[24] 5 C.F.R. §359.407.

15

rights as other employees, however, to challenge an action they believe was taken based upon illegal discrimination or a prohibited personnel practice.

**After Probation:**

Removal of a non-probationary career SES member for performance must be based on the appointee's final SES rating(s).[25] The final SES rating is normally the annual summary rating prepared for an executive at the end of an appraisal period. However, an agency is also authorized to end a senior executive's appraisal period at any time after the agency's minimum appraisal period is completed, if there is an adequate basis on which to appraise and rate the senior executive's performance, and prepare a rating of record using the same process required for an annual summary rating.[26] Such a rating of record is also a final SES rating and may serve as the basis, or part of the basis, for a removal action. If a career appointee receives one final rating of "unsatisfactory," he or she must be reassigned or transferred within the SES, or removed from the SES. An agency **must** remove a career appointee from the SES when the appointee receives the following final ratings:

- Two ratings of "unsatisfactory" within 5 consecutive years; or
- Two less than fully successful ratings (i.e., "minimally satisfactory" or "unsatisfactory") within 3 consecutive years.

The agency must give the career member a written notice at least 30 calendar days before the effective date of removal from the SES. This notice must include:

- The effective date of the removal;
- The basis for the removal, as documented in the annual summary performance rating(s) used to support the removal action;
- The member's right to be placed in a position outside the SES, and information about the new position, if available;
- The member's right to request an informal hearing before an official designated by the MSPB; and
- When applicable, the appointee's eligibility for immediate retirement under 5 U.S.C. §§ 8336(h) or 8414(a).

Career appointees do not have appeal rights to the MSPB for a performance-based removal action from the SES. While the appointee may request an informal hearing with the MSPB, this request does not delay the removal from the SES. The SES member may also initiate an EEO or OSC complaint challenging an action that is believed to have been taken based upon illegal discrimination or a prohibited personnel action.

---

[25] 5 C.F.R. §359 Subpart E.
[26] 5 U.S.C. § 4314(b)(1)(D); 5 C.F.R. § 430.304(b).

16

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

All non-probationary career SES members removed for less than fully successful performance are entitled to be placed in a civil service position outside the SES.[27] Those who were appointed to the SES without a break in service from a civil service position held under a career or career-conditional appointment or an appointment of equivalent tenure, such as certain appointments in the excepted service, are guaranteed placement in a position at GS-15 or higher under an appointment of tenure equivalent to that held immediately prior to the initial career SES appointment. If the agency has no other available appointment authority, the agency may use the authority provided at 5 C.F.R. § 213.3202 (m)(1).

## Disciplining Career SES Members

An agency may take a disciplinary action against a career SES member only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function. A career SES appointee removed for disciplinary reasons has no placement rights and must be removed from Federal employment.

## During Probation:

The procedures below apply to disciplinary removals of probationary career SES appointees who were not covered by 5 U.S.C. 7511 (subchapter II of chapter 75, Adverse Actions) immediately before being appointed to the Senior Executive Service.[28]

To remove a probationary career appointee for disciplinary reasons, an agency must provide at least 1 day's written notice to the probationer. This notice must include the following:

- The effective date of removal; and
- The basis for removal including the acts of misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function.

However, if the proposed removal is based in whole or in part on conditions arising before appointment, the agency must give the appointee:

- An advance written notice stating the specific reasons;
- A reasonable opportunity to reply; and
- A written decision showing the reasons for the action and the effective date and provided at or before the time the action will be made effective.[29]

---

[27] 5 U.S.C. § 3594(b); 5 C.F.R. § 359.701(b).
[28] See 5 C.F.R. § 359.403.
[29] 5 C.F.R. § 359.404.

17

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

The probationary removal is not appealable to MSPB, but the probationer may initiate an EEO complaint challenging an action that is believed to have been taken based upon legally prohibited discrimination or OSC if it is believed to have been taken based upon a prohibited personnel practice.

**After Probation (and for certain probationary career and SES limited appointees):**

There are two adverse actions available for agencies when taking discipline against 1) a non-probationary career SES appointee, 2) a probationary career SES appointee who was covered under 5 U.S.C. § 7511 immediately before the SES appointment, and/or 3) an SES limited term or limited emergency appointee who was covered by 5 U.S.C. § 7511 immediately before the SES appointment while serving under a career or career-conditional or equivalent appointment in another position within the same agency.[30] The two adverse actions available to agencies are removal and suspensions for more than 14 days. These actions may be appealed to the MSPB or be raised in an EEO or OSC complaint. An agency may not suspend an SES appointee for 14 days or less.[31] Supervisors should work with their employee relations staff and legal office when considering these actions.

The following steps will take place if it is determined that an appealable adverse action is appropriate:[32]

1. The agency will issue a written notice of proposed action, which will be effective no earlier than 30 calendar days from the date of the proposal, if the action is found warranted. This notice will state the specific reasons for the proposed action, such as misconduct, neglect of duty, malfeasance, or declination of a reassignment or transfer of function, and inform the appointee of his or her right to review the material relied upon to support the reasons for action provided in the notice;
2. The appointee may choose to have a representative but may not choose a representative whose representation will cause a conflict of interest or position, or an employee of the agency whose release from his or her official position would give rise to unreasonable costs or whose priority work assignments preclude his or her release from official duties;[33]
3. The appointee must be provided a reasonable time, but not less than 7 days to submit a written and/or oral reply to the proposal letter, at the appointee's discretion, and provide supporting documentation;
4. The appointee must be provided a reasonable period of time to submit medical documentation if the appointee wishes the agency to consider any medical conditions which may have affected the basis for the adverse action. It should be

---

[30] See 5 U.S.C. § 7541(1); 5 C.F.R. § 359.403(a)(2); 5 C.F.R. § 752.601(c).
[31] See 5 C.F.R. § 752.601(b).
[32] 5 C.F.R. § 752 Subpart F.
[33] 5 C.F.R. § 752.604(e).

18

noted, however, that the agency may hold disabled appointees with reasonable accommodation to the same standards of conduct as non-disabled appointees; [34]

5. A deciding official reviews the proposal, supporting documentation, medical documentation if submitted, and any reply provided by the appointee;

6. The deciding official determines whether the reasons for the proposed action are supported, and if so, whether the proposed penalty is warranted after taking into consideration any mitigating and aggravating factors, and issues a written decision letter stating the deciding official's conclusion as to the appropriate action. The decision letter will provide reasons for the decision and inform the appointee of any appeal rights he or she may have if an adverse action is taken; and

7. The agency will maintain copies of the notice of proposed action, the appointee's written reply, a summary of the appointee's oral reply, if any, the decision notice, and any supporting material. The agency will furnish these documents to the MSPB and the appointee upon request.

## Excused Absence (Administrative Leave) – to Be Used in Rare Circumstances

Similar to the earlier discussion on excused absence (administrative leave) for non-SES Federal employees, approval of excused absence for SES members should be limited to situations involving brief absences. Agencies should monitor the situation and move toward longer-term actions when it is necessary, appropriate, or prudent to do so. For additional information on using administrative leave for SES Federal employees, *supra* pp. 14.

## Reduction in Pay for Performance or Disciplinary Reasons:

As provided in 5 C.F.R. § 534.404(j), an agency may reduce the pay of a career SES appointee during or after the probationary period by not more than 10 percent without the employee's consent only—

- If the senior executive has received a less than fully successful (i.e., "minimally satisfactory" or "unsatisfactory") annual summary rating or has otherwise failed to meet the performance requirements for a critical element; or
- As a disciplinary or adverse action resulting from conduct-related activity, including, but not limited to, misconduct, neglect of duty, or malfeasance.

The following steps will take place if it is determined that a reduction in pay is appropriate:

1. The agency will provide written notice of the reduction at least 15 days in advance of its effective date;
2. The appointee may choose to be represented;

---

[34] 5 C.F.R. § 752.604(f).

3. The appointee will have at least 7 days to respond to the notice orally and/or in writing and to furnish affidavits and other documentary evidence;
4. The agency will provide a written decision and specific reasons for the pay reduction at the earliest practicable date after the executive's response; and
5. The appointee will have an opportunity to request, within 7 days after that decision, reconsideration by the head of the agency, whose determination is final and not subject to further review.

**Effects of 120-Day Moratoriums:**

Effect of 120-day Moratorium on Removals of Career SES Employees

The law provides at 5 U.S.C. § 3592(b) that a non-probationary career SES member may not be involuntarily removed under that section (i.e., based upon performance):

- Within 120 days after an appointment of the head of the agency; or
- Within 120 days of appointment of a career appointee's most immediate supervisor who is a non-career appointee and has the authority to remove the career appointee. (For this purpose, a "non-career appointee" includes an SES non-career, SES limited, Schedule C and Executive Schedule appointee. "Most immediate supervisor" refers to the non-career appointee nearest to a career appointee in the supervisory chain who has authority to remove that career appointee). [35]

This moratorium does not restrict the removal of a non-probationary career SES member who receives a final rating of "unsatisfactory" under the agency's SES performance appraisal system prior to the appointment of the new agency head or non-career appointee that initiated the 120-day moratorium on removals.

This moratorium restricts removal of a probationary SES member under 5 U.S.C. § 3592 during the 120-day period, except for such a disciplinary removal that was initiated before the appointment of the new agency head or non-career appointee. Under certain circumstances, an agency may invoke an exception to enable a disciplinary removal of a probationer that was not initiated before the appointment of the new agency head or non-career appointee. [36]

Since this moratorium applies only to removals under 5 U.S.C. § 3592, it does not restrict removal of a non-probationary career appointee or a covered probationary career appointee for disciplinary reasons under chapter 75. [37]

---

[35] 5 CFR 359.503
[36] 5 C.F.R. §§359.403(a)(1); 359.406; and 359.406(c).
[37] 5 U.S.C. § 7541(1); 5 C.F.R. §§ 359.403(a)(2); 752.601(c).

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

Effect of 120 day Moratorium on Reassignment of Career SES Employees

The law provides at 5 U.S.C. 3395 that a non-probationary career SES member may not be involuntarily reassigned:

- Within 120 days after an appointment of the head of the agency; or
- Within 120 days of appointment of a career appointee's most immediate supervisor who is a non-career appointee and has the authority to remove the career appointee. (For this purpose, a "non-career appointee" includes an SES non-career, SES limited, Schedule C and Executive Schedule appointee. "Most immediate supervisor" refers to the non-career appointee nearest to a career appointee in the supervisory chain who has authority to make an initial appraisal of the career appointee's performance under Chapter 43.

This moratorium does not restrict the involuntary reassignment of a non-probationary career SES member who receives a final rating of "unsatisfactory" under the agency's SES performance appraisal system prior to the appointment of the new agency head or non-career appointee that initiated the 120-day moratorium on removals, if the agency decides to reassign rather than remove the appointee.[38] This moratorium also does not restrict any disciplinary action initiated prior to such an appointment.

---

[38] 5 U.S.C. § 4314(b)(3).

21

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Useful References for Non-SES Unacceptable Performance and Discipline**

- 5 U.S.C. § 4303, 5 C.F.R. § 432

- 5 U.S.C. §§ 7501-7514, 5 C.F.R. § 752, Subparts B and D

- 5 U.S.C. § 3321, 5 C.F.R. § 315, Subpart H

**Useful References for SES Unacceptable Performance and Discipline**

- 5 U.S.C. §§ 3592, 4311-4315, 5 C.F.R. § 359, Subparts D and E

- 5 U.S.C. §§ 7541-7543, 5 C.F.R. § 752 Subpart F

- 5 U.S.C. § 3594, 5 C.F.R. § 359, Subpart G, 5 C.F.R. § 213.3202 (m)(1)

# EXHIBIT 3

# POSITION DESCRIPTION (Please Read Instructions on the Back)

| | |
|---|---|
| 1. Agency Position No. | 14 BO6O |

| 2. Reason for Submission | 3. Service | 4. Employing Office Location | 5. Duty Station | 6. OPM Certification No. |
|---|---|---|---|---|
| ☐ Redescription  ☑ New  ☐ Reestablishment  ☐ Other | ☑ Hdqtrs.  ☐ Field | Silver Spring, MD | Bethesda, MD | |

Explanation (Show any positions replaced)

| 7. Fair Labor Standards Act | 8. Financial Statements Required | 9. Subject to IA Action |
|---|---|---|
| ☑ Exempt  ☐ Nonexempt | ☐ Executive Personnel Financial Disclosure  ☐ Employment and Financial Interests | ☐ Yes  ☑ No |

| 10. Position Status | 11. Position Is: | 12. Sensitivity | 13. Competitive Level Code |
|---|---|---|---|
| ☑ Competitive  ☐ Excepted (Specify in Remarks)  ☐ SES (Gen.)  ☐ SES (CR) | ☐ Supervisory  ☐ Managerial  ☑ Neither | ☐ 1—Non-Sensitive  ☐ 3—Critical Sensitive  ☐ 2—Noncritical Sensitive  ☐ 4—Special Sensitive | 14. Agency Use |

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. U.S. Office of Personnel Management | | | | | | // |
| b. Department, Agency or Establishment | Associate Ombudsman | GS | 301 | 14 | 7K | 6/12/14 |
| c. Second Level Review | | | | | | // |
| d. First Level Review | | | | | | // |
| e. Recommended by Supervisor or Initiating Office | | | | | | // |

| 16. Organization Title of Position (if different from official title) | 17. Name of Employee (if vacant, specify) |
|---|---|
| | |

| 18. Department, Agency, or Establishment | c. Third Subdivision |
|---|---|
| FOOD AND DRUG ADMINISTRATION | |
| a. First Subdivision | d. Fourth Subdivision |
| Office of the Operations | |
| b. Second Subdivision | e. Fifth Subdivision |

19. Employee Review--This is an accurate description of the major duties and responsibilities of my position.

Signature of Employee (optional)

20. **Supervisory Certification.** *I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the* knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

| a. Typed Name and Title of Immediate Supervisor | b. Typed Name and Title of Higher-Level Supervisor or Manager (optional) |
|---|---|
| Albert Conerly Ombudsman | |
| Signature                      Date | Signature                      Date |
| Albert Conerly Jr.      10/9/14 | // |

21. **Classification/Job Grading Certification.** *I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the U.S. Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards.*

Typed Name and Title of Official Taking Action

Joanne Kennedy
Human Resources Specialist (Classification)

Signature      Date

Joanne Kennedy      6/12/14

22. Position Classification Standards Used in Classifying/Grading Position

OPM Primary Standard, TS-134 August 2009

Information for Employees. The standards, and information on their application, are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the U.S. Office of Personnel Management. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the U.S. Office of Personnel Management.

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee (optional) | | // | | // | | // | | // | | // |
| b. Supervisor | | // | | // | | // | | // | | // |
| c. Classifier | | // | | // | | // | | // | | // |

24. Remarks

FPL: GS-14
Bus Code: 8888

25. Description of Major Duties and Responsibilites (See Attached)

## Introduction

This position is located in the Food and Drug Administration (FDA), Office of Operations (OO), Immediate Office (IO). The incumbent serves as a confidential and informal source of information, facilitator, consultant, and practitioner for dispute resolution, helping in problem solving and the constructive management and resolution of conflict. As an Associate Ombudsman, the incumbent collaborates with officials to achieve constructive resolution to disputes; seeks fair and equitable solutions to employees' problems; suggests approaches to address and manage conflicts, and suggests policy and procedural changes; helps to build constructive relationships by working to resolve disputes and making recommendations intended to create a more positive work environment, thereby contributing to improved office productivity.

## Major Duties and Responsibilities

The incumbent researches complaints, providing support to the Ombudsman in mediation disputes, and assisting to resolve issues in a timely, fair, and impartial manner. Reviews and examines complaints regarding decisions rendered to the staff. Maintains neutrality in each case, and serves as an advocate for fair process and outcomes.

Works closely with the Ombudsman on day to day operations; receives complaints, performs technical reviews and takes steps to resolve sensitive management and other workplace issues. Provides advice and assistance to Ombudsman in making recommendations of resolutions to the staff. Collaborates with Ombudsman in the development of short-and-long term resolutions and presents to OO Senior Leadership. Represents Ombudsman in discussions and meetings related to matters of concern as deemed appropriate.

Listens to staff concerns, clarifies procedures, discusses options and, when requested, acts as an intermediary. Serves as an intake person, receiving inquiries for assistance with a wide range of workplace issues. Advocates for fair processes and promotes building a supportive, inclusive workplace. Serves as a neutral third party in conflict resolutions and works to achieve fair and equitable solutions to problems. Identifies resources and makes referrals so that individuals seeking assistance may go directly to the source that can best address the concern. Collaborates with other Office of Operations and FDA offices on issues of general concern and interprets policies to help resolve conflict or make improvements in the Office of Operations procedures. Conducts research to identify systemic problems and initiates corrective or preventive actions. Assists in the mediation and/or negotiation of disputes occurring at all staff levels. Educates management and the general workforce, in the concepts and processes of conflict resolution either in one-on-one or group settings.

Develops and implements disputes resolution and conflict management programs for use in the organization.

Recommends approaches for addressing and managing conflict and collaborates with other Office of Operations offices on issues of general concern. Provides leadership in developing and implementing strategies for building and sustaining cooperative relations between managers and staff employees in the Office of Operations; and provides guidance and methods for the informal resolution of disputes.

Researches, identifies, and develops tools to be used to conduct assessments and evaluations of the organization's conflict climate. Conducts conflict climate assessments and evaluations in Office of Operations organizations. Works with leadership to develop plans to improve organizational environment. Conducts and/or assist in conducting assessments and evaluations of Ombudsman program effectiveness.

Performs other work as assigned.

**FACTOR LEVEL DESCRIPTIONS**

**Factor 1 - Knowledge Required by the Position**

Mastery knowledge of the concepts, principles and methods associated with dispute resolution; thoroughly skilled in the use of facilitation and mediation techniques; and ability to analyze and evaluate issues to determine their relative importance and susceptibility to compromise, alternative solution and settlement.

Comprehensive knowledge and ability to gain and maintain the trust necessary to handle any and all assignments in a thoroughly confidential, competent and professional manner without reference to any previously established technical guidelines or policies.

Mastery knowledge of the concepts, principles, practices, and techniques used in the management of projects and engagement with diverse staff.

Ability to research, gather, assemble, and analyze information; draw conclusions and inferences; summarize findings and provide comprehensive recommendations; and present diverse and highly complex information to senior management.

Ability to communicate orally and in writing in order to organize and present technical briefings and alternative methods of resolution to workplace issues; to encourage understanding of disputed or unpopular decisions, and negotiated solutions; and to make frequent oral and written presentations on dispute resolution issues in a clear and concise manner to senior management and staff.

Ability to interpret and appropriately implement broad and changing policies and procedures concerning dispute resolution approaches and techniques.

Ability to negotiate with senior level management and staff employees regarding workplace disputes.

Skill in exercising sound judgment, discretion, diplomacy, and tact to work effectively with high-level individuals; and ability to establish and maintain open communications and rapport with all employees.

**Factor 2 - Supervisory Controls**

The Associate Ombudsman works under the general supervision of the Ombudsman. The supervisor provides administrative direction with assignments in terms of broadly defined missions or functions. The incumbent independently plans, designs, and carries out the work to be done. The supervisor reviews final work products and recommendations for their effect on the workforce. The supervisor normally accepts work as being technically authoritative and without the need for significant change.

**Factor 3 - Guidelines**

Guidelines consist of general administrative manuals, policy and procedures documents. Guidelines also include laws, policies, decisions and regulations for top level managers and human resource management professionals in FDA. Guidelines are also available in the form of broad legislation, policy statements, directives, orders, notices/bulletins, and circulars, which are often general, nonspecific, and lack clear applicability to specific unusual and sensitive situations. The incumbent must use seasoned judgment and ingenuity and exercise broad latitude in determining the intent of the applicable guidelines. The incumbent must exercise considerable judgment in interpreting and adapting existing policies/guidelines, and discretion in developing novel approaches to situations not previously encountered or covered by written policy.

**Factor 4 - Complexity**

The work of the position is varied, unstructured, and consists of many different concurrent or sequential assignments. The work requires a high degree of judgment in working to identify, analyze, and resolve workplace conflict and to provide advice, guidance, and initiative to support the search for better solutions to workplace disputes. These situations are inherently difficult given the nature of the issues involved, the individuals affected, and the divergent points of view. The position requires the exercise of creativity and originality in dealing with high-level management issues and in assessing and making recommendations about current situations and future directions. The incumbent must quickly acclimate to new situations and synthesize complex and large amounts of information in a short timeframe. The incumbent serves as an expert consultant in dispute resolution issues in the workplace and conducts comprehensive research and evaluations. The incumbent also takes the lead in conducting and/or acquiring mediation and negotiation training appropriate for Office of Operations officials.

**Factor 5 - Scope and Effect**

The purpose of the work is to serve as the Associate Ombudsman in the Office of Operations, providing all employees the opportunity to access dispute resolution and mediation processes to request early intervention or to seek assistance from more than one source to promote constructive conflict management or resolution. The incumbent serves as an expert dispute resolution practitioner and provides confidential and informal assistance to managers and staff employees in resolving workplace disputes and is actively involved with a broad range of employees at various levels. The work significantly impacts the work of others throughout the Office of Operations, and cuts across Offices and Divisions and strongly influences managers and employees in the work place.

**Factor 6 - Personal Contacts**

Contacts are with Office of Operations senior leadership and staff employees. Contacts are also with individuals in the Department of Health and Human Services, and may include the union, other voluntary organizations, members of the dispute resolution and professional organizations, representatives from other Federal agencies and private institutions, in a moderately unstructured setting.

**Factor 7 - Purpose of Contacts**

The purpose of contacts is to understand, assist, persuade, and negotiate concerning matters in dispute, seeking fair and equitable solutions to employee problems, and supporting the effective management of conflict. In addition, contacts are intended to build constructive relationships through the management and resolution of disputes, and to recommend ways to create a more positive work environment. Furthermore, contacts are needed to influence managers and senior level staff with conflicting viewpoints to engage in constructive conversations and to accept and, in some cases, implement findings and recommendations.

**Factor 8 - Physical Demands**

The work is primarily sedentary. There are no special physical demands required by the position.

**Factor 9 - Work Environment**

The work is performed in a typical office setting. Occasional travel may be required to attend meetings, seminars, and conferences or training.

**Organization:** DHHS/FDA/OO        **PD Number:**

**Title, Series and Grade:** Associate Ombudsman, GS-301-14

**References**: OPM Position Classification Flysheet for Miscellaneous Administration and Program Series, GS-0301, TS-34, January 1979; OPM APPENDIX 3 PRIMARY STANDARD

**Title and Series Determination:** This series includes which are to perform two-grade interval work for which no other series is appropriate. The work requires analytical ability, judgment, discretion, and knowledge of a substantial body of administrative or program principles, concepts, policies, and objectives. No titles are specified for positions in this series.

| FACTOR | CRITERIA | POINTS ASSIGNED | FLD | COMMENTS |
|--------|----------|-----------------|-----|----------|
| 1 | Knowledge Required | 1550 | 1-8 | Mastery knowledge of dispute resolution in order to facilitate or mediate complaints and resolve issues. Decisions or recommendations may significantly change policies and procedures. |
| 2 | Supervisory Controls | 650 | 2-5 | Administrative direction with broadly defined missions or functions. Independent planning and carrying out programs, studies or other work. Results considered technically authoritative and normally accepted without significant change. |
| 3 | Guidelines | 650 | 3-5 | Guidelines are broadly stated and nonspecific. Employee must use judgment and ingenuity in interpreting the intent of the guides that do exist and in developing applications to specific areas of work. |
| 4 | Complexity | 325 | 4-5 | Varied duties requiring many different and unrelated processes or methods that are applied to a broad range of activities or analysis. The situations are inherently difficult given the nature of the issues involved, the individuals affected, and the divergent points of view. |
| 5 | Scope and Effect | 325 | 5-5 | The incumbent serves as an expert dispute resolution practitioner and provides confidential and informal assistance to managers and staff employees in resolving workplace disputes. The work significantly impacts the work of others throughout the Office of Operations. |
| 6 | Personal Contacts | 60 | 6-3 | Personal contacts are with individuals or groups from outside the employing agency in a moderately unstructured setting. |
| 7 | Purpose of Contacts | 120 | 7-3 | The purpose of contacts is to understand, assist, persuade, and negotiate concerning matters in dispute, seeking fair and equitable solutions to employee problems, and supporting the effective management of conflict. |
| 8 | Physical Demands | 5 | 8-1 | The work is primarily sedentary. |
| 9 | Work Environment | 5 | 9-1 | The work is performed in a typical office setting. |

| SUMMARY | |
|---|---|
| **Total Points:** 3690 | **Grade Conversion:** GS-14 |
| **Final Points Ranges**: 3605-4050 | |

**Joanne Kennedy, Human Resources Specialist (Classification)**          **Date:**

## Fair Labor Standards Act (FLSA) Check List

*This form is to be completed for each grade in a career ladder. Note that it is possible for different grades within a career ladder to have different FLSA designations (for example, non-exempt at lower grades, exempt at higher grades in the career ladder). Attach a properly completed and signed checklist to each classified position description and statement of difference (if applicable).*

### A. REQUIRED POSITION INFORMATION

**Position Title**: Associate Ombudsman          **Pay Plan/Series**: GS-301-14

**Organization:**     FDA/OO

**Administrative Code:**     DMM          **PD Number:**

Check all of the following criteria that are applicable to the position:

### B. Non-Exempt Criteria

1. Salary-based non-exemption (5 CFR 551.203)

____ Employees annual rate of basic pay is less than $23,660.

2. Non-exemption of certain employees (5 CFR 551.204)

____ Position is non-supervisory and engaged in equipment operation, or is a protective or clerical occupation.

____ Position involves technical work properly classified below GS-09

____ Position is nonsupervisory in the Federal Wage System or other comparable wage system.

### C. Exemption Criteria

### 1. Executive Exemption Criteria (5 CFR 551.205)

_ __ Primary duty of the position is management or supervision; work involves customarily and regularly directing the work of other employees and involves the authority to hire or fire other employees or makes recommendations on employment issues such as hiring and firing that are given particular weight by higher level supervisors or managers.

### 2. Administrative Exemption Criteria (5 CFR 551.206)

_ X __ Primary duty is performance of office or non-manual work directly related to the management or general business functions; work involves the exercise of discretion and independent judgment with respect to matters of significance.

### 3. Professional Exemption Criteria (5 CFR 551.208, 209, 210)

_ __ **5 CFR 551.208 Learned Professionals**: Primary duty is performance of work requiring advanced knowledge in a field of science or learning including the traditional professions of law, medicine, theology, accounting, actuarial computation, engineering, architecture, teaching, pharmacy, various types of physical, chemical and biological sciences, and other similar occupations that have a recognized professional status; entrance into these professions requires a prolonged course of specialized intellectual instruction.

___ **5 CFR 551.209 Creative Professionals:** Primary duty is performance of work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor such as music, acting, writing, graphic arts. Exemption depends upon the extent of invention, imagination, originality or talent of the employee; exemption does not apply to work that can be produced by a person with general manual or intellectual ability and training.

___ **5 CFR 551.210 Computer Professionals:** Primary duty consists of the application of systems analysis techniques and procedures, including consulting with users to determine hardware, software, or system functions specifications; OR design development, documentation, analysis, creation, testing or modification of computer systems or programs; OR a combination of these duties. Exemption does not apply to employees engaged in the manufacture or repair of computer hardware and related equipment, or to those whose work is highly reliant on computers but whose duties do not consist of the aforementioned.

Salary based exemption applies to any computer professional compensated on an hourly bases at a rate of basic pay of $27.63 an hour and above

**4. Law Enforcement Activities (5 CFR 551.216)**

___ Special exemption/exclusion applies to all law enforcement agents receiving availability pay.

**5. Foreign Exemption (5 CFR 551.212)**

___ Employees permanently stationed in an exempt area and spend all hours of work in a given workweek in one or more exempt areas or employees not permanently stationed in an exempt area, but spend all hours of work in a given workweek in one or more exempt areas. Exempt area means any foreign country, or any territory under the jurisdiction of the United States other than a State, the District of Columbia, Puerto Rico, the US Virgin Islands, and American Samoa. Guam, Midway, Wake and Johnston Islands.


**Final Determination (Check One)** _ __ **Non-Exempt** _ X __ **Exempt**


**Joanne Kennedy, 6/3/14**

**HR Specialist Classification/Date**

# EXHIBIT 4

**Date**: November 6, 2019

**From**: Albert Conerly, Jr, CMO and Ombudsman   *Albert Conerly. Jr*

**To**: Charmaine Condillac

<u>**Element 1**</u> – Performance Status
By October 16, Ms. Condillac provided documentation indicating that the following Agency mandated training has been completed *within 15 days after the ODAP was issued* (October 1):

- o FY 2019 FDA Computer Security Awareness Training – May 6, 2019
- o FDA Annual Records Management Training Course – October 16, 2019

Ms. Condillac has also participated in all scheduled meetings. Ms. Condillac has not provided the signed document "Subject: Established Procedures for Requesting Leave" as required (the Supervisor informed her that her initial attempt to submit the signed document via email was unsuccessful). During the October 29 meeting she was reminded to complete this requirement.

**Current Performance**: In view of these accomplishments, Ms. Condillac's current performance is on track to be <u>Acceptable</u> within the context of the ODAP.

<u>**Element 2**</u> – Performance Status
On October 30, Ms. Condillac provided information on the status of work she had performed since the 2019 furlough. This information had been requested previously and was due on October 3, 2019, but not provided. The information indicated that as of August 5, 2019, Ms. Condillac had completed more than the 2 training requirements she reported in September. Since receiving the ODAP on October 1, Ms. Condillac has been assigned 5 cases which she is in the process of scheduling.

**Current Performance**: In view of these accomplishments, Ms. Condillac's performance is improving and on track to be <u>Acceptable</u> within the context of the ODAP.

<u>**Element 3**</u> – Performance Status
Ms. Condillac submitted a project plan on October 16. Ms. Condillac was advised to make a couple changes to the proposed project plan. Ms. Condillac was informed that the propose project plan was due on October 8.

Ms. Condillac has met with the Supervisor and Team Leader as required.

**Current Performance**: In view of these accomplishments, Ms. Condillac's performance is on track to be <u>Acceptable</u> within the context of the ODAP.

**Element 4** – Performance Status

Ms. Condillac completed a *time management* course and *active listening* course on October 30, 2019. She submitted certificates of completion for both courses.

Ms. Condillac is working with her colleagues to complete unmet training requirements. Ms. Condillac's active listening needs improvement and it seems she is working on this.

**Current Performance**: In view of these accomplishments, Ms. Condillac's performance is on track to be <u>Acceptable</u> within the context of the ODAP.

# EXHIBIT 5

Office: 240-402-1650
Fax:     301-847-8607
Robert.Thomas@fda.hhs.gov

<< OLE Object: Picture (Device Independent Bitmap) >>

---

**From:** Condillac, Charmaine
**Sent:** Friday, November 08, 2019 3:07 PM
**To:** Thomas, Robert <Robert.Thomas@fda.hhs.gov>; Conerly, Albert
<Albert.Conerly@fda.hhs.gov>; Branch, Tiffany <Tiffany.Branch@fda.hhs.gov>
**Cc:** Morris E. Fischer <morris@mfischerlaw.com>
**Subject:** FW: RA Matters - Follow Up (11.08.19)
**Importance:** High

Dear Mr. Thomas, please be advised that I am hereby retracting my request for a
reassignment as a Reasonable Accommodation. As per my prior requests contained in
my application and ongoing attempts at interactively dialoging with Agency personnel, as
an accommodation, I am requesting the following:

- Telework 5 days per week and come to campus/FDA facilities to conduct all ADR
  strategies that are conducted in person
- Ability to use assistive technology (Cisco Jabber, WebEx) to participate in virtual
  ADR strategies {since I don't have a private office space to conduct these
  confidential discussions} and also as part of my requested accommodation.
- Please advise at your earliest convenience if I need to modify the form and the
  process in which I can obtain the FOH recommendation and associated
  documentation.
    - Note: My requests for a Reassignment out of a Hostile Work
      Environment were/are part of the Agency's Anti-Harassment Policy
      << File: Charmaine Condillac Resume (2018).pdf >>

---

**From:** Condillac, Charmaine
**Sent:** Friday, November 08, 2019 9:30 AM
**To:** Thomas, Robert <Robert.Thomas@fda.hhs.gov>; Conerly, Albert
<Albert.Conerly@fda.hhs.gov>; Branch, Tiffany <Tiffany.Branch@fda.hhs.gov>
**Cc:** Morris E. Fischer <morris@mfischerlaw.com>
**Subject:** RE: RA Matters - Follow Up
**Importance:** High

# EXHIBIT 6

**From:** Thomas, Robert
**Sent:** Monday, November 11, 2019 1:27 AM
**To:** Condillac, Charmaine <Charmaine.Condillac@fda.hhs.gov>
**Cc:** Conerly, Albert <Albert.Conerly@fda.hhs.gov>
**Subject:** RE: RA Matters - Follow Up (11.08.19)


Good Morning Ms. Condillac,

I acknowledge receipt of your email below to retract your request for
reassignment. The reasonable accommodation case file has been provided to your
supervisor. For the below accommodation, please complete the below FDA Form
3526 – Confirmation of Request for Reasonable Accommodation and the
Authorization for Disclosure of Information form for each of your medical care
professionals:

- Telework five (5) days and to come to campus/FDA facilities to conduct all ADR strategies that are conducted in person;
- Ability to use assistive technology (Cisco Jabber, WebEx) to participate in virtual ADR strategies {since I don't have a private office space to conduct these confidential discussions} and also as part of my requested accommodation.

<< File: FDA-3526-Request.docx >>        << File: AuthorizationDisclosureForm.pdf >>

Please submit medical documentation to support or pertains to your request, as you did no submit any medical documentation for your previous request. **Please complete the following blocks (TO, 1-3, 5, 7-9, & 11).** Please ensure you discuss the request with your medical care provider(s) and provide medical documents that supports and/or pertains to the request. All medical documents will be maintained within our secured office space and will not be released to anyone with your written consent.

Please note that it is not necessary to submit test results and/or medical records in support of your request, as medical information required to process your request is limited to a medical note from your medical provider (s) with the following information:

  • The nature, severity, and duration of the individual's impairment;
  • The activity or activities that the impairment limits;
  • The extent to which the impairment limits the individual's ability to perform the activity or activities; and/or
  • Why the individual requires reasonable accommodation or the particular reasonable accommodation requested, as well as how the reasonable accommodation will assist the individual to perform the essential functions of the job, or enjoy a benefit of the workplace.

Additionally, please use the appropriate avenues to address a hostile work environment. You can request a copy of the FOH document via the Freedom of Information Act (FOIA).

Respectfully,

# Robert J. Thomas
Lead Reasonable Accommodation Specialist
Office of Operations
U.S. Food and Drug Administration
Direct: 301-796-9406

# EXHIBIT 7



U.S. FOOD & DRUG
ADMINISTRATION

Date:       November 12, 2019

To:         Charmine F. Condillac
            Associate Ombudsman
            Office of Operations
            U.S. Food and Drug Administration

From:       Albert Conerly
            Chief Management Officer
            Office of Operations
            U.S. Food and Drug Administration

Subject:    Response to Request for Reasonable Accommodation
            FDA Case Number: RA-FDACDRH-270-19

This memorandum is in response to the review of your reasonable accommodation which was submitted to the Reasonable Accommodation Office on April 19, 2019, requesting flexible time/schedule for medical treatment related to disability and reassignment, to accommodate your medical condition. Additionally, you requested the following accommodations:

- An office;
- A language interpreter/translation services for attendance at meetings;
- The use of a transcription device or a representative who can transcribe the discussion in the way of an interim accommodation;
- A device that you could use to record and play back your supervisor's instructions.

The review of your reasonable accommodation request has been completed and an analysis provided. Based on the analysis of the Reasonable Accommodation Office, a review of your medical information and in accordance with the Rehabilitation Act of 1973, the Americans with Disabilities Act Amendments Act (ADAAA) of 2008 and FDA's Policy on Reasonable Accommodation under Section 2 of SMG 3130.2, as the decision-maker, *I am granting you reassignment as the reasonable accommodation of last resort.*

The decision is supported by the medical review and a review of the essential job functions that determined that you are unable to perform the essential functions of your job with or without an accommodation.

Additionally, the review/analysis maintains no medical documentation was received and no medical need was established for the additional requested accommodations:

- *An office;*


- *A language interpreter/translation services for attendance at meetings;*
- *The use of a transcription device or a representative who can transcribe the discussion in the way of an interim accommodation; and*
- *A device that you could use to record and play back your supervisor's instructions.*

Please review the attached FDA Reassignment Policy for more information and complete the Reassignment Questionnaire and provide the Reasonable Accommodation Office with a copy of your current resume within ten (10) business days. Please send the documents to: ReasonableAccommodation@fda.hhs.gov.

**\*NOTE: Certification by the Reasonable Accommodation Office and Management. All other attempts at reasonable accommodation have been exhausted and it has been concluded that reassignment is the only available option left to explore.**

This memorandum officially addresses your request for reasonable accommodation that has been processed in accordance with SMG 3130.2, FDA's Procedures for Providing Reasonable Accommodations for Individuals with Disabilities.

Should your medical condition change or should you require further accommodations, please be sure to let me know immediately. Should you have any questions about the decision in this memorandum, please raise them with me. If you have questions about the reasonable accommodation process, please contact Mr. Robert J. Thomas Reasonable Accommodation Specialist at (301)796-9405, or by email at Robert.Thomas@fda.hhs.gov.

1. If you wish to seek reconsideration of this decision, you may take the following steps:

- The request for reconsideration will be submitted to the original decision-maker; within five business days;

- If the original decision-maker denies the request for reconsideration, the individual will present the request to the next level supervisor who will respond to the request within ten business days;
- If the original decision is not reversed, the request for reconsideration will be elevated to the next management official within the chain of command who will, in turn respond within ten business days;

    2.    You may seek reconsideration of the denial of your request by choosing from the options listed below:


**U.S. FOOD & DRUG**
ADMINISTRATION

- To pursue an EEO discrimination complaint under 29 C.F.R. 1614, by contacting an EEO Counselor, at (301)796-9400, to initiate discrimination complaint counseling within 45 days from the date of this notice of denial or;

- Bargaining unit employees may file a grievance under the Collective Bargaining Agreement, Article 45, within the specified time frame or;

- Non-bargaining unit employees may submit a Dispute Filing under Instruction 771-1, Administrative Grievance Procedure, within the specified time frame or;

- To pursue Merit Selection Promotion Board (MSPB) appeal procedures or;

- Contact the Conflict Prevention and Resolution Office at (301)796-9415 and initiate the Informal Mediation Process.

**Acknowledgement of Receipt**

To acknowledge that you have received this notice, please sign and date in the space below. Your signature does not mean that you agree or disagree with this memorandum. By signing, you will not forfeit any rights to which you are entitled. Your failure to sign will not void the contents of this memorandum.

_Albert Conerly_      11/12/19
Albert Conerly            Date

**I acknowledge receipt of this memorandum**

_Charmine F. Condillac_      11/12/19
Charmine F. Condillac        Date

# EXHIBIT 8

# MORRIS E. FISCHER, LLC

November 13, 2019

Mr. Robert J. Thomas
Reasonable Accommodation Specialist
Department of Health and Human Services
Via Email: Robert.Thomas@fda.hhs.gov

Re: Charmaine Condillac, November 12, 2019
Reasonable Accommodation Decision

Dear Mr. Thomas:

Please be advised that undersigned counsel represents Ms. Condillac with respect to the above-mentioned Reasonable Accommodation decision, a copy of which is attached hereto (Exhibit 1). Kindly direct all correspondence regarding this matter directly to my attention.

It is bewildering that Mr. Conerly issued this decision, despite receiving Ms. Condillac's November 8, 2019, email communication retracting her request for reasonable accommodation (Exhibit 2). My client's reasonable accommodation request as per that communication was to telework five days per week, but she would appear for mediations and other in ADR in person strategy meetings, requiring her physical presence.

Ms. Condillac disputes that she cannot perform the essential functions of her GS-14 Assistant Ombudsman position. She most certainly can. Her anxiety issues are exacerbated by her supervisor Albert Conerly. He never provided her the GS-14 Assistant Ombudsman position duties; froze her out of mediations until very recently; commenced a totally unjustified 60 day Performance Improvement Plan, which following her whistleblower complaint, caused Mr. Conerly to issue her a letter that she was on track for success: that was the first written communication to her by Mr. Conerly regarding the PIP.

This event is perhaps the most striking and obvious act of retaliation. Mr. Conerly was fully aware that Ms. Condillac retracted her reasonable accommodation request for reassignment. The email was addressed to him. He's the person that issued the decision.

8720 Georgia Avenue, Suite 210
Silver Spring, MD 20910-3614
O 301-328-7631 F 301-328-7638

11 Broadway, Suite 615
New York, NY 10004-1490
O 800-209-2608 F 212-480-8560

www.morrisfischerlaw.com l morris@mfischerlaw.com

Page 66 of 124

I believe Ms. Condillac's original accommodation request was made more than six months ago. Given the process can take this long, we ask for this accommodation to be given on an interim basis until the decision is made. We see no undue hardship to the agency in granting this request. Kindly begin the process of accommodating this telework, reasonable accommodation arrangement.

Sincerely,

*Morris E. Fischer, Esq.*

Morris E. Fischer, Esq.

cc: Charmaine Condillac
    Madeha Dastgir, Esq.

# EXHIBIT 9

 **U.S. FOOD & DRUG** ADMINISTRATION

Date: November 27, 2019

To: Charmine F. Condillac, Associate Ombudsman
Office of Operations
U.S. Food and Drug Administration

From: Albert Conerly, Jr., Chief Management Officer
Office of Operations
U.S. Food and Drug Administration

Subject: ODAP and TELEWORK

Effective immediately, based on the analysis of the Reasonable Accommodation Office, a review of your medical information and in accordance with the Rehabilitation Act of 1973, the Americans with Disabilities Act Amendments Act (ADAAA) of 2008 and FDA's Policy on Reasonable Accommodation under Section 2 of SMG 3130.2, I am rescinding your ODAP. The decision is supported by the medical review and a review of the essential job functions that determined that you are unable to perform the essential functions of your job with or without an accommodation. Therefore, your telework is also being rescinded and you will perform the following non-essential job functions:

Work with OCPR leadership to develop resources and plans to improve organizational service capability and environment by:

- Identifying resources and compiling a list thereof to be used by OCPR staff to aid in making referrals to individuals seeking assistance to address their concerns
- Reviewing, compiling, and reporting on customer feedback from surveys issued following ADR service delivery

This will take effect on Monday, December 2, 2019.

**Acknowledgement of Receipt**

To acknowledge that you have received this notice, please sign and date in the space below. Your signature does not mean that you agree or disagree with this memorandum.


**U.S. FOOD & DRUG**
ADMINISTRATION

By signing, you will not forfeit any rights to which you are entitled. Your failure to sign will not void the contents of this memorandum.

_Albert Conerly._

Albert Conerly, Jr.

$^{11}/27/19$

Date

**I acknowledge receipt of this memorandum**

_____          _____
Charmine F. Condillac                            Date

# EXHIBIT 10



Sent Via Email, USPS and Certified Mail

## MEMORANDUM

**DATE:**      January 17, 2020

**TO:**        Charmaine Condillac, Associate Ombudsman, GS-0301-14
               Ombudsman and Conflict Prevention and Resolution Staff
               Office of Operations

**SUBJECT:**   PROPOSAL TO REMOVE

I am proposing that you be removed from your position as an Associate Omsbudsman,
GS-0301-14, at the Food and Drug Administration (FDA). This proposed action is not a final
decision and, if found warranted, would not be effected any sooner than thirty (30) calendar days
from the date you receive this letter. This proposal is made in the interest of promoting the
efficiency of the service and the Federal Government and is effected in accordance with 5 U.S.C.
Chapter 75, 5 C.F.R. Part 752 and HHS Instruction 752.

This proposal is based on the following:

## CHARGE: MEDICAL INABILITY TO PERFORM THE DUTIES OF YOUR POSITION AS A RESULT OF A MEDICAL CONDITION.

**Background:**

On April 19, 2019, you submitted a request to the Reasonable Accommodation Office (RA),
seeking flexible time/schedule for medical treatment related to disability and reassignment, to
accommodate your medical condition. As an interim accommodation, I granted you telework
three (3) days per week. The other two (2) days you were required physically onsite at either
White Flint North (WFN) or White Oak (WO) for ADR-specific work including mediations,
facilitations, etc., or staff meetings. You were permitted to move your work at home days to
accommodate these onsite duties.

In accordance with FDA's Staff Manual Guide (SMG) 3130.2 - Procedures for Providing
Reasonable Accommodations for Individuals with Disabilities, a list of questions along with
your documentation was sent to the Federal Occupational Health Occupational Medicine
Consultant (FOH OMC) to be answered by your medical care professional(s). The answers to
the questions were designed to assist the agency in determining whether your medical conditions
rise to the level of a disability under the Rehabilitation Act of 1973 and the Americans with
Disabilities Act Amendments Act (ADAAA) of 2008.

U.S. Food & Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
www.fda.gov

The review of your reasonable accommodation request was completed, and an analysis was provided. Based on the updated medical information received October 30, 2019, from the FOH OMC, you have a medical condition which substantially limits major life activities and functions, including thinking, concentrating, interacting with others, eating and sleeping. Based on this information, your medical condition rises to the level of a disability as described by the Rehabilitation Act of 1973, and the ADAAA of 2008, and you are considered a qualified individual with a disability.

The FOH OMC opined that there are times when you feel unable to go to work, unable to concentrate and focus on your work, and unable to make decisions, in addition to limiting energy, appetite, and sleep. The FOH OMC opined that your symptoms are greatly exacerbated by interactions with your supervisor. The FOH OMC opined that you seek to minimize time at the office, and interaction with your supervisor, chiefly because of the affect that interaction with your supervisor has on your symptoms.

Attendance in the office for duties that are not portable, and interacting with one's supervisor, are essential functions of any position, and accommodations to make these unnecessary would not be considered reasonable. The FOH OMC opined that at present, and for the foreseeable future, you appear to be unable to perform the essential functions of your position, with or without accommodation.

The FOH OMC opined that therefore, reassignment to another vacant position, the accommodation of last resort, would be medically reasonable. Based on the facts of this case, the available medical information, a review of the essential job functions, the RA Office maintained that if administratively feasible, without causing a direct threat to health and safety or posing an undue hardship, management should grant you the alternative accommodation of reassignment.

Based on the analysis of the RA Office, a review of your medical information and in accordance with the Rehabilitation Act of 1973, the Americans with Disabilities Act Amendments Act (ADAAA) of 2008 and FDA's Policy on Reasonable Accommodation under Section 2 of SMG 3130.2, as the decision-maker, I granted you reassignment as the reasonable accommodation of last resort.

You submitted the completed Reassignment Questionnaire and provided the RA Office with a copy of your current resume on November 7, 2019, and requested holding off "on processing the questionnaire/application until I get back to you and give you the green light" to proceed. On November 8, 2019, you emailed RA and stated that you would like to consult with your attorney, and subsequently you stated that "you hereby retract your request for a reassignment as a reasonable accommodation." On November 21, 2019, the agency began an internal vacancy search for a suitable/comparable position for you.

On December 19, 2019, RA sent you and your attorney an email informing you that "Reassignment as the reasonable accommodation was warranted as a last resort as it was determined that you were unable to perform the essential functions of your position, thus your statement to retract your reasonable accommodation request for reassignment did not stop the reassignment process which is based on your medical condition/limitations. If you have had a chance to consult with your attorney, please advise if you desire to continue in the reasonable accommodation reassignment process by close of business on Friday, December 27, 2019. If

2 | P a g e

you do wish to proceed with the reassignment action," RA would close the reasonable accommodation request.

Due to a lack of response on your part, RA informed you and your attorney via email that as of December 30, 2019, RA is closing the reasonable accommodation reassignment process.

In deciding to propose your removal, I have considered the impact your medical condition has on your ability to perform the essential functions of your position. The essential duties of your position are as follows:

- Collaborates with officials to achieve constructive resolution to disputes; seeks fair and equitable solutions to employees' problems; suggests approaches to address and manage conflict, suggest policy and procedural changes; helps to build constructive relationships by working to resolve disputes and making recommendations intended to create a more positive work environment, thereby contributing to improved office productivity.
- Provide support to the Ombudsman in mediation disputes, and assisting to resolve issues in a timely, fair, and impartial manner.
- Maintain neutrality in each case and serve as an advocate for fair process and outcomes.
- Work closely with the Ombudsman on day to day operations.
- Provide advice and assistance to Ombudsman in making recommendations of resolutions to the staff.
- Collaborate with Ombudsman in the development of short-and-long term resolutions and presents to OO Senior Leadership.
- Represent Ombudsman in discussions and meetings related to matters of concern as deemed appropriate.
- Serve as a neutral third party in conflict resolutions and works to achieve fair and equitable solutions to problems.
- Collaborate with other Office of Operations and FDA offices on issues of general concern and interprets policies to help resolve conflict or make improvements in the Office of Operations procedures.
- Assist in the mediation and/or negotiation of disputes occurring at all staff levels. Educates management and the general workforce, in the concepts and processes of conflict resolution either in one-on-one or group settings.
- Recommend approaches for addressing and managing conflict and collaborates with other Office of Operations offices on issues of general concern.
- Provide leadership in developing and implementing strategies for building and sustaining cooperative relations between managers and staff employees in the Office of Operations.
- Research, identify, and develop tools to be used to conduct assessments and evaluations of the organization's conflict climate.
- Work with leadership to develop plans to improve organizational environment.

I have also carefully considered the following RA analysis subsequent to the FOH review:

Based on the updated medical information received October 30, 2019, from the FOH OMC, you have a medical condition which substantially limits major life activities and functions, including thinking, concentrating, interacting with others, eating and

3 | Page

Page 74 of 124

sleeping. The FOH OMC opined that there are times when you feel "unable to go to work, unable to concentrate and focus on your work, and unable to make decisions, in addition to limiting energy, appetite, and sleep." The FOH OMC opined that your symptoms are greatly exacerbated by interactions with your supervisor. Additionally, attendance in the office for duties that are not portable, and interacting with one's supervisor, are essential functions of any position, and accommodations to make these unnecessary would not be considered reasonable. The FOH OMC [further] opined that at present, and for the foreseeable future, you appear to be unable to perform the essential functions of your position, with or without accommodation.

Your inability to perform the essential functions of your job with or without an accommodation, places an undue burden on other staff who must perform all the essential duties of your position in addition to their own work.

Because you are unable to perform the functional requirements essential to the duties of your position, I believe removal is the only remedy available that will promote the efficiency of government service.

This letter is not a final decision. No decision on your removal from federal service will be issued until you have had the opportunity to make a reply and avail yourself of the other rights set forth below.

You have the right to reply to this proposal orally and/or in writing. You have seven (7) calendar days following receipt of this letter to do so and may submit affidavits or other documentary evidence in support of your reply. Additional time may be allowed to present your reply, if requested in writing prior to the expiration of the period stipulated, stating your reasons for desiring more time. Tiffany Branch is the Deciding Official in this case. Send your written response and/or request to make an oral reply to:

> Tiffany Branch
> Executive Officer, for the Office of the Commissioner
> tiffany.branch@fda.hhs.gov

You have the right to be accompanied, represented and advised by an attorney or other representative of your choosing throughout the processing of this proposed action, although the agency is not responsible for any expense you incur in this regard. Your choice of a representative may be disallowed if the representative is an individual whose activities as a representative would cause a conflict of interest or give rise to unreasonable cost to the Government, or an employee whose priority work assignments preclude his or her release.

If you choose to be represented, you must identify in writing your designated representative prior to presenting your oral reply or submitting your written reply. You, and your representative, are entitled to have access to official records personal to you and relevant to the proposed action.

You and your designated representative are assured freedom from restraint, interference, coercion, discrimination or reprisal in preparing and presenting your reply under the provisions applicable to the processing of this action.

Any reply made by you or your representative will be given consideration in arriving at a final decision. If you do not reply, a final decision will be based on the information of record. The decision will be given to you in writing.

If you need assistance in dealing with any personal matters, you are advised that the Employee Assistance Program (EAP) is available to provide confidential short-term counseling and referral services at no cost. Further information on EAP services can be obtained by calling 1-800-222-0364, twenty-four (24) hours a day, seven (7) days a week.

If you have any questions regarding disability retirement benefits, you may contact the FDA OHR Benefits and Retirements at OO-OHR-BENEFITS@FDA.HHS.GOV.

As soon as possible after your answer is received, or after expiration of the seven (7) calendar day reply period, a written decision will be issued to you. No decision, however, will be effectuated before thirty (30) calendar days of the date you receive this letter.

If you have any questions on this proposed notice, you may contact Celeste Smith, HR Specialist at (240) 672-8018 or celeste.smith@fda.hhs.gov for assistance.

Sincerely,

Albert Conerly, Jr.
Chief Management Officer

Attachments

Receipt Acknowledgement:

To acknowledge your receipt of this notice, please sign and date in the space provided below. Your signature does not mean that you agree or disagree with this notice, and by signing you will not forfeit any rights to which you are entitled. Your failure or refusal to sign will not void the contents of this document.

_____          _____
Employee Signature                                          Date

cc: Tiffany Branch

# EXHIBIT 11

**Smith, Celeste**

| | |
|---|---|
| **From:** | Conerly, Albert |
| **Sent:** | Friday, July 19, 2019 5:00 PM |
| **To:** | Smith, Celeste |
| **Subject:** | FW: Reasonable Accommodation Request - RA-FDAOC-203-19  - Condillac |
| | |
| **Importance:** | High |

My initial reply to Ms. Condillac.

Albert

**From:** Conerly, Albert
**Sent:** Friday, June 21, 2019 11:25 AM
**To:** Condillac, Charmaine <Charmaine.Condillac@fda.hhs.gov>
**Cc:** Thomas, Robert <Robert.Thomas@fda.hhs.gov>
**Subject:** Reasonable Accommodation Request - RA-FDAOC-203-19 - Condillac
**Importance:** High

Hi, Charmaine!

This is follow up to the June 18, 2019, communication I received from Mr. Robert Thomas, Lead Reasonable Accommodation Specialist.

Mr. Thomas indicated that you have withdrawn your request for reassignment.  Furthermore, you have requested "to work remotely 100%, except for conducting mediations/facilitations etc. that require [you] to physically attend."  I recognize that your formal request for a reasonable accommodation has been submitted for review, and that the agency is waiting for a response to that submission.  Nevertheless, I have considered your modified informal request and am providing the following response.

You are approved to work from home three (3) days per week.  The other two (2) days you are required physically on site at either White Flint North (WFN) or White Oak (WO) for ADR-specific work including mediations, facilitations, etc., or staff meetings.  You are permitted to continue to move your work at home days to accommodate these onsite activities.

Please let me know if there are additional flexibilities needed to support your success.

Thank you for your attention!

Albert Conerly

1



 **U.S. FOOD & DRUG** ADMINISTRATION

Date:      November 6, 2019

To:        Albert Conerly
           Chief Management Officer
           Office of Operations
           U.S. Food and Drug Administration

From:      Robert J. Thomas
           Lead Reasonable Accommodation Specialist
           Office of Enterprise Management Services
           Office of Operations
           U.S. Food and Drug Administration

Subject:   Response to Charmine F. Condillac's Request for
           Reasonable Accommodation
           FDA Case Number: RA-FDACDRH-270-19

This memorandum serves as the official response to Ms. Charmine F. Condillac's request for reasonable accommodation. The following is an analysis of the reasonable accommodation review process that was conducted. The purpose of this analysis is to assist and guide you through the decision-making process and to assist you with responding to this request. The information in this memorandum is for your use and should not be provided to the employee. It is used as a working document in determining the appropriate accommodation(s) if the employee is found to be a qualified individual with a disability in accordance with the Rehabilitation Act of 1973 and the Americans with Disabilities Act Amendments Act (ADAAA) of 2008.

## Regulatory Authority

In accordance with the Rehabilitation Act of 1973 and the Americans with Disabilities Act Amendments Act (ADAAA) of 2008, Federal employers are required to provide reasonable accommodation to an employee when she/he has demonstrated that they have a disability based on having an impairment which substantially limits a major life activity or bodily function as compared to an average person, and is qualified to perform the essential functions of the job, with or without a reasonable accommodation.

## Qualified Individual with a Disability

After it is determined that the employee has a disability, the agency considers whether the employee is a qualified individual with a disability, that is, the employee can perform the essential job functions, with or without a reasonable accommodation. If an employee cannot perform his/her essential job functions after having been provided the


accommodation(s), then she would no longer be considered qualified for the position. However, if the employee can perform the essential job functions that would indicate that she is a qualified individual with a disability.

## Overview of Employee's Disability

On April 19, 2019, Ms. Condillac submitted a request to the Reasonable Accommodation Office requesting flexible time/schedule for medical treatment related to disability and reassignment, to accommodate her medical condition.

In accordance with FDA's Staff Manual Guide (SMG) 3130.2 - Procedures for Providing Reasonable Accommodations for Individuals with Disabilities, a list of questions along with Ms. Condillac's documentation was sent to the Federal Occupational Health Occupational Medicine Consultant (FOH OMC) to be answered by her medical care professional(s). The answers to the questions are designed to assist the agency in determining whether her medical conditions rise to the level of a disability under the Rehabilitation Act of 1973 and the Americans with Disabilities Act Amendments Act (ADAAA) of 2008.

Based on the updated medical information received October 30, 2019, from the FOH OMC, Ms. Condillac has a medical condition which substantially limits major life activities and functions, including thinking, concentrating, interacting with others, eating and sleeping. Based on this information, Ms. Condillac's medical condition rises to the level of a disability as described by the Rehabilitation Act of 1973, and the ADAAA of 2008, and she ***is considered a qualified individual with a disability***; therefore, the agency is required to consider providing reasonable accommodations for her.

The FOH OMC opined that from a previous case (FOH Tracking #19-16361), their files only contain a medical release to initiate communication with her medical care providers, but only regarding information pertaining to the period between January 2016 and April 20, 2019. In the previous medical review (August 2019), the FOH OMC stated that per Ms. Condillac's request, her medical care professional was provided a list of written questions; however, a response was not received until late October 2019.

The FOH OMC opined that there are times when Ms. Condillac feels unable to go to work, unable to concentrate and focus on her work, and unable to make decisions, in addition to limiting energy, appetite, and sleep. The FOH OMC opined that her symptoms are greatly exacerbated by interactions with her supervisor.

The FOH OMC opined that Ms. Condillac seeks to minimize time at the office, and

interaction with her supervisor, chiefly because of affect that interaction with her


supervisor has on her symptoms.

The FOH OMC opined that relationships problems with a supervisor, however severe, are addressed administratively, rather than through the disability accommodation process. Additionally, attendance in the office for duties that are not portable, and interacting with one's supervisor, are essential functions of any position, and accommodations to make these unnecessary would not be considered reasonable. The FOH OMC opined that at present, and for the foreseeable future, Ms. Condillac appears to be unable to perform the essential functions of her position, with or without accommodation. The FOH OMC opined that therefore, reassignment to another vacant position, the accommodation of last resort, would be medically reasonable.

**OEEO Review**

Based on the facts of this case, the available medical information, a review of the essential job functions, the Reasonable Accommodation Office maintains that if administratively feasible, without causing a direct threat to health and safety or posing an undue hardship, management should grant Ms. Condillac the alternative accommodation of reassignment. **Please have Ms. Condillac review the attached FDA Reassignment Policy for more information and complete the Reassignment Questionnaire and provide the Reasonable Accommodation Office with a copy of her current resume within ten (10) business days.**

**The Reasonable Accommodation Office maintains no medical documentation was received and no medical need was established for the additional requested accommodations *(See Background Below)*:**

- **An office;**
- **A language interpreter/translation services for attendance at meetings;**
- **The use of a transcription device or a representative who can transcribe the discussion in the way of an interim accommodation;**
- **A device that you could use to record and play back your supervisor's instructions.**

**Additionally, the interactions between employee and supervisor should be handled administratively.**

**Background**

- On September 26, 2019, Ms. Condillac responded that she would have her health providers send all related documentation directly to FOH. ***No documents were received by FOH. Subsequently, a response from the medical care***


***professional was not received until late October 2019.***

- On September 3, 2019, Mr. Albert Conerly/Supervisor emailed Ms. Condillac in reference to her request for an office; however, M***s. Condillac did not provide any further information and/or documentation pertaining to the request.***

- On August 16, 2019, Ms. Condillac was informed that the FOH Occupational Medicine Consultant did not receive a response for further information from her medical care professional who was contacted per her specific request. Ms. Condillac was contacted and requested to please contact the medical care professional and request that he/she provide the written response to the FOH OMC's request for information, within three (3) business, August 21, 2019. ***Additionally, Ms. Condillac was advised that if the response has not been received, the medical review will be completed with the available information.***

- On September 6, 2019, Ms. Condillac sent an email to Mr. Conerly, "I am requesting the use of a transcription device or a representative who can transcribe the discussion in the way of an interim accommodation based on my acute anxiety in interacting in these meetings and the inordinate coercion to engage in these events that are having a tremendous impact on my health. Without this assistance, I am unable to participate and perform the essential and non-essential functions of my position that are being mandated by you. As you are aware, the last time I was rushed to the hospital. In the way of medical documentation my healthcare provider is working on providing the required documentation as part of the previous request for a reasonable accommodation. Thank you for your cooperation and agreement! Charmaine."

  Additionally, Ms. Condillac stated, "A device that I can use to record and play back your instructions will be very useful. I was inspired by the video I watched. Its commendable how adaptable organizations have become when dealing with employees with disabilities! I found this wonderful video that shares some brilliant insights on how the Agency was and presumably still is working with individuals with disabilities. https://www.youtube.com/watch?v=C2QB05kOT5o&t=628s."

  Ms. Condillac was requested to provide medical documentation to support her request of interpreting services; however, she did not respond to the request. ***Subsequently, no medical need for the requested accommodation could be established.***

- On July 30, 2019, Ms. Condillac sent an email to Ms. Denise Kight, CI & CT/FDA



Interpreting Services Program Manager and Staff Interpreter requesting information on process for requesting a language interpreter/translation services for attendance at meetings and is a part of request for RA (reasonable accommodation) for intermittent hearing/speech impairment. Ms. Kight informed Ms. Condillac that when a deaf employee needs either ASL (American Sign Language) interpreting coverage or captioning (often referred to as CART (Communication Access Realtime Translation)), they will submit a request to the Interpreting.Services@oc.fda.gov email box. Ms. Kight provide five (5) template examples of types of requests for Ms. Condillac to review.  Mr. Conerly acknowledged via email to Ms. Condillac that he was in receipt of her request for interpreting services.  Ms. Kight advised Ms. Condillac that the services provided by the program are centrally funded via appropriated funds – specifically earmarked for communication needs for FDA's deaf and hard of hearing population. ***Ms. Kight stated that the ISP is unable to provide services for any individual whose disability is other than deafness or hard of hearing related.*** Should it transpire that, via an approved reasonable accommodation request, captioning services are needed/granted, I'm happy to provide vendor information.  Ms. Condillac informed Ms. Kight via email that upon consultation, I have determined that what I need in the way of assistive technology is a transcription service/device.  I've checked with some of the resources provided by Mr. Thomas (JAN etc.) and existing approved technology used at FDA and it appears that this will most appropriately accommodate my current needs.

**\*NOTE: Certification by the Reasonable Accommodation Office and Management.  All other attempts at reasonable accommodation have been exhausted and it has been concluded that reassignment is the only available option left to explore.**

## Decision-Maker Options

While the agency has a legal obligation to accommodate qualified individuals with disabilities, I would like to reiterate that you are the supervisor and/or decision-maker and the decision rests fully with you. In accordance with FDA's Staff Manual Guide 3130.2 - Processing Reasonable Accommodation Requests, regardless of whether the request was originally made orally or in writing, the review/analysis for the request for reasonable accommodation must be responded to and either granted, denied or an offer for an alternative accommodation pursued within 15-business days from date of receiving this memorandum. Please be aware that any delay in meeting the time-frame could potentially expose the agency to liability in litigation. Also, as part of the decision-making process, please continue to have discussions with Ms. Condillac as it relates to her reasonable accommodation. If you wish to review the FDA's Staff Manual Guide 3130.2 reasonable accommodation procedures, please click of the below link:



www.fda.gov/AboutFDA/ReportsManualsForms/StaffManualGuides/ucm201324.htm.

If you agree with the review/analysis or would like to offer alternative accommodations, please let me know and I will assist you in developing the appropriate decision memorandum. In the interim, I have provided a draft decision letter for your review.

If you disagree with the review/analysis and fail to offer an alternative accommodation, you should be prepared to articulate why providing accommodations to Ms. Condillac would pose an undue hardship on the agency. An undue hardship means that providing a particular accommodation would cause significant difficulty or expense to the agency. A determination of an undue hardship is always made on a case-by-case basis, considering factors that include the nature and cost of the reasonable accommodation needed, and the impact of the reasonable accommodation on the agency's operations. Should you deny the request for reasonable accommodation, it is advisable that you contact me before advising Ms. Condillac of your decision. I will assist you in crafting a denial letter to issue to her based on your reasons for undue hardship. Please be aware that Ms. Condillac has appeal rights which include requesting reconsideration from upper management and/or filing an informal and formal EEO complaint.

**Please note that we do not provide medical documentation that is associated with this review/analysis directly to you. Also, please be aware that any medical information that is shared with you either by Ms. Condillac or me must be kept confidential. Disclosure of this information to someone who doesn't have a business need to know, may be a per se violation of the Rehabilitation Act of 1973.**

In addition, there are several resources available to assist you in identifying the appropriate accommodation or alternative.

• Department of Defense (DoD) Computer/Electronic Accommodations Program (CAP) assists in making training centers accessible and the training experience positive for participants with disabilities; Improve employees' accessibility options and working conditions; provides computer related equipment to employee at no cost to the agency. Telephone: 703-614-8416; VP: 571-384-5629; Email: cap@mail.mil; Website: http://www.cap.mil;

• The U.S. Department of Agriculture (USDA) established the Technology & Accessible Resources Give Employment Today (TARGET) Center which utilizes the power of technology and provide impactful services related to improving accessibility and contributing to the complete employment experience of individuals with disabilities. Telephone: 202-720-2600; https://www.targetcenter.dm.usda.gov/;

• Job Accommodation Network (JAN) is a source of free, expert and confidential



guidance on workplace accommodations and disability employment issues; Telephone: 1-800-526-7234; www.jan.wvu.edu; www.askjan.org.

- U.S. Access Board promulgates standards on accommodation person in buildings and other settings; Telephone: (202) 272-0080; https://www.access-board.gov.

Finally, please remember that requesting a reasonable accommodation is the right of every employee under the Rehabilitation Act of 1973. It is unlawful for a decision-maker or manager to retaliate against an employee for exercising this right. Please be aware that if an employee suspects that the decision-maker has engaged in retaliation, she/he may contact an EEO counselor and initiate the EEO complaint process.

If you have any questions about this memorandum or the reasonable accommodation process, please feel free to contact me at (301) 796-9406, or by email at Robert.Thomas@fda.hhs.gov.



**U.S. FOOD & DRUG**
ADMINISTRATION

Date:       November 12, 2019

To:         Charmine F. Condillac
            Associate Ombudsman
            Office of Operations
            U.S. Food and Drug Administration

From:       Albert Conerly
            Chief Management Officer
            Office of Operations
            U.S. Food and Drug Administration

Subject:    Response to Request for Reasonable Accommodation
            FDA Case Number: RA-FDACDRH-270-19

This memorandum is in response to the review of your reasonable accommodation which was submitted to the Reasonable Accommodation Office on April 19, 2019, requesting flexible time/schedule for medical treatment related to disability and reassignment, to accommodate your medical condition. Additionally, you requested the following accommodations:

- An office;
- A language interpreter/translation services for attendance at meetings;
- The use of a transcription device or a representative who can transcribe the discussion in the way of an interim accommodation;
- A device that you could use to record and play back your supervisor's instructions.

The review of your reasonable accommodation request has been completed and an analysis provided. Based on the analysis of the Reasonable Accommodation Office, a review of your medical information and in accordance with the Rehabilitation Act of 1973, the Americans with Disabilities Act Amendments Act (ADAAA) of 2008 and FDA's Policy on Reasonable Accommodation under Section 2 of SMG 3130.2, as the decision-maker, *I am granting you reassignment as the reasonable accommodation of last resort.*

The decision is supported by the medical review and a review of the essential job functions that determined that you are unable to perform the essential functions of your job with or without an accommodation.

Additionally, the review/analysis maintains no medical documentation was received and no medical need was established for the additional requested accommodations:

- *An office;*



- *A language interpreter/translation services for attendance at meetings;*
- *The use of a transcription device or a representative who can transcribe the discussion in the way of an interim accommodation; and*
- *A device that you could use to record and play back your supervisor's instructions.*

Please review the attached FDA Reassignment Policy for more information and complete the Reassignment Questionnaire and provide the Reasonable Accommodation Office with a copy of your current resume within ten (10) business days. Please send the documents to: ReasonableAccommodation@fda.hhs.gov.

**\*NOTE: Certification by the Reasonable Accommodation Office and Management. All other attempts at reasonable accommodation have been exhausted and it has been concluded that reassignment is the only available option left to explore.**

This memorandum officially addresses your request for reasonable accommodation that has been processed in accordance with SMG 3130.2, FDA's Procedures for Providing Reasonable Accommodations for Individuals with Disabilities.

Should your medical condition change or should you require further accommodations, please be sure to let me know immediately. Should you have any questions about the decision in this memorandum, please raise them with me. If you have questions about the reasonable accommodation process, please contact Mr. Robert J. Thomas Reasonable Accommodation Specialist at (301)796-9405, or by email at Robert.Thomas@fda.hhs.gov.

1. If you wish to seek reconsideration of this decision, you may take the following steps:

- The request for reconsideration will be submitted to the original decision-maker; within five business days;

- If the original decision-maker denies the request for reconsideration, the individual will present the request to the next level supervisor who will respond to the request within ten business days;
- If the original decision is not reversed, the request for reconsideration will be elevated to the next management official within the chain of command who will, in turn respond within ten business days;

2. You may seek reconsideration of the denial of your request by choosing from the options listed below:


- To pursue an EEO discrimination complaint under 29 C.F.R. 1614, by contacting an EEO Counselor, at (301)796-9400, to initiate discrimination complaint counseling within 45 days from the date of this notice of denial or;

- Bargaining unit employees may file a grievance under the Collective Bargaining Agreement, Article 45, within the specified time frame or;

- Non-bargaining unit employees may submit a Dispute Filing under Instruction 771-1, Administrative Grievance Procedure, within the specified time frame or;

- To pursue Merit Selection Promotion Board (MSPB) appeal procedures or;

- Contact the Conflict Prevention and Resolution Office at (301)796-9415 and initiate the Informal Mediation Process.

**Acknowledgement of Receipt**

To acknowledge that you have received this notice, please sign and date in the space below. Your signature does not mean that you agree or disagree with this memorandum. By signing, you will not forfeit any rights to which you are entitled. Your failure to sign will not void the contents of this memorandum.

_____        _____
Albert Conerly                                                    Date

**I acknowledge receipt of this memorandum**

_____        _____
Charmine F. Condillac                                        Date

# Guidance on Reassignment as a Reasonable Accommodation

The following FDA procedures are applicable when providing a reassignment as a reasonable accommodation:

## Purpose

In accordance with the Equal Employment Opportunity Commission's (EEOC) *Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act,* reassignment may be used as a form of reasonable accommodation. Reassignments will be provided to an employee who, because of a disability, can no longer perform the essential functions of his/her current position, with or without reasonable accommodation.

Before contemplating reassignment as a reasonable accommodation, the Agency should first exhaust accommodations that would enable an employee to remain in his/her current position. It is required only after it has been determined that there are no effective accommodations that would enable the employee to perform the essential functions of his/her current job, or if all other possible accommodations would impose undue hardship. Neither the FDA nor the ADAAA requires an agency to create a new position or move other employees from their jobs to create a vacancy.

## Determining Employee Qualification

Reassignment is available only to "qualified" <u>current</u> employees, not to applicants or former employees. An employee is deemed "qualified" for a new position if s/he:

1. Satisfies the requisite skill, experience, education, and other job-related requirements of the position; and

2. Can perform the essential functions of the new position, with or without reasonable accommodation.

The employee does not need to be the best-qualified individual for the position in order to obtain the reassigned position (Outlined in the Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the American with Disabilities Act). There is no obligation for the Agency to assist the individual to become qualified, and is not required to provide training so that the employee acquires the necessary skills to obtain a new position. The Agency is required to provide an employee with a disability, who is being reassigned, with any training that is normally offered to anyone hired for or transferred to a position.

## Documentation

All requests for reassignment under the reasonable accommodation provision must include the following documentation:

1. A copy of the employee's resume;
2. A completed FDA Reassignment Questionnaire; and
3. Certification by the Certification by the Reasonable Accommodation Office and Management that all

1

other attempts at reasonable accommodation have been exhausted and it has been concluded that reassignment is the only available option left to explore.

An FDA Reasonable Accommodation Specialist (RAS) will forward the above documentation to the Office of Human Resources (OHR) so that a determination can be made as to which positions the employee is qualified for. The RAS may need to work with a Federal Occupational Health physician in order to make a final decision as to whether positions deemed feasible by OHR fit the needs of the employee as reasonable accommodation.

## Position Eligibility

Reassignments may be made only to "vacant", funded positions. A "vacant" position is defined as a position available when the employee asks for reasonable accommodation, or that the employer is certain will become available within a reasonable amount of time. A "reasonable amount of time" should be determined on a case-by-case basis considering relevant facts, such as whether the employer based on experience, can anticipate that an appropriate position will become vacant within 60-days. A position is also considered vacant if an employer has posted a notice or announcement seeking applications for that position, or up to the time the position has been filled. Employers are not required to create new positions or move other employees from their jobs in order to create a vacancy.

The employer will reassign the individual to an available vacant position for which the employee is qualified that is equivalent in terms of pay, status, or other relevant factors (e.g., benefits, geographical location, etc*). If there is not a vacant equivalent position, the employer will reassign the employee to a vacant lower-level position for which the individual is qualified. *Assuming there is more than one vacancy for which the employee is capable, the employer will place the individual in the position that is most comparable to the employee's current position in terms of pay, status, etc. If it is unclear which position is most equivalent, the employer should consult the employee about his/her preference before determining the position to which the employee will be reassigned. If preference cannot be established, the employee will be placed in the position which best fits his/her qualifications and limitations, as determined by the Deputy Commissioner for Operations in consultation with the Center Executive Officer or designee. In situations where the employee is reassigned to a lower graded position, the employer is not required to pay the individual's original salary. [1]

**\*NOTE: In identifying a reassignment position, the information provided by the employee in the FDA Reassignment Questionnaire has to be taken into account.**

## Position Identification

The Reasonable Accommodation Specialist will collaborate with the Executive Officer of the affected Center to identify vacant positions in the Division/Office/Center for which the employee may be qualified based on the review of the employee's resume by HR. If no such

---

[1] EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship, October 17, 2002.

2

vacancies exist within the Center, or are projected to be available, the Reasonable Accommodation Specialist will collaborate with OHR to advise them of the employee's limitations and to determine feasible vacancies within the Agency/Department. The employee will be reassigned to a vacant position within the Agency/Department based on the review of the employee's resume by HR. If it is determined that a suitable position exists in a different FDA Center, the Reasonable Accommodation Specialist will notify the Executive Officer and will forward the employee's resume to the hiring manager.

When no vacancy is found within the Agency, a request to reassign the employee must be submitted through the Deputy Commissioner for Operations. The Deputy Commissioner for Operations or designee becomes the decision-maker when this occurs. A search for a vacant position is then conducted at the Department.

 * **NOTE:** The search for a vacant position should not exceed a 60-day period. If a vacancy is found within the original office for which the employee qualifies within the 60-day period then the employee will be reassigned to that position in his/her original office.

## Acceptance/Declination of Reassignment

When an appropriate position is identified and all qualifications are met, an offer of reassignment will be presented to the employee. The employee may accept or reject the reassignment; however if the individual declines the offer, then the Agency has met its reasonable accommodation obligation. Consequently, the employee is no longer entitled to additional reasonable accommodation and may be terminated because she/he can no longer perform the essential functions of the job.

The Division/Office/Center, which has a suitable vacancy for the qualified employee, has an obligation to accept the individual's reassignment. Refusal by a Division/Office/Center to accept the reassignment may be construed as a denial of reasonable accommodation thereby placing the Agency at risk for liability and possible litigation.

## Confidentiality Requirements

FDA managers and supervisors may only be told about necessary restrictions pertaining to the work or duties of an employee requesting reassignment as a reasonable accommodation. Any information beyond this may be considered a breach of confidentiality and/or violate the Rehabilitation Act of 1973 as well as the American with Disabilities Act Amendments Act (ADAAA) of 2008. As the Agency is committed to protecting itself at all times from litigation.

Managers are encouraged to rely on the information contained in the recommendation from the RAS. Please note that medical documentation associated with requests for reasonable accommodation is not provided to management. Medical documentation can contain information that is unrelated to the request for reasonable accommodation.

3

**Smith, Celeste**

| | |
|---|---|
| **From:** | Conerly, Albert |
| **Sent:** | Friday, November 8, 2019 3:09 PM |
| **To:** | Smith, Celeste |
| **Subject:** | FW: RA Matters - Follow Up (11.08.19) |
| | |
| **Importance:** | High |

FYI.

Albert

**From:** Condillac, Charmaine
**Sent:** Friday, November 08, 2019 3:07 PM
**To:** Thomas, Robert <Robert.Thomas@fda.hhs.gov>; Conerly, Albert <Albert.Conerly@fda.hhs.gov>; Branch, Tiffany <Tiffany.Branch@fda.hhs.gov>
**Cc:** Morris E. Fischer <morris@mfischerlaw.com>
**Subject:** FW: RA Matters - Follow Up (11.08.19)
**Importance:** High

Dear Mr. Thomas, please be advised that I am hereby retracting my request for a reassignment as a Reasonable Accommodation. As per my prior requests contained in my application and ongoing attempts at interactively dialoging with Agency personnel, as an accommodation, I am requesting the following:

- Telework 5 days per week and come to campus/FDA facilities to conduct all ADR strategies that are conducted in person
- Ability to use assistive technology (Cisco Jabber, WebEx) to participate in virtual ADR strategies {since I don't have a private office space to conduct these confidential discussions} and also as part of my requested accommodation.
- Please advise at your earliest convenience if I need to modify the form and the process in which I can obtain the FOH recommendation and associated documentation.
    - Note: My requests for a Reassignment out of a Hostile Work Environment were/are part of the Agency's Anti-Harassment Policy



**From:** Condillac, Charmaine
**Sent:** Friday, November 08, 2019 9:30 AM
**To:** Thomas, Robert <Robert.Thomas@fda.hhs.gov>; Conerly, Albert <Albert.Conerly@fda.hhs.gov>; Branch, Tiffany <Tiffany.Branch@fda.hhs.gov>
**Cc:** Morris E. Fischer <morris@mfischerlaw.com>
**Subject:** RE: RA Matters - Follow Up
**Importance:** High

1

Dear Mr. Thomas, as per my email of yesterday (11.7.19), I'd like the opportunity to consult with my attorney regarding the submission below and get back to you. Therefore, please hold off on processing the questionnaire/application until I get back to you and give you the green light.

At this point the questionnaire I've submitted is **null and void** until either I or my attorney get back to you/Agency personnel. My concern relates to the policy that you've submitted for my review and its relationship to the SMG and HHS/FDA policy and a statement that I acknowledge by asking for a reassignment that <u>"I am unable to perform the essential functions of my position as they are described in the PD"</u>

- I've **never** made this statement and in an effort to deal with the ongoing harassment and hostile work conditions that have directly contributed to my medical condition and my subsequent request for an accommodation, I will not be compelled to agree to this mischaracterization of the facts. Furthermore, it is my hope that the entire spectrum of recommendations made by FOH be disclosed to me immediately.

- My continued concern is that once again like many prior/recent actions, the approval of the RA that lasted a year, is being utilized to push me out of my position and employment at FDA, based on the statement "the employee is no longer entitled to additional reasonable accommodation and may be terminated because she/he can no longer perform the essential functions of the job."



- 

Per my email to Albert, I requested critical information from him,

- "Albert, I would greatly appreciate your/the Agency's definition of the <u>essential functions of my current position</u> <u>so that I can make an informed position and proceed accordingly</u>. Please know that I have <u>never contended that</u> <u>I'm unable to perform the essential functions of my position as its described in my PD as a GS-14 Associate</u> <u>Ombudsman</u>. Please understand that my FMLA and FOH medical documentation states a difficulty in engaging in highly "adversarial engagements with you and the staff and the hostile work environment" that's been proven to exacerbate my stress and anxiety. More notably, both of my health care providers have firmly asserted in communication/documentation provided to FOH's Medical Consultant Dr. Feeks, that they believe me to be highly competent and fully capable of excelling in the work as its described in my PD. May I once again request a copy of the FOH recommendation that's been submitted to FDA?

- Getting the essential functions of the position from you would be greatly appreciated.

- I am attaching the current PD for my position and my resume (that outlines the work I did as an ombuds between 2014-2015) for your review and consideration in my request above.



Very gratefully,
Charmaine

<hr>

**From:** Thomas, Robert
**Sent:** Friday, November 08, 2019 9:06 AM
**To:** Condillac, Charmaine <Charmaine.Condillac@fda.hhs.gov>
**Subject:** RE: RA Matters - Follow Up

2

Good Morning Ms. Condillac,

I have received your documents and will request HR a 30 day vacancy to include the criteria you indicated on the RA Questionnaire.

# Robert J. Thomas

Lead Reasonable Accommodation Specialist
Office of Operations
U.S. Food and Drug Administration
Direct: 301-796-9406
Office: 240-402-1650
Fax: 301-847-8607
Robert.Thomas@fda.hhs.gov

<< OLE Object: Picture (Device Independent Bitmap) >>

**From:** Condillac, Charmaine
**Sent:** Thursday, November 07, 2019 4:18 PM
**To:** Thomas, Robert <Robert.Thomas@fda.hhs.gov>; Conerly, Albert <Albert.Conerly@fda.hhs.gov>
**Cc:** Morris E. Fischer <morris@mfischerlaw.com>
**Subject:** FW: RA Matters - Follow Up
**Importance:** High

Dear Mr. Thomas, I'd like the opportunity to consult with my attorney regarding the submission below and get back to you. Therefore, please hold off on processing the questionnaire/application until I get back to you and give you the green light.

Very gratefully,
Charmaine

**From:** Condillac, Charmaine
**Sent:** Thursday, November 07, 2019 1:19 PM
**To:** Conerly, Albert <Albert.Conerly@fda.hhs.gov>; Thomas, Robert <Robert.Thomas@fda.hhs.gov>
**Cc:** Morris E. Fischer <morris@mfischerlaw.com>
**Subject:** FW: RA Matters - Follow Up
**Importance:** High

Albert, thank you for providing the documents below!

Mr. Thomas, kindly find the completed questionnaire and my resume attached.

<< File: RA Questionnaire 2019.docx >>  << File: RA Reassignment Policy.doc >>

**From:** Conerly, Albert
**Sent:** Thursday, November 07, 2019 12:55 PM
**To:** Condillac, Charmaine <Charmaine.Condillac@fda.hhs.gov>

3

**Cc:** Thomas, Robert <Robert.Thomas@fda.hhs.gov>
**Subject:** RA Matters - Follow Up
**Importance:** High

Good Afternoon, Charmaine!

I have received the updated RA package from Mr. Thomas, and I intend to meet with you to go over the response on Tuesday, November 12th at 1:30PM. You have already accepted the meeting invitation.

Please read the attached policy document for more information about the RA process and follow the guidance therein. I have attached the RA questionnaire, which is referenced in the policy document. Note that you have 10 business days from the date of this email to provide the required documents to Mr. Thomas.

Thank you for your attention and cooperation!

Albert
<< File: Condillac - RA Questionnaire 2019.docx >> << File: Charmaine Condillac Resume (2018).pdf >>

4


**Smith, Celeste**

| | |
|---|---|
| **From:** | Conerly, Albert |
| **Sent:** | Friday, December 20, 2019 8:46 AM |
| **To:** | Smith, Celeste |
| **Subject:** | FW: Reasonable Accommodation Request - RA-FDAOC-203-19  - Condillac |

FYI.

**From:** Thomas, Robert <Robert.Thomas@fda.hhs.gov>
**Sent:** Thursday, December 19, 2019 1:03 PM
**To:** Conerly, Albert <Albert.Conerly@fda.hhs.gov>
**Subject:** FW: Reasonable Accommodation Request - RA-FDAOC-203-19 - Condillac

FYI

# Robert J. Thomas

Lead Reasonable Accommodation Specialist
Office of Enterprise Management Services
Office of Operations
U.S. Food and Drug Administration
Direct:  301-796-9406
Office:  240-402-1650
Fax:      301-847-8607
Robert.Thomas@fda.hhs.gov



**From:** Thomas, Robert
**Sent:** Thursday, December 19, 2019 1:01 PM
**To:** Condillac, Charmaine <Charmaine.Condillac@fda.hhs.gov>
**Cc:** 'Morris E. Fischer' <morris@mfischerlaw.com>
**Subject:** Reasonable Accommodation Request - RA-FDAOC-203-19 - Condillac

**Good Afternoon Ms. Condillac,**

**The FOH Medical Review and the Ra Analysis are not releasable to you under the Reasonable Accommodation process. Your essential job functions are in your position description.**

**On November 7, 2019, you were issued the Decision Letter in reference to your reasonable accommodation request , which you acknowledged on November 12,**

1

2019. The decision indicated that based on your medical condition/limitations you were unable to perform the essential functions of your position as GS-0301-14 – Associate Ombudsman, with or without an accommodation. Thus reassignment as the reasonable accommodation was warranted. You were required to provide a copy of your current resume and to complete the Reasonable Accommodation Questionnaire, which you provide to me on November 7, 2019 and requested holding off on processing the questionnaire/application until you get back to me give me the green to proceed. On November 8, 2019, you emailed and stated that you would like to consult with your attorney, subsequently stating the you hereby retract your request for a reassignment as a reasonable accommodation.

Reassignment as the reasonable accommodation was warranted as a last resort as it was determined that you were unable to perform the essential functions of your position, thus your statement to retract your reasonable accommodation request for reassignment did not stop the reassignment process which is based on your medical condition/limitations.

If you have had a chance to consult with your attorney, please advise if you desire to continue in the reasonable accommodation reassignment process by close of business on Friday, December 27, 2019. If you do wish to proceed with the reassignment action, I will close the reasonable accommodation request and refer any further action to your supervisor and the Human Resources Specialist.

Respectfully,

**Robert J. Thomas**
Lead Reasonable Accommodation Specialist
Office of Enterprise Management Services
Office of Operations
U.S. Food and Drug Administration
Direct: 301-796-9406
Office: 240-402-1650
Fax:    301-847-8607
Robert.Thomas@fda.hhs.gov



2



**Smith, Celeste**

| | |
|---|---|
| **From:** | Thomas, Robert |
| **Sent:** | Monday, December 30, 2019 12:16 PM |
| **To:** | Conerly, Albert |
| **Cc:** | King, Michelle (FDA); Smith, Celeste |
| **Subject:** | Reasonable Accommodation Request - RA-FDAOC-203-19 - Condillac |

Good Morning Mr. Conerly,

I did not received a response from Ms. Condillac as requested by close of business on Friday, December 27, 2019, in regards to the reasonable accommodation reassignment. I informed her and her attorney via email that of as of today, I am closing the reasonable accommodation reassignment process due to lack of response on her part. The disposition of your response accommodation request is now in the your hands. I am available to discuss, if needed.

Respectfully,

# Robert J. Thomas

Lead Reasonable Accommodation Specialist
Office of Enterprise Management Services
Office of Operations
U.S. Food and Drug Administration
Direct: 301-796-9406
Office: 240-402-1650
Fax: 301-847-8607
Robert.Thomas@fda.hhs.gov



1

# ESSENTIAL DUTIES

- Collaborates with officials to achieve constructive resolution to disputes; seeks fair and equitable solutions to employees' problems; suggests approaches to address and manage conflict, and suggest policy and procedural changes; helps to build constructive relationships by working to resolve disputes and making recommendations intended to create a more positive work environment, thereby contributing to improved office productivity.

- Provide support to the Ombudsman in mediation disputes, and assisting to resolve issues in a timely, fair, and impartial manner

- Maintain neutrality in each case, and serves as an advocate for fair process and outcomes.

- Work closely with the Ombudsman on day to day operations

- Provide advice and assistance to Ombudsman in making recommendations of resolutions to the staff.

- Collaborate with Ombudsman in the development of short-and-long term resolutions and presents to 00 Senior Leadership.

- Represent Ombudsman in discussions and meetings related to matters of concern as deemed appropriate.

- Serve as a neutral third party in conflict resolutions and works to achieve fair and equitable solutions to problems.

- Collaborate with other Office of Operations and FDA offices on issues of general concern and interprets policies to help resolve conflict or make improvements in the Office of Operations procedures.

- Assist in the mediation and/or negotiation of disputes occurring at all staff levels. Educates management and the general workforce, in the concepts and processes of conflict resolution either in one-on-one or group settings.

- Recommend approaches for addressing and managing conflict and collaborates with other Office of Operations offices on issues of general concern.

- Provide leadership in developing and implementing strategies for building and sustaining cooperative relations between managers and staff employees in the Office of Operations.

- Research, identify, and develop tools to be used to conduct assessments and evaluations of the organization's conflict climate.

- Work with leadership to develop plans to improve organizational environment.

# POSITION DESCRIPTION *(Please Read Instructions on the Back)*

| 1. Agency Position No. |
|---|
| 14 BOGO |

| 2. Reason for Submission | 3. Service | 4. Employing Office Location | 5. Duty Station | 5. OPM Certification No. |
|---|---|---|---|---|
| ☐ Redescription ☑ New | ☑ Hdqtrs. ☐ Field | Silver Spring, MD | Bethesda, MD | |
| ☐ Reestablishment ☐ Other | | | | |

Explanation *(Show any positions replaced)*

| 7. Fair Labor Standards Act | 8. Financial Statements Required | 9. Subject to IA Action |
|---|---|---|
| ☑ Exempt ☐ Nonexempt | ☐ Executive Personnel Financial Disclosure ☐ Employment and Financial Interests | ☐ Yes ☑ No |

| 10. Position Status | 11. Position Is: | 12. Sensitivity | 13. Competitive Level Code |
|---|---|---|---|
| ☑ Competitive | ☐ Supervisory | ☐ 1—Non-Sensitive ☐ 3—Critical Sensitive | |
| ☐ Excepted *(Specify in Remarks)* | ☐ Managerial | | 14. Agency Use |
| ☐ SES (Gen.) ☐ SES (CR) | ☑ Neither | ☐ 2—Noncritical Sensitive ☐ 4—Special Sensitive | |

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. U.S. Office of Personnel Management | | | | | | // |
| b. Department, Agency or Establishment | Associate Ombudsman | GS | 301 | 14 | JK | 6/12/14 |
| c. Second Level Review | | | | | | // |
| d. First Level Review | | | | | | // |
| e. Recommended by Supervisor or Initiating Office | | | | | | // |

16. Organization Title of Position *(if different from official title)*

17. Name of Employee *(if vacant, specify)*

18. Department, Agency, or Establishment

**FOOD AND DRUG ADMINISTRATION**

c. Third Subdivision

a. First Subdivision

Office of the Operations

d. Fourth Subdivision

b. Second Subdivision

e. Fifth Subdivision

19. Employee Review--This is an accurate description of the major duties and responsibilities of my position.

Signature of Employee *(optional)*

20. **Supervisory Certification.** *I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the*

*knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.*

a. Typed Name and Title of Immediate Supervisor

Albert Conerly

Ombudsman

| Signature | Date |
|---|---|
| Albert Conerly, Jr. | 6/9/14 |

b. Typed Name and Title of Higher-Level Supervisor or Manager *(optional)*

| Signature | Date |
|---|---|
| | // |

21. **Classification/Job Grading Certification.** *I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the U.S. Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards.*

Typed Name and Title of Official Taking Action

Joanne Kennedy

Human Resources Specialist (Classification)

| Signature | Date |
|---|---|
| Joanne Kennedy | 6/12/14 |

22. Position Classification Standards Used in Classifying/Grading Position

OPM Primary Standard, TS-134 August 2009

**Information for Employees.** The standards, and information on their application, are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the U.S. Office of Personnel Management. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the U.S. Office of Personnel Management.

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee *(optional)* | | // | | // | | // | | // | | // |
| b. Supervisor | | // | | // | | // | | // | | // |
| c. Classifier | | // | | // | | // | | // | | // |

24. Remarks

FPL: GS-14
Bus Code: 8888

25. Description of Major Duties and Responsibilites *(See Attached)*

**Associate Ombudsman**
**GS-301-14**

**Introduction**

This position is located in the Food and Drug Administration (FDA), Office of Operations (OO), Immediate Office (IO). The incumbent serves as a confidential and informal source of information, facilitator, consultant, and practitioner for dispute resolution, helping in problem solving and the constructive management and resolution of conflict. As an Associate Ombudsman, the incumbent collaborates with officials to achieve constructive resolution to disputes; seeks fair and equitable solutions to employees' problems; suggests approaches to address and manage conflicts, and suggests policy and procedural changes; helps to build constructive relationships by working to resolve disputes and making recommendations intended to create a more positive work environment, thereby contributing to improved office productivity.

**Major Duties and Responsibilities**

The incumbent researches complaints, providing support to the Ombudsman in mediation disputes, and assisting to resolve issues in a timely, fair, and impartial manner. Reviews and examines complaints regarding decisions rendered to the staff. Maintains neutrality in each case, and serves as an advocate for fair process and outcomes.

Works closely with the Ombudsman on day to day operations; receives complaints, performs technical reviews and takes steps to resolve sensitive management and other workplace issues. Provides advice and assistance to Ombudsman in making recommendations of resolutions to the staff. Collaborates with Ombudsman in the development of short-and-long term resolutions and presents to OO Senior Leadership. Represents Ombudsman in discussions and meetings related to matters of concern as deemed appropriate.

Listens to staff concerns, clarifies procedures, discusses options and, when requested, acts as an intermediary. Serves as an intake person, receiving inquiries for assistance with a wide range of workplace issues. Advocates for fair processes and promotes building a supportive, inclusive workplace. Serves as a neutral third party in conflict resolutions and works to achieve fair and equitable solutions to problems. Identifies resources and makes referrals so that individuals seeking assistance may go directly to the source that can best address the concern. Collaborates with other Office of Operations and FDA offices on issues of general concern and interprets policies to help resolve conflict or make improvements in the Office of Operations procedures. Conducts research to identify systemic problems and initiates corrective or preventive actions. Assists in the mediation and/or negotiation of disputes occurring at all staff levels. Educates management and the general workforce, in the concepts and processes of conflict resolution either in one-on-one or group settings.

Develops and implements disputes resolution and conflict management programs for use in the organization.

Recommends approaches for addressing and managing conflict and collaborates with other Office of Operations offices on issues of general concern. Provides leadership in developing and implementing strategies for building and sustaining cooperative relations between managers and staff employees in the Office of Operations; and provides guidance and methods for the informal resolution of disputes.

Researches, identifies, and develops tools to be used to conduct assessments and evaluations of the organization's conflict climate. Conducts conflict climate assessments and evaluations in Office of Operations organizations. Works with leadership to develop plans to improve organizational environment. Conducts and/or assist in conducting assessments and evaluations of Ombudsman program effectiveness.

Performs other work as assigned.

## FACTOR LEVEL DESCRIPTIONS

### Factor 1 - Knowledge Required by the Position

Mastery knowledge of the concepts, principles and methods associated with dispute resolution; thoroughly skilled in the use of facilitation and mediation techniques; and ability to analyze and evaluate issues to determine their relative importance and susceptibility to compromise, alternative solution and settlement.

Comprehensive knowledge and ability to gain and maintain the trust necessary to handle any and all assignments in a thoroughly confidential, competent and professional manner without reference to any previously established technical guidelines or policies.

Mastery knowledge of the concepts, principles, practices, and techniques used in the management of projects and engagement with diverse staff.

Ability to research, gather, assemble, and analyze information; draw conclusions and inferences; summarize findings and provide comprehensive recommendations; and present diverse and highly complex information to senior management.

Ability to communicate orally and in writing in order to organize and present technical briefings and alternative methods of resolution to workplace issues; to encourage understanding of disputed or unpopular decisions, and negotiated solutions; and to make frequent oral and written presentations on dispute resolution issues in a clear and concise manner to senior management and staff.

Ability to interpret and appropriately implement broad and changing policies and procedures concerning dispute resolution approaches and techniques.

Ability to negotiate with senior level management and staff employees regarding workplace disputes.

Skill in exercising sound judgment, discretion, diplomacy, and tact to work effectively with high-level individuals; and ability to establish and maintain open communications and rapport with all employees.

**Factor 2 - Supervisory Controls**

The Associate Ombudsman works under the general supervision of the Ombudsman. The supervisor provides administrative direction with assignments in terms of broadly defined missions or functions. The incumbent independently plans, designs, and carries out the work to be done. The supervisor reviews final work products and recommendations for their effect on the workforce. The supervisor normally accepts work as being technically authoritative and without the need for significant change.

**Factor 3 - Guidelines**

Guidelines consist of general administrative manuals, policy and procedures documents. Guidelines also include laws, policies, decisions and regulations for top level managers and human resource management professionals in FDA. Guidelines are also available in the form of broad legislation, policy statements, directives, orders, notices/bulletins, and circulars, which are often general, nonspecific, and lack clear applicability to specific unusual and sensitive situations. The incumbent must use seasoned judgment and ingenuity and exercise broad latitude in determining the intent of the applicable guidelines. The incumbent must exercise considerable judgment in interpreting and adapting existing policies/guidelines, and discretion in developing novel approaches to situations not previously encountered or covered by written policy.

**Factor 4 - Complexity**

The work of the position is varied, unstructured, and consists of many different concurrent or sequential assignments. The work requires a high degree of judgment in working to identify, analyze, and resolve workplace conflict and to provide advice, guidance, and initiative to support the search for better solutions to workplace disputes. These situations are inherently difficult given the nature of the issues involved, the individuals affected, and the divergent points of view. The position requires the exercise of creativity and originality in dealing with high-level management issues and in assessing and making recommendations about current situations and future directions. The incumbent must quickly acclimate to new situations and synthesize complex and large amounts of information in a short timeframe. The incumbent serves as an expert consultant in dispute resolution issues in the workplace and conducts comprehensive research and evaluations. The incumbent also takes the lead in conducting and/or acquiring mediation and negotiation training appropriate for Office of Operations officials.

**Factor 5 - Scope and Effect**

The purpose of the work is to serve as the Associate Ombudsman in the Office of Operations, providing all employees the opportunity to access dispute resolution and mediation processes to request early intervention or to seek assistance from more than one source to promote constructive conflict management or resolution. The incumbent serves as an expert dispute resolution practitioner and provides confidential and informal assistance to managers and staff employees in resolving workplace disputes and is actively involved with a broad range of employees at various levels. The work significantly impacts the work of others throughout the Office of Operations, and cuts across Offices and Divisions and strongly influences managers and employees in the work place.

**Factor 6 - Personal Contacts**

Contacts are with Office of Operations senior leadership and staff employees. Contacts are also with individuals in the Department of Health and Human Services, and may include the union, other voluntary organizations, members of the dispute resolution and professional organizations, representatives from other Federal agencies and private institutions, in a moderately unstructured setting.

**Factor 7 - Purpose of Contacts**

The purpose of contacts is to understand, assist, persuade, and negotiate concerning matters in dispute, seeking fair and equitable solutions to employee problems, and supporting the effective management of conflict. In addition, contacts are intended to build constructive relationships through the management and resolution of disputes, and to recommend ways to create a more positive work environment. Furthermore, contacts are needed to influence managers and senior level staff with conflicting viewpoints to engage in constructive conversations and to accept and, in some cases, implement findings and recommendations.

**Factor 8 - Physical Demands**

The work is primarily sedentary. There are no special physical demands required by the position.

**Factor 9 - Work Environment**

The work is performed in a typical office setting. Occasional travel may be required to attend meetings, seminars, and conferences or training.

## FACTOR EVALUATION SYSTEM
## POSITION EVALUATION STATEMENT

**Organization:** DHHS/FDA/OO  **PD Number:**

**Title, Series and Grade:** Associate Ombudsman, GS-301-14

**References:** OPM Position Classification Flysheet for Miscellaneous Administration and Program Series, GS-0301, TS-34, January 1979; OPM APPENDIX 3 PRIMARY STANDARD

**Title and Series Determination:** This series includes which are to perform two-grade interval work for which no other series is appropriate. The work requires analytical ability, judgment, discretion, and knowledge of a substantial body of administrative or program principles, concepts, policies, and objectives. No titles are specified for positions in this series.

| FACTOR | CRITERIA | POINTS ASSIGNED | FLD | COMMENTS |
|--------|----------|-----------------|-----|----------|
| 1 | Knowledge Required | 1550 | 1-8 | Mastery knowledge of dispute resolution in order to facilitate or mediate complaints and resolve issues. Decisions or recommendations may significantly change policies and procedures. |
| 2 | Supervisory Controls | 650 | 2-5 | Administrative direction with broadly defined missions or functions. Independent planning and carrying out programs, studies or other work. Results considered technically authoritative and normally accepted without significant change. |
| 3 | Guidelines | 650 | 3-5 | Guidelines are broadly stated and nonspecific. Employee must use judgment and ingenuity in interpreting the intent of the guides that do exist and in developing applications to specific areas of work. |
| 4 | Complexity | 325 | 4-5 | Varied duties requiring many different and unrelated processes or methods that are applied to a broad range of activities or analysis. The situations are inherently difficult given the nature of the issues involved, the individuals affected, and the divergent points of view. |
| 5 | Scope and Effect | 325 | 5-5 | The incumbent serves as an expert dispute resolution practitioner and provides confidential and informal assistance to managers and staff employees in resolving workplace disputes. The work significantly impacts the work of others throughout the Office of Operations. |
| 6 | Personal Contacts | 60 | 6-3 | Personal contacts are with individuals or groups from outside the employing agency in a moderately unstructured setting. |
| 7 | Purpose of Contacts | 120 | 7-3 | The purpose of contacts is to understand, assist, persuade, and negotiate concerning matters in dispute, seeking fair and equitable solutions to employee problems, and supporting the effective management of conflict. |
| 8 | Physical Demands | 5 | 8-1 | The work is primarily sedentary. |
| 9 | Work Environment | 5 | 9-1 | The work is performed in a typical office setting. |

| SUMMARY | |
|---|---|
| **Total Points:** 3690 | **Grade Conversion:** GS-14 |
| **Final Points Ranges**: 3605-4050 | |

**Joanne Kennedy, Human Resources Specialist (Classification)**          **Date:**

**Fair Labor Standards Act (FLSA) Check List**

*This form is to be completed for each grade in a career ladder. Note that it is possible for different grades within a career ladder to have different FLSA designations (for example, non-exempt at lower grades, exempt at higher grades in the career ladder). Attach a properly completed and signed checklist to each classified position description and statement of difference (if applicable).*

## A.  REQUIRED POSITION INFORMATION

**Position Title**: Associate Ombudsman          **Pay Plan/Series**: GS-301-14

**Organization:**     FDA/OO

**Administrative Code:**     **DMM**          **PD Number:**

Check all of the following criteria that are applicable to the position:

## B.  Non-Exempt Criteria

1. Salary-based non-exemption (5 CFR 551.203)

____ Employees annual rate of basic pay is less than $23,660.

2. Non-exemption of certain employees (5 CFR 551.204)

____ Position is non-supervisory and engaged in equipment operation, or is a protective or clerical occupation.

____ Position involves technical work properly classified below GS-09

____ Position is nonsupervisory in the Federal Wage System or other comparable wage system.

## C. Exemption Criteria

## 1.  Executive Exemption Criteria (5 CFR 551.205)

_ __ Primary duty of the position is management or supervision; work involves customarily and regularly directing the work of other employees and involves the authority to hire or fire other employees or makes recommendations on employment issues such as hiring and firing that are given particular weight by higher level supervisors or managers.

## 2.  Administrative Exemption Criteria (5 CFR 551.206)

_ X __ Primary duty is performance of office or non-manual work directly related to the management or general business functions; work involves the exercise of discretion and independent judgment with respect to matters of significance.

## 3.  Professional Exemption Criteria (5 CFR 551.208, 209, 210)

_ __ **5 CFR 551.208 Learned Professionals:** Primary duty is performance of work requiring advanced knowledge in a field of science or learning including the traditional professions of law, medicine, theology, accounting, actuarial computation, engineering, architecture, teaching, pharmacy, various types of physical, chemical and biological sciences, and other similar occupations that have a recognized professional status; entrance into these professions requires a prolonged course of specialized intellectual instruction.

___ **5 CFR 551.209 Creative Professionals:** Primary duty is performance of work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor such as music, acting, writing, graphic arts. Exemption depends upon the extent of invention, imagination, originality or talent of the employee; exemption does not apply to work that can be produced by a person with general manual or intellectual ability and training.

___ **5 CFR 551.210 Computer Professionals:** Primary duty consists of the application of systems analysis techniques and procedures, including consulting with users to determine hardware, software, or system functions specifications; OR design development, documentation, analysis, creation, testing or modification of computer systems or programs; OR a combination of these duties. Exemption does not apply to employees engaged in the manufacture or repair of computer hardware and related equipment, or to those whose work is highly reliant on computers but whose duties do not consist of the aforementioned.

Salary based exemption applies to any computer professional compensated on an hourly bases at a rate of basic pay of $27.63 an hour and above

**4.  Law Enforcement Activities (5 CFR 551.216)**

___ Special exemption/exclusion applies to all law enforcement agents receiving availability pay.

**5.  Foreign Exemption (5 CFR 551.212)**

___ Employees permanently stationed in an exempt area and spend all hours of work in a given workweek in one or more exempt areas or employees not permanently stationed in an exempt area, but spend all hours of work in a given workweek in one or more exempt areas.  Exempt area means any foreign country, or any territory under the jurisdiction of the United States other than a State, the District of Columbia, Puerto Rico, the US Virgin Islands, and American Samoa. Guam, Midway, Wake and Johnston Islands.

/

**Final Determination (Check One)        _ __ Non-Exempt              _ X __ Exempt**


**Joanne Kennedy, 6/3/14**

**HR Specialist Classification/Date**

# EXHIBIT 12

# MORRIS E. FISCHER, LLC

◆

Meredith M. Purple, Esq.
Investigation and Prosecution Division
U.S. Office of Special Counsel
1730 M Street, N.W. Suite 218
Washington, D.C. 20036-4505
Tel. (202) 804-7106
Fax. (202) 653-0015
Email: mpurple@osc.gov

Re: Charmaine Condillac – OSC File No. MA-20-0689
Motion for a Stay in Proposed Termination

Dear Ms. Purple:

On January 17, 2020, the Agency submitted a Proposed Termination letter to Ms. Condillac. We submitted a response to this proposed termination today. In addition, we ask the OSC to contact the Agency and issue a stay on the termination.

Aside of the Proposed Termination lacking merit, we view it as retaliatory. After her supervisor, Albert Conerly, issued Ms. Condillac an October 1, 2019, Opportunity to Demonstrate Acceptable Performance ("ODAP") (Exhibit 1), on November 4, 2019, she complained in writing about the legal issues regarding the ODAP (Exhibit 2). That letter also notified Mr. Conerly that Ms. Condillac was filing a complaint with the Office of Special Counsel that these actions were illegal and an abuse of power. (Id.).

Ms. Condillac did file an OSC complaint in December, 2019, the above-referenced complaint. In that complaint she raised a number of violations and legal deficiencies with her ODAP. (Exhibit 3, Attachment to her Office of Special Counsel Complaint). Mr. Conerly was compelled to release Ms. Condillac from the ODAP due to these deficiencies and he advised her that she successfully completed it.

However, on January 17, 2020, Mr. Conerly issued a Proposal to Remove (Exhibit 4) Ms. Condillac from her position, not because she was failing at her position or because she failed the ODAP. Rather, it was because he contended that due to her Reasonable Accommodation request,

---

8720 Georgia Avenue, Suite 210
Silver Spring, MD 20910-3614
O 301-328-7631 F 301-328-7638

11 Broadway, Suite 615
New York, NY 10004-1490
O 800-209-2608 F 212-480-8560

www.morrisfischerlaw.com l morris@mfischerlaw.com

Page 111 of 124

she deemed herself unable to perform the essential functions of her position. Within a few months of receiving that letter, Mr. Conerly proposed her termination after failing to follow the reasonable accommodation interactive process. We contend that is whistleblower retaliation.

The Proposal to Remove relies on the Position Description for the Associate Ombudsman, GS-301-14 Associate Ombudsman job and it contends that Ms. Condillac was unable to perform those duties. There are a number of issues with that contention. In the first place, the FOH medical officer determined that Ms. Condillac was "a qualified individual with a disability," (Exhibit 5, Proposal to Remove supporting documentation (page 2 of the November 6, 2019 report)), yet Mr. Conerly contends that Ms. Condillac cannot perform the essential functions of her position. These two points are totally contradictory.

Ms. Condillac was never unable to perform her essential functions. Had that been the case, Mr. Conerly would not have graduated her from the ODAP just a month or so before the Proposal to Remove. Rather Mr. Conerly hones in on a reasonable accommodation request Ms. Condillac made to telework, unless she was required to be in the office to complete job duties.

On June 21, 2019, Mr. Conerly granted Ms. Condillac the reasonable accommodation of teleworking three days a week. However, that accommodation became inadequate after Mr. Conerly acted with increased hostility towards her. On November 8, 2019, Ms. Condillac asked to telework 5 days per week, except when necessary to be in the office. (Id. page 15 of 32). She also rescinded any request for reassignment. (Id.).

The Agency contends that Ms. Conerly insisted that as part of her Reasonable Accommodation, she be exempted from communicating with her supervisor. That contention is utterly untrue. Ms. Condillac never stated that she would not or could not communicate with Mr. Conerly. She was willing to telework and communicate either by email, text, phone or any other method required for her position.

At no time did the agency engage in an interactive process with the employee to work towards a reasonable accommodation that would have worked for both parties. [N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability." *Baert v. Euclid Beverage, Ltd.,* 149 F.3d 626, 634 (7th Cir. 1998).

Rather than interpreting Ms. Condillac's proposed reasonable accommodation in such a narrowly tailored request, with no room for a broader interpretation or without any room for adjustment, the agency immediately determined that Ms. Condillac would be unable to interact with her supervisor at all.

2

We contend that misusing the interactive process and narrowly defining Ms. Condillac's request for reasonable accommodation in order to propose her termination was blatant retaliation for her whistleblower complaint, filed just one month earlier.

Sincerely,

*Morris E. Fischer, Esq.*

Morris E. Fischer, Esq.

cc: Ms. Charmaine Condillac

# EXHIBIT 13


**U.S. FOOD & DRUG** ADMINISTRATION

Sent Via Email, USPS and Certified Mail

## MEMORANDUM

**DATE:**     February 19, 2020

**TO:**     Charmaine Condillac, Associate Ombudsman, GS-0301-14
            Ombudsman and Conflict Prevention and Resolution Staff
            Office of Operations

**SUBJECT:**     DECISION NOTICE

This is a decision to remove you from your position of Associate Ombudsman, GS-0301-14, at the Food and Drug Administration (FDA) and from Federal Service based on a Charge of Medical Inability to Perform the Duties of your Position. This decision is made in the interest of promoting the efficiency of the service and the Federal Government and is effected in accordance with 5 U.S.C. Chapter 75, 5 C.F.R. Part 752 and HHS Instruction 752.

By memorandum received by you on January 17, 2020, you were informed of a proposal to remove you from your position of Associate Ombudsman, GS-0301-14, and the Federal service, based on a Charge of Medical Inability to Perform the Duties of your Position. By that same memorandum, you were advised that you had seven (7) days to reply orally, in writing, or both to the proposed action. You requested additional time to reply and were granted an additional ten (10) calendar days. You did reply. In making this decision, I carefully and objectively reviewed the charge and specification in the Notice of Proposed Removal, the supporting evidence in the record, and your written reply.

After full consideration of all the facts, I find the charge to be SUSTAINED. In deciding to remove you from your Associate Ombudsman, GS-0301-14 position, I have considered the following:

**Background:**

On April 19, 2019, you submitted a request to the Reasonable Accommodation Office requesting flexible time/schedule for medical treatment related to disability and reassignment, to accommodate your medical condition. As an interim accommodation, you were granted telework three (3) days per week. The other two (2) days you were required physically on site at either White Flint North (WFN) or White Oak (WO) for ADR-specific work including mediations, facilitations, etc., or staff meetings. You were permitted to move your work at home days to accommodate these onsite activities.

In accordance with FDA's Staff Manual Guide (SMG) 3130.2 - Procedures for Providing Reasonable Accommodations for Individuals with Disabilities, a list of questions along with your documentation was sent to the Federal Occupational Health (FOH) Occupational Medicine Consultant (OMC) to be answered by your medical care professional(s). The answers to the questions were designed to assist the agency in determining whether your medical conditions rise to the level of a disability under the Rehabilitation Act of 1973 and the Americans with Disabilities Act Amendments Act (ADAAA) of 2008.

The review of your reasonable accommodation request was completed, and an analysis provided. Based on the updated medical information received October 30, 2019, from the FOH OMC, you have a medical condition which substantially limits major life activities and functions, including thinking, concentrating, interacting with others, eating and sleeping. Based on this information, your medical condition rises to the level of a disability as described by the Rehabilitation Act of 1973, and the ADAAA of 2008, and you are considered a qualified individual with a disability.

The FOH OMC opined that there are times when you feel unable to go to work, unable to concentrate and focus on your work, and unable to make decisions, in addition to limiting energy, appetite, and sleep. The FOH OMC opined that your symptoms are greatly exacerbated by interactions with your supervisor. The FOH OMC opined that you seek to minimize time at the office, and interaction with your supervisor, chiefly because of the affect that interaction with your supervisor has on your symptoms.

Attendance in the office for duties that are not portable, and interacting with one's supervisor, are essential functions of any position, and accommodations to make these unnecessary would not be considered reasonable. The FOH OMC opined that at present, and for the foreseeable future, you appear to be unable to perform the essential functions of your position, with or without accommodation.

The FOH OMC opined that therefore, reassignment to another vacant position, the accommodation of last resort, would be medically reasonable. Based on the facts of this case, the available medical information, a review of the essential job functions, the Reasonable Accommodation Office maintained that if administratively feasible, without causing a direct threat to health and safety or posing an undue hardship, management should grant you the alternative accommodation of reassignment.

Therefore, based on the analysis of the Reasonable Accommodation Office, a review of your medical information and in accordance with the Rehabilitation Act of 1973, the Americans with Disabilities Act Amendments Act (ADAAA) of 2008 and FDA's Policy on Reasonable Accommodation under Section 2 of SMG 3130.2, as the decision-maker, you were granted reassignment as the reasonable accommodation of last resort.

You submitted the completed Reassignment Questionnaire and provided the Reasonable Accommodation Office with a copy of your current resume on November 7, 2019 and requested holding off on processing the questionnaire/application until you "get back to RA give them the green to proceed". On November 8, 2019, you emailed the Reasonable Accommodation Office and stated that you would like to consult with your attorney, and subsequently you stated that "you hereby retract your request for a reassignment as a reasonable accommodation". On November 21, 2019, the agency began an internal vacancy search for a suitable/comparable position for you.

On December 19, 2019, the Reasonable Accommodation Office sent you and your attorney an email informing you that "Reassignment as the reasonable accommodation was warranted as a last resort as it was determined that you were unable to perform the essential functions of your position, thus your statement to retract your reasonable accommodation request for reassignment did not stop the reassignment process which is based on your medical condition/limitations". "If you have had a chance to consult with your attorney, please advise if you desire to continue in the reasonable accommodation reassignment process by close of business on Friday, December 27, 2019. If you do wish to proceed with the reassignment action, RA would close the reasonable accommodation request".

Due to a lack of response on your part, the Reasonable Accommodation Office informed you and your attorney via email that of as of December 30, 2019, Reasonable Accommodation Office is closing the reasonable accommodation reassignment process.

1. **I have considered the impact your medical condition has on your ability to perform the essential functions of your position.** The essential duties of your position are as follows:

    - Collaborate with officials to achieve constructive resolution to disputes; seeks fair and equitable solutions to employees' problems; suggests approaches to address and manage conflict, suggest policy and procedural changes; helps to build constructive relationships by working to resolve disputes and making recommendations intended to create a more positive work environment, thereby contributing to improved office productivity.
    - Provide support to the Ombudsman in mediation disputes, and assisting to resolve issues in a timely, fair, and impartial manner.
    - Maintain neutrality in each case and serve as an advocate for fair process and outcomes.
    - Work closely with the Ombudsman on day to day operations.
    - Provide advice and assistance to Ombudsman in making recommendations of resolutions to the staff.
    - Collaborate with Ombudsman in the development of short-and-long term resolutions and presents to OO Senior Leadership.
    - Represent Ombudsman in discussions and meetings related to matters of concern as deemed appropriate.
    - Serve as a neutral third party in conflict resolutions and works to achieve fair and equitable solutions to problems.
    - Collaborate with other Office of Operations and FDA offices on issues of general concern and interprets policies to help resolve conflict or make improvements in the Office of Operations procedures.
    - Assist in the mediation and/or negotiation of disputes occurring at all staff levels. Educates management and the general workforce, in the concepts and processes of conflict resolution either in one-on-one or group settings.
    - Recommend approaches for addressing and managing conflict and collaborates with other Office of Operations offices on issues of general concern.
    - Provide leadership in developing and implementing strategies for building and sustaining cooperative relations between managers and staff employees in the

3 | Page

Office of Operations.
- Research, identify, and develop tools to be used to conduct assessments and evaluations of the organization's conflict climate.
- Work with leadership to develop plans to improve organizational environment.

Based on the medical review and a review of the essential job functions in your position description, it was determined that you are unable to perform the essential functions of your job with or without an accommodation, placing an undue burden on other staff who must perform all the essential duties of your position in addition to their own work.

2. **I have considered your past disciplinary record.** On October 25, 2018, you received a reprimand for failure to attend scheduled meetings and on November 14, 2019, you received a five (5) day suspension for Failure to Attend Scheduled Meetings as Instructed and Submission of An Inaccurate Time and Attendance Record.

3. **I have considered the effect of your ability to perform at a satisfactory level and its effect upon your supervisor's confidence in your ability to perform assigned duties.** Based on the opinion of FOH, you cannot perform the essential functions of your position with or without an accommodation. All other attempts at reasonable accommodation have been exhausted and reassignment is the only available option left to explore. The reasonable accommodation reassignment process was closed due to a lack of response on your part.

4. **I have considered your past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability.** Your 2018 PMAP score was 2.5 and you were failing your 2019 mid-year PMAP. I have also considered that you have been employed with the Food and Drug Administration for approximately twenty (20) years. However, this Proposal to Remove action is being taken because you rejected reassignment - the accommodation of last resort. I find removal to be the only remedy available that will promote the efficiency of government service.

The supporting documentation shows that a third-party, independent contractor (FOH) determined that you are unable to perform the essential functions of your current position and that reassignment to another vacant position, the accommodation of last resort, would be medically reasonable. The record also confirms that we looked for other positions within the Office of Enterprise Management Services (OEMS) that would be suitable options for you; however, you declined reassignment. Your inability to perform the essential functions of the position and refusal to move forward with an accommodation of last resort alone provide a solid basis to move forward with removal. You are not entitled to the accommodation of your choosing and reconsideration is not appropriate where your attorney has failed to provide any additional medical support to rebut FOH's assertion that you are unable to perform the essential functions of your job.

Therefore, in accordance with Part 752 of Title 5 of the Code of Federal Regulations, it is my finding that the evidence provided in this case, supports the reason for this action **and it is my decision, that in order to promote the efficiency of the service, you be removed from your**

**position as an Associate Ombudsman, GS-0301-14, and from the Federal Service effective February 21, 2020.**

## NOTICE OF RIGHT TO GRIEVE THIS DECISION OR INVOKE A STATUTORY REVIEW PROCEDURE

You may invoke <u>one</u> of the following statutory review procedures:

You may appeal this action in writing, to the U.S. Merit Systems Protection Board (MSPB), 1800 Diagonal Road, Alexandria, VA 22314-2840. Or you may file an electronic appeal by following the instructions at the MSPB's e-Appeal website at http://www.mspb.gov/.

Any appeal filed with the MSPB must be received by the MSPB no later than thirty (30) calendar days after the effective date of this action, or within thirty (30) calendar days from your receipt of this decision notice, whichever is later. Your appeal, if any, must provide your reasons for contending your removal from federal service, with such offer of proof and pertinent documents as you are able to submit. It is important to note the MSPB's thirty (30) calendar day requirement for filing an appeal. If you do not submit an appeal within the time set by statute, regulation, or order of a judge, it will be dismissed as untimely filed unless a good reason for the delay is shown. If you should file after the thirty (30) calendar-day requirement, the MSPB administrative law judge will provide you an opportunity to show why the appeal should be accepted and not dismissed as untimely filed.

**OR**

If you believe this action involves discrimination based on race, color, religion, sex, national origin, handicapping condition, or age, you have the right to file a complaint within the Department under the provisions of 29 C.F.R. Part 1614. To do so, you must contact an Equal Employment Opportunity (EEO) counselor within forty-five (45) calendar days of your receipt of this letter or your complaint will be dismissed as untimely filed.

**OR**

As stated in 5 C.F.R. Part 1209, you may seek corrective action before the U.S. Office of Special Counsel (OSC), www.osc.gov . If you file a complaint with OSC and OSC does not seek corrective action on your behalf, you may then appeal to the MSPB. The time limits for filing are the same as for an "individual right of action" and the case will be adjudicated as an individual right of action appeal.

> **NOTE:** Please be advised that if you elect to file with OSC, any later appeal to the MSPB will be limited to whether the agency took one or more covered personnel actions against you in retaliation for making protected whistleblowing disclosures. This means that the MSPB will not review the merits of the action but will resolve only the claim of reprisal for whistleblowing. You will be foregoing the right to otherwise challenge this removal, including, as applicable, the ability to challenge the charge(s); nexus; reasonableness of the penalty; and any affirmative defenses, such as: harmful procedural error and discrimination under Title VII or the Rehabilitation Act.

You may be eligible for disability retirement. If you have any questions regarding disability retirement or if you need assistance in applying for disability retirement, you may contact the

FDA OHR Benefits and Retirements at OO-OHR-BENEFITS@FDA.HHS.GOV.

If you have questions on the content of this letter or the appeal procedures available, you may contact Celeste Smith, HR Specialist at (240) 672-8018 or celeste.smith@fda.hhs.gov.

Sincerely,

Tiffany Branch
Director,
Office of Enterprise Management Services

Receipt Acknowledgement:

Please acknowledge receipt on the copy of this letter in the space provided. Your signature simply acknowledges that you have received the letter and does not mean that you agree the contents. However, failure to acknowledge receipt will not void the contents of this letter.

**RECEIPT COPY:**

_____          _____
Employee Signature                                          Date

# EXHIBIT 14



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
202-804-7000

February 25, 2020

Ms. Charmaine Condillac
c/o Mr. Morris E. Fischer
8720 Georgia Ave.
Suite 210
Silver Spring, MD 20910

*By email only to: morris@mfischerlaw.com*

Re: OSC File No. MA-20-0689

Dear Ms. Condillac:

The purpose of this letter is to notify you that you may have a right to file an "individual right of action" (IRA) appeal seeking corrective action from the Merit Systems Protection Board (MSPB or Board).

As we informed you in our closure letter of this date, the U.S. Office of Special Counsel (OSC) has terminated our inquiry into your allegations of violations of prohibited personnel practices under 5 U.S.C. § 2302(b)(8) or (b)(9).

In your complaint, you allege that management officials at the Department of Health and Human Services, Food and Drug Administration (FDA or the agency), Silver Spring, Maryland, improperly placed you on an Opportunity to Demonstrate Acceptable Performance plan (ODAP) and proposed your removal from federal service in retaliation for whistleblowing or for perceived whistleblowing and for filing an OSC complaint or for being perceived to have filed an OSC complaint. Specifically, you objected to the ODAP and notified the agency of your position that the ODAP was illegal and an abuse of authority. You further notified the agency that you intended to file an OSC complaint, which you filed in December 2019. You allege that, in addition to placing you on an ODAP and removing you from federal service, the agency also failed to accommodate your medical condition, significantly changed your duties or working conditions, and removed your ability to telework, in retaliation for your whistleblowing and protected activity or perceived whistleblowing and protected activity.

In your IRA appeal, you may seek corrective action from the Board under 5 U.S.C. §§ 1214(a)(3) and 1221 for any personnel action taken or proposed to be taken against you because of a protected disclosure and/or protected activity that was the subject of your complaint to this office. You may file a request for corrective action with the Board within 65 days after the date of this letter. The regulations concerning rights to file an IRA appeal with the Board can be found at 5 C.F.R. Part 1209. If you choose to file such an appeal, you should submit this letter to the Board as part of your appeal.

Although an individual bringing an IRA appeal to the Board must show that he or she has exhausted OSC procedures, our decision to end the investigation may not be considered in an IRA appeal. *See* 5 U.S.C. § 1221(f)(2); *Bloom v. Dep't of the Army*, 101 M.S.P.R. 79, 84 (2006). The Board may order an individual to submit a copy of OSC's determination letter, but the order must contain an explanation of why the letter is necessary and give the individual the opportunity to consent. *See* 5 U.S.C. § 1214(a)(2)(B); *Bloom*, 101 M.S.P.R. at 84.

Sincerely,

Meredith Purple
Attorney
Investigation and Prosecution Division



STATES
SERVICE®

Y®

any major

ms



$7.15 US POSTAGE
PRIORITY MAIL
FLAT-RATE ENVELOPE
ComBasPrice

062S0008542438
FROM 20910

stamps
endicia
02/27/2020

# PRIORITY MAIL 1-DAY™

Morris E. Fischer, LLC
8720 Georgia Ave Suite 210
Silver Spring MD 20910-3614

C027

SHIP
TO:  Merit Systems Protection Board
Washington Regional Office
1901 South Bell Street Suite 950
Arlington VA 22202-4512

**USPS TRACKING #**



9405 5118 9956 1085 5298 37

EP14F Oct 2018
OD: 12 1/2 x 9 1/2


This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; October 2018; All rights reserved.

the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.

Exhibit 20

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### WASHINGTON REGIONAL OFFICE

| | |
|---|---|
| CHARMAINE CONDILLAC,<br>                    Appellant,<br><br>          v.<br><br>DEPARTMENT OF HEALTH AND<br>     HUMAN SERVICES,<br>                    Agency. | DOCKET NUMBER<br>DC-0752-20-0418-I-1<br><br><br>DATE: March 18, 2020 |

## NOTICE

On March 10, 2020, the agency in the above-captioned proceeding filed a motion asserting that I lack the authority to decide this appeal under *Lucia v. Securities Exchange Commission*, 138 S.Ct. 2044 (2018). Appeal File, Tab 5.

In *Lucia*, the Supreme Court questioned the ability of administrative judges who lack a constitutional appointment to preside over administrative hearings and proceedings. *Id.* In its motion, the agency argued that the above-captioned appeal must be reassigned because I was not properly appointed. *Id.*

Because the issue of the appointment of Board administrative judges following *Lucia* is currently being litigated, and the there is a lack of Board quorum, I find it may be necessary to dismiss the appeal without prejudice. If the appellant wishes to file an objection to the agency's motion or to dismissal without prejudice, it must be received by this office on or before **March 25, 2020**. If no response is received, or the appellant fails to show good cause, than the appeal will be dismissed without prejudice for a period of 180 days.

**NOTE:** **All deadlines set forth in the Acknowledgement Order, to include the deadline to initiate discovery and the deadline to submit the Agency File, will be stayed until further notice.**

2

FOR THE BOARD:       _____/S/_____
                                           Andrew M. Dunnaville
                                           Administrative Judge

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Appellant</u>

Electronic Mail        Charmaine Condillac
20245 Sweet Medow Lane
Laytonsville, MD 20882

<u>Appellant Representative</u>

Electronic Mail        Morris E. Fischer, Esq.
Morris E. Fischer, LLC.
8720 Georgia Ave., Suite 210
Silver Spring, MD 20910

<u>Agency Representative</u>

Electronic Mail        Madeha Chaudry Dastgir, Esq.
Department of Health and Human Services
233 N. Michigan Avenue, Suite 700
Chicago, IL 60601

|  March 18, 2020  |  /s/  |
| :---: | :---: |
| (Date) | Latisha Clinton |
|  | Paralegal Specialist |

Exhibit 21

CHARMAINE CONDILLAC v. DEPARTMENT OF HEALTH AND HUMAN SERVICES
Docket # DC-0752-20-0418-I-1
Response to Agency's motion for reassignment and/or dismissal
Summary Page

**Case Title :** CHARMAINE CONDILLAC v. DEPARTMENT OF HEALTH AND HUMAN SERVICES

**Docket Number :** DC-0752-20-0418-I-1

**Pleading Title :** Response to Agency's motion for reassignment and/or dismissal

**Filer's Name :** Morris E. Fischer, Esq.

**Filer's Pleading Role :** Private Attorney

**Details about the supporting documentation**

N/A

# Table of Contents

Pleading Interview ................................................................................................... 3

Uploaded Pleading Text Document ............................................................................ 4

Certificate of Service ................................................................................................ 9

CHARMAINE CONDILLAC v. DEPARTMENT OF HEALTH AND HUMAN SERVICES
Docket # DC-0752-20-0418-I-1
Response to Agency's motion for reassignment and/or dismissal
Online Interview

1. Would you like to enter the text online or upload a file containing the pleading?

See attached pleading text document

2. Does your pleading assert facts that you know from your personal knowledge?

Yes

3. Do you declare, under penalty of perjury, that the facts stated in this pleading are true and correct?

Yes

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WASHINGTON REGIONAL OFFICE**

| | |
|---|---|
| **CHARMAINE CONDILLAC** | |
| **APPELLANT,** | **DOCKET NUMBER:** |
| | **DE-0752-20-0418-I-1** |
| **v.** | |
| | **DATE: APRIL 8, 2020** |
| **DEPARTMENT OF HEALTH AND HUMAN SERVICES,** | |
| **AGENCY** | |

## APPELLANT'S RESPONSE TO AGENCY'S MOTION FOR REASSIGNMENT OR DISMISSAL

Charmaine Condillac ("Appellant") hereby responds to the United States Department of Health and Human Services ("Agency") motion requesting that this case be reassigned or dismissed. In its motion, the Agency makes two arguments: (1) Administrative Judge ("AJ") Andrew M. Dunnaville cannot hear this case because Merit System Protection Board ("MSPB") AJs are inferior officers under the United States Constitution and Judge Dunnaville has not been appointed in accordance with the Appointments Clause (Article II, § 2 cl. 2); and (2) no MSPB AJ can hear this case because the MSPB currently has no appointed members resulting in all previous delegations becoming void. Both arguments are incorrect and should be rejected.

With respect to the first argument, AJs are not inferior officers under the United States Constitutions. As the Agency notes in its motion, the United States Supreme Court determined that Securities and Exchange Commission Administrative Law Judges ("ALJs") were inferior officers. *Lucia v. Sec. and Exch. Comm'n*, 138 S.Ct. 2044 (2018). As a result, the Appointments Clause requires that those ALJs must be appointed by the President, courts of law, or the heads of departments. Similarly, the Sixth Circuit determined that the Federal Mine Safety and Health Review Commission

Page 1

ALJs were also inferior officers. *Jones Bros. v. DOL*, 898 F.3d 669, 679 (6th Cir. 2018). The conclusion in both cases was based on the determination that the ALJs "exercise nearly all the tools of federal trial judges." *Lucia*, 138 S.Ct. at 2053; *Jones Bros.* 898 F.3d at 679.

However, in both of these cases, the courts relied, in part, on the ALJs having certain authority over discovery matters. *Lucia*, 138 S.Ct. at 2049, 2053 ("An ALJ assigned to hear an SEC enforcement action has extensive powers . . . Those powers include, but are not limited to, supervising discovery: issuing, revoking, or modifying subpoenas . . . [T]he ALJs have the power to enforce compliance with discovery orders. In particular, they may punish contemptuous conduct, including violations pf those orders, by means as severe as excluding the offender from the hearing.") (quotations omitted); *Jones Bros.*, 898 F.3d at 679 ("Like SEC administrative judges, they . . . shape the administrative record by . . . issuing subpoenas").

In contrast, MSPB AJs do not have the same authority on discovery matters. While the AJs can issue subpoenas, they must ask a federal district court to enforce the subpoena if the person refuses to comply. 5 U.S.C. § 1204(c); 5 C.F.R. § 1201.85. Additionally, the remedies for failure to comply with a discovery order are more limited: under 5 C.F.R. § 1201.43, MSPB judges may draw inferences in favor of the requesting party, permit the requesting party to introduce other evidence, prohibit the party failing to comply from introducing other related evidence, or exclude pleadings or other submissions of the party failing to comply with an order. This is more limited than the power of the SEC ALJs, who can punish violations of discovery orders "by means as severe as excluding the offender from the hearing." *Lucia*, 138 S.Ct. at 2053.

Based on these limitations, MSPB AJs do not have "nearly all the tools of federal trial judges" and should not be considered inferior officers. *Id.* Therefore, Judge Dunnaville may hear this appeal, and there is no reason for the case to be reassigned.

Page **2**

If Judge Dunnaville disagrees, he should immediately step down from his post and reassign the case to another MSPB Judge, whose appointment by the Board is not in question. By his own admission, he would not be able to decide this case, including the remainder of this motion because he's not a duly appointed judge as per the agency's argument.

The second argument by the Agency that no MSPB Judge can adjudicate this case is absolutely absurd. According to this argument *every MSPB judge should step down immediately*. Moreover, each judge that doesn't step down is effectively perpetrating a fraud on the American people by holding himself or herself out to be a judge, taking an undeserved salary from the taxpayer and violating numerous professional responsibility issues in the legal profession.

The MSPB is a functional agency with numerous upstanding and honorable judges across the country who should be adjudicating cases, as they are doing. This deeply flawed argument is a last ditch attempt to avoid liability an obvious whistleblower retaliation case.

The current lack of appointed MSPB members does not affect the prior delegations of authority to AJs to hear appeals. As an initial matter, 5 U.S.C. § 7701(b)(1) permits the Board to delegate the hearing of cases appealed to the Board to "an administrative law judge . . . or other employee of the Board designated by the Board to hear such cases." The Board has done so, as shown in the Organization Functions & Delegations of Authority, linked in the Agency's motion (https://go.usa.gov/xPh2w).

The MSPB has already confirmed that a lack of MPSB members does not affect this delegation in its Frequently Asked Questions:

> 3. Can administrative judges (AJs) issue initial decisions when there is a lack of Board quorum or Board members?
>
> Yes, AJs may and have continued to issue initial decisions since the lack of quorum began, pursuant to longstanding delegated authority. If neither party files a petition for review to the MSPB, the AJ's decision will become the final decision of the Board and may be appealed to an appropriate court or tribunal. See 5 U.S.C. § 7703.

Page 3

If either party files a petition for review to the MSPB, a Board decision cannot be issued until a quorum of at least two Board members is restored.

https://www.mspb.gov/FAQs_Absence_of_Board_Quorum_March_1_2019.pdf

This is consistent with well-established law as well. "As the D.C. Circuit has held, '[w]hen a statute delegates authority to a federal officer or agency, sub delegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent.'" *Stand Up for Cal.! v. U.S. Dep't of Interior,* 298 F. Supp. 3d 136, 142 (D.D.C. 2018) (*quoting U.S. Telecomm Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004). Although the Agency cites to *New Process Steel, LP v. NLRB*, 560 U.S. 674 (2010) in its motion, that case does not support its argument. The Supreme Court expressly declined to adopt "the District of Columbia Circuit's equation of a quorum requirement with a membership requirement that must be satisfied or else the power of any entity to which the Board has delegated authority is suspended." *Id.* at 684, n.4. Instead, the Court noted, "Our conclusion that the delegee group ceases to exist once there are no longer three Board members to constitute the group does not cast doubt on the prior delegations of authority to nongroup members, such as the regional directors or the general counsel." *Id.*

Further, in *Kobach v. U.S. Election Assistance Commission*, 772 F.3d 1183 (10th Cir. 2014), the court upheld a delegation of authority to the agency's executive director, even though the agency's multimember body was entirely vacant. As the court noted, "it would be impractical to simply shutter the EAC while it lacks a quorum." *Id.* at 1194. The quote in the Agency's motion from the footnote in the 1983 D.C. Circuit Court opinion in *R.R. Yardmasters of Am. v. Harris*, 721 F.2d 1332, is dicta and is not consistent with the holding of the Tenth Circuit in 2014, cited above, nor the United States Supreme Court in 2010, also cited above.

Accordingly, the delegation to AJs by the MSPB is not be affected by the absence of MSPB members. Therefore, again, Judge Dunnaville's authority to hear this appeal is in fully intact, and there is no reason for this appeal to be reassigned or dismissed.

Page 4

In conclusion, MSPB AJs are not inferior officers because they do not have nearly all the powers of federal trial judges, and the delegation of authority by the MSPB to AJs is not affected by the current lack of MSPB members. Thus, Appellant respectfully requests that the Agency's motion be denied.

Respectfully submitted,

*/s/ Morris E. Fischer*
Morris E. Fischer, Esq.
Morris E. Fischer, LLC
8720 Georgia Ave, Suite 210
Silver Spring, MD 20910
Morris@mfischerlaw.com
(301) 328-7631 phone
(301) 328-7638 fax
*Attorney for Appellant*

Page 5

# <u>Certificate Of Service</u>

e-Appeal has handled service of the assembled pleading to MSPB and all of the Parties.
Following is the list of the Parties in the case:

| Name & Address | Documents | Method of Service |
|---|---|---|
| MSPB: Washington Regional Office | Response to Agency's motion for reassignment and/or dismissal | e-Appeal / e-Mail |
| Charmaine Condillac Appellant | Response to Agency's motion for reassignment and/or dismissal | e-Appeal / e-Mail |
| Madeha Chaudry Dastgir, Esq. Agency Representative | Response to Agency's motion for reassignment and/or dismissal | e-Appeal / e-Mail |

Exhibit 22

**UNITED STATES OF AMERICA**
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**BALTIMORE FIELD OFFICE**

| | | |
|---|---|---|
| CHARMAINE CONDILLAC, | ) | |
| | ) | |
| Complainant | ) | **EEOC No. 531-2019-00253X** |
| v. | ) | **531-2019-00462X** |
| ALEX AZAR, Secretary, | ) | **531-2020-00095X** |
| | | **531-2020-00096X** |
| U.S. DEPARTMENT OF HEALTH | ) | |
| & HUMAN SERVICES | ) | **AGENCY No: HHS-FDAOC-067-17** |
| | ) | **HHS-FDAOC-094-18** |
| Agency, | ) | **HHS-FDAOC-18-CI** |
| | ) | |

## NOTICE OF WITHDRAWAL FOR HEARING REQUEST AND REQUEST FOR FINAL AGENCY DECISION

Complainant herein withdraws his Request for Hearing in this matter; seeks a final agency decision and will file a case in Federal Court unless the Agency's Final Agency Decision is issued within the next 60 days per regulation and rules for the Complainant.

/s/ Morris E. Fischer
Morris E. Fischer, Esq.
MD Bar No: 26286
Morris E. Fischer, LLC
8720 Georgia Avenue Suite 210
Silver Spring, MD 20910
301-328-7631 Office
301-328-7638 Fax
morris@mfischerlaw.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

On June 11, 2020, the undersigned served via email this notice.

1

**Madeha Dastgir**
Attorney
Claims and Employment Law Branch
General Law Division (GLD)
Office of the General Counsel
U.S. Department of Health and Human Services
233 N. Michigan Avenue, Suite 700
Chicago, IL 60561

/s/ Morris E. Fischer
Morris E. Fischer, Esq.
MD Bar No: 26286
Morris E. Fischer, LLC
8720 Georgia Avenue Suite 210
Silver Spring, MD 20910
301-328-7631 Office
301-328-7638 Fax
morris@mfischerlaw.com
Counsel for Plaintiff