```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
```

CHARMAINE CONDILLAC                  :

     v.                              :    Civil Action No. DKC 20-1794

                                        :

ROBERT M. CALIFF, in his
capacity as Commissioner of          :
Food and Drugs, et al.

**MEMORANDUM OPINION**

The claims remaining in this federal employee employment discrimination action are (1) disability discrimination under the Rehabilitation Act, (2) retaliation under the Rehabilitation Act and Title VII, and (3) race and religious discrimination under Title VII, for actions other than the denial of Plaintiff's reasonable accommodation requests, her non-selection for promotion, and her eventual termination.[1]  Defendants have moved to dismiss or for summary judgment.  (ECF No. 25).  Plaintiff responded.  (ECF Nos. 30 and 33).  No reply has been filed.  The court now rules, no hearing being deemed necessary.  Local Rule

---

[1] Plaintiff states that "the wrongful termination claims are not part of this Federal case" and that "[t]he same is true [for] the claim that the Defendant[s] wrongfully denied the Plaintiff her reasonable accommodation, which was a direct cause of her termination."  (ECF No. 30 at 1).  She also declines to pursue a claim based on her non-selection for promotion.  (ECF No. 30 at 2).  Those and other claims are pending before the Merit Systems Protection Board.

105.6.  For the reasons that follow, the motion to dismiss will be granted.

I. **Background**

The Amended Complaint recites that Plaintiff is an Asian-American woman of Indian descent, is Muslim, suffers from generalized anxiety disorder, and is perceived to have a disability.  (ECF No. 20-1 at 2-3).  Plaintiff was an employee of the United States Food and Drug Administration, where she was allegedly discriminated and retaliated against in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and the Rehabilitation Act, 42 U.S.C. § 12101, *et seq.*  (ECF No. 20-1 at 1, 3).  On March 27, 2017, Plaintiff filed a complaint with her employer's Equal Employment Opportunity ("EEO") counselor.  (ECF No. 20-1 at 3). She filed formal Equal Employment Opportunity ("EEO") complaints on July 6, 2017, and July 17, 2018.  In those complaints, she alleged that she was discriminated against based on her race/color, religion, national origin, and disability and that she was retaliated against for EEO activity.  (ECF No. 20-3 at 2, 36). The complaints were amended in October 2018 and March 2019.  (ECF No. 20-1 at 4).  Plaintiff was ultimately terminated in early 2020. (ECF No. 20-1 at 6).

The Amended Complaint outlines the actions about which Plaintiff complains vaguely and confusingly; she mostly relies on unspecific citations to "the actions" "as listed in her" EEO

2

complaints and amendments.[2]  (ECF No. 20-1 at 6-7).  Plaintiff's discrimination and retaliation claims seem to be based on the following "individual acts of discrimination":

- Plaintiff's supervisor, Mr. Conerly, gave Plaintiff's work to other employees, "sabotaged her work," "held up her documents," and "ridiculed her about her project plans";

- Mr. Conerly assigned her administrative tasks not appropriate for her grade (experience) level, and the tasks obstructed her ability to perform her other job duties;

- Plaintiff was regularly "required to attend mediation observation sessions";

---

[2] The Amended Complaint's failure to articulate clearly the specific "adverse actions" that Plaintiff complains of is troubling.  Plaintiff seems content to leave it to the court to sift through the 45 pages of EEO complaints and amendments and cobble together a fully-formed complaint.  The court will not do Plaintiff's work for her. *Cf. Johnson v. City of Shorewood*, 360 F.3d 810, 817 (8th Cir. 2003) ("It is not a court's obligation to search the record for specific facts that might support a litigant's claim[.]").  Federal Rule of Civil Procedure 10(c) provides that exhibits to pleadings are considered part of the pleadings, but it does not necessarily follow that exhibits containing allegations raised before another body can serve as a substitute for the complaint itself.  However, for the purpose of resolving this motion, the court will assume that the "adverse actions" Plaintiff describes in her response to Defendants' motion, which she drew from the EEO complaints, were alleged in the Amended Complaint.

3

- Plaintiff was required to complete "180% of the training required of" other employees as part of a "Performance Management Appraisal Program" plan;[3]

- Plaintiff was denied repeated requests to use a flexible work schedule as a reasonable accommodation to attend medical appointments;

- On January 21, 2018, Mr. Conerly told Plaintiff she was not suited for her job and "encouraged her to find another position";

- On February 28, 2019, Mr. Conerly gave Plaintiff a score of 2.5 overall on a 2018 "Performance Management Appraisal Program evaluation," making her ineligible for a within-grade increase and "impact[ing]" her request to telework as a reasonable accommodation;

- Also on February 28, 2019, Mr. Conerly "interacted with" Plaintiff "in a manner of overt aggression that caused her to fear for her physical, professional, and emotional safety";

- On Oct. 25, 2018, Mr. Conerly issued Plaintiff an "undeserved Letter of Reprimand"; and

- On Oct. 1, 2019, Mr. Conerly issued Plaintiff an "Opportunity to Demonstrate Acceptable Performance" over a 60-day period.

---

[3] Plaintiff also alleges that she was prevented from attending training on certain occasions. (ECF No. 30 at 4).

4

(ECF Nos. 30 at 3-6, 20-3 at 2-45).

**II. Standard of Review**

Defendants have styled their motion as a motion to dismiss or, in the alternative, for summary judgment. Ordinarily, a court cannot consider matters outside the pleadings when ruling on a motion to dismiss under Rule 12(b)(6). *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). If it does so, the motion should be "treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). However, Defendants' motion exclusively cites the complaint, amended complaint, and exhibits attached thereto and relies on no materials outside the pleadings.[4] Thus, the court finds it unnecessary to look beyond the pleadings in evaluating the motion. Defendants' motion will be treated as a motion to dismiss under Rule 12(b)(6).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8(a), which requires a

---

[4] Defendants have not presented any materials outside the pleadings for the court to consider. Plaintiff submitted a supplement to her response to Defendants' motion to which she attached Mr. Conerly's deposition testimony from the Merit Systems Protection Board case. However, its relevance to Defendants' motion is unclear, and it will be excluded from consideration.

5

"short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). The pleading need not contain "detailed factual allegations," but it must include more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (internal quotation marks omitted). Indeed, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. When undertaking this review, the court must consider all well-pleaded allegations in a complaint as true. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994). Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

**III. Analysis**

    **A. Race and Religious Discrimination Claim**

Defendants argue that Plaintiff's Title VII race and religious discrimination claims should be dismissed because the Amended Complaint and the attachments thereto are "devoid of factual allegations" that would support those claims.[5] (ECF No. 25-1 at 16-17). Indeed, the only reference to race or religion in the facts described in Plaintiff's Amended Complaint is Plaintiff's statement of her own race and religion. She conclusorily alleges that race and religion were the motivating factors in Defendants' adverse employment actions towards her, and she states that "[p]ersons outside of Plaintiff's race . . . were not subject to the aforesaid actions." (ECF No. 20-1 at 7). However, the Amended Complaint does not assert facts establishing the plausibility of that allegation. For example, she does not identify specific ways in which employees of other races and religions were treated differently, nor does she establish a plausible basis for believing that those other employees were similarly situated with Plaintiff. "Absent such support, the complaint's allegations of race [and religious] discrimination do not rise above speculation." *See Coleman v. Md. Ct. App.*, 626 F.3d 187, 191 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. App.*

---

[5] Plaintiff has not responded to this argument.

7

*of Md.*, 566 U.S. 30 (2012); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, Plaintiff's race and religious discrimination claim will be dismissed.

### B. Disability Discrimination and Retaliation Claims

Defendants' primary argument as to why the remaining claims should be dismissed is that none of the alleged "acts of discrimination" constitute "adverse actions," as is required to sustain discrimination and retaliation claims under Title VII and the Rehabilitation Act.[6] *See James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004); *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018). (ECF No. 25-1 at 10-13). They argue that all the actions Plaintiff identifies in her Amended Complaint are mere "workplace annoyances" that "cannot support a discrimination or retaliation action as a matter of law." (ECF No. 25-1 at 13).

Plaintiff argues that those actions caused her "objective harm" and "affected the terms, conditions[,] and benefits of employment." (ECF No. 30 at 2). She relies extensively on a case

---

[6] The "adverse action" standards for Rehabilitation Act discrimination and retaliation claims mirror the standards for Title VII discrimination and retaliation claims. *See Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F.Supp.2d 480, 491 (D.Md. 2013). Accordingly, this analysis does not distinguish between the two.

from the United States Court of Appeals for the D.C. Circuit, *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) (en banc).  In *Chambers*, the court overruled its precedent that the denial or forced acceptance of a job transfer must cause "objectively tangible harm" to be actionable under Title VII.  *Id.* at 872.  Instead, that court now holds that "an employer that transfers an employee or denies an employee's transfer request because of the employee's race, color, religion, sex, or national origin violates Title VII by discriminating against the employee with respect to the terms, conditions, or privileges of employment."  *Id.*

It is unclear how *Chambers* would apply to this case, as Plaintiff has not alleged that she requested or was forced to accept a job transfer.[7]  In any event, this court is bound by existing precedent of the United States Court of Appeals for the Fourth Circuit and the Supreme Court.  In the Fourth Circuit, an "adverse employment action," for the purposes of a discrimination claim, is one that "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment."  *James*, 368 F.3d at 375 (alteration in original) (internal quotation marks omitted).  Generally, adverse employment actions are found in cases of "discharge, demotion, decrease in pay or benefits, loss of job

---

[7] *Chambers* was clear that its holding applied specifically to cases involving the denial or forced acceptance of a job transfer.

9

title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999); *see also James*, 368 F.3d at 376.  However, "not everything that makes an employee unhappy is actionable adverse action." *Settle v. Baltimore Cnty.*, 34 F.Supp.2d 969, 989 (D.Md. 1999) (internal quotation marks omitted); *see also James*, 368 F.3d at 377 ("[A]n employee's dissatisfaction with this or that aspect of work does not mean an employer has committed an actionable adverse action.").

For a retaliation claim, the standard is somewhat more inclusive: the allegedly retaliatory actions must be "materially adverse[,] such that they might have dissuaded a reasonable worker from engaging in protected activity." *Strothers*, 895 F.3d at 327 (internal quotation marks omitted) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Whether an action is materially adverse "depends upon the circumstances of the particular case[] and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Burlington*, 548 U.S. at 71 (internal quotation marks omitted).  While the scope of adverse actions that can form the basis for retaliation claims is broader than that for discrimination claims, *Strothers*, 895 F.3d at 327, it still excludes "petty slights, minor annoyances, and simple lack of good manners." *Burlington Northern*, 548 U.S. at 68.  Nor does "a

10

personal conflict alone . . . constitute retaliation." *Spencer v. Va. State Univ.*, 919 F.3d 199, 208 (4th Cir. 2019).

Here, Plaintiff has alleged that her supervisor committed a host of "discriminatory acts" against her.[8]  Many of them are incomprehensibly vague—for example, it is unclear what she means when she says her supervisor "sabotaged her work," "held up her documents," "ridiculed her about her project plans," and "interacted with [her] in a manner of overt aggression." (ECF No. 30 at 3-4).  These "naked assertion[s] devoid of further factual enhancement" are insufficient to state "a claim to relief that is plausible on its face." *Iqbal*, 556 at 678 (alteration in original) (internal quotation marks omitted); *Twombly*, 550 U.S. at 570.

The others do not qualify as adverse actions, either under the discrimination standard or the retaliation standard. Plaintiff has alleged that her supervisor (1) assigned her administrative tasks, (2) required her to attend mediation observation sessions,[9] (3) required her to complete more training than coworkers, (4) denied her requests for a flexible work schedule, (5) encouraged her to find another position for which

---

[8] Plaintiff has not alleged that the acts created a hostile work environment but rather alleges that each was a "tangible, adverse[] employment action." (ECF No. 20-1 at 5-7).

[9] Plaintiff has not made clear what "mediation observation sessions" are, but the court assumes this allegation is akin to an allegation of additional duties or training.

11

she was more suited, (6) gave her a poor performance review, (7) issued her a "Letter of Reprimand," and (8) issued her an "Opportunity to Demonstrate Acceptable Performance."

Plaintiff has failed to allege how any of those actions altered the terms, conditions, or benefits of her employment. Other courts in this district have repeatedly considered and rejected arguments that actions such as these are actionable as "adverse actions." *See, e.g.*, *Thorn v. Sebelius*, 766 F.Supp.2d 585, 599, 603 (D.Md. 2011), *aff'd*, 465 F.App'x 274 (4th Cir. 2012) (concluding that "additional duties" did not constitute an "adverse action" for either a discrimination or a retaliation claim without an allegation that the hours, salary, or other terms of employment were also affected); *Dailey v. Lew*, No. 15-CV-2527-GLR, 2016 WL 1558150, at *6 (D.Md. Apr. 18, 2016), *aff'd*, 670 F.App'x 142 (4th Cir. 2016) (concluding that an employer's denying or terminating a flexible work schedule was not an adverse employment action for a retaliation claim); *Tuggle-Owens v. Shalala*, No. 99-CV-1412-H, 2000 WL 783071, at *10 (D.Md. June 8, 2000) (concluding that "the mere lowering of a performance rating or the mere awarding of an unsatisfactory rating are not adverse employment actions" for both discrimination and retaliation claims); *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F.Supp.2d 480, 492 (D.Md. 2013) (concluding that "none of the following constitutes an adverse employment action in a retaliation claim: . . . a personal

12

improvement plan, . . . a verbal reprimand, 'a formal letter of reprimand,' or 'a proposed termination.'").

There is little case law regarding whether requiring an employee to complete more training than her peers as part of a performance improvement plan is an adverse action.  However, the court is only aware of cases in which the imposition of additional training requirements failed to qualify as an adverse employment action.[10]  *See, e.g.*, *Stoyanov v. Mabus*, No. 07-CV-1953-DKC, 2013 WL 1104978, at *9 (D.Md. Mar. 15, 2013), *aff'd sub nom. Stoyanov v. Behrle*, 540 F.App'x 167 (4th Cir. 2013) (granting summary judgment in favor of an employer on a claim based on an additional training requirement); *Clemmons v. Columbus Consol. Gov't*, No. 4:15-CV-54 (CDL), 2016 WL 6892086, at *12 (M.D.Ga. Nov. 22, 2016) (same); *Rollins v. Al. Cmty. Coll. Sys.*, 814 F.Supp.2d 1250, 1306 (M.D.Ala. 2011) (same); *Watson v. Potter*, 23 F.App'x 560, 564 (7th

---

[10] Plaintiff also alleges that she was denied training opportunities. (ECF No. 20-1 at 3).  She included that allegation in her initial EEO complaint and cited two denied training opportunities. (ECF No. 20-3 at 3).  She dated the first training opportunity as March 26, 2017 (the day before she filed her complaint with the EEO counselor); the other is undated.  Thus, it could conceivably only serve as the basis for a discrimination, and not a retaliation, claim.  Courts in this district have held that, "[i]n general, denial of training opportunities does not constitute an adverse employment action for the purposes of a Title VII discrimination claim," although it may in certain circumstances constitute an adverse action for the purpose of a retaliation claim.  *Maine v. Azar*, No. 16-CV-3788-GLR, 2021 WL 3617215, at *17 (D.Md. Aug. 16, 2021) (citing cases).  Plaintiff has not alleged any additional facts that would persuade this court to depart from this general rule.

13

Cir. 2001) (affirming the district court that did the same). In any event, the Amended Complaint does not allege any materially adverse impact the additional training had on Plaintiff, such that it would have deterred a reasonable person from making a complaint of discrimination.[11]

In sum, Plaintiff has failed to allege that she suffered any actionable adverse actions and, thus, has failed to make a showing that she is entitled to relief on her disability discrimination and retaliation claims.

**IV. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss will be granted.

                                         /s/
                              DEBORAH K. CHASANOW
                              United States District Judge

---

[11] The only mention of the additional training allegation is in Plaintiff's second formal EEO complaint. The only details she provided in that complaint were: "Management included unrealistic training requirements in Ms. Condillac's 2018 [Performance Management Appraisal Program] plan, including the requirement for Ms. Condillac to undergo 180% of the training required of her peers." (ECF No. 20-3 at 36).